LOUISE H. RENNE (SBN 036508)
JONATHAN V. HOLTZMAN (SBN 099795)
RENNE SLOAN HOLTZMAN & SAKAI, LLP
50 California Street, Suite 2100
San Francisco, CA 94111-4624
Telephone: (415) 678-3800
Facsimile: (415) 678-3838

Attorneys for Plaintiffs,
DONALD HAMILTON, BOBBY JONES, DAMON BARRON-SMITH,
ALJRARICE SANDERS and others similarly situated.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DONALD HAMILTON, an individual; BOBBY
JONES, an individual; DAMON BARRON-
SMITH, an individual; ALJARICE SANDERS,
an individual; and on behalf of themselves and
others similarly situated;

    Plaintiffs,

vs.

SIGNATURE FLIGHT SUPPORT
CORPORATION, a Delaware corporation; BBA
AVIATION SHARED SERVICES, INC., a
Florida corporation; BBA GROUP US
HOLDINGS INC., a Massachusetts corporation;
BBA GROUP PLC, a United Kingdom
corporation; STEVE TRUE, an individual;
NORMAN RAMIREZ, an individual; DENNIS
SMITH, an individual; LYNN SHAW, an
individual; JAY SINGH, an individual;
MARCARIO LIPORADA, an individual; and
DOES 1-100;

    Defendants.



Case No.: C 05 00490

**CLASS ACTION COMPLAINT FOR:**
1. **RACIAL DISCRIMINATION**
2. **SEX DISCRIMINATION**
3. **RETALIATION**

**COMPLAINT FOR:**

1. **WRONGFUL DISCIPLINE AND/OR TERMINATION IN VIOLATION OF PUBLIC POLICY**
2. **DISABILITY DISCRIMINATION**
3. **AGE DISCRIMINATION**
4. **HOSTILE WORKING ENVIRONMENT**
5. **INJUNCTIVE RELIEF**
6. **ASSAULT AND BATTERY**
7. **TORTIOUS INTERFERENCE WITH CONTRACT**
8. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**JURY TRIAL DEMANDED**

CLASS ACTION COMPLAINT
Case No.

Plaintiffs allege as follows:

**PRELIMINARY STATEMENT**

1.     Plaintiffs bring this action for damages and injunctive relief resulting from Defendants' violation of their civil rights, as secured under the Constitution and the laws of the United States and the State of California, by Defendants' maintenance of unlawful practices which had the purpose or effect of discriminating against Plaintiffs on the basis of their race, actual and perceived disabilities, sex and age; and which had the purpose or effect of retaliating against them for engaging in protected activity.

**JURY DEMAND**

2.     Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

**JURISDICTION**

3.     This action is brought to redress violation of Plaintiffs' rights as guaranteed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967, and California's Fair Housing and Employment Act, to secure protection against and to redress deprivation of their right to be free from harassment, retaliation, and discrimination in employment.  The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1343(a)(4) to secure the above-specified rights.  This court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises, in part, under the Constitution or laws of the United States of America.  Plaintiffs further request that this court exercise supplemental jurisdiction over their state claims pursuant to 28 U.S.C. § 1367(a).

**THE PARTIES**

The putative class of Plaintiffs includes but is not limited to the following members:

4.     Plaintiff DONALD HAMILTON ("HAMILTON") is African American.  He has been employed by Defendant SIGNATURE FLIGHT CORPORATION ("SIGNATURE") since 1996.  For the better part of his employment with SIGNATURE, HAMILTON remained in the same entry level position in which he was hired.  HAMILTON was promoted briefly in 2003, but was demoted after being told by the general manager at a meeting of supervisors: "You have two

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

1

CLASS ACTION COMPLAINT
Case No.

things going against you as a supervisor: you're black and you have a stammering problem." After an investigation, the U.S. Equal Employment Opportunity Commission ("EEOC") has determined that "there is reasonable cause to believe that SIGNATURE subjected HAMILTON to different terms and conditions of employment, discipline and demotion based on his race and perceived disability . . . ." Only after the EEOC issued its determination did SIGNATURE reinstate HAMILTON to his promoted position.

5.     Plaintiff BOBBY JONES ("JONES") is African American. He was employed by Defendant SIGNATURE from 1999 until he was unlawfully fired in July 2004, one month after complaining to management about racial discrimination at SIGNATURE.

6.     Plaintiff ALJARICE SANDERS ("SANDERS") is an African American woman. She was employed by Defendant SIGNATURE from June 2002 until she was unlawfully fired on September 21, 2004, two weeks after she filed a charge of race and sex discrimination with the EEOC.

7.     Plaintiff DAMON BARRON-SMITH ("BARRON-SMITH") is African American. He has been employed by Defendant SIGNATURE since 1998 and, despite his seniority and repeated attempts to apply for promotive positions, still remains in the same entry level position in which he was hired.

Plaintiffs allege Defendants include but are not limited to:

8.     Defendant SIGNATURE FLIGHT SUPPORT CORPORATION a.k.a. SIGNATURE FLIGHT SUPPORT is a Delaware corporation.

9.     Defendant BBA AVIATION SHARED SERVICES, INC. a.k.a. BBA AVIATION SERVICES GROUP a.k.a. BBA AVIATION (collectively "BBA AVIATION") is a Florida corporation and is the parent company of SIGNATURE.

10.     The Parent company of BBA AVIATION, Defendant BBA GROUP US HOLDINGS INC. ("BBA GROUP") is a Massachusetts corporation that is a division or subsidiary of BBA GROUP PLC, a United Kingdom corporation.

11.     For the purposes of this complaint, SIGNATURE FLIGHT SUPPORT CORPORATION and its parent companies are referred to collectively as "SIGNATURE."

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

2

CLASS ACTION COMPLAINT
Case No.

1   12. Defendant STEVE TRUE ("TRUE") is General Manager of Defendant

2 SIGNATURE's San Francisco fixed base operations ("FBO").

3   13. Defendant NORMAN RAMIREZ ("RAMIREZ") is Operations Manager and

4 second in command at Defendant SIGNATURE's San Francisco FBO.

5   14. Defendant JAY SINGH ("SINGH") is Customer Service Supervisor at defendant

6 SIGNATURE's San Francisco FBO.

7   15. Defendant DENNIS SMITH ("SMITH") is Vice President of Human Resources at

8 Defendant SIGNATURE.

9   16. Defendant LYNN SHAW ("SHAW") is Regional Human Resources Manager at

10 Defendant SIGNATURE.

11   17. Defendant MACARIO LIPORADA ("LIPORADA") is an employee of

12 SIGNATURE at its San Francisco FBO.

13   18. Defendant DOE 1 is an individual who assaulted JONES on or about July 8, 2004

14 on SIGNATURE's property.

