IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD HAMILTON, BOBBY JONES, DAMON BARRON SMITH, and ALJARICE SANDERS, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>SIGNATURE FLIGHT SUPPORT CORPORATION, a Delaware corporation, BBA AVIATION SHARED SERVICES, INC., a Florida corporation, BBA GROUP US HOLDINGS, INC., a Massachusetts corporation, BBA GROUP PLC, a United Kingdom corporation, STEVE TRUE, NORMAN RAMIREZ, DENNIS SMITH, LYNN SHAW, HAY SINGH, MARCARIO LIPORADA, and DOES 1-100,<br><br>    Defendants.<br>_____/ | No. C 05-490 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTIONS TO SEVER AND FOR A MORE DEFINITE STATEMENT |

    Defendants Signature Flight Support Corporation (Signature), BBA Aviation Shared Services, Inc. (BBA), Steve True, Dennis Smith, Lynn Shaw and Jay Singh (collectively, Defendants) move to dismiss certain of the causes of action against them for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Defendants also move pursuant to Federal Rule of Civil Procedure 21 to sever the case into four separate actions and for a more definite statement pursuant to Rule 12(e).

Plaintiffs Donald Hamilton, Bobby Jones, Damon Barron Smith and Aljarice Sanders do not oppose dismissal of their claims against Defendants Shaw and Singh, and have since voluntarily dismissed the claims against those Defendants. Plaintiffs also do not oppose dismissal of their claims for wrongful termination, disability discrimination and age discrimination against individual Defendants True and Smith. Accordingly, the Court grants Defendants' motion with respect to Defendants Shaw and Singh, and grants Defendants' motion to dismiss the wrongful termination and age discrimination claims against Messrs. True and Smith and the disability discrimination claim against Mr. True. Since the hearing on this motion, Plaintiffs have filed a First Amended Complaint (FAC) that brings the claims for wrongful termination, disability discrimination and age discrimination against the corporate Defendants only. Otherwise, Plaintiffs oppose Defendants' motions, including the remaining portions of the motion to dismiss, the motion to sever and the motion for a more definite statement.

The matter was heard on May 27, 2005. Having considered all of the papers filed by the parties and oral argument on the motion, the Court grants Defendants' motion to dismiss the Title VII claim for sex discrimination against Defendant True, but denies the remaining portions of Defendants' motion to dismiss, denies the motion to sever and denies the motion for a more definite statement.

2

BACKGROUND

Plaintiffs in this employment discrimination action are all current or former employees at the San Francisco offices of Signature, a Delaware corporation that provides flight support services to private planes and executive jets. Plaintiffs are all African-Americans. Plaintiffs all bring claims of racial discrimination in violation of Title VII, 42 U.S.C. § 1981 and California's Fair Housing and Employment Act (FEHA), creation of a hostile work environment in violation of § 1981 and FEHA, intentional infliction of emotional distress and breach of contract/failure to investigate. In addition, Ms. Sanders brings claims for discrimination based on sex; Mr. Hamilton, Mr. Jones and Ms. Sanders bring claims of retaliation and wrongful termination; Mr. Hamilton brings a FEHA claim for perceived-disability discrimination; and Mr. Jones brings claims for age discrimination, assault and battery and tortious interference with contract. Plaintiffs' claims for racial discrimination, sex discrimination and retaliation are brought on behalf of others similarly situated. In a related case, the Equal Employment Opportunity Commission (EEOC) has brought employment discrimination claims against Signature on behalf of Mr. Hamilton.

Defendant BBA, a Florida corporation, is the parent corporation of Signature. Mr. True is the General Manager for Signature's San Francisco fixed base operations (FBO). Mr. Smith is based in Florida and is Signature's national Vice-President of Human Resources.

3

Plaintiffs allege generally that Signature has engaged in a pattern or practice of discrimination against African-Americans, including failing to hire them; demoting and firing them on pretextual bases; applying more burdensome obligations on them; paying them less and denying them overtime pay and benefits; and refusing to promote them.  They further allege that both San Francisco and national management personnel are aware of the discrimination, but fail and refuse to investigate, and retaliate against employees who complain of discrimination.  In addition, Plaintiffs allege that Signature encourages a hostile work environment based on race and sex, in which African-Americans, but not others, are subject to verbal abuse, and women, especially African-American women, are subjected to persistent lewd and inappropriate behavior.

