1   ALAN B. CARLSON, Bar No. 055090, acarlson@littler.com
    ROBERT J. WILGER, Bar No. 168402, rwilger@littler.com
2   LITTLER MENDELSON
    A Professional Corporation
3   50 West San Fernando Street, 14th Floor
    San Jose, CA  95113.2303
4   Telephone:     408.998.4150

5   Attorneys for Defendants
    SIGNATURE FLIGHT SUPPORT CORPORATION;
6   BBA AVIATION SHARED SERVICES, INC.;
    BBA GROUP U.S. HOLDINGS, INC.; STEVE TRUE;
7   DENNIS SMITH; VAL VADEN

8

9                     UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12   DONALD HAMILTON, an individual;        Case No.  C 05 00490 CW
     BOBBY JONES, an individual; DAMON
13   BARRON SMITH, an individual; ALJARICE   **NOTICE OF MOTION AND MOTION**
     SANDERS, an individual; and on behalf of   **FOR PARTIAL SUMMARY**
     themselves and other similarly situated;   **JUDGMENT ON THE INDIVIDUAL**
14                                           **PROMOTION CLAIMS OF**
                  Plaintiffs,               **PLAINTIFF DONALD HAMILTON**
15
           v.                               Date:         January 6, 2006
16                                          Time:         10:00 a.m.
     SIGNATURE FLIGHT SUPPORT              Courtroom:    2
17   CORPORATION, a Delaware corporation;
     BBA AVIATION SHARED SERVICES,         Trial Date:  None
18   INC., a Florida corporation; BBA GROUP US
     HOLDINGS INC., a Massachusetts
19   corporation; STEVE TRUE, an individual;
     NORMAN RAMIREZ, an individual;
20   DENNIS SMITH, an individual; VAL
     VADEN, an individual; and DOES 1-100;
21
                  Defendants.
22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

# TABLE OF CONTENTS

Page

I.     STATEMENT OF RELEVANT FACTS ....................................................... 1

A.     The San Francisco International Airport Operations Of Signature Flight .................. 1

       1.     The Business Of Defendant Signature Flight ................................... 1

       2.     The Assumption Of Operations From AMR Combs On March 4, 1999 ........ 2

       3.     The Employment Structure Of Signature Flight At Its San Francisco
              International Airport Operations ........................................................ 3

       4.     The Job Posting Policy Of Signature Flight ..................................... 4

B.     The January 3, 1997 Hire Of Plaintiff Hamilton By Defendant True As A Line
       Service Technician ................................................................................. 4

C.     The June 6, 1999 Promotion Of Plaintiff Hamilton By Defendant True To The
       Position Of Lead Line Service Technician ................................................... 5

       1.     The Promotion Of Plaintiff Hamilton By Defendant True ..................... 5

       2.     The Encouragement To Plaintiff Hamilton To Seek A Supervisor
              Position, And His Competing Intent To Pursue An Aircraft Mechanic
              Career And Leave The Employment Of Signature Flight .......................... 5

D.     The 2002 Application Of Plaintiff Hamilton For Promotion To Operations Supervisor
       And Selection Of Ravi Satyanarayana ......................................................... 7

E.     The 2002 Application Of Plaintiff Hamilton For Promotion To HSE&T Supervisor
       And Selection Of Ravi Satyanarayana ......................................................... 8

       1.     The Application Of Plaintiff Hamilton And Selection Of Ravi
              Satyanarayana By Defendant True ............................................... 8

F.     The January 13, 2003 Promotion Of Plaintiff Hamilton By Defendant True To The
       Position Of Operations Supervisor. ............................................................. 9

       1.     Plaintiff Hamilton's Complaint To Defendant True Concerning
              Defendant Ramirez. ............................................................... 9

       2.     The January 13, 2003 Promotion Of Plaintiff Hamilton By Defendant
              True .............................................................................. 10

G.     The January 15, 2003 Supervisors' Meeting ............................................... 11

H.     The May 31, 2003 Demotion Of Plaintiff Hamilton And November 13, 2004
       Promotion Of Plaintiff Hamilton By Defendant True To The Position Of Operations
       Supervisor ......................................................................................... 12

       1.     The Demotion Of Plaintiff Hamilton By Defendant True. ..................... 12

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

(NO. C 05 00490)                                    i.
FIRMWIDE:80631767.1 049112.1002

**TABLE OF CONTENTS**
(continued)

Page

2. The November 6, 2004 Promotion Of Plaintiff Hamilton By Defendant True. ........................................................................................ 12

I. The Pattern And Practice Of Signature Flight and Defendant True Of Hiring And Promoting African-Americans Is Inconsistent With Plaintiff Hamilton's Claim Of Discrimination In Promotions On The Basis Of Race ............................................. 13

1. The December 1, 1997 Promotion Of Cliff Taylor By Defendant True To Operations Supervisor ............................................................. 13

2. The Workforce Of The San Francisco Airport Operations Upon Its Acquisition By Defendant Signature Flight On March 4, 1999 ................... 13

3. African-Americans Hired And Promoted By Defendant True From March 4, 1999 To January 13, 2003 .............................................. 14

II. ARGUMENT ............................................................................... 17

A. Plaintiff Hamilton Cannot Establish His Race And Disability Discrimination Claims Based On His Failure To Be Promoted Because He Cannot Demonstrate That The Stated Reasons For The Denied Promotions Are Pretextual And Race Or Disability Discrimination Is The Real Reason He Was Not Promoted ..................................... 17

1. Plaintiff Hamilton Cannot Establish Pretext Because The Same Person Who Previously Hired And Promoted Plaintiff Hamilton Made The Decision Not To Promote Him In The Year 2002 .......................................... 18

2. Plaintiff Hamilton Cannot Prove That The Asserted Reason For The Promotion Of A Different Employee Instead Of Him Is False And A Pretext For Discrimination ..................................................................... 19

3. Plaintiff Hamilton Cannot Establish Pretext Through Defendant True's Alleged Statement Because It Is A Stray Remark Made After Plaintiff Hamilton Was Promoted ................................................................ 23

III. CONCLUSION .......................................................................... 25

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

# TABLE OF AUTHORITIES

Page

## CASES

*Auguster v. Vermillion Parish School Bd.*
249 F.3d 400 (5th Cir. 2001) ........................................................................ 25

*Bradley v. Harcourt, Brace & Co.*
104 F.3d 267 (9th Cir. 1996) ........................................................................ 18

*Buhrmaster v. Overnite Transp. Co.*
61 F.3d 461 (6th Cir. 1995) .......................................................................... 18

*Caldwell v. Paramount Unif. Sch. Dist.*
41 Cal.App.4th 189, 48 Cal.Rptr.2d 448 (1995)........................................... 17

*Casillas v. U.S. Navy*
735 F.2d 338 (9th Cir. 1984) ........................................................................ 22

*Coghlan v. American Seafoods Co. LLC*
413 F.3d 1090 (9th Cir. 2005) ...................................................................... 19

*Coleman v. The Quaker Oats Co.*
232 F.3d 1271 (9th Cir. 2000) ................................................................. 17, 21

*EEOC v. Our Lady of the Resurrection Md. Ctr.*
77 F.3d 145 (7th Cir. 1996) .......................................................................... 19

*Geier v. Medtronic, Inc.*
99 F.3d 238 (7th Cir. 1996) .......................................................................... 23

*Gonzales v. MetPath, Inc.*
(1989) 214 Cal.App.3d 422 .......................................................................... 21

*Hartsel v. Keys*
87 F.3d 795 (6th Cir. 1996) .......................................................................... 23

*Hersant v. California Dept. of Social Servs.*
57 Cal.App.4th 997, 67 Cal.Rptr.2d 483 (1997)........................................... 17

*Hong v. Children's Memorial Hosp.*
993 F.2d 1257 (7th Cir. 1993). ..................................................................... 24

*Johnson v. Nordstrom, Inc.*
260 F.3d 727 (7th Cir. 2001) .................................................................. 21, 22

*Kennedy v. Schoenberg, Fisher & Newman, Ltd.*
140 F.3d 716 (7th Cir. 1998) ........................................................................ 24

*Lim v. Trustees of Indiana Univ.*
297 F.3d 575 (7th Cir. 2002) ........................................................................ 24

*Lowe v. J.B. Hunt Transport, Inc.*
963 F.2d 173 (8th Cir. 1992) ........................................................................ 19

*Lowe v. Monrovia*
775 F.2d 998 (9th Cir. 1995) ................................................................... 17, 19

*McDonnell Douglas Corp. v. Green*
411 U.S. 792 (1973)...................................................................................... 17

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
*Merrick v. Farmers Ins. Group*
892 F.2d 1434 (9th Cir. 1990). ......................................................... 25

4
*Miller v. Citizens Sec. Group, Inc.*
116 F.3d 343 (8th Cir. 1997) ........................................................... 19

5

*Nawrot v. CPC Int'l*
277 F.3d 896 (7th Cir. 2002) .......................................................... 22

6

*Nesbit v. Pepsico, Inc.*
994 F.2d 703 (9th Cir. 1993) .......................................................... 24

7

*Odima v. Westin Tucson Hotel*
991 F.2d 595 (9th Cir. 1993) .......................................................... 21

8

9
*Parson v. County of Del Norte*
728 F.2d 1234 (9th Cir. 1994) ........................................................ 21

10

*Proud v. Stone*
45 F.2d 796 (4th Cir. 1991) ........................................................... 19

11

*Randle v. LaSalle Telecommunications, Inc.*
876 F.2d 563 (7th Cir. 1989) .......................................................... 24

