1   ALAN B. CARLSON, Bar No. 055090, acarlson@littler.com
    ROBERT J. WILGER, Bar No. 168402, rwilger@littler.com
2   LITTLER MENDELSON
    A Professional Corporation
3   50 West San Fernando Street, 14th Floor
    San Jose, CA 95113.2303
4   Telephone:    408.998.4150

5   Attorneys for Defendants
    SIGNATURE FLIGHT SUPPORT CORPORATION;
6   BBA AVIATION SHARED SERVICES, INC.;
    BBA GROUP U.S. HOLDINGS, INC.; STEVE TRUE;
7   DENNIS SMITH; VAL VADEN

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  DONALD HAMILTON, an individual;          Case No.  C 05 00490 CW
    BOBBY JONES, an individual; DAMON
13  BARRON SMITH, an individual; ALJARICE    **DEFENDANTS' NOTICE OF MOTION**
    SANDERS, an individual; and on behalf of **AND MOTION FOR PARTIAL**
    themselves and other similarly situated; **SUMMARY JUDGMENT ON THE**
14                                           **INDIVIDUAL PROMOTION AND**
                Plaintiffs,                  **TERMINATION CLAIMS OF**
15                                           **PLAINTIFF ALJARICE SANDERS**
        v.
16                                           Date:       January 6, 2006
    SIGNATURE FLIGHT SUPPORT                 Time:       10:00 a.m.
17  CORPORATION, a Delaware corporation;     Dept.:      2
    BBA AVIATION SHARED SERVICES,
18  INC., a Florida corporation; BBA GROUP US  Trial Date:  None
    HOLDINGS INC., a Massachusetts
19  corporation; STEVE TRUE, an individual;
    NORMAN RAMIREZ, an individual;
20  DENNIS SMITH, an individual; VAL
    VADEN, an individual; and DOES 1-100;
21
                Defendants.
22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

# TABLE OF CONTENTS

Page

I.   STATEMENT OF RELEVANT FACTS ................................................................. 1

    1.   The Employment Structure Of Signature Flight At Its San Francisco
        International Airport Operations ........................................................ 2

    2.   Airport Badge And U.S. Customs Requirements ............................. 2

    3.   The Job Posting Policy Of Signature Flight ..................................... 4

  B.   Plaintiff Sanders Employment With Signature Flight ................................. 4

    1.   Plaintiff Sanders' Interview And Hire ............................................... 4

    2.   Plaintiff Sanders' Requested Promotions .......................................... 5

    3.   Plaintiff Sanders' Termination ........................................................... 7

  C.   Plaintiff Sanders' EEOC Charge And The Instant Complaint ..................... 8

II.  ARGUMENT ................................................................................................... 9

  A.   Legal Standard For Summary Judgment ..................................................... 9

  B.   Plaintiff Sanders' First And Second Causes Of Action For Race and Sex
     Discrimination Are Subject To Summary Judgment ................................... 10

    1.   Plaintiff Sanders' Claim For Discrimination Based On The July 2004
        Promotion To The Graveyard Shift Lead Customer Service
        Representative Position Fails Because Sanders Admits She Never
        Applied For The Job ........................................................................... 11

        a.   Plaintiff Sanders Cannot Establish A Prima Facie Case Of
            Discrimination With Respect To The Alleged Promotional
            Opportunity Posted in June 2004 And Filled In July 2004 ................ 11

        b.   Alternatively, Plaintiff Sanders Cannot Rebut The Legitimate
            Business Reason Offered By Defendant For Not Promoting
            Her ....................................................................................... 12

    2.   Plaintiff Sanders' Claim For Discrimination Based On The Denial Of
        Promotion To A Second Lead Customer Service Representative
        Position That Became Vacant In July 2004 And Allegedly Was Not
        Thereafter Posted Fails Because Sanders Was Never Denied The Job ......... 15

        a.   Plaintiff Sanders Cannot Establish A Prima Facie Case Of
            Discrimination With Respect To The Alleged Second July
            2004 Promotional Opportunity .......................................................... 15

        b.   Alternatively, Plaintiff Sanders Cannot Rebut The Legitimate
            Business Reason Offered By Defendant For Not Promoting
            Her ....................................................................................... 16

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

(NO. C 05 00490)                                          i.

1

**TABLE OF CONTENTS**
**(continued)**

2
Page

3     3.     Plaintiff Sanders' Claim For Discrimination Based On Her
             Termination Fails Because She Cannot Prove Pretext .................................. 17

4

5     C.   Plaintiff Sanders' Third Cause Of Action For Retaliation Is Subject To
           Summary Adjudication ........................................................................... 18

6     D.   Plaintiff Sanders' Fourth Cause Of Action For Wrongful Termination In
           Violation Of Public Policy Is Subject To Summary Judgment ................................ 19

7
III.    CONCLUSION ................................................................................................. 20

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

1

## TABLE OF AUTHORITIES

2

Page

3

### CASES

4   *Adler v. Wal-Mart Stores, Inc.*
       144 F.3d 664 (10th Cir. 1998) ................................................................................... 9

5   *Anderson v. Liberty Lobby, Inc.*
6       477 U.S. 242, 106 S. Ct. 2505 (1986)). ................................................................. 9, 10

7   *Bennett v. Ridge*
       321 F.Supp.2d 49 (D.D.C. 2004) ............................................................................ 18

8   *Bradley v. Harcourt, Brace & Co.*
       104 F.3d 267 (9th Cir. 1996) ................................................................................... 14

9   *Brown v. Coach Stores, Inc.*
       163 F.3d 706 (2nd Cir. 1998) ................................................................................... 12

10  *Buhrmaster v. Overnite Trasp. Co.*
11      61 F.3d 461 (6th Cir. 1995) ...................................................................................... 14

12  *Caldwell v. Paramount Unif. Sch. Dist.*
       41 Cal.App.4th, 189, 48 Cal.Rptr.2d 448 (1995)..................................................... 10

13  *Chambers v. Wynne School Dist.,*
       909 F.2d 1214  (8th Cir. 1990) ................................................................................. 16

14  *Celotex Corp. v. Catrett*
       477 U.S. 317, 106 S.Ct. 2548 (1986) ......................................................................... 9

15  *Coleman v. The Quaker Oats Co.*
16      232 F.3d 1271 (9th Cir. 2000) ....................................................................... 10, 12, 17

17  *Consor v. Occidental Life Insurance Co.*
       469 F.Supp. 1110 (N.D. Tex. 1979) ......................................................................... 17

18  *Cruz v. Coach Stores, Inc.*
       202 F.3d 560 (2nd Cir. 2000) ................................................................................... 12

19  *Devera v. Adams*
       874 F.Supp. 17 (D.D.C. 1995) ........................................................................... 12, 16

20  *Douglas v. Marsh*
21      53 FEP Cases 503 (N.D.Cal. 1988, *aff'd*, 895 F.2d 1416 (9th Cir. 1990) ............. 11, 12

22  *EEOC v. Our Lady of the Resurrection Md. Ctr.*
       77 F.3d 145 (7th Cir. 1996) ...................................................................................... 14

23  *Eisenberg v. Insurance Co. of N.A.*
       815 F.2d 1285 (9th Cir. 1987) ................................................................................... 9

24  *Forsberg v. Pacific Northwest Bell Tel. Co.*
       840 F.2d 1409 (9th Cir. 1988) ................................................................................. 18

25  *Frausto v. Legal Aid Society of San Diego, Inc.*
26      563 F.2d 1324  (9th Cir. 1977) ........................................................................... 11, 16

27  *Gonzales v. MetPath, Inc.,*
       214 Cal.App.3d 422 (1989) ..................................................................................... 13

