IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMILTON, et al., | No. C 05-0490 CW (MEJ) |
| Plaintiff(s), | |
| vs. | **ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS** |
| SIGNATURE FLIGHT SUPPORT CORP., et al., | |
| Defendant(s). | |

## I.    INTRODUCTION

Before the Court is Plaintiffs' Motion for Sanctions Against defendant Signature Flight Support Corporation ("Signature").  Plaintiffs seeks sanctions for the destruction of video surveillance recordings that allegedly contained evidence critical to Plaintiffs' claims.  After careful consideration of the parties' papers, oral arguments at the December 15, 2005 hearing, the applicable statutory and case law authorities, and good cause appearing, the Court  DENIES Plaintiffs' motion for the reasons set forth below.

## II.    BACKGROUND

**A.    Factual Background**

This case involves claims of discrimination against African Americans and women, and retaliation against employees who complain about unlawful practices.  Signature is a flight support operation providing services to private planes and executive jets.  Signature serves as a Fixed Based Operator ("FBO") at numerous airports, which means it leases infrastructure from airports to provide services and amenities to private aircrafts.  Plaintiffs are four African American employees who worked at Signature's San Francisco FBO.

On July 15, 2004, an incident occurred between plaintiff Bobby Jones and defendant Val Vaden,

1   Signature's customer.  Based on the parties' arguments and the surveillance video provided by Plaintiffs in

2   connection with this motion (Decl. of Steve Cikes, Ex. H), it appears that the altercation initially started as

3   Mr. Vaden entered the FBO entrance in his vehicle.  Plaintiffs allege that Mr. Vaden almost hit Mr. Jones

4   as he raced down the driveway at an excessive rate of speed.  While walking toward the parking lot and

5   away from Mr. Vaden's vehicle, the video shows that Mr. Jones turned to face the direction of Mr. Vaden

6   and his vehicle, putting his hands in the air while walking backwards.  Apparently in response to Mr. Jones

7   motions and/or words, Mr. Vaden walks up to Mr. Jones.  Plaintiffs allege that Mr. Vaden then attempted

8   to rip his name tag off of his chest.  The video shows that Mr. Vaden grabbed the name tag, although it is

9   unclear if he tried to rip it off his chest or grabbed it to read his name, and then walked away from Mr.

10  Jones and back towards the FBO entrance as Mr. Jones continued to head towards the parking lot.  The

11  video continues uninterrupted for approximately one minute after this incident, during which Mr. Jones

12  continues walking to the parking lot and Mr. Vaden is seen around his vehicle.

13       At this point there is a gap in the video and the next portion of the video shows Mr. Jones and Mr.

14  Vaden in the same camera view.  The two appear to be in an altercation which started before they entered

15  the camera's view.  Messrs. Jones and Vaden continue the altercation for over three minutes in the video,

16  when it abruptly ends.  At one point in this second portion Mr. Jones walks away from Mr. Vaden, but

17  then comes back and the two continue arguing.  There appears to be no physical contact between them in

18  the second portion of the video.  Signature contends that Mr. Vaden reported that Mr. Jones called him an

19  "asshole" and subjected him to other inappropriate and unprofessional conduct.  On July 26, 2004,

20  Signature terminated Mr. Jones' employment.

21       Although the factual circumstances of the altercation are in dispute, Signature informed Plaintiffs in

22  its initial disclosures that it possessed video recordings of the July 15 incident.  On August 3, 2005,

23  Signature produced a compact disc containing two segments from a surveillance camera at Signature's San

24  Francisco location, containing recordings of the July 15 incident.

25       On August 24, 2005, Plaintiffs' counsel requested that Signature provide the original video

26  recording in addition to all other video recordings from Signature's San Francisco FBO from July 15, 2004.

27  Plaintiffs' counsel further requested information concerning Signature's surveillance recording systems as

28

2

well as a chain of custody of the DVD disc produced. Signature's counsel responded that the disc produced contained the only remaining footage from that day because Signature's surveillance system automatically records over previous tapings every 15 to 30 days and that the compact disc contained the only two recordings that actually showed the incident.