15   19. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein

16 as DOES 2-100, inclusive, and Plaintiffs therefore sue such defendants by such fictitious names.

17 Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

18 Plaintiffs are informed and believe and thereon allege that each of these fictitiously named

19 Defendants is responsible in some manner for the occurrences, acts and omissions alleged herein

20 and that Plaintiffs' injuries as alleged herein were proximately caused by such Defendants.

21   20. Plaintiffs are informed and believe and thereon allege that at all times mentioned

22 herein, each of the Defendants was and is the agent, employee and servant of each other

23 Defendant and committed the occurrences, acts and omissions complained of herein wile acting

24 within the scope of such agency, employment and servitude.  Each Defendant is responsible for

25 the occurrences, acts and omissions of each other Defendant complained of herein.

26         **VENUE**

27   21. Venue is proper pursuant to Title 28 of the United States Code section 1391(b)

28 because (1) all Defendants reside (for purposes of 28 U.S.C. § 1391(b)(1)) in the Northern

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

3

1   District of California, and (2) a substantial part of the events or omissions giving rise to

2   Plaintiffs' claims occurred in the Northern District of California.

3                              **GENERAL ALLEGATIONS**

4            22.     SIGNATURE is the world's largest flight support operation providing services to

5   private planes and executive jets.  At numerous airports, SIGNATURE serves as a Fixed Base

6   Operator ("FBO"), which means it leases infrastructure from airports to provide corporate

7   aviation terminals, fueling services, pilot and passenger amenities, aircraft cleaning, and

8   overnight and long-term hangar space.  Nationwide, SIGNATURE employs approximately 1,700

9   employees domestically and maintains over forty FBO facilities.

10           23.     SIGNATURE demotes and fires African American employees on the basis of

11  pretextual workplace violations, while failing to discipline non-African American employees for

12  similar and even far more serious safety and policy violations.

13           24.     SIGNATURE applies more burdensome work rules, work obligations, job

14  assignments, and shift assignments to African American employees than to non-African

15  American employees.

16           25.     SIGNATURE pays African American employees less, denies them overtime pay,

17  and provides them with fewer benefits than non-African American employees.

18           26.     SIGNATURE refuses to promote African American employees.  SIGNATURE

19  has kept five-year employee BARRON-SMITH in the same entry-level position in which he was

20  hired.  Before terminating their employment, SIGNATURE kept Plaintiffs JONES and

21  SANDERS in entry and low-level positions for five years and two years, respectively.  When

22  African American employees are qualified for a supervisory position, SIGNATURE reaches

23  outside the company to fill the vacancy, despite its purported policy of promoting from within

24  the company.  SIGNATURE also promotes unqualified and less qualified non-African

25  Americans over African American employees who have substantial experience and seniority.

26           27.     Based on information and belief, SIGNATURE's practices of discriminating

27  against and harassing African American employees, and retaliating against those who complain

28

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

4

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

1   of discrimination and harassment, are not limited to its San Francisco FBO, but extend to other

2   FBOs across the country, and are condoned by SIGNATURE's upper management.

3       28.    These continuing patterns and practices of discrimination, pervasive at

4   SIGNATURE's San Francisco facilities, have been brought to the attention of management at

5   both the local and national levels.  Management has repeatedly failed and refused to investigate

6   these complaints of discrimination.  On the contrary, SIGNATURE has retaliated against

7   employees who complain about discrimination by, among other things, unwarranted disciplinary

8   actions and dismissal.

9       29.    SIGNATURE has condoned and encouraged a severe and pervasive racially

10   hostile work environment.  SIGNATURE subjects African American employees to verbal abuse

11   that is not directed towards non-African American employees and fails to take appropriate

12   actions to investigate and prevent the racially hostile actions of its supervisory and non-

13   supervisory employees, encouraging this unlawful behavior.

14       30.    SIGNATURE maintains an unwritten racially discriminatory policy against hiring

15   African American employees.  Plaintiffs have from time to time referred other African American

16   friends, family members and/or colleagues to apply for jobs at SIGNATURE's San Francisco

17   FBO.  SIGNATURE has consistently failed or refused to hire such referred individuals, but

18   regularly hires non-African Americans referred to SIGNATURE by its non-African American

19   employees.

20       31.    SIGNATURE has approved of and encouraged a sexually hostile work

21   environment that is severe and pervasive.  SIGNATURE's management knowingly and/or

22   recklessly permits persistent, inappropriate, lewd and sexually charged behavior that is directed

23   toward women employees, especially African American women.

24       32.    As a proximate result of SIGNATURE's pattern and practice of discrimination

25   and harassment, and other wrongful acts, each Plaintiff has suffered loss of past, present and

26   future income, loss of advancement and promotion, loss of career opportunity and loss of

27   intangible job benefits, all in amounts to be proven at trial.   As a further proximate result of the

28   discriminatory employment practices and other outrageous acts, each of the Plaintiffs have

5

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

1    suffered severe and extreme emotional distress, shame, humiliation and embarrassment, all in

2    amounts to be proven at trial.

3        33.    Because the employment practices and other wrongful acts alleged herein are

4    oppressive, malicious, fraudulent and in conscious disregard of Plaintiffs' rights, punitive

5    damages are warranted against SIGNATURE.

6        Each Plaintiff has experienced discriminatory practices and other wrongful acts by

7    Defendants, including but not limited to the following:

8    **DONALD HAMILTON**

9        34.    SIGNATURE hired HAMILTON as a line technician in 1996 on the graveyard

10    shift. (A line technician services the aircraft.) Beginning in 1998, to better position himself for

11    advancement in the company, HAMILTON began a three-year course of study to obtain an

12    airframe and powerplant repair ("A&P") license. He worked at night and attended school during

13    the day and, by 2001, succeeded in obtaining his A&P license.

14        35.    In mid-2002, having accumulated nearly six years seniority and obtained his A&P

15    license, HAMILTON applied for a line supervisor position. For comparison purposes,

16    SIGNATURE had promoted RAMIREZ, a non-African American, to line supervisor within six

17    months of his hire. For five years, HAMILTON's direct supervisors had recommended

18    HAMILTON be promoted to a supervisory position. His reviews contain comments such as,

19    "[HAMILTON] continues to be an excellent employee and is ready for consideration for future

20    supervisory positions when personnel schedule permits."