The experiences of the named Plaintiffs are diverse, but each alleges that he or she was treated differently than non-African-Americans, and all allege specific incidents suggesting that their treatment was motivated by racial discrimination.[1]  Mr. Hamilton was hired in 1996 and promoted to a supervisory position on a probationary basis in 2003.  At that time, however, Mr. True warned that Mr. Hamilton had "two things against you, you are Black and you have a stammering problem."  Mr. True and others allegedly prevented Mr. Hamilton from accomplishing his supervisory duties, e.g. by refusing to

---

[1] The facts in this section are all drawn from Plaintiffs' complaint and are assumed to be true for the purposes of the motion to dismiss.

4

enforce his disciplinary recommendations and denying him an email address and keys.  Mr. Hamilton was subsequently demoted for alleged violations that were common practice at Signature. Mr. Hamilton filed a charge of discrimination with the EEOC, resulting in increased harassment and threats of termination. However, a day after Signature learned that the EEOC intended to file suit on Mr. Hamilton's behalf, Mr. Hamilton was instead promoted.

Mr. Jones was hired as a customer service representative (CSR) in 1999, and was denied opportunities for promotions, which were given to less qualified non-African-Americans.  Mr. Jones also was paid less than non-African-American trainees, and was denied opportunities to work overtime on the grounds that he was "too old."  After arriving from Signature's national headquarters to investigate Mr. Jones' internal complaints of racial discrimination, Mr. Smith made a comment about a (fictional) African-American entrepreneur, Otis Spunkmeyer, and rebuffed Mr. Jones' attempt to learn the results of the investigation.  Mr. Jones was dismissed after an assault on him by a man, Doe 1, who identified himself as a "good friend" of Mr. True.

Ms. Sanders was hired as a CSR in 2002 and fired in 2004, two weeks after filing a charge of discrimination with the EEOC. According to the complaint, the reasons for firing her were pretextual.  Ms. Sanders was subjected to numerous incidents of harassment, including <u>inter alia</u> lewd and disparaging remarks about women, the word "bitches" written across her box of latex

5

gloves, and defacement of her posted announcement regarding Black History Month.  Signature did not respond to her complaints about these incidents.

Mr. Barron-Smith was hired in 1999 and continues to work at Signature.  However, he was repeatedly discouraged from applying for promotions despite positive performance reviews.  His beaded hairstyle was criticized, he was denied opportunities to work overtime, he was required to wear a hat and he was denied additional paternity leave.  Non-African-Americans were not subjected to these rules or denied overtime and extended leave.

## LEGAL STANDARDS

I.  Rule 12(b)(6)

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "Each averment of a pleading shall be simple, concise, and direct.  No technical forms of pleading or motions are required."  Fed. R. Civ. P. 8(e).  These rules "do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests."  Conley v. Gibson, 355 U.S.

41, 47 (1957).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

II. Misjoinder and Severance

Federal Rule of Civil Procedure 20(a) "permits the joinder of plaintiffs in one action if: (1) the plaintiffs assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) (citing Anderson v. Montgomery Ward & Co., Inc., 852 F.2d 1008, 1011 (7th Cir. 1988)).

"Misjoinder of parties is not ground for dismissal of an action." Fed. R. Civ. P. 21. However, if the Rule 20(a) test for permissive joinder is not satisfied, "a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." Coughlin at 1350 (citing Federal Rule of Civil Procedure 21

7

(parties "may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just")). If a court does so, it can generally dismiss all but the first named plaintiff without prejudice to the filing of new, separate lawsuits by the dropped plaintiffs. Id. (citing Aaberg v. ACandS, Inc., 152 F.R.D. 498, 501 (D. Md. 1994)).

### III. More Definite Statement

"[T]he proper test in evaluating a motion under Rule 12(e) is whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings." Federal Sav. and Loan Ins. Corp. v. Musacchio, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988) (citing Famolare Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981)).

"Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (1994). "Rule 12(e) is designed to correct only unintelligibility in a pleading not merely a claimed lack of detail." FRA S. p. A. v. Surg-O-Flex of America, Inc., 415 F. Supp. 421, 427 (S.D.N.Y. 1976). The proper tool for eliciting additional detail is discovery, not a Rule 12(e) motion. Musacchio, 695 F. Supp at 1060 (citing Kuenzell v. United States, 20 F.R.D. 96, 98 (N.D. Cal. 1957)).

A Rule 12(e) motion may be granted, however, "where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being

made." Sagan, 874 F. Supp. at 1077. In particular, the plaintiff may be required to specify which defendants are intended by a general reference to "defendants" in order "to allow the defendant to plead intelligently." Van Dyke Ford, Inc. v. Ford Motor Co., 399 F. Supp. 277, 284 (E.D. Wis. 1975).