12

13
*Rojas v. Florida*
285 F.3d 1339 (11th Cir. 2002) ................................................... 22, 25

14
*Rubinstein v. Administrators of Tulane Educ. Fund*
218 F.3d 392 (5th Cir. 2000). ........................................................ 24

15
*Schoenfeld v. Babbitt,*
168 F.3d 1257 (11th Cir. 1999) ...................................................... 24

16

*St. Mary's Honor Center v. Hicks*
438 U.S. 502 (1993) ..................................................................... 18

17

18
*Texas Dept. of Comm. Affairs v. Burdine*
450 U.S. 248 (1981) ..................................................................... 21

19
*Vasquez v. County of Los Angeles*
349 F.3d 634 (9th Cir. 2003) .......................................................... 21

20

*Villiarimo v. Aloha Island Air, Inc.*
281 F.3d 1054 (9th Cir. 2002) ................................................... 22, 23

21

22
*West v. Bechtel Corp.*
96 Cal.App.4th 966 (2002) ............................................................ 19

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED that on Friday, January 6, 2006, at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 2 of the United States District Court, located at 1301 Clay Street, Oakland, California, Defendants Signature Flight Support Corporation, hereinafter "Signature Flight," BBA Aviation Shared Services, Inc., BBA Group U.S. Holdings, Inc., Steve True, and Dennis Smith will move and hereby do move this Court for an order of partial summary judgment on the individual promotion claims of Plaintiff Donald Hamilton on the grounds stated herein.[1]

## STATEMENT OF ISSUES TO BE DECIDED

The instant motion presents the Court with the following issues for decision:

1.    Whether Defendants unlawfully refused to promote Plaintiff Hamilton on the basis of race.[2]

2.    Whether Defendants unlawfully refused to promote Plaintiff Hamilton on the basis of a disability or perceived disability, stammering in speech.[3]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF RELEVANT FACTS

#### A.    The San Francisco International Airport Operations Of Signature Flight.

##### 1.    The Business Of Defendant Signature Flight.

San Francisco International Airport, hereinafter "Airport," services commercial

---

[1] While in its consolidated action the Equal Employment Opportunity Commission brings suit on behalf of Plaintiff Hamilton, the Commission does not allege that Signature Flight unlawfully discriminated against Mr. Hamilton with respect to promotions. (See, Complaint and Joint Case Management Statement and Proposed Order filed in Civil Action No. C 05 1101 CW.)

[2] Within the First Cause of Action of the First Amended Complaint, hereinafter "Comp.," Plaintiff Hamilton alleges that all Corporate Defendants as well as Defendants True and Smith have refused to promote him on the basis of his race in violation of 42 U.S.C. § 1981 and the California Fair Employment and Housing Act, hereinafter "FEHA." (Comp. ¶¶23, 34-36, 61.b, 62-64.)

[3] Within the Fifth Cause of Action, Plaintiff Hamilton alleges that all Corporate Defendants have denied him promotion because of his disability or perceived disability, stammering in speech, in violation of FEHA. (Comp. ¶¶34-36, 86-90.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002                    1                    CASE NO. C 05 00490 CW

1    airlines as well as general aviation aircraft, namely private and corporate aircraft. The latter arrive to

2    and leave from a private FBO facility located at the Airport. The Airport contracts with Signature

3    Flight to operate this private terminal at which Signature Flight provides fueling, customer service,

4    and ground handling support to private aircraft. Signature Flight has similar operations at 46 airports

5    within the United States. (Declaration of Steven J. True in Support of Defendants' Motion for

6    Partial Summary Judgment on the Individual Promotion Claims of Plaintiff Donald Hamilton filed

7    herewith, hereinafter "True Dec.," ¶ 2.)

8                    **2.    The Assumption Of Operations From AMR Combs On March 4, 1999.**

9                    Effective March 4, 1999, Signature Flight commenced operating the private FBO

10   terminal at the Airport, having acquired these operations in Signature Flight's acquisition of AMR

11   Combs. As a consequence, on March 4, 1999, former employees of AMR Combs became

12   employees of Signature Flight, including Defendants True[4] and Ramirez,[5] and Plaintiff Hamilton.[6]

13   (True Dec. ¶ 3.)

14

15

16   [4]   Defendant True has worked for different employers at the private FBO at the Airport since

17         1965. In 1989, while employed by Butler Aviation, he became the General Manager of the
           facility. On December 9, 2002, he assumed the position of Area General Manager with

18         responsibility for Signature Flight's San Francisco, Santa Barbara, and Orange County,
           California airport operations. (True Dec. ¶¶ 1, 4.) Within Signature Flight's San Francisco

19         operations, Mr. True has supervisory responsibility for all employees within the operation.
           Mr. True makes all final decisions to hire, promote, discipline, and demote employees.

20         Regarding employee terminations, Mr. True obtains concurrence for such from corporate human
           resources personnel. Mr. True must make all final decisions as to employee compensation.

21         (True Dec. ¶ 5.) The foregoing is consistent with Plaintiff Hamilton's understanding of Mr.
           True's authority. (Hamilton Dep. 38:22-42:2.)

22   [5]   Defendant Ramirez was initially employed at AMR Combs on April 8, 1996. While employed
           by AMR Combs, Mr. Ramirez was promoted to Operations Supervisor, the position he held

23         when Signature Flight acquired the San Francisco operations through acquisition of AMR
           Combs.     On April 1, 2002, Mr. Ramirez transferred to HSE&T Supervisor, and then to

24         Customer Service Manager on August 1, 2002. Mr. Ramirez became Operations Manager on
           March 24, 2003, and held that position upon his resignation from the Company on December

25         14, 2004. (True Dec. ¶ 6.)

26   [6]   Plaintiff Hamilton is an African-American male who is currently employed by Signature Flight
           as an Operations Supervisor in San Francisco. (Deposition of Donald Hamilton, Jr., hereinafter

27         "Hamilton Dep.," 42:15-17.) The position of Operations Supervisor has in the past been titled
           General Aviation Supervisor and Line Service Technician Supervisor. (True Dec. ¶ 8.)

28         "Operations Supervisor" will be used herein.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002                    2                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

3.    **The Employment Structure Of Signature Flight At Its San Francisco International Airport Operations.**

The business of Signature Flight at San Francisco Airport is seven days a week, 24 hours a day. The operation is divided into two segments, ramp operations and customer service. Ramp operations or services utilize employees in servicing and fueling aircraft. Customer service operations involved employees providing a variety of services to customers such as payment for services, baggage handling, cleaning aircraft, arranging rental cars, hotels, etc. (True Dec. ¶ 7.)

Line Service Technicians service and fuel aircraft. Above this position is that of Lead Line Service Technician. The position next in supervision is Operations Supervisor. There is not, and has not always been, a Lead Line Service Technician or Operations Supervisor on every shift. (True Dec. ¶ 8.)

Customer service functions are performed by Customer Service Representatives. The position next in supervision is Lead Customer Service Representative and above that position, is a Customer Service Representative Supervisor or Manager.[7] There is not, and has not always been, a Lead Customer Service Representative on every shift, and only one Customer Service Supervisor or Manager oversees the customer service operations. (True Dec. ¶ 9.)

Supervising Operations Supervisor and Customer Service Supervisor or Manager positions are the Operations Manager,[8] Assistant General Manager,[9] and General Manager, positions

---

[7]  Employees that become Lead Line Service Technicians generally start as Line Service Technicians. Similarly, Lead Customer Service Representatives generally start as Customer Service Representatives. With these Lead positions comes more responsibility as well as the opportunity for higher compensation and advancement to an Operations Supervisor or Customer Service Supervisor position. (Hamilton Dep. 42:4-14, 43:20-44:8, 46:3-20.) Contrary to the allegation of the Complaint, Plaintiff Hamilton admitted in his deposition that using his "standard of preference, Mr. True has also showed a preference to putting African-Americans in various lead and supervisor positions." (Hamilton Dep. 175:23-177:8.)

[8]  Since March 4, 1999 there have been two Operations Managers, Ken Foster and Defendant Ramirez. Plaintiffs never applied for the positions to which Mr. Foster and Mr. Ramirez were promoted. (True Dec. ¶ 11.)

[9]  The Assistant General Manager position was created in January 2005 with the external hire of Mike Perry. The position was posted internally at the San Francisco facility, and advertised externally as an employment opportunity in California and Nevada. No Plaintiff applied for the position. Aside from Mr. Perry, another applicant was Devin Madgett, an African-American. Finding that both Mr. Perry and Mr. Madgett would be an asset to Signature Flight, Defendant True offered the San Francisco Assistant General Manager position to Mr. Perry, and with Mr. True's recommendation, Mr. Madgett was offered the Assistant General Manager's position in

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          3          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1    which generally have responsibility of all FBO operations.[10]   (True Dep. ¶¶ 10, 13.)

2         **4.    The Job Posting Policy Of Signature Flight.**

3         Signature Flight has a policy to post internally open employment positions that it

4    seeks to fill.[11]   The employment position, and a position description with its qualifications, is posted

5    with a deadline for employee applications.   Applying employees are thereafter considered for the

6    position with the promotion selection being made by or with the final approval of Defendant True.

7    (True Dec. ¶ 14; Hamilton Dep. 47:23-48:23.)

8         **B.    The January 3, 1997 Hire Of Plaintiff Hamilton By Defendant True As A Line
          Service Technician.**

9

10        Plaintiff Hamilton was hired by AMR Combs as a part-time employee in

11   December 1996, and on January 3, 1997 became    full-time in the position of Line Service

12   Technician.   (True Dec. ¶26; Hamilton Dep. 38:2-19.)   Plaintiff Hamilton was interviewed by only

13   Defendant True.   During this 1996 interview, Mr. Hamilton testified he was "very nervous" and his

14   stammering "very apparent."   Mr. True expressed concern about his stammering and asked about it.