28

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408 998 4150

**TABLE OF AUTHORITIES**
(continued)

Page

*Hersant v. California Dept. of Social Servs.*
57 Cal.App.4th 997, 67 Cal.Rptr.2d 483 (1997) .................................................................. 10

*Howard v. Summit County Welfare Dept.*
525 F.Supp. 1084 (N.D. Ohio 1981) .................................................................................. 17

*Jordan v. Clark*
847 F.2d 1368 (9th Cir. 1988) .......................................................................................... 19

*Lalvani v. Cook Co.*
269 F.3d 785 (7th Cir. 2001) ............................................................................................ 10

*Lowe v. JB Hunt Transp., Inc.*
963 F.2d 173 (8th Cir. 1992) ............................................................................................ 15

*Lowe v. Monrovia*
775 F.2d 998 (9th Cir. 1995) ............................................................................................ 10

*McDonnell-Douglas Corp. v. Green*
411 U.S. 792, 93 S.Ct. 1817 (1973) .................................................................................. 11

*McGinest v. GTE*
360 F.3d 1103 (9th Cir. 2004) ..................................................................................... 11, 16

*McMillan v. Svetanoff*
878 F.2d 186 (7th Cir. 1989) ............................................................................................ 14

*Miller v. Citizens Sec. Group, Inc.*
(8th Cir. 1997) 116 F.3d 343 ............................................................................................ 15

*Molerio v. F.B.I.*
749 F.2d 815 (D.C. Cir. 1984) .......................................................................................... 18

*Nawrot v. CPC Int'l.*
277 F.3d 896 (7th Cir. 2002) ............................................................................................ 14

*Odima v. Westin Tucson Hotel*
991 F.2d 595 (9th Cir. 1993) ............................................................................................ 13

*Parson v. County of Del Norte,*
728 F.2d 1234 (9th Cir. 1994) .......................................................................................... 13

*Proud v. Stone*
945 F.2d 796 (4th Cir. 1991) ............................................................................................ 15

*Ray v. Henderson*
217 F.3d 1234 (9th Cir. 2000) .......................................................................................... 19

*Rojas v. Florida*
285 F.3d 1339 (11th Cir. 2002) ........................................................................................ 14

*Spaulding v. United Transp. Union*
279 F.3d 901 (10th Cir. 2002) ............................................................................................ 9

*St. Mary's Honor Center v. Hicks*
438 U.S. 502 (1993) ........................................................................................................ 10

*Stevenson v. Superior Court*
16 Cal.4th 880 (1997) ...................................................................................................... 20

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

1

**TABLE OF AUTHORITIES**
(continued)

2
Page

3
*Sullivan v. Delta Airlines*
    58 Cal.App.4th 938 (1997) ............................................................. 19

4
*Texas Dept. of Comm. Affairs v. Burdine*
    450 U.S. 248, 101 S. Ct. 1089 (1981).............................................. 12

5
*Trowbridge v. AT&T, Inc.*
    54 FEP Cases 346 (N.D.Ind. 1990).................................................. 13

6
*Vasquez v. County of Los Angeles*
    349 F.3d 634 (9th Cir. 2003) ......................................................... 19

7
*Villiarimov. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ....................................................... 14

8
*Wallace v. Methodist Hosp. Sys.*,
    271 F.3d 212 (5th Cir. 2001) ......................................................... 14

9
10
*West v. Bechtel Corp.*
    96 Cal.App.4th 966 (2002) ........................................................... 14

11
*Williams v. Herman Goelitz Candy Co.*
    70 FEP Cases 719 (E.D. Cal. 1995).......................................... 18, 20

12
*Wright ex rel. Trust Co. of Kansas v. Abbott Labs., Inc.*
    259 F.3d 1226 (10th Cir. 2001) ...................................................... 9

13
*Yartzoff v. Thomas*
    809 F.2d 1371 (9th Cir. 1987) ....................................................... 19

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

(NO. C 05 00490)

iii.

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED that on Friday, January 6, 2006, at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 2 of the United States District Court, located at 1301 Clay Street, Oakland, California, Defendants Signature Flight Support Corporation, BBA Aviation Shared Services, Inc., BBA Group U.S. Holdings, Inc., Steve True, and Dennis Smith will move and hereby do move this Court for an order of partial summary judgment on the individual promotion and termination claims of Plaintiff Aljarice Sanders on the grounds stated herein.

**STATEMENT OF ISSUES TO BE DECIDED**

The instant motion presents the Court with the following issues for decision:

1.   Whether Defendants unlawfully failed to promote Plaintiff Sanders because of her race or gender or in retaliation for any protected activities.[1]

2.   Whether Defendants unlawfully terminated Plaintiff Sanders because of her race, gender or in retaliation for any protected activities.[2]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      STATEMENT OF RELEVANT FACTS**

Defendant Signature Flight is an aviation service company that provides fueling, customer service, and ground handling support to private and corporate aircraft at the FBO facility located on San Francisco International Airport.  (Declaration of Steven J. True in Support of Defendants' Motion for Partial Summary Judgment on the Individual Promotion and Termination Claims of Plaintiff Aljarice Sanders filed herewith, hereinafter "True Dec.," ¶ 2.)  San Francisco Airport supports commercial airlines as well as general aviation aircraft, namely private and

---

[1]   In the First and Second Causes of Action of Plaintiffs' First Amended Complaint, herein after "Comp.," Plaintiff Sanders alleges that the Corporate Defendants, as well as Defendants True and Smith, refused to promote her because of her race in violation of Title VII of the Civil Rights Act of 1964, hereinafter "Title VII," 42 U.S.C. § 1981, and the California Fair Employment and Housing Act, hereinafter "FEHA." (Comp., ¶¶ 61, 62, 66, 67.)

[2]   In the First, Second, Third and Fourth Causes of Action of the Complaint, Plaintiff Sanders alleges that the Corporate Defendants, as well as Defendants True and Smith, unlawfully terminated her on the basis of her race and because she complained about discrimination, all in violation of Title VII, 42 U.S.C. § 1981, and FEHA. (Comp., ¶¶ 61, 62, 66, 67, 71, 74, 79, 81.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113.2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002                    1.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1    corporate aircraft, and services both international and domestic flights. Private and corporate jets do

2    not utilize the Airport's commercial terminals; instead, they arrive to and leave from a private

3    terminal located at the Airport. The Airport contracts with Signature Flight to operate this private

4    FBO facility, at which Signature Flight provides fueling, customer service, and ground handling

5    support to incoming and outbound private and corporate aircraft. Signature Flight has similar

6    operations at 46 airports within the United States. (True Dec. ¶ 2.)

7                    **1.    The Employment Structure Of Signature Flight At Its San Francisco**
                            **International Airport Operations.**
8

9             Signature Flight's terminal at the Airport operates seven days a week, 24 hours a day,

10   providing service to private aircraft whenever they arrive. The operation is divided into two basic

11   segments, line operations and customer service. Line operations employees service and fuel the

12   aircraft, while customer service employees provide a variety of flight related services, including

13   payment for services, baggage handling, cleaning aircraft, and arranging rental cars and hotels for

14   passengers. (True Dec. ¶ 6.)

15            The customer service work is generally performed by Customer Service

16   Representatives. The position above Customer Service Representative is Lead Customer Service

17   Representative, and above that position, a Customer Service Supervisor or Manager. There is not,

18   and has not always been, a Lead Customer Service Representative on every shift, and only one

19   Customer Service Supervisor or Manager oversees the customer service operations. (True Dec. ¶ 7.)

20   Plaintiff Sanders had various supervisors during her employment, but ultimately reported to

21   Defendant True, the General Manager for Signature Flight's San Francisco FBO for the entire period

22   of her employment. (True Dec. ¶¶ 1, 4-5.)