**B.  Procedural Background**

On November 7, 2005, Plaintiffs filed their Motion for Sanctions Against Defendant Signature Flight Support Corporation for Spoliation of Evidence. Plaintiffs also filed the Declarations of Steve Cikes and Bobby Jones in support thereof.

On November 23, 2005, Signature filed its Opposition, as well as the Declarations of Robert Wilger, Steve True, Norman Ramirez, Val Vaden, and Paul Jurusov in support thereof.

On December 1, 2005, Plaintiffs filed their Reply.

On December 7, 2005, Signature filed the Supplemental Declaration of Robert Wilger, which contains portions of the deposition of Bobby Jones. As Mr. Jones' deposition transcript was unavailable at the time Signature filed its opposition, the Court permitted its late filing and allowed Plaintiffs the opportunity to file a response thereto.

On December 12, 2005, Plaintiffs filed the Declaration of Donald Hamilton, and on December 13, 2005, they filed the Supplemental Declaration of Steve Cikes.

On December 13, 2005, Signature filed its Objections to Plaintiffs' declarations, arguing that the declarations are not responsive to the Court's December 8 Order and contain additional evidence that was available either at the time Plaintiffs filed their motion or their reply. Finding it preferable to decide this matter on its merits, the Court permitted the late filing of Plaintiffs' declarations.

On December 15, 2005, the Court held a hearing on the matter. Steve Cikes and Sharon Vinick appeared on behalf of Plaintiffs. Alan Carlson appeared on behalf of Signature.

### III.  DISCUSSION

In their motion, Plaintiffs seek sanctions against Signature for its alleged destruction of evidence, thereby substantially prejudicing Plaintiffs' ability to prosecute this action and support their claims. Plaintiffs contend that the recordings produced by Signature are incomplete and altered in three respects. First,

1 Plaintiffs note that there is a time gap between the two segments, and there is no time marking of the disc to
2 determine the size of the time gap.  Second, Plaintiffs note that the recording ends prematurely, as the
3 incident appears to continue as the recording abruptly ends.  Finally, Plaintiffs contend that the compact
4 disc contains only the recording from one camera when it is clear that the incident took place in the field of
5 view of other cameras; particularly another outside camera, the camera in the corridor leading to the door,
6 and the camera in the lobby.  Plaintiffs seek issue related sanctions establishing that Signature did not have a
7 proper basis for terminating Mr. Jones and barring all defenses to the contrary.

8 In response, Signature argues that it preserved the only video of the incident and that Plaintiffs filed
9 the present motion in an effort to overcome conclusive evidence that it had good cause to terminate Mr.
10 Jones.  Signature further argues that Plaintiffs failed to properly investigate their motion prior to filing,
11 submitted no evidence to support their claim that critical evidence has been destroyed, and provided no
12 evidence that they have been prejudiced in their ability to prosecute their claims.  Signature contends that
13 numerous witness statements, including those made by Bobby Jones himself, conclusively establish that the
14 video is a true and accurate recording of what happened on July 15, 2004.  As such, Signature requests
15 that the Court deny the motion and award Signature monetary sanctions for the costs of having to oppose
16 their motion.

17 **A.     Legal Standard**

18 Courts are vested with inherent powers that are "governed not by rule or statute but by the control
19 necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious
20 disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R.*
21 *Co.*, 370 U.S. 626, 630-31 (1962)).  The Ninth Circuit has recognized as part of a district court's inherent
22 powers the "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair
23 and orderly trial." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.1980) (citations omitted).
24 Thus, sanctions for spoliation of evidence may be imposed under the court's inherent power to manage its
25 own affairs.  *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998).

26 Where the nature of the alleged breach of a discovery obligation is the non-production or
27 destruction of evidence, courts have broad discretion in fashioning an appropriate sanction, including the

28                                                                 4

giving an adverse inference instruction. *Residential Funding Corp. v. DeGeorge Fin'l Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citing *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir.1999)). "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Id.* (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir.2001)).