21        36.    During HAMILTON's interview for the 2002 supervisory position, general

22    manager TRUE worried aloud that HAMILTON could not handle himself on the ramp because

23    of "his stammering problem." TRUE never told HAMILTON the result of his application, but

24    later introduced him to his "new supervisor," a non-African American who was hired from an

25    outside company.

26        37.    In 2003, TRUE finally promoted HAMILTON to the line supervisor position. At

27    HAMILTON's first supervisor meeting, TRUE set the tone by telling HAMILTON, in the

28    presence of other supervisors, that, "You have two things against you, you are Black and you

6

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

1    have a stammering problem." TRUE also prevented HAMILTON from accomplishing his

2    supervisory duties by, among other things, refusing to issue HAMILTON an e-mail address,

3    refusing to announce HAMILTON's promotion to staff members, refusing to enforce

4    HAMILTON's recommendations for disciplinary actions against non-African American

5    employees who had violated company policies and safety rules, and failing to give HAMILTON

6    the keys to the alarms on the access doors to the active ramp.

7         38.    HAMILTON's probationary period was to end in June 2003. On or about May

8    26, 2003, RAMIREZ accused HAMILTON of releasing sensitive information because he

9    confirmed to a public agency that plaintiff DAMON BARRON-SMITH was employed by the

10   company. On the same day, TRUE cited HAMILTON for a "towing violation" because he

11   allegedly allowed another employee to ride on the "tug" used to tow aircraft. This practice was

12   common and not otherwise a subject of disciplinary action. Based upon these alleged violations

13   of company policy, TRUE demoted HAMILTON to his former position as line technician.

14        39.    Within a month of his demotion, HAMILTON was replaced by Brad Haines

15   (White) who had little to no experience as a line technician. As a result of Haines' lack of

16   experience, he committed serious safety violations, but was not disciplined.

17        40.    After HAMILTON was demoted, he filed a charge of racial discrimination with

18   the EEOC. Filing the charge made matters worse for HAMILTON. Among other retaliatory

19   actions, TRUE told other employees that HAMILTON could not be trusted, encouraged co-

20   workers to be hostile to HAMILTON, stared menacingly at HAMILTON, and wrongfully

21   suspended him for three days due to an alleged safety violation. In April 2004, HAMILTON

22   was so distraught that he took stress leave. Plaintiffs allege on information and belief that

23   management representatives made false and misleading statements to insurance investigators,

24   resulting in the denial of HAMILTON's application for disability payments during his leave.

25        41.    On May 12, 2004, the EEOC issued a determination letter on HAMILTON's

26   charge of discrimination pertaining to his demotion. In relevant part, the EEOC found:

27             The investigation revealed that Charging Party was subjected to different terms
28             and conditions of employment, discipline and demotion on the basis of race and

7

CLASS ACTION COMPLAINT
Case No.

perceived disability.  The witness testimony indicated the General Manager stated in a supervisory meeting a little more than two weeks after Charging Party was promoted to Line Supervisor, that Charging Party had two things working against him, that he was Black and he had a stammering problem.

Based upon the evidence, [it was] determined that there is reasonable    se to believe that Respondent subjected Charging Party to different terms anu conditions of employment, discipline and demotion based on his race and perceived disability in violation of the statutes.

42.    After the EEOC issued its determination letter, SIGNATURE continued to harass HAMILTON, repeatedly accusing him of various safety violations.  On or about November 1, 2004, HAMILTON was told that he would be fired if he was involved in any further alleged violations of SIGNTATURE safety policies.  On or about November 2, 2004, a day later, SIGNATURE representatives because aware of the EEOC's intention file suit on HAMILTON's behalf.  On or about November 3, 2004, HAMILTON was told he had once again been promoted.  TRUE said that "it will be different this time" and assured HAMILTON that he would not just be "thrown out on the ramp," but would receive necessary instruction regarding his new duties.

### BOBBY JONES

43.    In July 1999, SIGNATURE hired JONES to the graveyard shift as a customer service representative ("CSR").  JONES immediately conveyed to his supervisors his aspiration to advance in the company.  In June 2002, he applied for the position of CSR Manager.  General Manager STEVE TRUE did not interview applicants for the posted position.  Instead, he appointed NORMAN RAMIREZ, a lesser qualified non-African American, who lacked any customer service experience.

44.    After becoming JONES's supervisor, RAMIREZ berated JONES at bi-weekly meetings in the presence of other non-African American lead workers who were not subjected to such treatment.  RAMIREZ expressed his racist animus at other opportunities, most notably at a company softball game in which RAMIREZ referred to JONES's playing style as "ghetto ball." (JONES is a former professional baseball player.)

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

8

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

45.     After RAMIREZ was promoted to Operations Manager in June 2004, JONES applied for the CSR Manager position a second time. Although JONES was the most qualified and senior applicant for the job, TRUE appointed JAY SINGH, a non-African American, who lacked any customer service experience.

46.     After his promotion, SINGH told JONES he would no longer be permitted to work "back-to-back" shifts because, according to SINGH, JONES was "too old." To add insult to injury, JONES discovered that SIGNATURE had been paying non-African American CSRs whom JONES was training a higher hourly rate than he received while training them.

47.     JONES called SIGNATURE's corporate offices to complain about racial discrimination. He was referred to DENNIS SMITH, Vice President of Human Resources. SMITH flew from Orlando, Florida to San Francisco to interview African American employees. His conduct however, quickly confirmed that help was *not* on the way. In JONES's presence, SMITH expressed disappointment to TRUE that the keynote speaker at SIGNATURE's anniversary dinner was Otis Spunkmeyer, an African American entrepreneur. Although SMITH promised to keep JONES informed of the progress of the investigation, he did not contact JONES after his visit. JONES called SMITH about a week after his visit to ask about the progress of the investigation. SMITH informed JONES the investigation was no longer pending. When JONES told SMITH that nothing had changed, SMITH responded, "Well, Rome wasn't built in a day."

48.     On Thursday, July 8, 2004, JONES was assaulted by DOE 1, a man who identified himself as a "good friend" of TRUE. In particular, DOE 1 almost ran over JONES with his truck. After DOE 1 got out of his truck, he hit JONES in the chest and tried to rip off JONES's name tag. When JONES attempted to enter the office, DOE 1 blocked his way. Red-faced, DOE 1 told JONES: "You people, you just don't know who I am." When people gathered around, the man then put his mouth close to JONES's ear, and whispered menacingly, "Do you know how much money I spend?  Do you know who I am?"