## DISCUSSION

I.  Motion to Dismiss

    A.    Twelfth Claim for Breach of Contract/Failure to Investigate

Defendants move to dismiss Plaintiffs' twelfth claim for "breach of contract/failure to investigate" on the grounds that the duty to investigate, remedy and prevent discrimination and harassment in the workplace is mandated by statute, and Plaintiffs cannot establish a breach of contract claim based upon the same duty. See Louisville Title Ins. Co. v. Surety Title, Guar. Co., 60 Cal. App. 3d 781, 791 (1976) (noting "uniform rule of law that a consideration for an agreement is not adequate when it is a mere promise to perform that which the promisor is already legally bound to do" (quoting General Motors Accept. Corp. v. Brown, 2 Cal. App. 2d 646, 650 (1934)).

Defendants and Plaintiffs agree, however, that the claim of failure to investigate does not form the basis for an independent statutory cause of action. See, e.g., Swenson v. Potter, 271 F.3d 1184, 1198 (9th Cir. 2001) (holding that Title VII liability cannot be premised on inadequacies in investigation where employer takes prompt steps to stop harassment). Instead, Plaintiffs base their claim on alleged

9

violations of Signature's Employee Information Guide, which, according to Plaintiffs, encourages employees to come forward with discrimination and harassment complaints and "contains express promises regarding the manner in which those complaints would be resolved." Complaint ¶ 121. Plaintiffs contend that the Guide represents an implied contract, the breach of which has resulted in "loss of income, loss of advancement and promotion, loss of career opportunity and loss of intangible job benefits." Id. ¶ 123.

Defendants argue that Plaintiffs' contract cause of action is superfluous because the harms identified by Plaintiffs are indistinguishable from the harms caused by the underlying alleged harassment and discrimination. While the harms identified by Plaintiffs, e.g. loss of advancement, do indeed overlap with other claims, Defendants have not shown that no relief for breach of contract could be granted under any set of facts consistent with the allegations. Nor have Defendants cited any authority to the effect that a contract cause of action should be dismissed if it may be superfluous to the recovery available in tort. Cf. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 352-353 (2000) (holding more narrowly that plaintiff cannot bring a claim for breach of the implied covenant of good faith and fair dealing if such a claim merely realleges breach of an implied covenant-in-fact). Therefore, the Court denies Defendants' motion to dismiss Plaintiffs' twelfth claim.

B. Claims Against Defendant BBA

Defendants move to dismiss all claims against Defendant BBA on the grounds that Plaintiffs have failed to allege facts sufficient to show that BBA, as a parent corporation, could be found liable for the acts of Signature, its subsidiary.

In order to hold BBA liable for the conduct of Signature, Plaintiffs must establish the existence of a relationship under the "integrated enterprise" test or another theory of joint-corporate liability.  See, e.g., Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 737 (1998) (setting forth factors for "integrated enterprise" test).  In the complaint, Plaintiffs allege that BBA is the parent company and, generally, that

> each of the Defendants was and is the agent, employee and servant of each other Defendant and committed the occurrences, acts and omissions complained of herein while acting within the scope of such agency, employment and servitude.  Each Defendant is responsible for the occurrences, acts and omissions of each other Defendant complained herein.

Complaint ¶ 20.  Plaintiffs argue that the basis for BBA's liability is clear from these allegations, and that dismissal on this issue without allowing Plaintiffs opportunity for discovery would be premature.  Defendants object that the complaint contains no specific allegations indicating that BBA and Signature are an integrated enterprise, and that Plaintiffs have failed to explain what facts they hope to obtain from discovery in order to fill the necessary gaps.

Defendants' argument fails to address the standard governing motions to dismiss under Rule 12(b)(6).  Plaintiffs could prove, consistent with the allegations in the complaint, that BBA and Signature are integrated enterprises.  In fact, the

11

cases Defendants rely upon involve decisions on summary judgment, not motions to dismiss. <u>Laird</u> at 732; <u>Cellini v. Harcourt Brace & Co.</u>, 51 F. Supp. 2d 1028, 1035 (S.D. Cal. 1999). Therefore, the Court denies Defendants' motion to dismiss the claims against BBA.