15   In response, Mr. Hamilton assured him that his stammering "was not an issue" while working

16   because he concentrated on what he was doing, and as a consequence, relaxed and did not stammer.

17   Mr. Hamilton recalls no further response or inquiry by Mr. True, and apparently the interview

18   moved on to other things.   (Hamilton Dep. 90:13-92:15, 93:14-18.)   Subsequently, Mr. Hamilton

19   received a telephone call from Bill Long[12] who informed him that he had been hired and would start

20   _____

21        the Company's Las Vegas airport operations where he became Assistant General Manager on
          January 10, 2005.   Effective March 21, 2005, Mr. True concurred in Mr. Madgett's transfer to

22        the Company's Santa Barbara airport operations as Assistant General Manager.   Subsequently,
          Mr. True promoted him to General Manager at that same location.   (True Dec. ¶ 12.)

23   [10]  Other support positions also exist or have existed within the San Francisco operation, including
          Accounting Manager and Clerk, Facilities Maintenance Manager and Technician, GSE

24        Mechanic, HSE&T Supervisor or Manager, Human Resources Manager, Monitoring Agent,
          Driver, and Valet.   However, the majority of employees in the San Francisco FBO workforce

25        are employed as Line Service Technicians, Customer Service Representative, and the respective
          Lead positions for these classifications.   (True Dep. ¶¶ 10, 13.)

26   [11]  On occasion, formerly occupied employment positions have not been posted when decisions
          have been made for a variety of reasons, including economic, not to fill a position, abolish a

27        position, or move a vacant position to a different shift.   (True Dec. ¶ 14.)

28   [12]  At the time, Bill Long was the Operations Manager.   (Hamilton Dep. 65:22-66:10.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002                    4                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1  a training process. (Hamilton Dep. 92:16-20.) Sometime within a month or two thereafter, Mr. True

2  told Mr. Hamilton "welcome aboard," and that he had been hired at a higher wage rate than normal

3  because of his prior work experience. (Hamilton Dep. 88:4-89:17, 92:21-93:13.)

4  **C.    The June 6, 1999 Promotion Of Plaintiff Hamilton By Defendant True To The Position Of Lead Line Service Technician.**

5

6  **1.    The Promotion Of Plaintiff Hamilton By Defendant True.**

7  Approximately three months after Signature Flight acquired the San Francisco FBO

8  operations from AMR Combs, Defendant True promoted Plaintiff Hamilton on June 6, 1999 from

9  Line Service Technician to Lead Line Service Technician on the graveyard shift, the shift upon

10  which he was working at the time.  This was a newly created position, which had not existed

11  previously.  Mr. Hamilton testified that the position had not been posted, but that he was merely

12  offered the position and he accepted it.  The final decision to promote Mr. Hamilton was made by

13  Mr. True.[13]  (True Dec. ¶ 26; Hamilton Dep. 52:7-53:22, 60:21-61:8, 95:12-16).  With the of

14  Mr. Hamilton to the new Lead Line Service Technician position, Signature Flight then employed

15  five Lead Line Service Technicians, of whom one was Caucasian, one Hispanic, two Asian/Pacific

16  Islander, and one African-American, Mr. Hamilton.  (Ramsey Dec. ¶¶ 4, 9, Exh. 5.)

17  **2.    The Encouragement To Plaintiff Hamilton To Seek A Supervisor Position, And His Competing Intent To Pursue An Aircraft Mechanic Career And Leave The Employment Of Signature Flight.**

18

19  When Plaintiff Hamilton began working for AMR Combs, it was on the "graveyard

20  shift." He remained on this shift, apparently by choice, until his promotion to Operations Supervisor

21  in January 2003. Mr. Hamilton saw the graveyard shift as an opportunity to work nights and go to

22  school during the day. From 1998 until he got an airframe and power plant mechanics license on

23  May 25, 2000, Mr. Hamilton attended City College of San Francisco, Monday through Friday,

24  7:00 a.m. to 1:45 p.m., to become qualified to obtain this license and become an aircraft mechanic.

25

26  [13]  When Plaintiff Hamilton was promoted to Lead Line Service Technician on June 6, 1999, he was on of 20 other line service technicians of whom only Mr. Hamilton was African-American.

27  Four of these Line Service Technicians, each of whom was Caucasian, had been employed longer than Mr. Hamilton and were in essence passed over for the promotion received by him.

28  (True Dec. ¶¶26; Ramsey Dec. ¶¶ 3, 4, 9, Exh. 5; Hamilton Dep. 96:2-97:1.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          5          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1 | (Hamilton Dep. 67:20-71:8.)

2 | After receiving his airframe and power plant license in May 2000, and while

3 | continuing to work for Signature Flight, Plaintiff Hamilton pursued his career goal to become an

4 | aircraft mechanic for a commercial airline. In June 2000, Mr. Hamilton started working part-time at

5 | DHL as an aircraft mechanic, with the goal of becoming full-time. While continuing to work for

6 | Signature Flight on the graveyard shift, he worked at DHL on Saturdays, Tuesdays, Wednesdays and

7 | Thursdays, from 8:00 a.m. to 4:00 p.m. He continued working at DHL until he became an

8 | Operations Supervisor for Signature Flight in January 2003. (Hamilton Dep. 113:20-120:6.)

9 | Some time after his promotion to Lead Line Service Technician, Plaintiff Hamilton

10 | had a conversation with Defendant True during which he told Mr. True that he intended at some

11 | point to leave Signature Flight and work for an airline as an aircraft mechanic. Consistent with this

12 | career goal, he applied for aircraft mechanic positions with airlines up until September 11, 2001,

13 | after which the airlines ceased hiring mechanics. At some time after this latter date, Mr. Hamilton

14 | told Mr. True that he had changed his mind and wanted to stay with Signature Flight because the

15 | airlines were then no longer hiring mechanics. (Hamilton Dep. 72:6-76:22.)

16 | Notwithstanding Mr. Hamilton's stated goal of leaving Signature Flight, the

17 | Company encouraged him to apply for a supervisory position. In conjunction with his April 20,

18 | 1998 performance review, Mr. Hamilton concedes that Bill Long, the then Operations Manager,

19 | encouraged him to apply for future supervisory positions.[14] (Hamilton Dep. 65:22-66:10, 67:2-

20 | 68:5.) Subsequently, Mr. Hamilton further admits that during another performance review in

21 | November 1998, Mr. Long again encouraged him to seek a supervisory position in the future.[15]

22 | (Hamilton Dep. 81:18-83:1.) However, Mr. Hamilton testified he did not apply for any subsequent

23 | supervisory positions because such conflicted with his career goal of obtaining an aircraft and power

24 | plant license, and to become an aircraft mechanic. (Hamilton Dep. 81:18-83:1.)

25 | [14] Mr. Long wrote in Mr. Hamilton's April 1998 performance review, and discussed with him,
26 | "encouraged employee to apply for future supervisor opening if personal schooling schedule
 | allows." (Hamilton Dep. 67:2-68:5, Exh. 9.)

27 | [15] In the November 1998 review, Mr. Long wrote: "Don continues to be an excellent employee
 | and is ready for consideration for future supervisory positions when personal schedule permits."
28 | (Hamilton Dep. 81:18-83:1, Exh. 10.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          6          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

**D.    The 2002 Application Of Plaintiff Hamilton For Promotion To Operations Supervisor And Selection Of Ravi Satyanarayana.**

On January 18, 2002, Ravi Satyanarayana was re-employed by Signature Flight as an Operations Supervisor, a position that had been vacant and posted for employee applications. Mr. Satyanarayana had first been employed by AMR Combs on December 11, 1995. After the acquisition by Signature Flight, he continued in the employment of Signature Flight until he resigned that employment on July 8, 1999. While Mr. Satyanarayana worked for both AMR Combs and Signature Flight, he was employed as a Lead Line Service Technician and Operations Supervisor. It was because of his satisfactory prior employment as an Operations Supervisor that Mr. True made the decision to rehire him for the Operations Supervisor position that was vacant in January 2002. (True Dec. ¶¶ 28, 29.)

Plaintiff Hamilton in response to a job posting applied for the Operations Supervisor position for which Ravi Satyanarayana was hired in January 2002. Mr. Hamilton testified that he had an interview with Mr. True for the position. During the interview, which apparently was positive, Mr. Hamilton believed that he would receive the position because Mr. True encouraged him "to grow with the company" and said that "it was time" that Mr. Hamilton became a supervisor. At the end of the interview, Mr. True questioned Mr. Hamilton regarding his stammering, asking whether it would be a problem when things got busy or if he got into a customer dispute. Mr. Hamilton responded that it had "never been a problem," and would not be an issue.[16] According to Mr. Hamilton, Mr. True responded "fine," accepted Mr. Hamilton's statement, and that ended the discussion on the subject. Mr. Hamilton has no recollection of anything else stated during the interview. (Hamilton Dep. 50:18-52:1, 138:3-140:16, 144:24-146:10.)

Defendant True selected Ravi Satyanarayana for the Operations Supervisor position in January 2002 not because Plaintiff Hamilton was African-American or stammered, but simply

---

[16] Plaintiff Hamilton testified that the fact that he stammered on occasion never hindered him or interfered with his work at Signature Flight. Neither Mr. Hamilton or anyone else to his knowledge ever reported to Defendants True or Ramirez that he had any work problems because of his stammering. Finally, prior to his promotion to Operations Supervisor, Mr. True never made any reference to any work problem related to or in connection with his stammering. (True Dec. ¶ 30; Hamilton Dep. 156:9-158:1, 163:8-167:8.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          7          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

because Mr. Satyanarayana had previously worked in the San Francisco operations as an Operations Supervisor and had performed well in that position.  Mr. Satyanarayana had the experience of supervising and running the Company's ramp operations in San Francisco, experience which in contrast Mr. Hamilton did not possess. (True Dec. ¶ 29.)