23                    **2.    Airport Badge And U.S. Customs Requirements**

24            All persons who work on the Airport's property, regardless of position, are required

25   to obtain and display a valid Airport badge. The badges are issued only by Airport operations

26   personnel and expire annually on the badge holder's birthday. Failure to obtain or maintain a badge

27   disqualifies individuals from employment at Signature Flight's San Francisco FBO. (True Dec., ¶

28   15.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002                     2.                     CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1    Signature Flight provides services to both domestic and international aircraft and

2    flights at its San Francisco FBO, and is responsible to adhere to Airport security and U.S. Customs

3    Service regulations. Due to the arrival and departure of international flights, and the servicing of

4    these aircraft, there is heightened security with respect to these flights and Signature Flight operates

5    a secure the flight line or ramp area where these aircraft are landing, taxiing, and can be parked for

6    loading and unloading. The security procedures for international flights require that U.S. Customs

7    Service personnel meet and board all such incoming flights before passengers are allowed to

8    deplane. As part of its security responsibility of Signature Flight at the San Francisco private

9    terminal, its employees, particularly customer service employees, are required to physically stand by

10   and keep under surveillance all arriving international aircraft to insure that passengers do not deplane

11   and leave the aircraft until a Customs Agent has arrived and boarded the aircraft to inspect the

12   manifest and required documentation, and cleared its passengers and crew to exit the aircraft.

13   Signature Flight employees are also required to monitor international flights for suspicious activity.

14   (True Dec. ¶ 16.)

15   Following the events of September 11, 2001, the U.S. Customs Service, in connection

16   with the Department of Homeland Security, began tightening airport accessibility and further

17   monitoring inbound international flights. Their efforts resulted in a restriction mandated by the

18   Airport and the Customs Service, that all Airport badge holders must also obtain a "Customs Seal

19   Security Area." This required that most current and newly hired employees at Signature Flight had

20   to complete an "Application for Identification Card," and pass a background check conducted by the

21   Customs Service in order to obtain the mandated Security Seal. (True Dec. ¶¶ 17-19; Exhs. 1 and 2.)

22   In response to the mandate from the Airport, and guided by directives from the U.S.

23   Customs Service, in the summer of 2004 Signature Flight informed its employees of the new

24   requirement and assisted them in completing the required application forms. (Declaration of Ajarice

25   Sanders, hereinafter "Sanders Dep.," 100:18-101:6; 101:18-23; True Dec. ¶ 18.) Signature Flight

26   then forwarded the completed forms to the U.S. Customs Service for processing. (True Dec. ¶ 19.)

27   All Signature Flight employees, with the exception of human resources, accounting personnel, two

28   valets and one shuttle van driver, were required to go through the screening process. (True Dec. ¶

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

FIRMWIDE:80594772.1 049112.1002          3.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1     18.)  The process was mandated because, as noted above, all customer service and line positions,

2     including all management positions, require employees at one time or another to attend to and board

3     aircraft, including international aircraft, outside the terminal on the secure ramp area.  (True Dec., ¶¶

4     16-20.)

5            Throughout August and early September 2004, Signature Flight received individual

6     letters from the Customs Service indicating that its employees had either passed or failed the

7     background screening process and had been given or denied the required Customs Security Area

8     Seal.  Employees who failed the background screening conducted by the U.S. Customs Service and

9     were consequently denied a Security Seal, were automatically disqualified from any employment

10    positions at San Francisco Airport that required, or even potentially required, access to the secure

11    ramp area.  (True Dec., ¶¶ 17-20.)

12         **3.**      **The Job Posting Policy Of Signature Flight.**

13           Signature Flight has a policy providing for the posting of open employment positions

14    that it intends to fill.[3]  The employment position, and a position description with its qualifications, is

15    posted with a deadline for employee applications.  Applying employees are thereafter considered for

16    the position with the promotion selection being made by or with the final approval of Defendant

17    True.  (True Dec. ¶ 9; Sanders Dep. 105:4-10; 106:2-9.)

18       **B.**      **Plaintiff Sanders Employment With Signature Flight**

19          **1.**      **Plaintiff Sanders' Interview And Hire.**

20           Plaintiff Sanders is an African American woman who was hired by Signature Flight

21    as a Customer Service Representative at the San Francisco FBO on June 19, 2002.  (Comp. ¶¶ 6, 50;

22    Sanders Dep. 45:16-46:2; True Dec. ¶ 10.)  As a Customer Service Representative, she had various

23    responsibilities, including greeting the aircraft and offloading passengers, loading and unloading

24    luggage, spot cleaning the interior of the aircraft, making ground reservations for passengers, and

25    generally insuring that the terminal, or "base" as it is commonly referred to, was in presentable

26

27    [3]   On occasion, formerly occupied employment positions have not been posted when decisions

28       have been made for a variety of reasons, including economic, to not fill a position, abolish a
        position, or move a vacant position to a different shift.  (True Dec. ¶ 9.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002        4.        CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1    condition. (Sanders Dep. 47:19-50:17.) Ms. Sanders admits that she worked both inside the base

2    and outside on the ramp or tarmac area. (Sanders Dep. 50:18-21; 54:19.) Although Ms. Sanders did

3    not have any direct responsibility for security, she admits that she, like every Signature Flight

4    employee, was charged with "a certain level of vigilance," to insure that the planes and the ramp

5    area remained secure. (Sanders Dep. 51:20-52:15.)

6           Plaintiff Sanders was interviewed and hired by Defendant True and Rochelle Scott,

7    an African-American Customer Service Supervisor for Defendant Signature Flight.[4] (Sanders Dep.

8    62:7-21; 66:15-19; 71:5-13; True Dec., ¶ 10). During the application and interview process, Ms.

9    Sanders told Mr. True and Ms. Scott that she had a conviction for a weapons charge in her

10   background. Specifically, she told them that the charge would come up on a background check, and

11   indicated that she did not think it should affect her employment. (Sanders Dep. 67:7-22; 68:5-18;

12   69:18-21; True Dec. ¶ 10.) In fact, Ms. Sanders had been arrested on a college campus in possession

13   of a knife, had served jail time and was, at the time of her interview and hire, on probation for

14   violation of Penal Code section 626.10.[5] (Sanders Dep. 87:12-14; Exh. 43.) According to Ms.

15   Sanders, Mr. True and Ms. Scott told her that "everyone makes mistakes" and that if she was a good

16   employee and did her job "it should not be an issue." (Sanders Dep. 67:14-68:20.)

17          For the duration of her employment, Plaintiff Sanders worked as a Customer Service

18   Representative on the "swing" or afternoon/evening shift, with an occasional day shift for overtime

19   purposes. (Sanders Dep. 52:19-53:4; 155:9-10.) During the relevant periods, Ms. Sanders reported

20   to Mr. Ramirez, and ultimately at all times to Mr. True. (True Dec., ¶ 5.)

21          **2.    Plaintiff Sanders' Requested Promotions.**

22          Plaintiff Sanders claims that in early 2004, she made it known to her supervisors that

23

24   [4] Plaintiff Sanders was referred to Signature Flight by Larry Higgins, and African-American
         deacon at her church, who was also a friend of Defendant True. (Sanders Dep. 57:24-58:13;
25       59:1-11; 64:5-8; 71:9-11; True Dec. ¶ 10.)