Courts determine the proper sanction for destruction of relevant evidence on a case-by-case basis. *Unigard Security Ins. Co. v. Lakewood Eng. & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). The following factors are generally considered in choosing an appropriate sanction: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

**B.     Application to the Case at Bar**

Here, before determining any sanction for destruction of evidence, the Court must first determine whether any spoliation actually occurred. On the date of the incident, defendant Steve True, Area General Manager responsible for Signature's San Francisco FBO, requested that Paul Jurusov, the base's Facilities and Equipment Manager, review the video that afternoon to determine if any of the incident was captured on the closed circuit television system at the base. Although there are 43 cameras on the base, Mr. Jurusov states that he found only one camera that recorded the incident. Decl. of Paul Jurusov ¶ 5. Mr. Jurusov downloaded the video of the incident to two compact discs, and Signature ultimately provided a copy to Plaintiffs. Thus, Signature argues that it preserved the only recording of the incident that existed.

Upon review of the surveillance video, it is apparent that Signature destroyed at least a portion of the evidence. Specifically, it is undisputed that the second portion of the recording ends prematurely, prior to the altercation's conclusion. Thus, the Court finds that Signature did destroy at least a portion of the

relevant surveillance video and rejects Signature's argument to the contrary.

    1. <u>Whether Plaintiffs have established that Signature destroyed relevant evidence with a culpable state of mind</u>

As Plaintiffs seek an adverse inference instruction establishing that Signature did not have a proper basis for terminating Mr. Jones and barring all defenses to the contrary, the Court shall examine the three factors set out in *Residential Funding Corp.*, 306 F.3d at 107.

    *a.    whether Signature had an obligation to preserve the surveillance video*

First, Plaintiffs must show that Signature had an obligation to preserve the surveillance recordings from the July 15 incident. *Id.* Plaintiffs argue that Signature was on clear notice that litigation was likely to result from Mr. Jones' termination because Signature knew that: (1) he had just two months prior filed a formal complaint of racial discrimination with the company; (2) Mr. Jones was a witness for plaintiff Donald Hamilton's charge of discrimination against it; and (3) Mr. Jones maintained that he did not act inappropriately throughout the altercation and had provided the company with independent witnesses to support his version of the events. Plaintiffs contend that these instances, taken together, sufficiently placed Signature on notice that litigation arising from Mr. Jones' termination would soon follow.

In response, Signature argues that it had no notice that Mr. Jones would file any claim as a result of his termination. Signature states that Mr. Jones did not inform anyone within Signature that he would be challenging the decision. Although Mr. Jones had previously made complaints to Signature that he believed he was being discriminated against, Signature contends that he had never threatened to take his claims to the EEOC or to file a civil action over his complaints. Signature states that it was not until September 1, 2004, when it received Mr. Jones' charge filed with the EEOC, that it learned of his intentions.

Upon review of the parties' arguments, the Court finds that Signature was obligated to preserve the surveillance recordings. First, although Signature did not receive notice of Mr. Jones' EEOC charge until September 1, 2004, six weeks after the July 15 incident, it knew that Mr. Jones had made a previous internal complaint of discrimination and maintained that the discriminatory acts persisted. Second, Mr. Jones maintained that he did not act inappropriately during his encounter with Mr. Vaden and that the video surveillance footage of the incident would support his version of the events. Third, Signature's own conduct

6

1  while investigating the July 15 incident tends to support the finding that litigation arising from Mr. Jones'
2  termination was reasonably foreseeable. During the course of its investigation, Signature personnel made
3  the conscious decision to excerpt two segments from the surveillance recording. Opp. at 3:19-4:7, Jurusov
4  Decl. ¶ 7. Signature personnel then proceeded to save those segments onto a compact disc and provided
5  them to defendant Dennis Smith, the company's vice president of human resources who had previously
6  "investigated" Mr. Jones' internal complaint of discrimination. *Id.* Given the totality of the circumstances,
7  the Court finds that Signature was obligated to preserve the surveillance video. *See Broccoli v. Echostar*
8  *Communications Corp.*, 229 F.R.D. 506, 510-12 (D. Md. 2005) (holding that the employer was on
9  sufficient notice that litigation arising from plaintiff's termination was foreseeable where plaintiff complained
10  of supervisor's harassing behavior to management before expressly notifying employer of her intention of
11  filing suit); *see also Brynie*, 243 F.3d at 108 (noting that in a hiring discrimination action the defendant had
12  notice of potential litigation even earlier than the time the complaint charge was filed because, in particular,
13  defendant received a FOIA request seeking materials related to the hiring process, and that the plaintiff had
14  expressed concerns with the defendant about the hiring process). Accordingly, Plaintiffs have met its
15  burden for this factor.