49.     JONES immediately reported the incident to TRUE, who refused to discuss it. Rather than investigating, the next day TRUE suspended JONES without pay and barred him

9

CLASS ACTION COMPLAINT
Case No.

1  from the premises. This action also precluded JONES from his other employment, which

2  involved delivering food to SIGNATURE. TRUE was fully aware of the economic effect of his

3  action on JONES's outside employment.

4      50. A week later, TRUE asked JONES to participate in a conference call with

5  corporate representatives LYNN SHAW (Regional Human Resources Manager) and SMITH

6  regarding the incident. Company representatives admitted during the call that they had neither

7  reviewed the videotape of the incident nor interviewed the numerous witnesses named by

8  JONES. A few days later, TRUE terminated JONES's employment on the pretext of "arguing

9  with a customer." Plaintiffs are informed and believe that, in fact, JONES was dismissed

10  because of his race, and in retaliation for his prior complaint of discrimination.

**ALJARICE SANDERS**

12      51. SIGNATURE hired SANDERS in June 2002 as a CSR, and fired her in

13  September 2004, two weeks after she filed a charge of discrimination with the EEOC.

14      52. Throughout her employment at SIGNATURE, SANDERS complained repeatedly

15  of racial harassment, lewd sexual comments, and unwanted physical contact. Management

16  condoned this misconduct, frequently telling SANDERS to "let it roll off her back" and accusing

17  her of being too "opinionated," "outspoken," "assertive," and "aggressive." Emboldened by

18  SIGNATURE's laissez-faire attitude, co-workers continued to target SANDERS. Examples

19  include, but are not limited to, the following:

20      a. In SANDERS's presence, non-African American male co-workers made

21      degrading comments about women customers, panting and commenting on their

22      anatomy and what they would like to "do" to them. They made lewd remarks

23      about women photographed in magazines. One employee used the phone near

24      SANDERS to call friends and make vulgar references; a recent topic was

25      membership in the "mile high club," an allusion to people having sex on

26      airplanes. This type of behavior persisted despite SANDERS's multiple

27      complaints to supervisors.

CLASS ACTION COMPLAINT
Case No.

b.    When SANDERS noticed line technician Patrick Brille handling communal food with grime-covered hands, she asked that he wash them (line technicians work with chemicals and clean aircraft lavatories). He said that he had already washed his hands and that, in any event, "your hands are black too." A number of employees heard this comment, including supervisory employees, yet SIGNATURE management failed to issue Brille a written reprimand or impose other appropriate discipline.

c.    The word "bitches" was written on a pink box of latex gloves used by SANDERS. RAMIREZ refused to investigate the matter, even though videotape indicated that a co-employee, a non-African American male, was probably the culprit.

d.    In February 2003, SANDERS noted that it was "Black History Month" on the communal bulletin board used by all employees (employees frequently indicate holidays and upcoming events). SANDERS arrived at work at two in the afternoon the next day, and found her announcement had been changed to read, "Lack of History Month." She immediately complained to RAMIREZ and TRUE, who both pretended not to have seen it, and told her it was "wrong" for her to write things relating to her "personal beliefs" on the board.

e.    Over her complaints, non-African American male co-workers rubbed SANDERS's stomach and joked that she looked pregnant. She complained to her direct supervisor on more than one occasion, but the unwelcome physical contact continued. She told her co-workers to stop the behavior, but they persisted despite her objections.

f.    Following a car accident, SANDERS's physician ordered her to bed-rest. RAMIREZ called SANDERS at her house and informed her that she was fired, causing her deep distress. He later informed her that he was joking. When she returned to work, RAMIREZ assigned duties to her that threatened to re-injure her back, contrary to her doctor's advice. Non-African American employees with similar conditions were accommodated.

11

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

g.      SANDERS was repeatedly sexually and racially harassed by co-employee LIPORADA. LIPORADA made repeated sexual advances which SANDERS rejected. After being rejected, LIPORADA was constantly hostile to SANDERS, frequently calling her "Al" despite her insistence that he refer to her by her correct name. LIPORADA refused to respond to SANDERS's radio calls, frustrating her ability to perform her job. His behavior occurred on a regular and recurring basis, despite SANDERS's complaints to management.

53.     Management had actual knowledge of each of the above incidents, but failed and refused to investigate them properly, or to take any disciplinary and other actions necessary to stop such conduct.

54.     In 2004, SANDERS applied for lead CSR, indicating that she was willing to work either the day shift or the swing shift. In response, TRUE posted a lead CSR position for the *graveyard* shift, the only shift SANDERS was not interest in working. The position was filled by a less qualified non-African American who was frequently allowed to work on the swing shift. Soon thereafter, TRUE terminated lead CSR JONES. SANDERS applied for this position, but TRUE refused to post the opening.

55.     SIGNATURE has precluded SANDERS from working overtime, while granting frequent opportunities to work overtime and double overtime to non-African Americans having less departmental seniority. SANDERS is informed and believes that non-African American CSRs with less departmental seniority were paid the same or more than her.

56.     On August 31, 2004, SANDERS filed a charge of discrimination with the EEOC. Less than two weeks later, SIGNATURE dismissed SANDERS on the pretext that U.S. Customs Service had denied her a security clearance, and that its policies, therefore, required the termination. In fact, the policies did not require that SANDERS be terminated. In addition, SIGNATURE refused to appeal the alleged denial of the security clearance, even though the alleged conduct leading to the denial had been revealed to SIGNATURE on SANDERS's employment application. Plaintiffs allege on information and belief that non-African American SIGNATURE employees currently work without the international customs clearance, and that

12

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

1   such clearance is only required when meeting international flights, which was not an essential

2   duty of SANDERS's job.

3      57.     After SANDERS was dismissed, the lead CSR position she had sought was

4   posted.