    C.    Hostile Environment Claims Against Defendants True and Smith

Defendants move to dismiss the claims that Mr. True and Mr. Smith created a hostile work environment on the grounds that these Defendants' alleged contacts with Plaintiffs are insufficient to give rise to personal liability. Specifically, Defendants argue that the complaint attributes only isolated comments to Mr. True, and that there are not and could not be any specific allegations against Mr. Smith, who worked in Florida.

The complaint's only specific allegation of harassment or abuse by Mr. True himself is his remark to Mr. Hamilton, newly promoted to a probationary period as supervisor, that Mr. Hamilton had "two things against you, you are Black and you have a stammering problem." Complaint ¶ 37. The complaint also alleges that Mr. Smith, while in the presence of Mr. Jones for the purpose of investigating his complaint of racial harassment, "expressed disappointment to TRUE that the keynote speaker was Otis Spunkmeyer, an African American entrepreneur." <u>Id.</u> ¶ 47. The complaint's more general allegations suggest that Signature condoned and encouraged a severe and pervasive racially hostile work environment, in which African-American employees were

12

subject to verbal abuse and racially hostile actions of supervisory and non-supervisory employees were encouraged.

In order to state a hostile environment claim, a plaintiff must allege that his or her employer failed to remedy or prevent a hostile work environment that the employer either knew, or reasonably should have known, existed. Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1462-63 (9th Cir. 1994), cert. denied, 115 S. Ct. 733 (1995); Ellison v. Brady, 924 F.2d 872, 881 (9th Cir. 1991). Supervisors with the authority to hire and fire or control the environment may also be held personally liable under FEHA for a hostile environment if they committed the harassing acts themselves, or were aware of the harassment and assisted or encouraged the harasser. Matthews v. Superior Court, 34 Cal. App. 4th 598, 604-605 (1995).

Plaintiffs have sufficiently plead that Mr. True himself either created or encouraged the creation of a hostile or abusive working environment. With respect to Mr. Smith, Plaintiffs have plead sufficient facts to state a claim that he was aware of and assisted or encouraged harassment. To the extent that Defendants argue that the allegations in Plaintiffs' complaint, if true, are in themselves insufficient to establish liability against Mr. True and Mr. Smith, Defendants misinterpret the standard used to evaluate a motion to dismiss. Accordingly, the Court denies Defendants' motion to dismiss the hostile work environment claims against Mr. True and Mr. Smith.

     D.       Intentional Infliction of Emotional Distress Claim

Against Defendant Smith

Defendants move to dismiss the intentional infliction of emotional distress (IIED) claim against Defendant Smith, on the grounds that Plaintiffs have alleged no "extreme and outrageous conduct" attributable to him.

Plaintiffs argue that, because they have set forth sufficient allegations to allow Mr. Smith to be found liable for harassment, they have also sufficiently stated an IIED claim. Plaintiffs point to cases in which courts have found that harassment constitutes the necessary extreme and outrageous conduct. For instance, in Accardi v. Superior Court, 17 Cal. App. 4th 341, 352 (1993), disapproved on other grounds by Richard v. CH2M Hill, Inc., 26 Cal. 4th 798 (2001), the Court of Appeal found that a claim for IIED rested on the same basis as a claim for sex discrimination.

Defendants contend that Plaintiffs have alleged only a "simple pleading of personnel management activity" that is "insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 80 (1996). However, the more general allegations in the complaint regarding Mr. Smith's actions exceed mere management activity. While the specific facts alleged, if true, may not in themselves be sufficient to establish an IIED claim, Plaintiffs have stated a claim based on Mr. Smith's alleged participation in discrimination and encouragement of a hostile work environment. Therefore, the Court denies Defendants' motion to dismiss the

14

IIED claims against Mr. Smith.

### E. Racial Discrimination and Retaliation Claims Against Defendant Smith

Defendants move to dismiss the claims of racial discrimination and retaliation against Mr. Smith on the grounds that Plaintiffs have not alleged that he took adverse employment action against them.

Both sides agree that an adverse employment action is a required element of these claims. McDonnell Douglas Corp. v. Breen, 411 U.S. 792, 802 (1973); Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1453 (2002). Although Defendants concede that each Plaintiff has alleged that he or she was subjected to an adverse employment action, Defendants argue that the only specific allegation against Mr. Smith is that his investigation into Mr. Jones' discrimination complaints was inadequate, and that the other allegations of adverse employment actions involved Mr. True. However, Plaintiffs did allege generally that Signature management at the "national level" was aware of instances of discrimination and retaliation against them, and that each Defendant was responsible for the acts and omissions of the others. Complaint ¶¶ 28, 20. A conclusion that Mr. Smith, as Signature's Vice-President for Human Resources, was aware of and condoned the human resources decisions made by the San Francisco FBO would be consistent with the allegations in the complaint. Accordingly, the Court denies Defendants' motion to dismiss the claims of racial discrimination and retaliation against Mr. Smith.