**E.    The 2002 Application Of Plaintiff Hamilton For Promotion To HSE&T Supervisor And Selection Of Ravi Satyanarayana.**

**1.    The Application Of Plaintiff Hamilton And Selection Of Ravi Satyanarayana By Defendant True.**

Effective October 19, 2002, Ravi Satyanarayana was transferred to Operations Supervisor to HSE&T Supervisor.[17]  The HSE&T Supervisor position had been previously posted for employee applications.    While both Plaintiff Hamilton and Mr. Satyanarayana applied, Defendant True selected Mr. Satyanarayana for the position. (True Dec. ¶ 31.)

With respect to Plaintiff Hamilton's application for the HSE&T Supervisor position, he had an interview with Defendant True. During such, Mr. True explained that he would prefer that Mr. Hamilton gain experience as an Operations Supervisor, "and then later on . . . could probably advance to the" HSE&T Supervisor.[18]  As in the prior interview, Mr. Hamilton asserts that Mr. True questioned his stammering which generated a brief discussion which appeared to be satisfying to Mr. True who concluded the topic by saying "fine.    Okay."  Although there were other topics discussed, Mr. Hamilton cannot recall them.    (Hamilton Dep. 54:17-55:8, 56:20-59:15, 148:14-152:5.)

Defendant True selected Ravi Satyanarayana[19] for the HSE&T Supervisor position

---

[17]  The HSE&T Supervisor position was created by Signature Flight.  The first person to hold the position was Defendant Ramirez who had received it on April 1, 2002.  Among the various functions of the position are the monitoring and enforcement of health, safety, and environmental policies and procedures, record keeping functions associated therewith, as well as providing training with respect to these areas. (True Dec. ¶31.)

[18]  Defendant True was "encouraging" in his comments, and told Mr. Hamilton that he should apply for the next open Operations Supervisor position to get supervisory experience.  Mr. Hamilton did so, and was promoted by Mr. True to Operations Supervisor. (Hamilton Dep. 158:2-159:10.)

[19]  Plaintiff Hamilton received the Operations Supervisor position occupied by Mr. Satyanarayana when he vacated that position and moved to the HSE&T Supervisor position.  (Hamilton Dep. 113:10-17, 148:14-150:17.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA. 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          8          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1    based upon his experience as an Operations Supervisor.[20]    Defendant True selected

2    Mr. Satyanarayana for the position based upon his successful and demonstrated experience as an

3    Operations Supervisor, his supervisory skills demonstrated in that position, that he was

4    knowledgeable in the Company's standard safety procedures, and that he had strong computer skills

5    necessary for the generation of reports required by the position.  The basis for Mr. True's decision

6    was the prior supervisory experience of Mr. Satyanarayana, not Mr. Hamilton's race or stammering.

7    Mr. True judged that Mr. Hamilton did not have the same level of qualifications for the position as

8    did Mr. Satyanarayana which he had gained through significant work experience as an Operations

9    Supervisor.  (True Dec. ¶¶ 31, 32.)

10   **F.    The January 13, 2003 Promotion Of Plaintiff Hamilton By Defendant True To
             The Position Of Operations Supervisor.**

11

12        **1.    Plaintiff Hamilton's Complaint To Defendant True Concerning
                   Defendant Ramirez.**

13                Approximately three months after Ravi Satyanarayana's transferred to the HSE&T

14   Supervisor position, Plaintiff Hamilton applied for the Operations Supervisor position that

15   Mr. Satyanarayana had vacated and had been posted for employee applications.  Mr. Hamilton was

16   promoted to the position by Defendant True.  (Hamilton Dep. 63:3-8, 113:10-17, 153:11-156:8.)

17   Mr. Hamilton received this promotion from Mr. True notwithstanding the fact that approximately

18   two weeks before receiving the promotion, he had met with Mr. True to complain about the conduct

19   of Defendant Ramirez.

20                While both Plaintiff Hamilton and Defendant Ramirez were employed by AMR

21   Combs, Mr. Hamilton was told he had received the highest wage raise apparently given by AMR

22   Combs to employees at the time.[21]  Thereafter, according to Mr. Hamilton, Mr. Ramirez asked him

23   what his raise had been, to which he responded that it was none of Mr. Ramirez' business.

24   Mr. Hamilton testified that he does not recall Mr. Ramirez' reply, just that it was not pleasant.

25   (Hamilton Dep. 205:14-207:23.)  From this point forward, Mr. Hamilton described that he had

26   [20]  The previous occupant of the position, Defendant Ramirez, had also been an Operations
          Supervisor before becoming the HSE&T Supervisor.  (True Dec. ¶ 31.)

27   [21]  Plaintiff Hamilton testified he understood that this raise had to have been approved by
28        Defendant True.  (Hamilton Dep. 206:7-207:13.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002              9              CASE NO.  C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

continuing problems with Mr. Ramirez "bad mouthing" him to other employees, representing Mr. Hamilton as untrustworthy, that he did nothing, was stupid, and somebody who should not be working for Signature Flight. Periodically Mr. Hamilton confronted Mr. Ramirez concerning these comments, at which times, according to Mr. Hamilton, Mr. Ramirez apologized. Nonetheless, Mr. Hamilton continued to hear the same types of comments from other employees. Mr. Hamilton did not testify that any of the comments reported to him by other employees were in the context of either his race or that he stuttered. Mr. Hamilton testified that he never heard any disparaging remarks directly from Mr. Ramirez. (Hamilton Dep. 205:14-210:22, 215:10-217:6; 402:7-403:3, 407:25-428:10.)

Approximately three and half weeks prior to Plaintiff Hamilton's promotion to Operations Supervisor, Mr. Hamilton complained to Defendant True concerning Defendant Ramirez' conduct. Although not making a formal complaint, Mr. Hamilton told Mr. True how he felt Mr. Ramirez was treating him. Mr. True stated that he would talk to Mr. Ramirez. Mr. Hamilton did not complain about racial discrimination to Mr. True. However, he did express the feeling to Mr. True that the only employees about whom Mr. Ramirez complained were African-American.[22] (Hamilton Dec. 220:5-222:15, 228:19-230:5, 232:8-11.) Notwithstanding that Mr. Hamilton had complained about Mr. Ramirez, and linked that complaint to the race of those employees with which Mr. Ramirez had problems according to Mr. Hamilton, Mr. True thereafter within weeks promoted Mr. Hamilton to Operations Supervisor.

**2. The January 13, 2003 Promotion Of Plaintiff Hamilton By Defendant True.**

As indicated above, Plaintiff Hamilton applied for the Operations Supervisor position vacated by Ravi Satyanarayana when he transferred to HSE&T Supervisor, and was promoted to that

---

[22] Apparently, Mr. Hamilton had previously complained to Kent Foster about Mr. Ramirez. Mr. Foster had taken the position of Mr. Long and was Operations Manager at the time. Mr. Hamilton told Mr. Foster that he was "fed up" with Mr. Ramirez. Mr. Foster expressed surprise, and apparently spoke with Mr. Ramirez. Thereafter Mr. Ramirez apologized to Mr. Hamilton. (Hamilton Dep. 217:7-220:4.) When Mr. Hamilton later complained to Mr. True, Mr. True expressed surprise and indicated that Mr. Foster had not informed him of Mr. Hamilton's previous complaint. (Hamilton Dep. 220:5-221:19.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          10          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1  position effective January 13, 2003. Brad Haines, who is not African-American, also applied for but

2  did not receive the position.  Again, Defendant True interviewed Mr. Hamilton for the position.

3  According to Mr. Hamilton, all he can recall of the interview is that once again Mr. True expressed

4  concern with his stammering, and Mr. Hamilton explained that such would not be an issue, to which

5  Mr. True apparently did not respond.  Thereafter, Mr. True told Mr. Hamilton that he was being

6  promoted to the Operations Supervisor position and congratulated him.  he conversation was

7  positive. (True Dec. ¶ 33; Hamilton Dep. 60:2-62:2, 113:10-19, 152:14-156:8.)

8  ### G.    The January 15, 2003 Supervisors' Meeting.

9  Plaintiff Hamilton was promoted to Operations Supervisor by Defendant True

10  effective January 13, 2003, and he attended his first supervisors' meeting two days later on

11  January 15, 2003.  At the beginning of the meeting, Mr. True referenced Mr. Hamilton by stating "I

12  would like to welcome Don to the supervisor's position, and congratulations is in order." (Hamilton

13  Dep. 235:6-236:7.)  Thereafter the meeting was routine. (Hamilton Dep. 236:8-13.)  At the end of

14  the meeting, according to Mr. Hamilton, Mr. True stated "Don, I'm going to warn you about

15  something.  You have two things working against you here:  the fact that you are Black, and you

16  have a stammering problem." This is all Mr. True said, and he did not explain what he meant by the

17  comment. (Hamilton Dep. 237:6-238:4.)  Thereafter, Mr. Hamilton never asked Mr. True what he

18  meant.[23]  (Hamilton Dep. 248:5-8.)  Mr. True had never before this meeting made any comment to

19  [23]  For purposes of this motion, Defendants will assume *arguendo* that Plaintiff Hamilton's

20  assertion is true.  However, Defendant True denies the allegation and contends that the day
    before the January 15, 2003 supervisors' meeting, he had a meeting with Mr. Hamilton and

21  Defendant Ramirez welcoming Mr. Hamilton to his new position as Operations Supervisor.
    During the meeting, they discussed Mr. Hamilton's proposed training schedule, various

22  Company polices, and procedures for emergencies.    Regarding Mr. Hamilton's training
    schedule, Mr. True told him that Cliff Taylor would be working with him as his training

23  supervisor and would continue to work with him until Mr. Taylor felt he was capable of
    performing independently.  After this portion of the meeting, Mr. Ramirez left the office and

24  Mr. True asked Mr. Hamilton to remain.  Mr. True then told Mr. Hamilton that he was pleased
    that he was moving forward in the Company and that he would support him in is new position.