26   [5] Although the background check conducted by the U.S. Customs Service also indicates that she
         was charged with possession of a "controlled substance," Plaintiff Sanders denies that she had
27       any drugs in her passion at the time of the arrest. Rather, she claims that she was carrying
         "confetti" squares, which the police believed were cleverly disguised "acid drops." (Sanders
28       Dep. 87:15-88:23; 89:4-90:1.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002                    5.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1    she was interested in a promotion to a Lead Customer Service Representative position.[6]  (Sanders
2    Dep. 108:2-9; 116:4-117:7.)  Although no positions were open at that time, she claims she told both
3    Defendant True and her direct supervisor at the time, Norman Ramirez, that she would like to be
4    considered for the next posted Lead Customer Service Representative  position.  (Sanders Dep.
5    108:18-110:3.)  At that time, her superiors told her that if she continued to be a good employee and
6    "cleaned up [her] tardiness," she would be "allowed to move up."  (Sanders Dep. 111:2-113:17;
7    116:25-117:7.)

8              In June 2004, Plaintiff Sanders met with Defendant True and again told him that she
9    was interested in being promoted as soon as a Lead Customer Service Representative position
10   became available.  (Sanders Dep. 113:19-114:11.)  At around the same time, a Lead Customer
11   Service Representative was transferred from the San Francisco FBO facility to work at Signature
12   Flight's Las Vegas FBO.  This departure created a Lead Customer Service Representative opening
13   for the first time in over a year. (True Dec., ¶ 11.)  Because there was not sufficient supervision on
14   the overnight shift, and specifically because there was no Operations Supervisor, Customer Service
15   Supervisor, or Lead Customer Service Representative who regularly worked on the graveyard shift,
16   Mr. True decided that a new Lead Customer Service Representative position would be created on the
17   graveyard shift rather than filling the vacated day shift position.  (True Dec., ¶ 11.)  Accordingly, in
18   late June 2004, a position was posted for Lead Customer Service Representative for the "Graveyard
19   Shift 2200-0630."  (Sanders Dep. 183:10-23; Exh. 45; True Dec., ¶ 11.)  Ms. Sanders admits that she
20   did not apply for this position because she did not feel comfortable working at the airport at night
21   where she would also be responsible for security.  (Sanders Dep. 150:17-151:10; 183:21-23; True
22   Dec. ¶ 12.)

23

24

---

25   [6]   Plaintiff Sanders also contends that she complained to her superiors during this same time period
          regarding what she thought was discrimination against African-American and female
26        employees. (Sanders Dep. 118:6-18.)  Although Ms. Sanders' complaints were not truly race
          based (because she admits complaining about the preferential treatment allegedly received by
27        another African-American employee, Plaintiff Jones), for the purposes of this motion only,
          Defendants do not dispute that Ms. Sanders made complaints about allegedly unfair treatment.
28        (Sanders Dep. 120:25-121:23.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002          6.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1       Approximately one month later on July 26, 2004, the swing shift Lead Customer

2  Service Representative was terminated, again creating a potential Lead Customer Service

3  Representative opening.  (Sanders Dep. 151:11-16; 152:18-153:2; True Dec.¶ 14.)  This time,

4  however, Defendant True decided not to fill the position at all, but to abolish it because he felt that

5  the Customer Service Supervisor who split his time between the day and the swing shifts could

6  adequately cover the lead role on the swing shift, thereby reducing labor costs.[7]  (Sanders Dep.

7  152:18-153:7; 188:20-25; 189:4-14; 192:7-193:2; True Dec. ¶¶ 13-14.)  Accordingly, there was

8  actually no promotional opportunity available, and Plaintiff Sanders did not apply for any Lead

9  Customer Service Representative positions during her employment at Signature Flight.  (Sanders

10  Dep. 190:2-5.)

11       **3.    Plaintiff Sanders' Termination.**

12       As noted, in the summer of 2004, all employees with access to the secure ramp area

13  of the FBO were required to complete a U.S. Customs Service Application for issuance of a Customs

14  Security Area Seal, successfully pass a background check, and obtain the Security Seal as a

15  condition of continued employment with Signature Flight.  The Security Seal was to be placed on

16  the employee's Airport badge, which allowed access to secured areas, including the secure area in

17  and around international aircraft.  Without the required Security Seal, individuals could not be

18  employed at Signature Flight except in human resources, accounting, valet or van driver positions.

19  (True Dec., ¶¶ 18-22.)

20       During the first part of August 2004, Defendant True was notified that Plaintiff

21  Sanders had been denied a Customs Security Area Seal.  (True Dec., ¶ 23; Sanders Dep. 82:22-83:2;

22  Exh. 42.)  Although Ms. Sanders claims she never received notice of the denial, on August 5, 2004,

23  the U.S. Customs Service also notified Ms. Sanders that her application had been denied because of

24  her 1999 weapons conviction.  (Sanders Dep. Exh. 41.)  The letter notified her that she had ten days

25  to appeal the decision.  (Sanders Dep. 80:6-16; Exh. 41.)

---

[7]  In fact, the position remained unfilled for more than a year following Plaintiff Sanders' termination.  (True Dec., ¶ 14.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80594772.1 049112.1002     7.     CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1    Because the background check process had not been fully completed for all

2   employees, Signature Flight did not immediately terminate Plaintiff Sanders' employment. (True

3   Dec. ¶ 23.) Rather, it waited until the process was completed and then telephoned the U.S. Customs

4   office at the Airport to inquire when the Customs Security Area Seal requirement would become

5   effective. On or about September 20, 2004, Signature Flight was informed by the U.S. Customs

6   Service that all background checks had been completed and that the Security Seal requirement would

7   then be enforced. From that point forward, Signature Flight employees at the San Francisco FBO

8   were not allowed to work on the ramp without the required Security Seal. (True Dec., ¶ 21-22.)

9    As Plaintiff Sanders' attempt to obtain the Customs Security Area Seal was denied,

10   she was no longer qualified to work in any customer service or line position at Signature Flight's

11   San Francisco FBO. (True Dec. ¶ 23-24.) In that Ms. Sanders did not have any experience that

12   would have rendered her qualified for any other non-secured positions at the Company, and because

13   no such positions were open at the time, there was no alternative but to terminate her employment.

14   (True Dec. ¶ 23.) Ms. Sanders was notified by Defendant True on September 21, 2004 at the start of

15   her shift that her employment with Signature Flight was being terminated. (Sanders Dep. 73:25-

16   74:21; True Dec. ¶ 24.) Ms. Sanders admits that the only reason she was given for her termination

17   was the fact that she had been denied the Customs Security Area Seal by the U.S. Customs Service.

18   (Sanders Dep. 74:19-21; 77:11-25; Exh. 40.) During the meeting, Ms. Sanders informed Mr. True

19   that she wanted to appeal the decision, and she admits she was told that if she "cleared Customs" she

20   would be allowed to return to work. (Sanders Dep. 75:21-76:76:13; 77:15-23; Exh. 40; True Dec.

21   ¶ 24.) Inexplicably, Ms. Sanders never appealed the Customs decision and never sought to return to

22   work at Signature Flight.[8] (Sanders Dep. 86:15-19; True Dec. ¶ 24.)

23    **C.    Plaintiff Sanders' EEOC Charge And The Instant Complaint.**

24    In early September 2004, Plaintiff Sanders filed a complaint with the EEOC alleging

25   that she had been discriminated against on the basis of her race and gender. (Sanders Dep. Exh. 29.)