                b.     *whether Signature acted with a culpable state of mind*

17  Next, Plaintiffs must show that Signature acted with a culpable state of mind. *Residential Funding*
18  *Corp.*, 306 F.3d at 107. This factor is satisfied by a showing that the evidence was destroyed "knowingly,
19  even if without intent to [breach a duty to preserve it], or negligently." *Id.* at 108 (quoting *Byrnie*, 243 F.3d
20  at 109). Here, Signature concedes that the video ends prematurely, but it does not adequately address
21  *why* it ends prematurely.

22  In his declaration, Paul Jurusov states that he "was told to transfer the video from before the start of
23  the first event to the end of the first event and from before the start of the second event to the end of the
24  second event." Jurusov Decl. ¶ 7. He further states that to the best of his knowledge, he transferred the
25  entire incident as recorded by the camera. *Id.* This provides no explanation as to why the recording ends
26  prematurely. In its opposition, Signature argues that nothing that could have occurred after the end of the
27  recording changes the fact that the video records an altercation between Mr. Jones and Mr. Vaden. Again,

7

1  this argument does not address *why* the recording ends prematurely. At the December 15 hearing, counsel
2  for Signature stated that the recording ends prematurely because the technology Mr. Jurusov used to
3  download the surveillance video did not allow enough recording time to record the entire altercation as one
4  recorded segment. Regardless, whether Signature purposefully or negligently failed to record the end of the
5  altercation, "the risk that the evidence would have been detrimental rather than favorable should fall on the
6  party responsible for its loss." *Id.* at 109. Thus, the Court finds that Signature acted, at a minimum, in a
7  negligent manner in failing to record the end of the altercation. Accordingly, Signature acted with a culpable
8  state of mind.

       *c. whether the surveillance video is relevant*

10   Spoliation also requires awareness that the records destroyed were potentially relevant to litigation.
11 Absent such awareness, there is no spoliation. *U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 1001
12 (9th Cir. 2002). Plaintiffs argue that the surveillance recordings are relevant to the present litigation
13 because Mr. Jones alleges that he was terminated by Signature because of his race and because he had
14 previously complained about discrimination. The recordings, Plaintiffs contend, would establish the true
15 events which took place on July 15, including the parties' demeanor and behavior before and after the
16 altercation in question, and would support their assertion that Signature did not possess a legitimate basis
17 for terminating Mr. Jones.

18   In response, Signature argues that Plaintiffs have not submitted any evidence that any recording
19 other than what has been preserved on the compact discs exists and would have shown something different
20 than what has been maintained on the compact discs. Signature further argues that no additional recordings
21 would alter the conclusion that Mr. Jones got into an argument with Mr. Vaden.

22   Upon review of the parties' arguments, the Court finds that the destroyed portion of the surveillance
23 video is relevant. Any surveillance recordings of the July 15 altercation would be relevant to the present
24 litigation in that it would tend to show whether Signature possessed a legitimate basis for terminating Mr.
25 Jones for his involvement in the July 15 incident. However, Plaintiffs do not present any evidence
26 establishing that relevant evidence, with the exception of the recording that ends prematurely, has been
27 destroyed. In fact, Plaintiffs concede that they cannot disprove Signature's sworn statements that only one

8

camera captured relevant evidence from July 15, 2004. Thus, the only relevant evidence which Plaintiffs have shown was destroyed is the portion of the July 15 video that ends prematurely.