5                          **DAMON BARRON-SMITH**

6      58.     When BARRON-SMITH was hired in 1999 as a line technician, he, too,

7   conveyed to his supervisors his aspiration to advance in the company. His direct supervisor

8   recommended BARRON-SMITH for promotion several times. BARRON-SMITH, however, is

9   still a line technician. Management representatives have repeatedly discouraged BARRON-

10   SMITH from applying for promotions, even though he has received two positive performance

11   reviews. In one case, BARRON-SMITH expressed interest in a supervisory position, but the

12   position was not posted, and was then filled with a less qualified non-African American who

13   lacked the required experience. In May 2004, BARRON-SMITH applied for another line

14   supervisor job opening, and was recommended by his direct supervisor. During the interview for

15   the position, TRUE criticized BARRON-SMITH's hairstyle (braided) and said, "You're wasting

16   your time and mine if you don't cut it." Company representatives also told BARRON-SMITH

17   that he would be required to take a test for the line supervisor position, but then refused to

18   administer the test. Later, TRUE informed BARRON-SMITH that he was not "ready for the

19   position." Ultimately, TRUE declined to fill the position at all, as a pretext to avoid promoting

20   BARRON-SMITH.

21      59.     TRUE also racially harassed BARRON-SMITH by telling him that corporate

22   representatives wanted him to remove his hair beads because they posed a safety hazard.

23   RAMIREZ also informed BARRON-SMITH it was mandatory that BARRON-SMITH wear a

24   hat at all times. Non-African American employees were not subject to such a rule. RAMIREZ

25   also refused to provide BARRON-SMITH with benefits afforded to non-African American

26   employees. For example, when BARRON-SMITH's first son was born, RAMIREZ refused to

27   permit BARRON-SMITH more than three days of leave. RAMIREZ himself took weeks off

28   after the birth of his child; other non-African American employees had been allowed periods

CLASS ACTION COMPLAINT
Case No.

1 greater than a week for the birth of a child. TRUE and RAMIREZ also required that BARRON-

2 SMITH comply with policies regarding fueling, towing, and coning aircraft that are blatantly

3 ignored without consequence by non-African American employees. In addition, RAMIREZ also

4 precluded BARRON-SMITH from working for overtime pay in the customer service department

5 based on his race.

### COMPLAINT TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND THE CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

8       60.     As a result of such discriminatory practices and other wrongful conduct,

9 HAMILTON filed a charge with the Equal Employment Opportunity Commission ("EEOC") in

10 July 2003. The EEOC issued a letter of determination finding of discrimination and cause to

11 believe HAMILTON had been subjected to discriminatory treatment. The California

12 Department of Fair Employment and Housing ("DFEH") issued a right to sue letter as to

13 HAMILTON's charge on March 23, 2004. On August 31 and September 1, 2004, all other

14 Plaintiffs filed charges with the EEOC and HAMILTON filed a second charge. The EEOC

15 automatically filed claims on Plaintiffs' behalf with the DFEH, which has issued right to sue

16 letters to all Plaintiffs. On January 31, 2005, the EEOC issued right to sue letters as to the

17 charges filed by JONES, BARRON-SMITH and SANDERS. The EEOC has not issued a right

18 to sue letter as to HAMILTON's charge.

### FIRST CAUSE OF ACTION
### RACIAL DISCRIMINATION
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;**
**42 U.S.C. § 1981; California's Fair Housing and Employment Act, California Government Code § 12940 *et seq.***

**(Section 1981 and FEHA – All Defendants except Doe 1, as to all Plaintiffs and Class Members)**

**(Title VII – All Defendants except Doe 1, as to all Plaintiffs and Class Members except Hamilton)**

26       61.     Plaintiffs herein incorporate by reference paragraphs 1 through 60, above, as

27 though fully set forth herein.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

14

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

62.     On behalf of themselves and others similarly situated, Plaintiffs allege that SIGNATURE has engaged in racial discrimination and harassment against all Plaintiffs and class members, including but not limited to:

    a.     Intentionally terminating African American employees on pretextual grounds because of their race;

    b.     Intentionally refusing to promote African American employees while promoting less qualified non-African American employees;

    c.     Intentionally applying more burdensome work rules, work obligations, job assignments, and shift assignments to African American employees than to similarly situated non-African American employees;

    d.     Intentionally paying African American employees less than similarly situated non-African American employees;

    e.     Intentionally providing fewer benefits to African American employees than similarly situated non-African American employees;

    f.     Intentionally denying overtime pay to African American employees in preference to similarly situated non-African American employees;

    g.     Intentionally frustrating the ability of African American employees to perform their jobs;

    h.     Refusing to provide training to African American employees while providing training to non-African American employees;

    i.     Intentionally creating intolerable working conditions for African Americans because of their race;

    j.     Retaliating against and harassing African Americans who object to such discriminatory practices;

    k.     Applying examinations, employment and promotional criteria, and work rules that are unrelated to the skills necessary to perform the job duties, and which disproportionately and negatively impact the advancement opportunities of African American employees.

15

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

63. Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the California Fair Employment and Housing Act ("FEHA") prohibit racially discriminatory practices.

64. As a proximate result of racial discrimination and harassment, each Plaintiff has suffered loss of income, loss of advancement and promotion, loss of career opportunity and loss of intangible job benefits, all in amounts to be proven at trial. As a further proximate result of racial discrimination, each Plaintiff suffered emotional distress, shame, humiliation and embarrassment, all in amounts to be proven at trial.

65. SIGNATURE's blatant acts of racial discrimination and harassment are malicious, oppressive, fraudulent, and in conscious disregard of plaintiffs' rights. In addition, SIGNATURE had knowledge that its managers discriminate against and harass African American employees but, nonetheless, consciously disregarded the rights of its African American employees. Further, SIGNATURE authorized or ratified the wrongful conduct of its managers. Accordingly, punitive damages are warranted against SIGNATURE.

## SECOND CAUSE OF ACTION
## SEX DISCRIMINATION
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; California's Fair Housing and Employment Act, California Government Code § 12940 *et seq.***

**(All Corporate Defendants and Defendants Singh, True and Ramirez, as to Plaintiff Sanders and Class Members)**

66. Plaintiffs herein incorporate by reference paragraphs 1 through 65, above, as though fully set forth herein.

67. On behalf of herself, and others similarly situated, SANDERS alleges that SIGNATURE denied her promotional opportunities that were afforded to less qualified male co-workers. In addition, SIGNATURE precluded SANDERS from overtime opportunities that are afforded to male co-workers. TRUE, RAMIREZ, and SINGH have drafted or approved of evaluations that characterize SANDERS as being too "opinionated," "aggressive," "assertive," and "outspoken," because she defended herself from racial and sexual hostility.

16

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

1   68.   SANDERS was also subject to sexually lewd and unwelcome conduct by her co-

2   workers who rubbed her stomach, made blatant sexual remarks about other women in her

3   presence, called her names after she rebuffed sexual advances, and was subjected to retaliatory

4   behavior after she complained, on multiple occasions. SANDERS's complaints about such

5   conduct went unheeded by management.

6   69.   Title VII and FEHA prohibit sex discrimination.