15

F.  Sex Discrimination Claim Against Defendant True

Defendants move to dismiss the sex discrimination claim against Mr. True on the grounds that, as a matter of law, Title VII and FEHA exclude individuals from liability for sex discrimination.  Plaintiffs concede that individuals may not be held liable for discrete acts of sex discrimination.  In the FAC, Plaintiff Sanders brings her claim for sex discrimination against the corporate Defendants only.  Therefore, this portion of Defendants' motion to dismiss is granted.

II.  Motion to Sever

Defendants move to sever the claims of each of the four named Plaintiffs from the others on the grounds that Plaintiffs are misjoined because each allegedly suffered very different employment actions and the complaint raises no common questions of law or fact.  Plaintiffs contend that their claims are properly joined because they raise the common question of fact as to whether they were subjected to a systemic "pattern or practice" of discrimination against African-Americans and whether these practices resulted in a hostile work environment.

Defendants argue that Plaintiffs' experiences are too widely divergent to represent a "pattern or practice" of race discrimination.  However, each Plaintiff identifies instances in which he or she was allegedly treated worse than non-African-Americans, and each alleges specific negative remarks or incidents relating to race.  In fact, Mr. True allegedly told Mr. Hamilton that being African-American was a factor working "against" him in his job.  Clearly, whether Defendants' acts

16

were the result of a pattern or practice of discrimination is a common question of fact relevant to all Plaintiffs. As a result, Plaintiffs' claims are properly joined. Fed. R. Civ. P. 20(a). The fact that some of the named Plaintiffs bring additional claims based on their individual experiences does not alter this fact. Fed. R. Civ. P. 18(a).

For these reasons, Defendants' motion to sever is denied.

III. Motion for a More Definite Statement

Defendants move for a more definite statement with respect to named Plaintiffs' claims on behalf of those similarly situated. Specifically, Defendants ask the Court to order Plaintiffs to amend their complaint to demonstrate that they will be able to meet the class action requirements of Federal Rule of Civil Procedure 23 for each claim.

Plaintiffs contend that Defendants misinterpret the pleading requirements of Rule 12(e), and that, in any event, Plaintiffs do not yet know details about the size and definition of a potential class because that information is within Defendants' control. Under notice pleading standards, Plaintiffs are not required to allege the necessary facts to support every element of each claim, and Defendants have cited no authority showing that potential class action complaints should be held to a higher standard. The court in Harris v. Palm Spring Alpine Estates, Inc., 329 F.2d 909, 913 (9th Cir. 1964), in reversing a district court's dismissal of a class action, noted, "At most, failure to comply with Rule 23 would render the complaints subject to dismissal without prejudice in

17

so far as they sought relief on behalf of the class." Harris does not suggest that a determination as to dismissal must be made prior to Rule 23 certification. Moreover, unlike this case, Harris did not depend upon information within the control of defendants. Pioche Mines Consol., Inc., v. Dolman, 333 F.2d 257, 264-265 (9th Cir. 1964) similarly did not state a requirement that Rule 23 elements be established at the pleading stage.

The only other cited case that is controlling authority, Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969), faulted plaintiffs not only for alleging conclusory class claims but also for failing to seek a class certification order at an "early practicable time" as required by Rule 23(c).  Here, Plaintiffs have explained that they intend to delay moving for class certification until after they have had the opportunity for additional discovery.  Defendants have not identified any prejudice or any problem that cannot be addressed at the later class certification stage.  Therefore, the Court denies Defendants' motion for a more definite statement.

                              CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss (Docket No. 13) as follows:  all claims against Defendants Shaw and Singh are dismissed without prejudice; Plaintiffs' claims for wrongful termination, disability discrimination and age discrimination against individual Defendants True and Smith are dismissed with prejudice; and Plaintiffs' sex discrimination claim against

18

Defendant True is dismissed with prejudice; otherwise, Defendants' motion to dismiss is denied.  The FAC already filed by Plaintiffs comports with this order.

The Court denies Defendants' motion to sever (Docket No. 10) and motion for a more definite statement (Docket No. 15).

IT IS SO ORDERED.


Dated: 6/21/05                    /s/ CLAUDIA WILKEN
                                  CLAUDIA WILKEN
                                  United States District Judge