25  Mr. True then proceeded to counsel Mr. Hamilton about potential problems that may occur
    while working in his new position.  Specifically, Mr. True told Mr. Hamilton that there would

26  be times that he would not be able to meet the Company's service standards and consequently
    pilots might aggressively and verbally confront him.  Mr. True told Mr. Hamilton that he had

27  two things that Mr. True thought might be a problem for him if a service issue became volatile
    with a pilot.  One was that he was Black and the other was his stuttering problem.  Mr. True said

28  to Mr. Hamilton that there were not many Black pilots in corporate aviation.  Mr. True further
    stated that unfortunately there had been incidents when there was a service problem and the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

Mr. Hamilton referencing his race, in a disparaging manner or otherwise, and never made such a comment to Mr. Hamilton after the meeting. With the exception of the discussion of his stammering in Mr. Hamilton's initial job interview and the subsequent interviews discussed above, likewise Mr. True never made any comment to Mr. Hamilton concerning his stuttering before or after the supervisors' meeting. Further, Mr. Hamilton testified that no one referenced his race or stammering at Signature Flight on any other occasion, and it had never been reported to him that at any other time his race or stammering had been commented upon by any other employee in a disparaging manner or in any other way. (Hamilton Dep. 238:13-243:21, 246:9-248:4.)

**H.   The May 31, 2003 Demotion Of Plaintiff Hamilton And November 13, 2004 Promotion Of Plaintiff Hamilton By Defendant True To The Position Of Operations Supervisor.**

   **1.   The Demotion Of Plaintiff Hamilton By Defendant True.**

On May 31, 2003, Defendant True demoted Plaintiff Hamilton to a Line Service Technician position.[24] (True Dec. ¶ 36.)

   **2.   The November 6, 2004 Promotion Of Plaintiff Hamilton By Defendant True.**

In response to a job posting, Plaintiff Hamilton applied for an open Operations Supervisor position in September 2004. Effective November 6, 2004, Defendant True promoted Mr. Hamilton to that position. (True Dec. ¶ 37; Hamilton Dep. 56:12-14, 63:24-64:5, 111:13-22.)

---

pilots involved had used derogatory racial comments toward employees. Mr. True advised Mr. Hamilton that if this ever happened that he should not engage in any defensive rhetoric with the pilot, but to call Mr. True immediately and he would handle the situation. Regarding his stuttering, Mr. True said that this could be a positive attribute. Mr. True said that customers normally do not remember an employee's name, but do remember some physical feature of an employee. Mr. True used himself as an example, that people did not remember his name, but when referring to him they have said "the tall dark guy with a mustache." After this Mr. True asked Mr. Hamilton if he had any questions or concerns, to which he replied that he had none. (True Dec. ¶ 35.)

[24] As indicated above, effective December 9, 2002, Defendant True assumed responsibility for the Company's Santa Barbara airport operations. On April 28, 2003, Daniel Harris, who is African-American, was promoted from Lead Line Service Technician to Operations Supervisor at Santa Barbara. Prior thereto, Mr. True interviewed Mr. Harris for this position and thereafter approved his promotion to it. Accordingly, just 32 days before Mr. True demoted Mr. Hamilton from the Operations Supervisor position in San Francisco, he had promoted an African-American, Mr. Harris, to that same employment position in Santa Barbara. Thereafter, on December 8, 2003, Mr. True promoted Mr. Harris to Operations Manager, the second highest management position in at Santa Barbara, and that equivalent to Defendant Ramirez' position in San Francisco. (True Dec. ¶ 36.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

1    On November 3, 2004, Plaintiff Hamilton met with Defendant True and Viviana

2    Chavez, the then Human Resource Manager in San Francisco, concerning his application for the

3    Operations Supervisor position.   According to Mr. Hamilton, Mr. True explained that Plaintiff

4    Barron-Smith and Pat Brill had also earlier applied for the supervisor's position, but he felt they

5    needed to work as Lead Line Service Technicians first before being considered for a supervisor's

6    position. According to Mr. Hamilton, Mr. True then stated that Mr. Hamilton was the best qualified

7    person and was offering him position.[25]   (Hamilton Dep. 160:11-161:11, 167:9-170:22, Exh. 6.)

8    **I.    The Pattern And Practice Of Signature Flight and Defendant True Of Hiring**

9    **And Promoting African-Americans Is Inconsistent With Plaintiff Hamilton's Claim Of Discrimination In Promotions On The Basis Of Race.**

10   Contrary to the allegations of the Complaint, between Mr. Hamilton's hire on January

11   3, 1997 and his promotion to Operations Supervisor on January 13, 2003, Signature Flight and

12   Defendant True established a pattern and practice of hiring and promoting African-Americans, not

13   one of discrimination on the basis of race in making such employment decisions.

14   **1.    The December 1, 1997 Promotion Of Cliff Taylor By Defendant True To**

15   **Operations Supervisor.**

16   Before Plaintiff Hamilton became a full-time employee on January 3, 1997, Cliff

17   Taylor, an African-American, had been hired and later promoted by Defendant True to Lead Line

18   Service Technician, the position he occupied when Mr. Hamilton was hired.  Subsequently, Mr. True

19   promoted Mr. Taylor to Operations Supervisor on December 1, 1997.  Mr. Taylor currently remains

20   employed by Signature Flight in this position.  (True Dec. ¶ 15; Hamilton Dep. 94:3-20.)

21   **2.    The Workforce Of The San Francisco Airport Operations Upon Its**

22   **Acquisition By Defendant Signature Flight On March 4, 1999.**

23   When Signature Flight acquired the San Francisco FBO operations from AMR

24   _____

[25] This position was the same one that had been posted in April 2004, and for which
25   Plaintiff Barron-Smith, Michael Siron, and Patrick Brill had applied, but not been selected. At
the time, because of the lack of qualified applicants, Mr. True had decided not to fill the
26   position.  Plaintiff Hamilton had not applied for this position.  The position was then filled by
Cliff Taylor, who moved from training to an Operations Supervisor shift position supervising
27   ramp operations.  The position was then reposted in September 2004 in response to which
Mr. Hamilton and Tom Webster applied.  Mr. Webster is not African-American.  Mr. True
28   selected Mr. Hamilton for the position. (True Dec. ¶37.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          13                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1  Combs on March 4, 1999, it employed the existing employees of AMR Combs, three of whom were

2  African-American.[26]  (True Dec. ¶ 3; Declaration of Timothy J.Ramsey in Support of Defendants'

3  Motion for Partial Summary Judgment on the Individual Promotion Claims of Plaintiff Donald

4  Hamilton filed herewith, hereinafter "Ramsey Dec.," ¶¶ 3, 4, 5, Exh. 1.)  The presence of African-

5  Americans in the workforce, 5.35 percent, compared favorably to the presence of African-Americans

6  in the population of San Mateo County, 3.5 percent, in which the airport is located, and did not

7  compare disfavorably to the composition of African-Americans in the population of the immediately

8  adjacent county of San Francisco, 7.8 percent.  (U.S. Census Bureau, California Quick Facts, San

9  Mateo County (last modified Feb. 1, 2005) <http://quickfacts.census.gov/gfd/states/06/06081.html;

10 U.S. Census Bureau, California Quick Facts, San Francisco County (last modified Feb. 1, 2005)

11 <http://quickfacts.census.gov/gfd/states/06/06075.html>.)    Subsequently, Mr. True increased the

12 number of African-Americans in the workforce and in lead and supervisory positions.

13
14
### 3.    African-Americans Hired And Promoted By Defendant True From March 4, 1999 To January 13, 2003.

15 During the nearly four year period from March 4, 1999, when Signature Flight

16 acquired the San Francisco operations, and January 13, 2003 when Plaintiff Hamilton was promoted

17 to Operations Supervisor, there were 68 newly hired or rehired employees, nine of whom, or 13.24

18 percent, were African-Americans.  (Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1; Hamilton Dep. 94:3-96:1, 97:2-

19 99:21.)  There were also 30 position changes through promotion or lateral movement, of which

20 seven, or 23 percent, were by African-Americans.  Of these, there were eight promotions to

21 Operations Supervisor and Customer Service Supervisor or Manager, two of which, or 10.00

22 percent, went to an African-Americans.  There were also seven promotions to Lead Line Service

23 Technician and Lead Customer Service Representative, three of which or 42.86 percent went to

24 African-Americans.  (Ramsey Dec. ¶¶ 3, 4, 6, Exh. 2.)

25
26
27
28
[26]  In addition to Plaintiff Hamilton and Mr. Taylor, the other African-American who had worked for AMR Combs and became employed by Signature Flight, was Rochelle Scott.  Ms. Scott had been hired by Mr. True on January 12, 1998, as a Customer Service Representative.  Mr. True subsequently promoted her to Lead Customer Service Representative and then Customer Service Supervisor.  (True Dec. ¶ 16.)  Mr. Hamilton contends that Ms. Scott is "African-American, and Filipino."  (Hamilton Dep. 94:24-95:4.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002                14                CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1    During 1999, three African-Americans were hired with the approval of Defendant

2    True. On June 30, 1999, Plaintiff Jones was hired as a Driver.[27] Thereafter, on September 3, 1999,

3    Gerald Green was hired as a Customer Service Representative. Finally, on December 8, 1999,

4    Plaintiff Barron-Smith was hired as a Line Service Technician. According to Plaintiff Hamilton, he

5    understood that Defendant True made the decision to hire each individual, and in fact, he did so.