26   Following her termination, Ms. Sanders filed a revised EEOC charge and then ultimately the instant

27
28

[8]   Instead, after about one month, Plaintiff Sanders obtained new employment and was earning
    more money than she had at Signature Flight. (Sanders Dep. 259:23-260:21; 263:19-264:9.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002          8.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1    Complaint. (Sanders Dep. Exh. 30.) In it, she makes several claims for race and sex discrimination

2    and retaliation, including the failure to promote and termination claims addressed herein. (Comp.,

3    *passim*.)

4    **II.    ARGUMENT**

5          **A.    Legal Standard For Summary Judgment.**

6                Summary judgment is appropriate if the moving party demonstrates that there is "no

7    genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.

8    R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable

9    inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United*

10   *Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).  A fact is "material" if, under the applicable

11   substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of*

12   *Kansas v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart*

13   *Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is "genuine" if "there is sufficient

14   evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144

15   F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).

16               Where the nonmoving party bears the ultimate burden of proof, as Plaintiff Sanders'

17   does in this case, the moving party may meet its burden by pointing to the absence of evidence to

18   support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S. Ct. 2548

19   (1986).  A mere "scintilla" of evidence supporting the nonmoving party's position will not suffice.

20   There must be enough of a showing that a jury could reasonably find for the nonmoving party.

21   *Anderson, supra*, 477 U.S. at 252, 106 S. Ct. 2505.  "If the evidence is merely colorable…or is not

22   significantly probative, summary judgment may be granted." *Eisenberg v. Insurance Co. of N.A.,*

23   815 F.2d 1285, 1288 (9th Cir. 1987).

24               Here, although Plaintiff Sanders claims that she was discriminated against, she has no

25   evidence to support such claims.  Accordingly, Defendants' motion should be granted.  *Anderson,*

26   *supra*, 477 U.S. at 252, 106 S. Ct. 2505.

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

1

2

**B.     Plaintiff Sanders' First And Second Causes Of Action For Race and Sex Discrimination Are Subject To Summary Judgment.**

3        In her Complaint, Plaintiff Sanders claims that she was discriminated against in

4   several different ways because of either or both her sex (female) or her race (African-American).

5   (Comp., ¶¶ 60-69.) Specifically, she claims that she was twice passed over for promotion and was

6   ultimately terminated, all because she is an African-American woman.[9]  (Comp., ¶¶ 53-54.)  Ms.

7   Sanders brings her claims under Title VII, FEHA, and Section 1981 of the Civil Rights Act.

8   Regardless of its statutory basis or the discriminatory act alleged, however, each of Ms. Sanders'

9   claims fail because, as discussed more fully below, Ms. Sanders has no evidence of discrimination.

10  *Anderson, supra*, 477 U.S. at 252, 106 S. Ct. 2505.

11       In order to prove intentional employment discrimination based on race or gender, the

12  following burden-shifting analysis is applied: (1) the plaintiff must first establish a *prima facie* case;

13  (2) the defendant may then come forward with evidence to articulate a nondiscriminatory business

14  reason for its actions; and (3) the plaintiff must then attack the defendant's nondiscriminatory

15  explanation, other than by speculation, on the grounds that it is pretextual.  *Coleman v. The Quaker*

16  *Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000).[10]  Although the burden of going forward with the

17  evidence shifts throughout this three-stage process, the plaintiff retains, at all times, the ultimate

18  burden of persuading the court that she was the victim of intentional discrimination.  *Id.* at 1281; *St.*

19  *Mary's Honor Center v. Hicks,* 438 U.S. 502, 511 (1993).  Here, Plaintiff Sanders' claims fail

20  because she can neither prove a *prima facie* case nor rebut the legitimate reasons offered by

21

22  _____

[9]   Although Plaintiff Sanders also claims that she was denied the ability to work overtime or double time and was paid less than those with similar seniority, these claims are not at issue in the instant motion. (Comp., ¶¶ 53-54.)

23

[10]  Due to the similarities between FEHA and Title VII, it is appropriate to rely on federal decisions
24     addressing Title VII claims to analyze claims brought under FEHA. *Hersant v. California Dept.*
       *of Social Servs.*, 57  Cal.App.4th 997, 1001, 67 Cal.Rptr.2d 483, 485 (1997) (citing *Caldwell v.*
25     *Paramount Unif. Sch. Dist.*, 41 Cal.App.4th, 189, 195, 48 Cal.Rptr.2d 448, 452-453 (1995)).
       Likewise, because a Section 1981 claim is "predicated on the same elements as a [race]
26     discrimination claim under Title VII," both claims may be analyzed together. *Lalvani v. Cook*
       *Co.*, 269 F.3d 785, 789 (7th Cir. 2001), *Lowe v. Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1995)
27     ("the same standards are used to prove both claims"); *Stones v. LA Community College Dist.*,
       796 F.2d 270, 274 (9th Cir. 1986) (McDonnell Douglas burden shifting analysis applies to a
28     Section 1981 claim).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002                    10.                    CASE NO.  C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1   Defendants for their actions, and thereby cannot prove intentional discrimination as a matter of law.

2          **1.     Plaintiff Sanders' Claim For Discrimination Based On The July 2004**

3                 **Promotion  To The Graveyard Shift Lead Customer Service**
              **Representative Position Fails Because Sanders Admits She Never Applied**

4                 **For The Job.**

5                 **a.     Plaintiff Sanders Cannot Establish A *Prima Facie* Case Of**
                      **Discrimination With Respect To The Alleged Promotional**

6                         **Opportunity Posted in June 2004 And Filled In July 2004.**

7            Plaintiff Sanders' first allegation is that in approximately July 2004, she was passed

8   over for a promotional opportunity when another Lead Customer Service Representative left the San

9   Francisco FBO to transfer to the Las Vegas FBO. (Comp., ¶ 53-54.)  As noted, an allegation of

10  unlawful employment discrimination such as this requires that Ms. Sanders first raise a presumption

11  that discrimination occurred by establishing a *prima facie* case.  *McDonnell-Douglas Corp. v.*

12  *Green*, 411 U.S. 792, 802-807, 93 S.Ct. 1817, 1824-1827 (1973).  A *prima facie* case of

13  discrimination consists of the following elements:  (1) the plaintiff was in a protected group; (2) the

14  plaintiff applied for and was qualified for an employment opportunity or benefit; (3) the plaintiff was

15  denied the employment opportunity or benefit; and (4) that the position remained open and the

16  employer continued to seek applicants with similar qualifications or that the position was filled by

17  someone outside the protected group.  *Frausto v. Legal Aid Society of San Diego, Inc.*, 563 F.2d

18  1324, 1328 (9th Cir. 1977); *McGinest v. GTE*, 360 F.3d 1103, 1122 (9th Cir. 2004); *Taylor v.*

19  *Virginia Union Univ.*, 193 F.3d 219, 232-233 (4th Cir. 1999).

20           Plaintiff Sanders' claim fails at the outset because she admits that she never applied

21  for the Lead Customer Service Representative position on the graveyard shift that was posted in June

22  2004.[11]  In fact, Ms. Sanders testified unequivocally, that she "chose not to apply for it."  (Sanders

23  Dep. 150:17-151:11; 183:16-23.)  Ms. Sanders' failure to apply means that she cannot establish a

24  *prima facie* case of either race or sex discrimination and renders her promotion based claims subject

25  to summary judgment. *Taylor v. Hudson Pulp & Paper Corp.*, 788 F.2d 1455, 1459 (11th Cir. 1986)

26

27  [11]   The Lead Customer Service Representative Position on the graveyard shift was posted in June
2004, applications were accepted through July 2, 2004, and the position was filled on July 26,

28  2004.  (Sanders Dep. Exh. 45; True Dec. ¶ 11.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002        11.        CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1   (plaintiffs failed to establish *prima facie* case where there was no evidence they had applied for

2   position).   Although Ms. Sanders may claim that she "applied" because she inquired of her

3   supervisors regarding promotional opportunities, the law is clear that a mere inquiry is not sufficient

4   to establish a *prima facie* case of discrimination. *Devera v. Adams*, 874 F.Supp. 17, 22-23 (D.D.C.