Given that it is undisputed that an altercation took place between Mr. Jones and Mr. Vaden, it is unclear how the additional recording would alter this conclusion. For purposes of relevance, however, courts must take care not to "hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence," because doing so "would subvert the ... purposes of the adverse inference, and would allow parties who have ... destroyed evidence to profit from that destruction." *Kronisch*, 150 F.3d at 128; *Byrnie*, 243 F.3d at 110. Accordingly, the Court finds that the portion of the video that ends prematurely is relevant.

   2. <u>Whether sanctions are appropriate in this matter</u>

Once a court finds that evidence has been destroyed, it must determine whether sanctions are appropriate. *Unigard*, 982 F.2d at 368. The Court shall consider the *Schmid* factors in making this determination.

     *a.* *degree of Signature's fault*

Although Signature destroyed a portion of the surveillance recording, it does not appear to have acted willfully. As discussed above, Plaintiffs have not shown that Signature intentionally destroyed the recording. In his declaration, Paul Jurusov states that he "was told to transfer the video from before the start of the first event to the end of the first event and from before the start of the second event to the end of the second event." Jurusov Decl. ¶ 7. He further states that to the best of his knowledge, he transferred the entire incident as recorded by the camera. *Id.* Thus, the most the Court can find is that Signature acted negligently in failing to preserve the end of the recorded portion of the altercation.

Several cases hold a sanction for failure to preserve evidence is appropriate "only when a party has consciously disregarded its obligation to do so." *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1481 (D.C. Cir. 1995); *see also Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (adverse inference drawn from party's failure to preserve evidence only when such failure is predicated on bad faith); *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999) (evidence exclusion proper only if party or its expert intentionally altered or destroyed evidence before

9

opposing party had opportunity to examine it).

Here, Signature maintains that it retained an accurate copy of the video of the two events from the only camera that recorded the incident, with the exception of the end of the altercation, and that it believed it had fully captured the two events. No one that has reviewed the video on the compact discs believes they are inaccurate recordings. Thus, because the Court cannot find that Signature consciously disregarded its obligation to preserve the surveillance recording, this factor weighs in favor of denying Plaintiff's motion for sanctions.

### b. *degree of prejudice suffered by Plaintiffs*

Next, the Court must consider the degree of prejudice suffered by Plaintiffs, who argue that they are at a severe disadvantage in that they can no longer conclusively affirm Mr. Vaden's outrageous behavior on July 15. Plaintiffs contend that a critical piece of evidence favorable to them is now gone, thereby compromising their ability to have a fair hearing on this evidentiary issue.

In response, Signature argues that the lost video does not in any way preclude Plaintiffs from establishing their case. Because the lost video is not the foundation for their discrimination claims, Signature contends that they have failed to meet their burden of proving that they suffered prejudice sufficient to support a finding of sanctionable spoliation of evidence.

Upon review of the parties' arguments, the Court finds that both parties have been prejudiced as a result of the destruction of the surveillance recording. Specifically, Signature argues that it terminated Mr. Jones' employment for his behavior towards customers, including the altercation with Mr. Vaden. Plaintiffs argue that Signature's stated reason is pretextual and that Mr. Jones was terminated for discriminatory reasons. Although it is undisputed that an altercation occurred, the full nature of that altercation is not captured by the retained surveillance footage. While the destroyed recording may have provided more insight into this issue, it is now left to the trier of fact, based on the remaining evidence, to determine the reason Signature terminated Mr. Jones' employment.

The Court must now determine the degree of prejudice suffered by Plaintiffs. "The test for prejudice is whether there is a reasonable possibility, based on concrete evidence, that access to the evidence which was destroyed or altered, and which was not otherwise obtainable, would produce

1  evidence favorable to the objecting party." *Nationwide*, 174 F.3d at 804.  Plaintiffs have not satisfied

2  these requirements for purposes of their motion.

3      First, Plaintiffs have not produced actual evidence of the prejudice they claim.

> The moving party usually sets forth some type of extrinsic evidence as to the content of the missing materials which demonstrates the extent to which such materials would have been harmful to the spoliator.  This corroboration is especially important where the destruction is merely negligent since there is no bad faith in such cases from which to infer the evidence would have been detrimental to the spoliator.