7   70.   As a proximate result of being wrongfully discriminated against because of her

8   sex, SANDERS and others similarly situated have suffered loss of income, loss of advancement

9   and promotion, loss of career opportunity and loss of intangible job benefits, all in amounts to be

10   proven at trial. As a further proximate result of outrageous acts of sex discrimination,

11   SANDERS and others similarly situated have suffered severe emotional distress, shame,

12   humiliation and embarrassment, all in amounts to be proven at trial.

13   71.   SIGNATURE's blatant acts of sex discrimination and harassment are malicious,

14   oppressive, fraudulent, and in conscious disregard of Plaintiffs' rights. In addition,

15   SIGNATURE had knowledge that its managers discriminate against and harass female

16   employees (including, especially, African American women) but, nonetheless, consciously

17   disregarded the rights of its female African American employees. Further, SIGNATURE

18   authorized or ratified the wrongful conduct of its managers. Accordingly, punitive damages are

19   warranted against SIGNATURE.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

17

CLASS ACTION COMPLAINT
Case No.

**THIRD CAUSE OF ACTION**
**RETALIATION**
**(CLASS ACTION ALLEGATION)**

**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981;**
**and California's Fair Housing and Employment Act, California Government Code § 12940**
***et seq.***

**(Section 1981 and FEHA – All Corporate Defendants and Defendants True, Ramirez,**
**Smith and Shaw, as to Plaintiffs Hamilton, Jones, Sanders and Class Members)**

**(Title VII – All Corporate Defendants and Defendants True, Ramirez, Smith and Shaw, as**
**to Plaintiffs Jones, Sanders and Class Members)**

72.     Plaintiffs herein incorporate by reference paragraphs 1 through 71, above, as though fully set forth herein.

73.     On behalf of themselves, and others similarly situated, Plaintiffs allege that SIGNATURE engages in a practice of disciplining, harassing and dismissing employees who have filed discrimination complaints.

74.     In June 2004, JONES complained of racial discrimination to SIGNATURE's management, including Vice President of Human Resources DENNIS SMITH.  Rather than remedy such practices, SIGNATURE instead retaliated against JONES by terminating JONES on July 26, 2004.

75.     In July 2003, plaintiff HAMILTON filed an EEOC charge against SIGNATURE for racial and disability discrimination.  Thereafter, TRUE engaged in retaliatory acts and encouraged others to retaliate against HAMILTON as set forth above.

76.     On September 1, 2004, SANDERS filed a charge of discrimination with the DFEH.  Less than two weeks later, her employment was terminated for pretextual reasons.

77.     Title VII, Section 1981, and FEHA prohibit retaliation in response to an employee complaining of discrimination.

78.     As a proximate result of being wrongfully terminated in retaliation for complaining about SIGNATURE's employment practices, JONES, HAMILTON, SANDERS and others similarly situated have been harassed, suffered loss of income, loss of advancement and promotion, loss of career opportunity and loss of intangible job benefits, all in amounts to be

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

18

1   proven at trial.  As a further proximate result of retaliation, JONES, HAMILTON, SANDERS

2   and others similarly situated have suffered severe emotional distress, shame, humiliation and

3   embarrassment, all in amounts to be proven at trial.

4          79.    SIGNATURE's blatant acts of retaliation are malicious, oppressive, fraudulent,

5   and in conscious disregard of Plaintiffs' rights.  In addition, SIGNATURE had knowledge that

6   its managers retaliate against employees who complain of discrimination, but, nonetheless,

7   consciously disregarded the rights of its female employees.  Further, SIGNATURE authorized or

8   ratified the wrongful conduct of its managers.  Accordingly, punitive damages are warranted

9   against SIGNATURE.

### FOURTH CAUSE OF ACTION
### WRONGFUL TERMINATION AND/OR DISCIPLINE IN VIOLATION OF PUBLIC POLICY

**(All Corporate Defendants and Defendants True, Ramirez, Smith and Shaw, as to Plaintiffs Jones, Sanders and Hamilton)**

14         80.    Plaintiffs herein incorporate by reference paragraphs 1 through 79, above, as

15  though fully set forth herein.

16         81.    SIGNATURE demotes and dismisses African American employees based on their

17  race and in response to complaints concerning SIGNATURE's discriminatory employment

18  practices.  This practice violates California Government Code section 12940 *et seq.*, and San

19  Francisco Administrative Code section 12B, among others, and is therefore contrary to public

20  policy.

21         82.    In June 2004, JONES complained of racial discrimination to SIGNATURE's

22  management, including Vice President of Human Resources DENNIS SMITH.  Rather than

23  remedy such practices, SIGNATURE instead retaliated against JONES by dismissing JONES.

24         83.    In September 2004, Plaintiff SANDERS filed a complaint with the EEOC

25  alleging race and sex discrimination.  She was fired for pretextual reasons two weeks later.

26

27

28

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

19

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

1   84.   Plaintiff HAMILTON was demoted after expressly being told by a managerial

2   employee that his race and perceived disability were considered by the company to be negative

3   attributes that would interfere with his ability to be a supervisor.

4   85.   As a proximate result of being wrongfully terminated and/or demoted in

5   retaliation for complaining about SIGNATURE's employment practices, JONES, SANDERS

6   and HAMILTON have suffered loss of income, loss of advancement and promotion, loss of

7   career opportunity and loss of intangible job benefits, all in amounts to be proven at trial.  As a

8   further proximate result of retaliation, JONES, SANDERS and HAMILTON have suffered

9   emotional distress, shame, humiliation and embarrassment, all in amounts to be proven at trial.

10   86.   SIGNATURE's blatant acts of retaliation in violation of public policy are

11   oppressive, fraudulent, and in conscious disregard of Plaintiffs' rights.  SIGNATURE had

12   knowledge that its managers retaliate against employees in violation of public policy but,

13   nonetheless, consciously disregarded the rights of its employees.  Further, SIGNATURE

14   authorized or ratified the wrongful conduct of its managers.  Accordingly, punitive damages are

15   warranted against SIGNATURE.

16   
**FIFTH CAUSE OF ACTION**
**DISABILITY DISCRIMINATION**

17   **California's Fair Housing and Employment Act, California Government Code § 12940**
*et seq.*

18   
19   **(All Corporate Defendants and Defendant True, as to Plaintiff Hamilton)**

20   87.   Plaintiffs herein incorporate by reference paragraphs 1 through 86, above, as

21   though fully set forth herein.

22   88.   In mid-2002, HAMILTON applied for the position of line supervisor.