6    (True Dec. ¶ 17; Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1; Hamilton Dep. 97:2-23, 98:14-99:21.)

7    Less than two months after his initial hire, on August 23, 1999, Defendant True

8    authorized the promotion Plaintiff Jones from Driver to Customer Service Representative.[28] (True

9    Dec. ¶ 18; Ramsey Dec. ¶¶ 3, 4, 6, Exh. 2.) As of December 31, 1999, and within the first nine

10   months of operation by Signature Flight, the number of African–Americans had increased from three

11   to six, and comprised 12.5 percent of the workforce. (Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1.)

12   During 2000, there were 23 newly hired or transferred employees, two of whom, or

13   8.70 percent, were African-Americans. (Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1.) On August 21, 2000 and

14   November 13, 2000, Defendant True approved the hiring of Samantha Scott as a Customer Service

15   Representative and Kareem Mayo as a Line Service Technician. Both Ms. Scott and Mr. Mayo are

16   African-American. (True Dec. ¶ 19.)

17   On January 1, 2000, Defendant True promoted Rochelle Scott, an African-American,

18   from Customer Service Representative to Lead Customer Service Representative.[29] After this

19   promotion, Ms. Scott was one of three Lead Customer Service Representatives. The other two were

20   not African-American, and had been employed and been a Lead Customer Service Representative

21   longer than Ms. Scott. Notwithstanding, on February 7, 2000, just slightly over two months later,

22   Ms. Scott was again promoted by Mr. True to the position of Customer Service Supervisor.[30] Ms.

---

23/24   [27] Plaintiff Jones testified he was interviewed for the Driver position by Defendant True before he was offered the position. (Deposition of Bobby Jones, hereinafter "Jones Dep." 72:4-75:4.)

25      [28] Mr. Jones concedes that Defendant True was involved in and approved his promotion to Customer Service Representative. (Jones Dep. 78:23-86:13.)

26/27   [29] Immediately prior to her promotion, Ms. Scott was one of 12 Customer Service Representatives. Aside from Bobby Jones and Ms. Scott, the others were not African-American. Of those, three had been employed by the Company longer than Ms. Scott, but did not receive the lead position. (True Dec. ¶20; Ramsey Dec. ¶¶ 3, 4, 7, Exh. 3.)

28      [30] Within the San Francisco operations, Signature Flight only employs one person in this position,

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1   Scott replaced in this position someone who was not African-American. (True Dec. ¶¶ 20, 21;

2   Hamilton Dep. 100:5-101:2, 102:13-23.) As of December 31, 2000, of the employees in Signature

3   Flight's San Francisco workforce, eight, or 16.33 percent, were African-American. (Ramsey Dec. ¶¶

4   3, 4, 5, Exh. 1.)

5          During 2001, Defendant True approved the employment of Audrey Sims and David

6   Cathey, both African-Americans. Ms. Sims was hired as a Customer Service Representative, and

7   Mr. Cathey as a Line Service Technician. (True Dec. ¶ 22; Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1;

8   Hamilton Dep. 105:11-23.) In addition, on August 25, 2001, Defendant True promoted Plaintiff

9   Jones from Customer Service Representative to Lead Customer Service Representative.[31] (True

10  Dec. ¶ 23.) As of December 31, 2001, of Signature Flight's employees at its San Francisco

11  operations, eight, or 18.18 percent, were African-American. (Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1.)

12         In 2002, and up to January 13, 2003, of the 18 new employees hired or rehired with

13  the approval of Defendant True, two were African-Americans. On June 19, 2002 Nicholas Jenkins

14  and Plaintiff Sanders[32] were both hired as Customer Service Representatives. (True Dec. ¶ 24;

15  Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1; Hamilton Dep. 107:19-108:7.) As of December 31, 2002, of the

16  employees employed within the San Francisco operations of Signature Flight, seven, or 14.28

17  percent, were African-American. (Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1.)

18

19  _____

    and the position is responsible for all customer service operations and all employees in the
20  Customer Service Representative and Lead Customer Service Representative positions. (True
    Dec. ¶¶ 20, 21.)

21  [31] Mr. Jones replaced in that position an employee who was not an African-American. Further,
22  immediately before his promotion, Mr. Jones was one of 10 Customer Service Representatives,
    three of whom were not African-American and had been employed longer than Mr. Jones. In
23  essence, the promotion of Mr. Jones passed over these individuals. Mr. Hamilton testified he
    understood each of these decisions were made by Mr. True. (True Dec. ¶ 23, Ramsey Dec. ¶¶ 3,
24  4, 6, 8, Exhs. 2, 4; Hamilton Dep. 103:8-105:9.)

25  [32] Plaintiff Sanders learned of this employment opportunity from a deacon at her church named
    Larry Higgins. Mr. Higgins is African-American. He told Ms. Sanders that he knew Defendant
26  True, and that Signature Flight was looking for employees. Thereafter, she submitted a resume
    and application, and had an interview with Ms. Scott and Mr. True individually. In the
27  interview with Mr. True, he stated that he and Mr. Higgins were friends, and that Mr. Higgins
    had given her a reference. They also discussed that she had a criminal conviction on a weapons
28  charge about which Mr. True responded that such would not be an issue. (True Dec. ¶ 25;
    Deposition of Aljarice Sanders hereinafter "Sanders Dep.," 57:24-66:19, 68:5-70:2, 71:9-11.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

## II.  ARGUMENT

### A.  Plaintiff Hamilton Cannot Establish His Race And Disability Discrimination Claims Based On His Failure To Be Promoted Because He Cannot Demonstrate That The Stated Reasons For The Denied Promotions Are Pretextual And Race Or Disability Discrimination Is The Real Reason He Was Not Promoted.

Although Plaintiff Hamilton was promoted to Lead Line Service Technician in June 1999, and to Operations Supervisor in January 2003 and November 2004, he claims that he was denied a promotion in 2002, when he applied for an Operations Supervisor position, due to his race. (Comp. ¶¶ 34, 61.) Mr. Hamilton also alleges that he was denied the position of Operations Supervisor in 2002, because Defendant True "perceived" him as suffering from a "stammering" problem. (Comp. ¶ 86.) Further, Mr. Hamilton apparently contends that the denial of his promotion to HSE&T Supervisor in October 2002 was also due to his race and "perceived" disability.

In order to prove intentional employment discrimination, the burden-shifting framework established by Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is used. Under this analysis the parties have the following burdens: (1) Plaintiff Hamilton must first establish a *prima facie* case of discrimination; (2) if a *prima facie* case of discrimination is established, Signature Flight must articulate a nondiscriminatory reason for its actions;[33] and (3) if a nondiscriminatory explanation is given, Mr. Hamilton must then prove, other than by speculation, the nondiscriminatory explanation is pretextual and discrimination is the real reason for the adverse employment action. *Coleman v. The Quaker Oats Co.* 232 F.3d 1271, 1281 (9th Cir. 2000).[34] Although the burden of going forward with the evidence shifts throughout this three-stage process, Mr. Hamilton retains, at all times, the ultimate burden of persuading the Court that he was the victim

---

[33] For purposes of this motion only, Signature Flight will concede that Plaintiff Hamilton can establish a *prima facie* case of discrimination with regard to the two promotions he did not receive.

[34] Given the similarities between FEHA and Title VII, it is appropriate to rely on federal decisions addressing Title VII claims to analyze claims brought under FEHA. *Hersant v. California Dept. of Social Servs.*, 57 Cal.App.4th 997, 1001, 67 Cal.Rptr.2d 483, 485 (1997) (citing *Caldwell v. Paramount Unif. Sch. Dist.*, 41 Cal.App.4th, 189, 195, 48 Cal.Rptr.2d 448, 452-453 (1995)). Likewise, because a Section 1981 claim is "predicated on the same elements as a [race] discrimination claim under Title VII," both claims may be analyzed together. *Lowe v. Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1995) ("the same standards are used to prove both claims").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002                    17                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1    of intentional discrimination. *Id.* at 1281; *St. Mary's Honor Center v. Hicks,* 438 U.S. 502, 511

2    (1993).

3                    **1.    Plaintiff Hamilton Cannot Establish Pretext Because The Same Person**
                    **Who Previously Hired And Promoted Plaintiff Hamilton Made The**
4                    **Decision Not To Promote Him In The Year 2002.**

5                    It is undisputed that Steve True not only hired Plaintiff Hamilton as a part-time Line

6    Service Technician in December 1996 and made him a full-time Line Service Technician in January

7    1997, but also promoted Mr. Hamilton to Lead Line Service Technician in June 1999. (True Dec.

8    ¶ 26; Hamilton Dep. 38:2-19, 52:7-53:22, 60:21-61:8, 95:12-16, Exh. 7.) After that point, although

9    Mr. Hamilton was encouraged to apply for a supervisor's position, he did not do so. Instead, he was

10   not interested in making a career at Signature Flight and made it known to Mr. True that he intended

11   to leave as soon as he could obtain a mechanic job with an airline. (True Dec. ¶ 27; Hamilton Dep.