5   1995) (where plaintiff inquired regarding opportunities but never submitted a formal employment

6   application, her claim for race discrimination was summarily dismissed); *Cruz v. Coach Stores, Inc.*,

7   202 F.3d 560, 565-566 (2nd Cir. 2000) (plaintiff's failure to promote claim denied where she failed to

8   apply for the position, even though she had previously been promised the job); *Brown v. Coach*

9   *Stores, Inc.*, 163 F.3d 706, 709 (2nd Cir. 1998) (despite the fact that plaintiff repeatedly requested

10   promotions, her failure to apply for specific job in question rendered her claims defective); *Victory v.*

11   *Hewlett-Packard Co.*, 34 F.Supp.2d 809, 818 (E.D.N.Y. 1999) (plaintiff failed to state a prima facie

12   case of discrimination where she did not apply for position even though she expressed an interested

13   to her superiors).

14              **b.   Alternatively, Plaintiff Sanders Cannot Rebut The Legitimate**
                   **Business Reason Offered By Defendant For Not Promoting Her.**
15

16              Even if Plaintiff Sanders could somehow establish that her failure to apply was

17   excused and that she was otherwise qualified for the job, her claim for discrimination would

18   nonetheless fail because Defendants have articulated several legitimate non-discriminatory reasons

19   for not promoting her in July 2004. If a plaintiff establishes a *prima facie* case, the employer need

20   only articulate "some legitimate, nondiscriminatory reason" for its actions; it does not have to prove

21   the absence of discriminatory motive. *Coleman, supra*, 232 F.3d at 1282; *Texas Dept. of Comm.*

22   *Affairs v. Burdine*, 450 U.S. 248, 254-255, 101 S. Ct. 1089 (1981); *Douglas v. Marsh*, 53 FEP Cases

23   503, 505 (N.D.Cal. 1988, *aff'd*, 895 F.2d 1416 (9th Cir. 1990). Once a legitimate business reason is

24   articulated by the defendant, the burden of production then shifts back to the plaintiff to demonstrate

25   that the employer's proffered reason is untrue or pretextual. *Id*. To defeat summary judgment, the

26   plaintiff has the burden of presenting "specific, substantial evidence of pretext." *Id*. A plaintiff's

27   mere suspicions and/or conclusions of an employer's improper motives based on speculation are

28   insufficient to meet her burden. *Id*.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002                    12.                    CASE NO. C 05 00490 CW

1    Here, there is ample undisputed evidence that Signature Flight had a policy of posting
2    available jobs and accepting formal employment applications. (True Dec. ¶ 9.) There is also
3    undisputed evidence that Plaintiff Sanders did not follow these procedures with respect to the July
4    2004 promotion, and thus Defendants had no obligation to consider her. (Sanders Dep. 150:17-
5    151:11; 183:16-23; True Dec. ¶ 12.) Ms. Sanders' failure to follow the internal application policies
6    provides a legitimate, non-discriminatory reason for the promotion decision. *Trowbridge v. AT&T,*
7    *Inc.,* 54 FEP Cases 346, 349 (N.D.Ind. 1990) (where plaintiff failed to apply, the fact that defendant
8    followed its own internal hiring policy provided a legitimate non-discriminatory reason for its
9    decision not to hire plaintiff even though she expressed an interested in the position).

10    In addition, there is ample evidence that even if Plaintiff Sanders had applied for the
11    July 2004 Lead Customer Service Representative position, she would not have been selected because
12    she was not qualified for the job. Specifically, she admits that she would not work the graveyard
13    shift, and this was an essential function of the job. (Sanders Dep. 150:17-151:10; 183:21-23; True
14    Dec., ¶ 12.) Thus, she did not meet the minimum "qualifications" for the graveyard Lead Customer
15    Service Representative position, and this lack of qualifications provides an independent basis for the
16    decision not to promote Ms. Sanders, and further supports Defendants' motion for summary
17    judgment of her promotion based claims. *Parson v. County of Del Norte,* 728 F.2d 1234, 1239 (9th
18    Cir. 1994) (where the male employee had superior qualifications than the female employee, the
19    employer had stated a legitimate reason for not promoting the female); *see also, Gonzales v.*
20    *MetPath, Inc.,* 214 Cal.App.3d 422, 428 (1989) (no evidence of discrimination where male
21    employee was the better qualified of two qualified candidates). In fact, even if the candidates are
22    equally qualified, the law does not require the employer to chose the woman over the man or the
23    minority over the non-minority applicant. *Odima v. Westin Tucson Hotel,* 991 F.2d 595, 602 (9th
24    Cir. 1993); *Casillas v. U.S. Navy,* 735 F.2d 338, 344 (9th Cir. 1984).

25    Finally, Plaintiff Sanders cannot prove that the stated reasons for the failed promotion
26    in July 2004 are pretextual for two important reasons. First, she alleges no gender or race based
27    comments linked to the promotion decision, she cannot prove that the stated reasons for not
28    promoting her are knowingly false, and she cannot prove that similarly situated persons of different

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80594772.1 049112.1002                    13.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1   races or genders received more favorable treatment. *Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th

2   Cir. 2002) ("[P]retext requires more than a showing that the decision was 'mistaken, ill considered

3   or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been

4   shown.'"); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 224 (5th Cir. 2001) (stereotypical

5   comments not connected to a specific employment decision are not sufficient to prove pretext).  The

6   mere fact that Defendants' decisions may have been arbitrary or unwise, does not establish that it is

7   discriminatory, and it is not for the trier of fact to "second guess" the defendant's business decision.

8   *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *see also, Villiarimov. Aloha Island Air, Inc.*,

9   281 F.3d 1054, 1063 (9th Cir. 2002) (no finding of discrimination even if proffered legitimate

10  business reason is "foolish, trivial or baseless").   Likewise, Ms. Sanders' mere speculation that

11  unlawful discrimination motivated the employment actions that affected her is insufficient to meet

12  her burden and defeat the instant motion.[12]  *McMillan v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)

13  ("subjective beliefs of the plaintiff are insufficient to create a genuine issue of material fact"

14  sufficient to defeat summary judgment).

15          Second, as she was hired and allegedly denied promotional opportunities by the

16  "same actor," (Defendant True) there is a strong inference that the decisions that affected Plaintiff

17  Sanders could not have been motivated by intentional race or gender discrimination.  (True Dec. ¶¶

18  1, 4, 10, 11, 12, 14); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-271 (9th Cir. 1996); *see*

19  *also, Buhrmaster v. Overnite Trasp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995) (the "same actor"

20  inference applies in all types of discrimination cases and may be applied even if there is a long time

21  period between the hiring and the adverse action); *EEOC v. Our Lady of the Resurrection Md. Ctr.*,

22  77 F.3d 145, 152 (7th Cir. 1996) (the same actor inference "has strong presumptive value" in a race

23  discrimination case); *West v. Bechtel Corp.*, 96 Cal.App.4[th] 966, 980, 981 (2002).  Indeed, the law is

24  clear that where the same actor is responsible for both the hiring and allegedly unlawful treatment of

25  a discrimination plaintiff, there can be no discriminatory motive.  As many courts have noted:

26

27  [12]  Significantly, Plaintiff Sanders admits that no one ever told her that she had been mistreated
         because she was either African-American or a woman, and thus she has no direct evidence of
28       discrimination.  (Sanders Dep. 230:3-231:16.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

1
> One is quickly drawn to the realization that claims that employer animus exists [later in employment] but not in hiring seems irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to [discriminate against] them once they are on the job.