*Skeete v. McKinsey & Co., Inc.*, 1993 WL 256659 at *7 (S.D.N.Y. 1993).  Thus, where the moving party fails "to provide any extrinsic evidence that the subject matter of the lost or destroyed materials would have been unfavorable to [the spoliator] or would have been relevant to the issues of this lawsuit," spoliation sanctions are not warranted because the moving party relies on "pure speculation as to the content of these materials." *Id.*  Here, Plaintiffs have not presented any evidence that the retained video footage of the altercation is inaccurate.  Further, Plaintiffs have not shown the unretained portion would be unfavorable to Signature.  The footage shows that an altercation occurred between Mr. Jones and Mr. Vaden, which is the stated reason why Signature terminated Mr. Jones.  At the December 15 hearing, Signature's counsel stated that the decision to terminate Mr. Jones was made based on Mr. Jones' past conduct and the altercation as seen on the remaining video footage.  The unretained portion of the recording would not change the fact that it was not used in making the termination decision.

    Second, Plaintiffs have other evidence available.  In support of their motion, Plaintiffs submitted the statements of two witnesses, Sean Gear and Robert Jones.  Both of these witnesses claim that they saw "the entire incident."  Cikes Decl. ¶ 2, Ex. A at ¶7 and Ex. B at ¶6.  Sean Gear states that Bobby Jones and Mr. Vaden "engaged in a verbal argument," while Robert Jones describes it as an "argument." *Id.*, Ex. A ¶6 and Ex. B at ¶5.  Sean Gear further estimated that the "altercation" between Bobby Jones and Mr. Vaden that "lasted approximately one to two minutes, following which both parties went their separate ways." *Id.*, ¶2, Ex. A at ¶6.  Likewise, Robert Jones reported that "[a]fter a minute or two, the driver and Bobby Jones went their separate ways." *Id.*, ¶2, Ex. B at ¶5.  These statements confirm that the existing video is accurate.

11

Plaintiffs also have the written statement provided by plaintiff Bobby Jones during Signature's initial investigation of the matter (Decl. of Steve True, Ex. C), and his sworn deposition testimony. Supp. Decl. of Robert Wilger, Ex. 1. Accordingly, Plaintiffs have failed to establish through "concrete" evidence that the missing video would have favored their case and that Signature destroyed the records because the evidence would have been harmful to it. Thus, any prejudice suffered by Plaintiffs does not rise to the level of excluding Signature's legitimate non-discriminatory defense.

        *c.*     *whether a lesser sanction would avoid substantial unfairness to Signature*

Based on this analysis, Plaintiffs' request for an issues sanction finding that Signature did not have good cause to terminate Mr. Jones is overreaching and potentially contrary to the evidence. The trier of fact should be permitted to make the final determination as to whether Signature terminated Mr. Jones for discriminatory or legitimate reasons.

Next, the Court must consider whether a lesser sanction is appropriate. Given that Plaintiffs have not shown that Signature engaged in egregious conduct, any lesser sanction would also be inappropriate. Further, the facts that Signature took efforts to maintain the relevant video and has never attempted to mislead Plaintiffs' attorneys or the Court about its status show that Signature has not engaged in the sanctionable spoliation of evidence. *See McGinnity v. Metro-North Commuter R.R.*, 183 F.R.D. 58, 63-64 (D. Conn. 1998) (finding sanctions inappropriate where the defendant recorded over taped radio communications as part of its normal business practices and never attempted to mislead plaintiff's counsel or the court about the erased tape recording).

## IV.   CONCLUSION

For the reasons stated above, the Court hereby DENIES Plaintiffs' motion for sanctions. As Plaintiffs' motion was not brought for frivolous or vexatious reasons, the Court also DENIES Signature's request for monetary sanctions.

**IT IS SO ORDERED.**

Dated: December 20, 2005

MARIA-ELENA JAMES
United States Magistrate Judge

12