23   HAMILTON's direct supervisors recommended HAMILTON for a supervisory role, but TRUE

24   expressed his opinion that HAMILTON could not perform supervisory duties because TRUE

25   perceived HAMILTON to suffer from a "stammering" problem.

26

27

28

20

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

89.     In 2003, HAMILTON was promoted to a supervisory position.  At HAMILTON's first supervisor meeting, TRUE told HAMILTON, in the presence of other supervisors, that, "You have two things against you, you are Black and you have a stammering problem."

90.     FEHA prohibits discrimination based upon disabilities or perceived disabilities.

91.     As a proximate result of discriminating against HAMILTON because of a perceived disability, HAMILTON has suffered loss of income, loss of advancement and promotion, loss of career opportunity and loss of intangible job benefits, all in amounts to be proven at trial.  As a further proximate result of discrimination because of a perceived disability, HAMILTON has suffered severe emotional distress, shame, humiliation and embarrassment, all in amounts to be proven at trial.

92.     SIGNATURE's discrimination because of a perceived disability is malicious, oppressive, fraudulent and in conscious disregard of HAMILTON's rights.  Punitive damages are warranted.

## SIXTH CAUSE OF ACTION
## AGE DISCRIMINATION

**Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*; California's Fair Housing and Employment Act, California Government Code § 12940 *et seq.***

**(All Corporate Defendants and Defendants Smith, True, Ramirez, and Singh, as to Plaintiff Jones)**

93.     Plaintiffs herein incorporate by reference paragraphs 1 through 92, above, as though fully set forth herein.

94.     JAY SINGH, a supervisory employer, precluded JONES, who is 57, from working "back-to-back" shifts because, according to SINGH, JONES was "too old."  SINGH permitted other younger employees to work back-to-back shifts, thereby allowing them to receive overtime pay.  JONES complained to SMITH, TRUE, and RAMIREZ about this unfair treatment, but no remedial action was taken.  Rather, JONES was terminated within a month of making such complaint.

95.     The Age Discrimination in Employment Act of 1967 and FEHA prohibit age discrimination.

21

CLASS ACTION COMPLAINT
Case No.

96. As a proximate result of SIGNATURE's age discrimination, JONES has suffered loss of income, loss of advancement and promotion, loss of career opportunity and loss of intangible job benefits, all in amounts to be proven at trial. As a further proximate result of age discrimination, JONES has suffered severe emotional distress, shame, humiliation and embarrassment, all in amounts to be proven at trial.

97. SIGNATURE's discriminatory actions are malicious, oppressive, fraudulent and in conscious disregard of Plaintiff JONES's rights. Punitive damages are warranted.

### SEVENTH CAUSE OF ACTION
### RACIALLY AND SEXUALLY HOSTILE WORKING ENVIRONMENT

**Title VII of the Civil Rights Act of 1967, 42 U.S.C. § 2000e *et seq.*;
42 U.S.C. § 1981; California's Fair Housing and Employment Act, California Government Code § 12940 *et seq.***

**(Section 1981 and FEHA – All Defendants except Doe 1, as to all Plaintiffs)**

**(Title VII – All Defendants except Doe 1, as to all Plaintiffs except Hamilton)**

98. Plaintiffs herein incorporate by reference paragraphs 1 through 97, above, as though fully set forth herein.

99. As set forth above, the workplace at SIGNATURE was, and continues to be, laced with a constant barrage of inappropriate sexual and racial comments. Such inappropriate comments are made by co-workers, supervisors and managers. Despite repeated complaints, no action has been taken to address this inappropriate conduct, which is condoned both by local and corporate representatives.

100. Title VII, Section 1981 and FEHA prohibit racial harassment. Title VII and FEHA prohibit sexual harassment.

101. As a proximate result of SIGNATURE's hostile environment, plaintiffs have suffered loss of income, loss of advancement and promotion, loss of career opportunity and loss of intangible job benefits, all in amounts to be proven at trial. As a further proximate result of SIGNATURE's hostile environment, plaintiffs have suffered severe emotional distress, shame, humiliation and embarrassment, all in amounts to be proven at trial.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

1

102.   SIGNATURE's blatant acts of sexual and racial harassment are malicious,

2

oppressive, fraudulent, and in conscious disregard of Plaintiffs' rights.  In addition,

3

SIGNATURE had knowledge that its managers harass African American and female employees

4

but, nonetheless, consciously disregarded the rights of these employees.  Further, SIGNATURE

5

authorized or ratified the wrongful conduct of its managers.  Accordingly, punitive damages are

6

warranted against SIGNATURE.

7

8

### EIGHTH CAUSE OF ACTION
### INJUNCTIVE RELIEF

9

### (Defendant Signature)

10

103.   Plaintiffs herein incorporate by reference paragraphs 1 through 102, above, as

11

though fully set forth herein.

12

104.   Plaintiffs have no adequate remedy at law to prevent a continuation or

13

reoccurrence of the unlawful discrimination or to prevent retaliation against plaintiffs for

14

complaining of and objecting to such unlawful discrimination.

15

105.   Plaintiffs do not have a remedy at law to provide full relief for the harms suffered

16

because of unlawful discrimination.

17

106.   Injunctive relief is necessary and proper to prohibit a reoccurrence of such

18

unlawful discrimination, to prevent retaliation, and to provide full relief for the harms suffered

19

by Plaintiffs because of unlawful discrimination.

20

21

### NINTH CAUSE OF ACTION
### ASSAULT AND BATTERY

22

### (Defendant Doe 1, an individual, as to Plaintiff Jones)

23

107.   Plaintiffs herein incorporate by reference paragraphs 1 through 106, above, as

24

though fully set forth herein.

25

108.   DOE 1, an individual who, upon information and belief, has some relationship to

26

the customer owning the plane 900 Victor Lima, and who arrived on the premises of

27

SIGNATURE's San Francisco FBO in the afternoon of July 8, 2004, did thereafter engage in

28

23

1   conduct that constitutes assault and battery of JONES.  DOE 1, a large man, aggressively

2   approached JONES.  JONES feared that DOE 1 would attempt to injure JONES.  DOE 1 struck

3   JONES in the chest and then attempted to rip off JONES's name tag.  DOE 1 then verbally

4   accosted JONES in the presence of other people, referring to JONES in a derogatory manner.

5   DOE 1 then put his mouth to JONES ear and threatened him in harsh whispered terms.  JONES

6   feared for his safety.