12   67:2-68:5, 72:6-76:22, 81:18-83:1.) It was only after September 11, 2001, when the airlines stopped

13   hiring mechanics, that Mr. Hamilton expressed an interest in being promoted to become a

14   supervisor. *Id.* Then, as described above, although Mr. Hamilton applied for and was denied an

15   Operations Supervisor position in January 2002 and a HSE&T Supervisor position in October 2002,

16   because the other applicant had more experience and was judged to be more qualified, Mr. True

17   promoted him to an Operations Supervisor position effective January 13, 2003, instead of a non-

18   African American who also applied for that job. (True Dec. ¶ 33.) Later, in 2004, Mr. True again

19   promoted Plaintiff Hamilton. (True Dec. ¶ 37.) Thus, although Mr. Hamilton claims that Mr. True

20   denied him promotions in 2002, allegedly due to his race and perceived disability, the facts

21   demonstrate that Mr. True not only hired Mr. Hamilton, but also repeatedly promoted him both

22   before and after the denial of the two promotions in 2002.

23                    It is well established that there is a strong inference of no discrimination when the

24   "same actor" who allegedly takes an adverse action against the plaintiff previously hired and

25   promoted the plaintiff. *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270-271 (9th Cir. 1996);

26   *see also, Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 463-464 (6th Cir. 1995) (the "same actor"

27   inference applies in all types of discrimination cases and may be applied even if there is a long time

28   period between the hiring and the adverse action when the plaintiff's class does not change);

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1   *EEOC v. Our Lady of the Resurrection Md. Ctr.,* 77 F.3d 145, 152 (7th Cir. 1996) (the same actor

2   inference "has strong presumptive value" in a race discrimination case); *West v. Bechtel Corp.,* 96

3   Cal.App.4[th] 966, 980, 981 (2002). In fact, it "'hardly makes sense to hire workers from a group one

4   dislikes (thereby incurring the psychological costs of associating with them) only to [take an adverse

5   action against] them once they are on the job.'" *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir. 1991)

6   (citation omitted). The strong inference of no discriminatory motive by the "same actor" is logical:

7
8   > "[T]he point of the same-actor inference is that the evidence *rarely is*
    > "sufficient . . . to find that the employer's asserted justification is
    > false" when the actor who allegedly discriminated against the plaintiff
9   > had previously shown a willingness to treat the plaintiff favorably.

10  *Coghlan v. American Seafoods Co. LLC,* 413 F.3d 1090, 1097 (9th Cir. 2005) (emphasis in original).

11  Thus, the Court must take into account this "strong inference" of no discrimination and determine

12  whether Plaintiff Hamilton "has made out the strong case of bias necessary to overcome this

13  inference" when deciding this motion for summary judgment. *Id.* at 1098.

14          Plaintiff Hamilton cannot overcome this inference of no discrimination. Obviously,

15  Defendant True knew Mr. Hamilton's race when he hired and subsequently promoted him on several

16  occasions. In fact, Mr. Hamilton was promoted to the same job he now claims he was denied due to

17  discrimination. (True Dec. ¶¶ 33, 37.) Furthermore, Mr. Hamilton concedes that, although Mr. True

18  asked about Mr. Hamilton's stammering problem in the various employment interviews they had,

19  nonetheless he was subsequently both hired and promoted. (Hamilton Dep. 90:13-92:15, 93:14-18.)

20  Therefore, "it is simply incredible" to believe that Mr. True discriminated against Mr. Hamilton.

21  *Miller v. Citizens Sec. Group, Inc.,* 116 F.3d 343, 348 (8th Cir. 1997); *see also Lowe v. J.B. Hunt*

22  *Transport, Inc.,* 963 F.2d 173, 174-175 (8th Cir. 1992) ("simply incredible" to believe that manager

23  "suddenly developed an aversion" to employees in protected classification). Consequently,

24  Mr. Hamilton's race and disability discrimination claims, should be dismissed.

25          **2.    Plaintiff Hamilton Cannot Prove That The Asserted Reason For The**
              **Promotion Of A Different Employee Instead Of Him Is False And A**
26            **Pretext For Discrimination.**

27          Despite the fact that he was promoted in June 1999, January 2003, and November

28  2004, Plaintiff Hamilton claims that he was denied promotions in 2002, because he is an African-

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95112 2303
408 998 4150

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1    American and is "perceived" to be disabled. (Comp. ¶¶ 61, 86.) However, in each of the two

2    instances where Mr. Hamilton applied for a supervisor's job in 2002, the same co-employee also

3    applied for the particular job. In each instance, Mr. Hamilton was found to be less qualified for the

4    position than this individual. (True Dec. ¶¶ 28-32.) Mr. Hamilton's race and alleged disability had

5    no role in the decisions. (True Dec. ¶¶ 28-32.)

6            Initially, Plaintiff Hamilton applied for an open Operations Supervisor position in

7    January 2002, but the job was given to Ravi Satyanarayana, who sought to return to work for

8    Signature Flight. (True Dec. ¶¶ 28, 29.) Mr. Satyanarayana had previously performed well in the

9    Operations Supervisor job in San Francisco until he resigned on July 8, 1999. (True Dec. ¶ 28.)

10   Based upon Mr. Satyanarayana's demonstrated experience and performance in the Operations

11   Supervisor position, Defendant True rehired Mr. Satyanarayana to perform the same job. (True Dec.

12   ¶ 28.) Mr. Hamilton had no supervisory experience and, thus, Mr. True did not find him to be as

13   qualified as Mr. Satyanarayana for the position. (True Dec. ¶ 29.) However, Mr. True encouraged

14   Mr. Hamilton to "grow with the company" and expressed his belief that it was time for Mr.

15   Hamilton to become a supervisor. (Hamilton Dep. 50:18-52:1, 138:3-140:16, 144:24-146:10.)

16           Then, later in 2002, the HSE&T Supervisor position opened. Both Plaintiff Hamilton

17   and Ravi Satyanarayana applied for the job. Again, Defendant True gave Mr. Satyanaraya the

18   HSE&T position based upon his demonstrated performance as an Operations Supervisor. (True Dec.

19   ¶¶ 31, 32.) As an Operations Supervisor, Mr. Satyanarayana had shown the necessary supervisory

20   skills for the position, that he was well versed in the Company's safety procedures, and that he had

21   the computer skills to generate the reports, which would have to be generated. *Id.* For these reasons,

22   Mr. True again decided that Mr. Satyanarayana was a better qualified candidate than Mr. Hamilton.

23   (True Dec. ¶ 32.) Mr. True told Mr. Hamilton that he wanted him to obtain some experience as an

24   Operations Supervisor, at which point Mr. Hamilton could later advance into the HSE&T position.

25   (Hamilton Dep. 54:17-55:8.) Further, Mr. True encouraged Mr. Hamilton to apply for the open

26   Operations Supervisor position to get that supervisory experience. (Hamilton Dep. 158:2-159:10.)

27   As a result, Mr. Hamilton did subsequently apply and was promoted into a vacant Operations

28   Supervisor position by Mr. True. *Id.* Mr. Hamilton was promoted over a non-African American

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          20          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1    who also applied for the position. (True Dec. ¶ 33.) Plaintiff Hamilton started in the Operations

2    Supervisor position on January 13, 2003. (True Dec. ¶ 33.) Then in November of 2004, Plaintiff

3    Hamilton was again promoted by Mr. True. (True Dec. ¶ 37.)

4            Plaintiff Hamilton's claim of discrimination based on his denied promotions fails

5    because Signature Flight has articulated a legitimate non-discriminatory reason for passing him over

6    for the two promotions in 2002. Even if Mr. Hamilton establishes a *prima facie* case of

7    discrimination, Signature Flight need only articulate "some legitimate, nondiscriminatory reason" for

8    its actions; it does not have to prove the absence of discriminatory motive. *Coleman, supra,*

9    232 F.3d at 1282; *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 254-255 (1981). Once a

10   legitimate business reason is articulated, the burden of production then shifts back to Mr. Hamilton

11   to demonstrate that Signature Flight's proffered reason is untrue or pretextual. *Id.* at 256. "To

12   demonstrate pretext, 'a plaintiff must show more than that the employer's decision was incorrect; the

13   plaintiff must also show the employer lied about its proffered explanation.'" *Johnson v. Nordstrom,*

14   *Inc.* 260 F.3d 727, 732 (7th Cir. 2001). Mr. Hamilton's "subjective belief" that he was "better

15   qualified" than the person who got the job "does not, without more, demonstrate pretext." *Id.* at 733.

16   Mr. Hamilton has no "specific and substantial" evidence to establish that the reason given for his

17   denial of the promotions was pretextual. *Vasquez v. County of Los Angeles,* 349 F.3d 634, 642 (9th

18   Cir. 2003).

19           First, there is ample undisputed evidence that Plaintiff Hamilton was not as qualified

20   for the two jobs as the person who was placed in them. *Parson v. County of Del Norte,* 728 F.2d

21   1234 (9th Cir. 1994) (where the male employee had superior qualifications than the female

22   employee, the employer had stated a legitimate reason for not promoting the female); *see also,*

23   *Gonzales v. MetPath, Inc.* (1989) 214 Cal.App.3d 422, 428 (no evidence of discrimination where

24   male employee was the better qualified of two qualified candidates). In fact, even if the candidates

25   are equally qualified, the law does not require the employer favor one minority candidate over

26   another non-minority candidate simply because of membership in a protected classification. *See*

27   *generally Odima v. Westin Tucson Hotel,* 991 F.2d 595, 601-602 (9th Cir. 1993) (employer not

28   required to give preferential treatment to minority candidate over non-minority candidate where

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          21          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1   qualifications are equal). Mr. Hamilton cannot establish that he was as qualified or more qualified

2   than Ravi Satyanarayan so as to prove the stated reason for his failure to be promoted was pretextual.