2

3

4

5   *Id.*; *citing, Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (age discrimination); *Bradley, supra,*

6   104 F.3d at 270 (applying the reasoning to a sex discrimination case); *Lowe v. JB Hunt Transp., Inc.*

7   963 F.2d 173, 175 (8th Cir. 1992) (finding argument that company developed aversion to older

8   people less than two years after hiring older worker is "simply incredible"); *Miller v. Citizens Sec.*

9   *Group, Inc.* (8th Cir. 1997) 116 F.3d 343, 348 (finding it "unbelievable" that individual who hired

10  person in a protected category suddenly developed an aversion to that category less than three years

11  later).  As Ms. Sanders has no evidence to overcome this strong inference of no discrimination, her

12  claims must be dismissed.

13
14   **2.   Plaintiff Sanders' Claim For Discrimination Based On The Denial Of Promotion To A Second Lead Customer Service Representative Position That Became Vacant In July 2004 And Allegedly Was Not Thereafter Posted Fails Because Sanders Was Never Denied The Job.**

15
16   **a.   Plaintiff Sanders Cannot Establish A *Prima Facie* Case Of Discrimination With Respect To The Alleged Second July 2004 Promotional Opportunity.**

17

18  Plaintiff Sanders next claims that she was discriminated against when she was denied

19  a promotion to the Lead Customer Service Representative position that allegedly became available

20  on July 26, 2004.  (Comp., ¶ 53-54.)  As noted, however, Plaintiff Sanders admits that there was no

21  position posted in August 2004, and further admits that she never submitted an application.[13]

22  Accordingly, Ms. Sanders' claim necessarily fails because she cannot establish a *prima facie* case of

23  discrimination.      (Sanders Dep. 152:18-153:7;  188:20-25;  189:4-14;  190:2-5;  192:7-193:2.)

24

25  [13]  As discussed above, on July 26, 2004, the swing shift Lead Customer Service Representative
26  was terminated, creating a potential Lead Customer Service Representative opening. (Sanders Dep. 151:11-16; 152:18-153:2; True Dec.¶ 14.)  However, Defendant True decided not to fill
27  the position because he felt that the Customer Service Supervisor who split his time between the day and the swing shifts could adequately cover the lead role on the swing shift, thereby reducing labor costs.  (Sanders Dep. 152:18-153:7; 188:20-25; 189:4-14; 192:7-193:2; True
28  Dec. ¶¶ 13-14.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002                    15.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1   *Chambers v. Wynne School Dist.*, 909 F.2d 1214, 1217-1218 (8th Cir. 1990) (because plaintiff did

2   not apply for the job, her claim fails even though the job was never formally posted); *see also,*

3   *Taylor, supra,* 788 F.2d at 1459.  This is true despite the fact that Ms. Sanders may have expressed

4   interest in an open position. *Devera, supra,* 874 F.Supp. at 22-23.; *Cruz, supra,* 202 F.3d at 565-

5   566.

6              Even if Plaintiff Sanders could somehow prove that she applied for the position in

7   question, however, her *prima facie* case is still defective as the undisputed evidence establishes that

8   the position was not filled at the time, remained unfilled for more than one year, Defendants did not

9   continue to take applications during the majority of that period, and thus the position was not filled

10  by someone outside of her protected categories.  (True Dec. ¶14.)  As Ms. Sanders can neither prove

11  that Signature Flight continued to seek applicants with similar qualifications, nor hired a non-

12  African-American male employee to fill the position, her claims fail and Defendants are entitled to

13  judgment. *Frausto, supra,* 563 F.2d 1328 (9th Cir. 1977); *McGinest, supra,* 360 F.3d at 1122.

14              **b.    Alternatively, Plaintiff Sanders Cannot Rebut The Legitimate**
                            **Business Reason Offered By Defendant For Not Promoting Her.**
15

16              Even if Plaintiff Sanders could somehow establish a *prima facie* case of

17  discrimination related to the alleged second July 2004 promotional opportunity, her claim will

18  nonetheless fail because she cannot rebut the legitimate business reason advanced by Defendants.

19  First, as Ms. Sanders admits there was no position posted at the time, Defendants had no obligation

20  to take any action regarding her employment.  (Sanders Dep. 152:18-153:7; 188:20-25; 189:4-14;

21  190:2-5; 192:7-193:2.)

22              Second, and perhaps more importantly, even if the job had been posted, it is

23  undisputed both that Plaintiff Sanders was not "qualified" for the job and that the position was not

24  filled for more than one year.  (Sanders Dep. 15017-151:10; True Dec., ¶ 12.)  Because, as discussed

25  more fully below, Ms. Sanders was terminated for legitimate business reasons prior to the time the

26  position was filled (the failure to obtain the required Customs Security Area Seal rendered her

27  unqualified for any line or customer service positions at Signature Flight), she can not prove pretext

28  sufficient to defeat the instant motion. *Consor v. Occidental Life Insurance Co.,* 469 F.Supp. 1110,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002                    16.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1  1114-1115 (N.D. Tex. 1979) (granting summary judgment in favor of employer where employer

2  never had opportunity to reject plaintiff for position); *Howard v. Summit County Welfare Dept.,* 525

3  F.Supp. 1084, 1091 (N.D. Ohio 1981) (plaintiff was not rejected and could not prove pretext where

4  the job was eliminated).

5          Finally, even if Plaintiff Sanders had applied, had not been terminated, and had been

6  rejected from the Lead Customer Service Representative position at issue, she still can not prove

7  pretext because of the "same actor" presumption discussed above.  That is, because Defendant True

8  both hired and would have made the decision not to promote Ms. Sanders, it is simply unbelievable

9  that he would have done so simply to engage in intentional discrimination.  (True Dec. ¶¶ 1, 4, 10,

10  11, 12, 14); *Bradley, supra,* 104 F.3d at 270-271.  Accordingly, Ms. Sanders cannot prove pretext

11  and her claims as subject to judgment.

12       **3.**     **Plaintiff Sanders' Claim For Discrimination Based On Her Termination**
                      **Fails Because She Cannot Prove Pretext.**

13

14          Plaintiff Sanders' final discrimination based claim is that she was unlawfully

15  terminated on September 21, 2004 when the U.S. Customs Service denied her security clearance and

16  a Customs Security Area Seal.  (Comp., ¶ 55.)  Like her other claims, this one fails because she

17  cannot rebut the legitimate business reason proffered by Defendants, and thus cannot prove pretext.

18  *Coleman, supra,* 232 F.3d at 1281.

19          As noted, Plaintiff Sanders admits that she was terminated for failing to obtain the

20  U.S. Customs Security Area Seal.  (Sanders Dep. 73:25-74:21; 74:19-21; 77:11-25; Exh. 40.)

21  Further, although she claims she initially did not receive notice, Ms. Sanders does not deny that her

22  application for the Security Seal was actually rejected by the U.S. Customs Service.  (Sanders Dep.

23  80:6-1682:22-83:2; Exhs. 41, 42.)  Significantly, Ms. Sanders also admits that she never took any

24  steps to appeal the denial, and further admits she is unaware that any other Customer Service

25  Representatives were allowed to work at Signature Flight without the required Security Seal.

26  (Sanders Dep. 86:15-19; 101:24-102:102:11.)