7        109.    As a proximate result of such outrageous conduct, JONES has suffered severe

8   emotional distress, shame, humiliation and embarrassment, all in amounts to be proven at trial.

9        110.    DOE 1's actions herein alleged are oppressive and malicious and in conscious

10  disregard of JONES's rights.  As such, punitive damages are warranted against DOE 1.

11              ### TENTH CAUSE OF ACTION
             **TORTIOUS INTERFERENCE WITH CONTRACT AND/OR PROSPECTIVE**

12                              **ADVANTAGE**

13  **(Defendant Doe 1, all Corporate Defendants and Defendant True, as to Plaintiff Jones)**

14

15       111.    Plaintiffs herein incorporate by reference paragraphs 1 through 110, above, as

16  though fully set forth herein.

17       112.    Upon information and belief, DOE 1 is a friend of TRUE and is associated with a

18  customer who frequently uses the services of SIGNATURE.  After engaging in conduct that

19  constitutes assault and battery of JONES, DOE 1 immediately contacted SIGNATURE to falsely

20  accuse JONES of inappropriate conduct and demanded that SIGNATURE immediately terminate

21  JONES.

22       113.    TRUE prevented JONES from entering SIGNATURE's premises with the intent

23  to interfere with JONES employment contract with his part-time employer.  TRUE knew that

24  JONES had an employment and/or economic relationship with his part-time employer, was

25  required to make deliveries to SIGNATURE on behalf of his part-time employer, and that

26  preventing JONES from entering SIGNATURE's premises would lead to the termination of

27  JONES's contractual and/or economic relationship with his part-time employer.

28

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

24

1    114.    As a proximate result of such intentional conduct, JONES was in fact dismissed

2  by his part-time employer, and, as a result, has suffered loss of income, loss of advancement and

3  promotion, loss of career opportunity and loss of intangible job benefits, all in amounts to be

4  proven at trial.  As a further proximate result of the above-described outrageous conduct, JONES

5  has suffered severe emotional distress, shame, humiliation and embarrassment, all in amounts to

6  be proven at trial.

7    115.    DOE 1's and TRUE's tortious actions are malicious and oppressive and in

8  conscious disregard of Plaintiff's rights.  Punitive damages are warranted against DOE 1, TRUE

9  and SIGNATURE.

10                              **ELEVENTH CAUSE OF ACTION**
                    **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

11
                              **(All Defendants, as to all Plaintiffs)**

12

13    116.    Plaintiffs herein incorporate by reference paragraphs 1 through 115, above, as

14  though fully set forth herein.

15    117.    The above described discriminatory and retaliatory actions of defendants are

16  extreme and outrageous, exceed the normal risks of the employment relationship, and were

17  undertaken with the intent to cause Plaintiffs severe emotional distress.

18    118.    As a proximate result of such extreme and outrageous acts, Plaintiffs have

19  suffered severe emotional distress, humiliation and embarrassment, all in amounts to be proven

20  at trial.  As a further proximate result of such conduct, Plaintiffs have suffered loss of income,

21  loss of advancement and promotion, loss of career opportunity and loss of intangible job

22  benefits, all in amounts to be proven at trial.

23    119.    SIGNATURE's wrongful, intentional acts caused Plaintiffs' emotional distress

24  and are malicious, oppressive, fraudulent, and in conscious disregard of Plaintiffs' rights.  In

25  addition, SIGNATURE had knowledge of these acts but, nonetheless, consciously disregarded

26  the rights of its employees.  Further, SIGNATURE authorized or ratified the wrongful conduct of

27  its managers.  Accordingly, punitive damages are warranted against SIGNATURE.

28

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

25

CLASS ACTION COMPLAINT
Case No.

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

## TWELFTH CAUSE OF ACTION
## BREACH OF CONTRACT/FAILURE TO INVESTIGATE

### (Defendant Signature, as to all Plaintiffs)

120.    Plaintiffs herein incorporate by reference paragraphs 1 through 119, above, as though fully set forth herein.

121.    SIGNATURE's "Employee Information Guide" ("Guide"), given to all employees, encourages employees to come forward with concerns, especially concerns about discrimination and harassment, and contains numerous express promises regarding the manner in which those complaints would be resolved.  For example, the Guide states that employees are "encouraged to take advantage of the open door policy whenever the need arises" and that employees are required to report "occurrences" of harassment and discrimination.  The Guide promises "A prompt investigation will be conducted, and the Company will take appropriate corrective action where it is warranted."  The Guide states repeatedly that "Disciplinary action will be taken in the case of any employee who fails to adhere to our equal employment opportunity and affirmative action policies."  The guide further sets forth a four step process to "ensure your problem will be thoroughly reviewed and equitably settled."

122.    In reliance on these express promises, Plaintiffs came forward with their complaints of discrimination and harassment.  Those complaints were ignored or investigated inadequately.  Indeed, plaintiffs were ostracized, demoted, and dismissed in retaliation for the very activity the Guide purports to encourage.

123.    SIGNATURE's failure to afford the process guaranteed by its own employee manual constituted a breach of its contract of employment with the plaintiffs as well as Government Code section 12940 *et seq*.  As a result of this breach, Plaintiffs have suffered loss of income, loss of advancement and promotion, loss of career opportunity and loss of intangible job benefits, all in amounts to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

CLASS ACTION COMPLAINT
Case No.

1   For general damages, back pay, front pay, and other damages in amounts according to

2   proof and in no event in an amount less than $10,000,000;

3   For special damages in amounts according to proof;

4   For punitive damages in an amount sufficient to punish and deter Defendants;

5   For injunctive relief to prohibit the continued unlawful and discriminatory practices

6   described herein;

7   For reinstatement of Jones, Sanders and Hamilton;

8   For attorneys' fees as provided by law;

9   For interest as provided by law;

10  For costs of suit incurred herein; and

11  For such other and further relief, including class-wide relief, as the Court deems fair and

12  just.

13

14  Dated: February 1, 2005                    RENNE SLOAN HOLTZMAN & SAKAI, LLP

15

16                                             By: _____

17                                             Louise H. Renne
                                               Jonathan V. Holtzman
18                                             Attorneys for Plaintiffs
                                               BOBBY JONES, an individual;
19                                             DONALD HAMILON, an individual;
                                               DAMON BARRON-SMITH, an individual;
20                                             ALJARICE SANDERS, an individual

21

22

23

24

25

26

27

28

RENNE SLOAN HOLTZMAN & SAKAI, LLP
Attorneys at Law

CLASS ACTION COMPLAINT
Case No.