3                 Second, Plaintiff Hamilton cannot prove that the stated reason for his failure to be

4   promoted in 2002 is pretextual simply by showing that he was in fact somehow more qualified than

5   Ravi Satyanarayana—he must go further and produce evidence that the stated reason for his failure

6   to be promoted is knowingly false. *Nawrot v. CPC Int'l,* 277 F.3d 896, 906 (7th Cir. 2002)

7   ("[P]retext requires more than a showing that the decision was 'mistaken, ill considered or foolish,

8   [and] so long as [the employer] honestly believed those reasons, pretext has not been shown.'"). All

9   that is required of an employer is "that an employer honestly believed its reason for its actions, even

10   if its reason is 'foolish or trivial or even baseless.'" *Johnson, supra,* 260 F.3d at 733. As a result,

11   the mere fact that an employer's decision may have been arbitrary or unwise, does not establish that

12   it is discriminatory, and it is not for the Court to "second guess" the defendant's business decision.

13   *Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2002); *see also Villiarimo v. Aloha Island Air, Inc.,*

14   281 F.3d 1054, 1063 (9th Cir. 2002) (no finding of discrimination even if proffered legitimate

15   business reason is "foolish, trivial or baseless"); *Casillas v. U.S. Navy,* 735 F.2d 338, 344 (9th Cir.

16   1984) (plaintiff cannot prove discrimination in failure to promote simply by attacking legitimate

17   justification for decision to promote other employee). Mr. Hamilton cannot demonstrate that

18   Signature Flight did not honestly believe that Mr. Satyanarayana was the most qualified candidate.

19                 Plaintiff Hamilton has no evidence that the asserted reasons for not being promoted in

20   2002 were false and a pretext for either race or disability discrimination. First, it is undisputed that

21   Mr. Hamilton had not been a supervisor for Signature Flight prior to his application for the

22   Operations or HSE&T Supervisor positions. Mr. Hamilton must concede that he did not possess the

23   supervisory experience of Mr. Satyanarayan. Second, it is undisputed that Mr. Satyanarayana had

24   previously held the Operations Supervisor position when he applied to be rehired in that same job

25   and was currently in the Operations Supervisor position when he applied for the HSE&T Supervisor

26   job. (True Dec. ¶¶ 28-32.) Third, when Mr. Hamilton applied for the Operations Supervisor

27   position following the move of Mr. Satyanarayan to the HSE&T position, he was given the job

28   because he was found to be more qualified than the non-African-American who also applied for it.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002     22     CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1   (True Dec. ¶ 33)  Therefore, Mr. Hamilton cannot establish that the stated reason for why he was

2   denied the two promotion—lack of relative qualifications as compared to Mr. Satyanarayana—was

3   false and a pretext for discrimination.  Accordingly, his discrimination claims based on his failure to

4   be promoted in 2002, must fail.  *See Villiarimo, supra,* 281 F.3d at 1063.

5               **3.    Plaintiff Hamilton Cannot Establish Pretext Through Defendant True's**
                        **Alleged Statement Because It Is A Stray Remark Made After Plaintiff**
6                       **Hamilton Was Promoted.**

7               It is clear from Plaintiffs' complaint, that they intend to rely upon a statement that

8   Defendant True allegedly made on January 15, 2003, after Plaintiff Hamilton was promoted to the

9   Operations Supervisor position, as evidence that Mr. True discriminated against Mr. Hamilton both

10  due to his race and his "perceived" disability.  (Comp. ¶¶ 36, 87.)  In particular, Mr. Hamilton claims

11  that Mr. True told him:  "Don, I'm going to warn you about something.  You have two things

12  working against you here:  the fact that you are Black, and you have a stammering problem."  This is

13  all Mr. True said, and did not explain what he meant by the comment.  (Hamilton Dep. 237:6-238:4.)

14  The problem with this contention is that the alleged statement by Mr. True occurred *after*

15  Mr. Hamilton was promoted.  *Id.; see Hartsel v. Keys,* 87 F.3d 795, 804 n.9 (6th Cir. 1996) (there is

16  no inference of discriminatory animus where the defendant promoted the plaintiff and then shortly

17  thereafter replaced her in the position with another employee).  Furthermore, except for this one

18  alleged occasion, Mr. Hamilton never heard Mr. True or any other employee comment upon his race

19  or perceived disability in a disparaging way.  (Hamilton Dep. 238:13-243:21, 246:9-248:4.)  As

20  such, the single alleged statement made in 2003 cannot be reasonably interpreted as evidence that

21  Mr. True was prejudiced against African-Americans and the disabled, and Mr. Hamilton was denied

22  promotions in 2002 due to his race and disability status.  *See Geier v. Medtronic, Inc.,* 99 F.3d 238,

23  242 (7th Cir. 1996) ("to be probative of discrimination, isolated comments must be contemporaneous

24  with the [adverse employment action] or causally related to the [adverse action] decision making

25  process").

26              The single comment allegedly made by Defendant True was made after Plaintiff

27  Hamilton was promoted and not made in conjunction with the two previous denied promotions.

28  Thus, it is not evidence that either of these two denied promotions was due to either Mr. Hamilton's

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002          23          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1   race or alleged disability. *See Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 724

2   (7th Cir. 1998) (no causal nexus shown between statement and adverse action). It is well established

3   that to constitute "direct evidence" of discrimination, the statement must "relate to the specific

4   employment decision in question." *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 569

5   (7th Cir. 1989). In fact, worse statements than what has been attributed to Mr. True have been found

6   to be insufficient to constitute direct evidence of discrimination:

7
8
9
10

> Evidence of a supervisor's occasional or sporadic use of a slur directed at an employees' [sic] race, ethnicity, or national origin is generally not enough to support a claim under Title VII. [Citations.] We have held that such remarks, when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements were uttered by a decision maker. [Citation.]

11   *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1266 (7th Cir. 1993). Consequently, absent

12   evidence of a causal nexus between the remarks and the adverse employment action, "evidence of

13   the remarks, without more, does not give rise to an inference of discrimination." *Id.*; *see also Nesbit*

14   *v. Pepsico, Inc.,* 994 F.2d 703, 705 (9th Cir. 1993) (statement not evidence of discrimination when

15   uttered in an "ambivalent manner and was not tied directly" to the adverse employment action). As

16   Mr. Hamilton cannot establish that the alleged statement was related to the denial of the two

17   promotions in 2002, it cannot be used to defeat Signature Flight's summary judgment motion.

18   *Rubinstein v. Administrators of Tulane Educ. Fund,* 218 F.3d 392, 401 (5th Cir. 2000).

19   Furthermore, the statement allegedly made by Defendant True is not direct evidence

20   of discrimination because it is ambiguous and multiple inferences can be drawn from it. *See*

21   *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1267 (11th Cir. 1999). "If an alleged statement at best merely

22   suggests a discriminatory motive, then it is by definition only circumstantial evidence." *Id.* at 1266.

23   Likewise, if only one out of several possible interpretations of a statement is that it is discriminatory,

24   the statement cannot constitute direct evidence of discrimination. *Lim v. Trustees of Indiana Univ.,*

25   297 F.3d 575, 580 (7th Cir. 2002). To be direct evidence of discrimination, the statement must prove

26   that discrimination occurred without any "inference or presumption." *Id.* Given that Mr. True's

27   statement can be interpreted as a simple observation of Plaintiff Hamilton's lot in life, rather than a

28   reflection of Mr. True's animosity toward Mr. Hamilton due to his race and perceived disability, the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80631767.1 049112.1002    24    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton

1    statement by itself is not direct evidence of discrimination. *See Merrick v. Farmers Ins. Group,* 892

2    F.2d 1434, 1438-1439 (9th Cir. 1990).

3          Finally, the additional evidence described above about Defendant True's repeated

4    hire and promotion of African-Americans further supports a finding that Mr. True's alleged

5    statement is an isolated comment, unrelated to Plaintiff Hamilton's denied promotions, that by itself

6    "is insufficient to a establish a material fact on pretext." *Rojas, supra,* 285 F.3d at 1343 (isolated

7    comment insufficient to establish pretext when there was no other evidence in the record that would

8    support a finding of pretext). In particular, the undisputed evidence is that at the same time Mr. True

9    allegedly was discriminating against Plaintiff Hamilton, he was promoting African-Americans at San

10   Francisco and other locations. (True Dec. ¶¶ 12, 15-26, 33, 36.) Absent evidence that the stated

11   reasons for the denied promotions are pretextual, Mr. True's statement by itself is not direct

12   evidence of discrimination. *See Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 404 (5th

13   Cir. 2001). Therefore, Mr. Hamilton has no evidence of pretext and his discrimination claims based

14   upon his denied promotions should be dismissed.

15   **III.    CONCLUSION**

16         For the reasons stated herein Defendants respectfully request that their partial motion

17   for partial summary judgment as to Plaintiff Hamilton's First and Fifth Causes of Action based upon

18   his denied promotions be granted.

19   Dated: December 1, 2005

20

21

22   ALAN B. CARLSON
     LITTLER MENDELSON
23   A Professional Corporation
     Attorneys for Defendants
24   SIGNATURE FLIGHT SUPPORT
     CORPORATION; BBA AVIATION
25   SHARED SERVICES, INC.; BBA GROUP
     U.S. HOLDINGS, INC.; STEVE TRUE;
26   DENNIS SMITH; VAL VADEN

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Individual Promotion Claims Of Pl Donald Hamilton