27          Clearly, Plaintiff Sanders cannot dispute the legitimate reasons offered for her

28  termination and cannot prove pretext, as she has no "evidence" other than her own conclusory

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002           17.           CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1   allegations. *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988)

2   ("purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will

3   not bar summary judgment"). Significantly, Ms. Sanders admits that she was told that if she

4   "cleared Customs" she would be allowed to return to work. (Sanders Dep. 75:21-76:76:13; 77:15-

5   23; Exh. 40; True Dec. ¶ 24.) Such a statement belies any discriminatory intent and precludes a

6   finding of intentional employment discrimination.

7           In addition, it is undisputed that no other customer service or line employees (hourly

8   or management) have been allowed to work at Signature Flight without the Security Seal since the

9   time the requirement was implemented in September 2004. (True Dec., ¶¶ 17-21.) As such, Ms.

10  Sanders' termination related claims are subject to summary judgment, as she cannot show that she

11  was treated any differently than any similarly situated white or male employees. *Trowbridge, supra,*

12  54 FEP 346, 349 (no evidence or pretext where defendant consistently followed its own internal

13  policies); *Williams v. Herman Goelitz Candy Co.*, 70 FEP Cases 719, 722-723 (E.D. Cal. 1995) (no

14  race discrimination where there was no evidence that similarly situated white employees were

15  treated differently than plaintiff).

16          Finally, at least one court has held that the District Courts have no subject matter

17  jurisdiction to hear Title VII claims related to the denial of security clearances, for to do so would

18  require the court to question and possibly overturn the finding of a separate arm of the government.

19  *Bennett v. Ridge*, 321 F.Supp.2d 49, 55 (D.D.C. 2004). Indeed, even if the security clearance

20  requirements somehow created a disparate impact on African-American or female employees, they

21  could not be challenged under Title VII. *Molerio v. F.B.I.*, 749 F.2d 815, 823 (D.C. Cir. 1984)

22  (holding that "42 U.S.C. § 2000e-2(g) specifically acknowledges the general validity of national

23  security clearance requirements"). Accordingly, Plaintiff Sanders' termination related claim must be

24  rejected for this independent reason as well.

25      **C.    Plaintiff Sanders' Third Cause Of Action For Retaliation Is Subject To
               Summary Adjudication.**

26

27          In her Third Cause of Action, Plaintiff Sanders recasts the same allegations, this time

28  claiming that Defendants had a retaliatory motivation and that they were out to get her because she

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80594772.1 049112.1002          18.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders

1   had made a complaint of discrimination when she filed her September 1, 2004 EEOC Charge.

2   (Comp. ¶ 74.)  In order to establish a *prima facie* case of retaliation, Ms. Sanders must show:  (1)

3   that she engaged in a protected activity; (2) that she was thereafter subjected to an adverse

4   employment action; and (3) a causal link between the two.  *Jordan v. Clark,* 847 F.2d 1368, 1376

5   (9th Cir. 1988); *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir. 1987).  Even if Ms. Sanders can

6   prove a causal link based on timing or other evidence of retaliatory motive, her claim can be

7   overcome by proof that Defendants acted based on a legitimate business reason unrelated to the

8   alleged protected activity.  *Jordan, supra,* 847 F.2d at 1377.  Where, as here, Ms. Sanders has no

9   evidence that the proffered reason is pretextual, summary judgment is appropriate.  *Vasquez v.*

10  *County of Los Angeles,* 349 F.3d 634, 646 (9th Cir. 2003); *Ray v. Henderson,* 217 F.3d 1234, 1244

11  (9th Cir. 2000).

12          As discussed in detail above, Plaintiff Sanders' termination was appropriately based

13  on the fact that she failed to pass the required security clearance and obtain a Customs Security Area

14  Seal.  As Ms. Sanders has no evidence to prove that the reasons provided by Defendants for the

15  actions taken against her were not legitimately motivated by business reasons, her claims are

16  appropriate for summary judgment.  *Vasquez, supra,* 349 F.3d at 646.

17          **D.   Plaintiff Sanders' Fourth Cause Of Action For Wrongful Termination In**
            **Violation Of Public Policy Is Subject To Summary Judgment.**
18

19          In her Complaint, Plaintiff Sanders alleges that she was wrongfully discharged in

20  violation of the various state and federal statutes. (Comp., ¶ 79, 81.)  In support of her cause of

21  action, Ms. Sanders repeats the same allegations that support her claims for discrimination and

22  retaliation based upon those same statutes.[14] (Comp., ¶¶ 62, 67, 75, and 79.)  As such, Ms. Sanders'

23  _____

24  [14]  Although Plaintiff Sanders also bases her wrongful termination claim on section 12B of the San
    Francisco Administrative Code, this section simply restates the requirements of FEHA that no
25  employer in the City of San Francisco may discriminate against its employees on the basis of
    race or gender.  (Comp., ¶ 79.)  Although it is unclear whether this statute is sufficiently
26  "substantial and fundamental" to support such a claim, that question does not have to be reached
    in connection with the instant motion.  *Sullivan v. Delta Airlines,* 58 Cal.App.4th 938 (1997).
27  That is, because Ms. Sanders' claims fail under FEHA, they would likewise fail under the San
    Francisco Administrative Code, and are thereby insufficient to support Ms. Sanders' wrongful
28  termination claim as a matter of law.  *Jennings,* 8 Cal.4th at 135-136; *Nelson,* 74 Cal.App.4th at
    613, fn. 4.

1   wrongful discharge claim is indisputably based upon the same conduct as her discrimination and

2   retaliation claims.  Consequently, Ms, Sanders cannot, as a matter of law, prevail on her wrongful

3   discharge claim unless she can also establish her discrimination and/or retaliation claims. *Jennings*

4   *v. Marralle,* 8 Cal. 4th 121, 135-136 (1994) (where plaintiff's termination did not violate FEHA, her

5   employer could not be held liable for violating the public policy which is embedded in that statute);

6   *Nelson v. United Technologies*, 74 Cal.App.4[th] 597, 613, fn.4 (1999) (statutory claim subject to

7   summary judgment when summary judgment granted on public policy claim based upon same

8   statutory claim); *see also Stevenson v. Superior Court,* 16 Cal.4[th] 880, 904 (1997) (stating when a

9   plaintiff relies upon a statutory prohibition in violation of public policy, the common law claim is

10  subject to the statutory limitations affecting the nature and scope of the statutory prohibition);

11  *Williams, supra,* 70 FEP Cases at 723.

12          As established above in Section "B" above, Plaintiff Sanders cannot, as a matter of

13  law, establish her discrimination or retaliation claims in violation of the Fair Employment and

14  Housing Act. Therefore, her wrongful discharge claim must similarly fail and summary judgment is

15  appropriate. *Jennings*, 8 Cal.4[th] at 135-136; *Nelson*, 74 Cal.App.4[th] at 613, fn. 4.

16  **III.    CONCLUSION**

17          For the foregoing reasons, Defendants respectfully request that their motion for

18  partial summary judgment on Plaintiff Aljarice Sanders' promotion, termination, and retaliation

19  claims be granted.

20  Dated: December 2, 2005

21

22

23                                          ALAN B. CARLSON
                                            LITTLER MENDELSON
24                                          A Professional Corporation
                                            Attorneys for Defendants
25                                          SIGNATURE FLIGHT SUPPORT
                                            CORPORATION; BBA AVIATION
26                                          SHARED SERVICES, INC.; BBA GROUP
                                            U.S. HOLDINGS, INC.; STEVE TRUE;
27                                          DENNIS SMITH, VAL VADEN

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

FIRMWIDE:80594772.1 049112.1002                    20.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Judgment On Promotion and Termination Claims Of Plaintiff Aljarice Sanders