1   ALAN B. CARLSON, Bar No. 055090, acarlson@littler.com
    ROBERT J. WILGER, Bar No. 168402, rwilger@littler.com
2   LITTLER MENDELSON
    A Professional Corporation
3   50 West San Fernando Street, 14th Floor
    San Jose, CA 95113.2303
4   Telephone:   408.998.4150

5   Attorneys for Defendants
    SIGNATURE FLIGHT SUPPORT CORPORATION;
6   BBA AVIATION SHARED SERVICES, INC.;
    BBA GROUP U.S. HOLDINGS, INC.; STEVE TRUE;
7   DENNIS SMITH; VAL VADEN

8

9                       UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11

12  DONALD HAMILTON, an individual;            Case No.  C 05 00490 CW
    BOBBY JONES, an individual; DAMON
    BARRON SMITH, an individual; ALJARICE      **NOTICE OF MOTION AND MOTION**
13  SANDERS, an individual; and on behalf of   **FOR PARTIAL SUMMARY**
    themselves and other similarly situated;   **JUDGMENT ON THE TERMINATION**
14                                             **CLAIM OF PLAINTIFF BOBBY**
                 Plaintiffs,                   **JONES**
15
16          v.                                 Date:        February 10, 2006
                                               Time:        10:00 a.m.
17  SIGNATURE FLIGHT SUPPORT                   Courtroom:   2
    CORPORATION, a Delaware corporation;
18  BBA AVIATION SHARED SERVICES,              Trial Date: None
    INC., a Florida corporation; BBA GROUP US
19  HOLDINGS INC., a Massachusetts
    corporation; STEVE TRUE, an individual;
20  NORMAN RAMIREZ, an individual;
    DENNIS SMITH, an individual; VAL
21  VADEN, an individual; and DOES 1-100;

22               Defendants.

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002                                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

**TABLE OF CONTENTS**

**PAGE**

I.    STATEMENT OF RELEVANT FACTS ................................................................................. 2

   A.    The Employment of Bobby Jones ............................................................................. 2

   B.    Customer And Employee Complaints Concerning Plaintiff Jones Prior To
         July 15, 2004 ............................................................................................................. 2

         1.    The February 25, 2003 Customer Incident And Complaint ............................ 2

         2.    The June 6, 2003 Verbal Warning .................................................................. 3

         3.    The June 26, 2003 Customer Incident And Complaint .................................... 4

         4.    The August 2003 Corroborative Written Comments Of Plaintiff
               Sanders Concerning Plaintiff Jones Conduct Toward Her .............................. 5

         5.    The September 9, 2003 Employee Incident And Complaint ........................... 6

         6.    The September 22, 2003 Resignation Of Nicole Fernandez ............................ 6

         7.    The October 1, 2003 Meeting With Plaintiff Jones Concerning His
               Unacceptable Conduct .................................................................................... 7

         8.    The February 2, 2004 Racial Insult To Norma Manalang ............................... 7

         9.    The May 13, 2004 Employee Incident and Meeting With Plaintiff
               Jones Concerning His Unacceptable Conduct ................................................. 8

         10.   The June 9, 2004 Customer Incident And Complaint ....................................... 9

   C.    The Decision Not To Promote Plaintiff Jones In Part Because Of Customer
         And Employee Complaints ........................................................................................ 9

   D.    The May 5, 2004 Complaint Of Discrimination By Plaintiff Jones To
         Defendant Smith ..................................................................................................... 10

   E.    The July 15, 2004 Incident Between Plaintiff Jones And Defendant Vaden
         And Decision To Terminate Plaintiff Jones ............................................................. 10

         1.    The July 15, 2004 Complaint By Defendant Vaden To Defendant True ...... 10

         2.    The July 26, 2004 Decision To Terminate The Employment Of
               Plaintiff Jones ............................................................................................... 11

         3.    The July 26, 2004 Termination Meeting Between Plaintiff Jones,
               Defendant True and Norma Manalang ......................................................... 12

II.   ARGUMENT ................................................................................................................... 12

   A.    Legal Standard For Summary Judgment .................................................................. 12

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

B.   Plaintiff Jones' First Cause Of Action For Race Discrimination Is Subject To Summary Judgment ................................................................................................ 13

    1.   Plaintiff Jones' Cannot Establish A Prima Facie Case Of Race Discrimination Based On His Termination..................................................... 14

    2.   Alternatively, Plaintiff Jones Cannot Rebut The Legitimate Business Reason Offered By Defendants For Terminating Him .................................. 15

C.   Plaintiff Jones' Third Cause Of Action For Retaliation Is Subject To Summary Adjudication ............................................................................................. 18

D.   Plaintiff Jones' Fourth Cause Of Action For Wrongful Termination In Violation Of Public Policy Is Subject To Summary Judgment ................................. 18

III.   CONCLUSION.............................................................................................................. 20

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002          ii.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1

## TABLE OF AUTHORITIES

2

PAGE

3

## FEDERAL CASES

4   *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) .......................................................... 13

5   *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998) .............................................. 16

    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986)) ......................................... 13

6   *Bahri v. Home Depot U.S.A., Inc.*, 242 F.Supp.2d 922 (D.Or. 2002) ................................................ 16

7   *Bodett v. CoxCom, Inc.*, 366 F.3d 736 (9th Cir. 2004) ................................................................ 14, 15

8   *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) ................................................................ 18

    *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................................... 13

9   *Coleman v. The Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000 ................................................. 14, 16

10  *Cox v. Resilient Flooring Div. Of Congoleum Corp*, 638 F.Supp. 726 (C.D.Cal. 1986) ................. 16

11  *Douglas v. Marsh*,
       53 FEP Cases 503 (N.D.Cal. 1988, *aff'd*, 895 F.2d 1416 (9th Cir. 1990) .................................... 16

12  *Eisenberg v. Insurance Co. of N.A.*, 815 F.2d 1285 (9th Cir. 1987) .................................................. 13

13  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991) ...................................................... 17

    *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948 (8th Cir. 2001) ..................................................... 17

14  *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409 (9th Cir. 1988) ................................... 17

15  *Frausto v. Legal Aid Society of San Diego, Inc.*, 563 F.2d 1324 (9th Cir. 1977) .............................. 15

16  *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968 (8th Cir. 1994) ........................................................... 17

    *Jordan v. Clark*, 847 F.2d 1368 (9th Cir. 1988) ................................................................................. 18

17  *Lalvani v. Cook Co.*, 269 F.3d 785 (7th Cir. 2001) ........................................................................... 14

18  *Lowe v. Monrovia*, 775 F.3d 998 (9th Cir. 1995) .............................................................................. 14

19  *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) ....................................... 14

    *McMillan v. Svetanoff*, 878 F.2d 186 (7th Cir. 1989) ........................................................................ 17

20  *Nawrot v. CPC Int'l*, 277 F.3d 896 (7th Cir. 2002) ........................................................................... 17

21  *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000) ............................................................................. 18

22  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ........................................... 14, 16

    *Ring v. Sears, Roebuck & Co.*, 250 F.Supp.2d 1130 .................................................................... 16, 17

23  *Rojas v. Florida*, 285 F.3d 1339 (11th Cir. 2002) ............................................................................. 17

24  *Spaulding v. United Transp. Union*, 279 F.3d 901 (10th Cir. 2002) ................................................. 13

25  *St. Mary's Honor Center v. Hicks*, 438 U.S. 502 (1993) ................................................................... 14

    *Stones v. LA Community College Dist.*, 796 F.2d 270 (9th Cir. 1986) ............................................... 14

26  *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981) ............................ 16

27  *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2003) ..................................................... 18

28  *Villiarimov. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ................................................. 17

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir. 2001) ........................................................ 17

*Webb v. R&B Holding Co., Inc.*, 992 F.Supp. 1382 (S.D.Fla. 1998) ................................................ 15

*Williams v. Herman Goelitz Candy Co.*, 70 FEP Cases 719 (E.D. Cal. 1995) .................................. 19

*Wright ex rel. Trust Co. of Kansas v. Abbott Labs., Inc.*,
259 F.3d 1226 (10th Cir. 2001) ........................................................................................ 13

*Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987) ........................................................................ 18

**STATE CASES**

*Caldwell v. Paramount Unif. Sch. Dist.*,
(1995) 41 Cal.App.4th, 189 ............................................................................................ 14

*Hersant v. California Dept. of Social Servs.*,
(1997) 57 Cal.App.4th 997 ............................................................................................ 14

*Jennings v. Marralle*, (1994) 8 Cal. 4th 121 ................................................................................. 19

*Nelson v. United Technologies*, (1999) 74 Cal.App.4th 597 ............................................................ 19

*Stevenson v. Superior Court*, (1997) 16 Cal.4th 880 ...................................................................... 19

**STATUTES**

California Fair Employment and Housing Act ....................................................................... 1, 13, 19

Title VII of the Civil Rights Act of 1964............................................................................. 1, 13

42 U.S.C. § 1981 ........................................................................................................... 1, 13

**OTHER**

Federal Rules of Civil Procedure 56(c) ............................................................................... 15

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002      iv.      CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1 **NOTICE OF MOTION AND MOTION**

2 TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3 YOU ARE HEREBY NOTIFIED that on Friday, February 10, 2006, at 10:00 a.m., or

4 as soon thereafter as the matter can be heard in Courtroom 2 of the United States District Court,

5 located at 1301 Clay Street, Oakland, California, Defendants Signature Flight Support Corporation,

6 hereinafter "Signature Flight," BBA Aviation Shared Services, Inc., BBA Group U.S. Holdings,

7 Inc., Steve True, and Dennis Smith will move and hereby do move this Court for an order of partial

8 summary judgment on the individual termination claim of Plaintiff Bobby Jones on the grounds

9 stated herein.

10 **STATEMENT OF ISSUES TO BE DECIDED**

11 The instant motion presents the Court with the following issues for decision:

12 1. Whether Defendants unlawfully terminated Plaintiff Jones on the basis of

13 race.[1]

14 2. Whether Defendants unlawfully retaliated against Plaintiff Jones by

15 terminating his employment because he had earlier complained about race discrimination.[2]

16 3. Whether Defendants wrongfully terminated the employment of Plaintiff Jones

17 in violation of public policy.[3]

18 / / /

19 / / /

20 / / /

21 / / /

---

22 [1] Within the First Cause of Action of the First Amended Complaint, hereinafter "Comp.,"
23 Plaintiff Jones alleges that all Corporate Defendants as well as Defendants True and Smith
terminated his employment on the basis of his race in violation of Title VII of the Civil Rights
24 Act of 1964, hereinafter "Title VII," 42 U.S.C. § 1981, and the California Fair Employment and
Housing Act, hereinafter "FEHA." (Comp. ¶¶ 46-49, 60-64.)

25 [2] Within the Third Cause of Action, Plaintiff Jones alleges that all Corporate Defendants as well
26 as Defendants True and Smith retaliated against him by terminating his employment following
complaints of race discrimination in violation of Title VII, 42 U.S.C. § 1981, and FEHA.
27 (Comp. ¶¶ 46-49, 70-77.)

[3] Within the Fourth Cause of Action, Plaintiff Jones alleges that all Corporate Defendants have
28 wrongfully terminated his employment in violation of public policy. (Comp. ¶¶ 46-49, 78-84.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998.4150

FIRMWIDE:80619277.1 049112.1002 1. CASE NO. C 05 00490 CW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     STATEMENT OF RELEVANT FACTS

#### A.     The Employment of Bobby Jones.

On June 30, 1999, Plaintiff Jones was hired as a Driver.[4]  Less than two months after his initial hire, on August 23, 1999, Defendant True authorized the promotion Mr. Jones from Driver to Customer Service Representative.[5]  On August 25, 2001, Mr. True promoted Mr. Jones from Customer Service Representative to Lead Customer Service Representative.[6]  On July 26, 2004, Mr. Jones employment was terminated based upon his participation in a verbal argument with a customer, namely Defendant Vaden.  (True Dec. ¶ 4.)

#### B.     Customer And Employee Complaints Concerning Plaintiff Jones Prior To July 15, 2004.

Subsequent to his promotion to Lead Customer Service Representative, Plaintiff Jones amassed a record of customer and employee complaints culminating in a verbal argument on July 15, 2004 with Defendant Vaden.[7]

##### 1.     The February 25, 2003 Customer Incident And Complaint.

Signature Flight maintains a quality assurance program and procedure by which

---

[4]  Plaintiff Jones testified he was interviewed for the Driver position by Defendant True before he was offered the position.  (Deposition of Bobby Jones, hereinafter "Jones Dep." 72:4-75:4.)

[5]  Mr. Jones concedes that Defendant True was involved in and approved his promotion to Customer Service Representative.  (Jones Dep. 78:23-86:13.)

[6]  Plaintiff Jones replaced in that position an employee who was not an African-American. Further, immediately before his promotion, Mr. Jones was one of 10 Customer Service Representatives, three of whom were not African-American and had been employed longer than Mr. Jones.  In essence, the promotion of Mr. Jones passed over these individuals.  (Declaration of Steven J. True in Support of Defendants' Motion for Partial Summary Judgment on the Individual Termination Claim of Plaintiff Bobby Jones filed herewith, hereinafter "True Dec.," ¶ 4.)

[7]  Defendant Vaden has never been employed by Signature Flight, and was a customer at the Company's San Francisco FBO.  (True Dec. ¶ 5.)  Subsequent to the July 15, 2004 incident, the Company interviewed Plaintiff Jones and conducted an investigation, after which it determined that the conduct warranted termination of employment.  (Deposition of Dennis B. Smith, hereinafter "Smith Dep.," 43:4-51:25, 52:20-59:15, 69:4-81:23, 85:17-95:9, 96:18-98:25, Exh. 125; Deposition of Dennis B. Smith, FRCP Rule 30(b)(6) Designee, hereinafter "Smith Rule 30(b)(6) Dep.," 256:10-274:13; Declaration of Dennis Smith in Support of Defendants' Motion for Partial Summary Judgment on the Individual Termination Claim of Plaintiff Bobby Jones filed herewith, hereinafter "Smith Dec.," ¶ 2.)

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

FIRMWIDE:80619277.1 049112.1002          2.          CASE NO.  C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

customers may comment upon the performance of the Company and its employees.[8]   On

February 26, 2003 Signature Flight received a written complaint from Randy Judd, Chief Pilot for

Waste Management, concerning the conduct of Plaintiff Jones on that date. Mr. Judd wrote:

> First of all, Bobby Jones at Customer Service needs a course in
> providing at least average customer service. He is rude . . .  I really
> hope you guys change your attitude of your employees in the future.
> Thanks for listening I hope.

(True Dec. ¶ 7, Exh. 1.)  Defendant True brought the complaint to the attention of Mr. Jones and

spoke with him about his conduct. (True Dec. ¶ 7.)

### 2.   The June 6, 2003 Verbal Warning.

Following the February 26, 2003 complaint of Randy Judd, Defendant True received

a further customer complaint concerning the conduct of Plaintiff Jones. Julia Broderick, the General

Manager of the Company's Orange County, California Airport FBO telephoned Mr. True telling him

that a pilot whose plane was based at the latter airport complained to her that upon departure from

the San Francisco FBO, Mr. Jones had been rude to him and had not taken care of his needs.

Thereafter, Mr. True spoke with the pilot, Bill Ozanus, who told him that while he had been at the

San Francisco FBO, that Mr. Jones had been rude and aggressive toward him.   Further, upon

leaving, Mr. Ozanus said that he had been stopped by Mr. Jones who insisted that he had to pay for a

power unit charge for his aircraft, a $50 to $60 charge that is ordinarily waived for customers

approximately 90 percent of the time.[9]   As a consequence of this complaint, on June 6, 2003

Mr. True met with Mr. Jones and gave him a written verbal warning. (True Dec. ¶ 8, Exh. 2.)  In the

section of the written warning detailing the discussion with Mr. Jones, Mr. True stated:

---

[8]   Pursuant to the program, customers complete a comment card which they can obtain at any Signature Flight FBO, and either mail it to the Company's headquarters in Orlando, Florida, or hand it back in at the FBO.  All comment cards submitted to an FBO are sent to Orlando.  The information from the customer comment cards are thereafter electronically transmitted to the General Manager of the concerned FBO.  The General Manager is then responsible investigate the comment if negative, including speaking with any named employee or employees on duty during the shift at issue. (True Dec. ¶ 6.)

[9]   To resolve and avoid customer issues and conflicts, Mr. Jones, as a Lead Customer Service Representative, had the express authority to waive customer charges up to $100.  In Mr. True's view, rather than exercise this authority to defuse a customer issue with Mr. Ozanus, Mr. Jones worsened it by charging the Mr. Ozanus for a service for which the pilot knew there was ordinarily no charge. (True Dec. ¶ 8.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113.2303
408 998 4150

FIRMWIDE:80619277.1 049112.1002                    3.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1      Any further complaints from a customer in regards to Mr. Jones'
       aggressive behavior or rudeness to a customer will result in removing
2      Mr. Jones from the front desk and reassigning Mr. Jones to another
       position.

3

       The corrective action discussed with Mr. Jones is that he needs to
4      soften his approach towards the customer. His work tendency tends to
       be confrontational and defensive. . . .

5

6    (True Dec. Exh. 2.)

7            **3.      The June 26, 2003 Customer Incident And Complaint.**

8            On June 26, 2003, Bill Ozanus, the same pilot involved in the earlier June 6, 2003

9    complaint, again complained to Defendant True concerning Plaintiff Jones. Essentially, Mr. Ozanus

10   complained that Mr. Jones had started an argument with the passengers he was flying concerning a

11   limousine reservation. (True Dec. ¶ 9, Exh. 3.) Subsequently, on June 29, 2003, Mr. Ozanus sent an

12   email to Mr. True detailing what had occurred with Mr. Jones, and Mr. Ozanus' complaint to

13   Mr. True, stating:

14           I was a pilot-in-command of Citation N324JC which arrived at your
             location, SFO, on June 26, 2003.
15
                     *   *   *
16

17           Upon arrival the first officer escorted the passengers to the lobby.

             Shortly thereafter, while securing and readying the aircraft for our next
18           flight the first officer summoned me to the customer service counter.
             Bobby Jones stated that 'We don't got no limo for 324JC".   I
19           explained to him one hour previously I had Madelyn, SNA CSR,
             telephone to make sure that we had a limo, he continued to insist and
20           state, 'We don't got no limo for that aircraft'

21           Upon my insistence he looked at his log, right in front of him all of the
             time, and finally admitted that he did have a limo for our aircraft.
22
             The owner, standing next to me the entire time, stated to Bobby Jones
23           he had asked for the limo for N324JC three times.   Bobby Jones
             started to argue with Mr. Williams, stating that he never stated the
24           aircraft number. Of course Mr. Williams, an experienced owner/pilot,
             knows his own aircraft tail number and refused to argue the issue any
25           further. Mr. Williams and his three passengers departed.

26           Shortly thereafter I ordered fuel and discussed this ridiculous matter
             with you on a face to face basis.
27
                     *   *   *
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80619277.1 049112.1002                    4.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1    The next morning I telephoned and related this absurdity to you.

2    1. Bobby Jones started an argument with the owner/customer of the aircraft.

3

4    2. The limo was ordered and was there for N324JC but he insisted, 'We don't got no limo for that aircraft'. . . .

5    I dread the thought of having to return to SFO and the possibility of dealing with the competence level of this particular CSR. It's quite obvious that he doesn't want to or just can't adhere to policy.

6

7    (True Dec. Exh. 3.) As a result of the complaint, Mr. True again spoke to Mr. Jones about his

8    conduct. (True Dec. ¶ 9.)

9    **4.    The August  2003 Corroborative Written Comments Of Plaintiff Sanders Concerning Plaintiff Jones Conduct Toward Her.**

10

11    As Plaintiff Jones was abrasive and confrontational with the customers, so also was

12    he with his co-workers. Such is corroborated by the written notes made by Plaintiff Sanders who

13    worked as a Customer Service Representative with Bobby Jones. (Deposition of Aljarice Sanders,

14    hereinafter "Sanders Dep.," 315:8-330:9, Exh. 44 (AS000114-118).)   On August 7, 2003,

15    Ms. Sanders wrote in her notes:

16    When Bobby came in everything was fine for the first two hours. Bobby told me to clock out to lunch. Then got an attitude when I

17    clocked out ten minutes after he told me to. So, as 'punishment' when I was about to do a van ride Bobby tells Pedro to do it. Even though I

18    was working with the crew and had been the only person helping them. When I asked Bobby why[,] he said it was to 'teach me a

19    lesson. That I need to listen to him.' Basically, Bobby is just being himself. A power-tripping jerk.

20

21    (Sanders Dep. Exh. 44 (AS000114-115).)   The following day, on August 8, 2003, Ms. Sanders

22    continued in her notes:

23    Why does all this B.S. happen to me during my first week back? Bobby J. is absolutely intolerable. He continues to talk down to me or

24    mess w/me until I finally blow up.

25    (Sanders Dep. Exh. 44 (AS000116).)   Five days later, on August 13, 2003, Ms. Sanders again wrote

26    in her notes concerning Mr. Jones:

27    Same shit, different day. Nothing out of the ordinary to report. Bobby Jones is still being Bobby Jones, grouchy, grumpy and power-tripping.

28    . . .

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002                5.                CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1   (Sanders Dep. Exh. 44 (AS000117).)  Finally, on August 15, 2003, Ms. Sanders wrote:

2           I think I might be becoming immune to Bobby's antics and sayings.  It
            doesn't mean that I think Bobby's behavior is acceptable and under
3           different circumstances I would be going to my manager until
            something is done about it. . . .
4

5   (Sanders Dep. Exh. 44 (AS000118).)

6           **5.      The September 9, 2003 Employee Incident And Complaint.**

7           On September 12, 2003, Signature Flight received a written complaint concerning

8   Plaintiff Jones from Margareth Casa, a Customer Service Representative at the San Francisco

9   facility.  (True Dec. ¶ 10, Exh. 4.)  Ms. Casa wrote:

10          On September 9, 2003, while working at the counter, I asked Bobby
            Jones if I could staple the fuel card to the registration paper (the way
11          we do it during the day shift).  He told me that swing is his shift and
            we should do everything 'his way;' and, I should do whatever he ask
12          me to or I'll be in trouble.  He threatened me to write me up for being
            a smart mouth!  That if I don't follow his orders 'I better watch it.'
13
                                    *  *  *
14
            When I got back from lunch, he left me at the counter by myself and
15          watched TV all night.  Five minutes before our clock out time (2225),
            he was already out of uniform, ready to clock out.
16

17  (True Dec. Exh. 4.)

18          **6.      The September 22, 2003 Resignation Of Nicole Fernandez.**

19          On September 22, 2003, Nicole Fernandes, a Customer Service Representative at the

20  San Francisco facility, submitted her resignation effective September 27, 2003.   Ms. Fernandes

21  resigned because of the conduct of Plaintiffs Jones and Sanders.  (True Dec. ¶ 11, Exh. 5.)  In her

22  resignation, Ms. Fernandes wrote:

23          This letter is to inform Signature Flight Support my last day will be
            9/27/03, Saturday. . . .  My decision is based on several situations with
24          fellow employees (Bobby and Aljarice).  The work environment has
            become very difficult and I feel that it will not be resolved even if I
25          remain at Signature.  I've expressed my dealings with the management
            and after our discussions it is understand that there is nothing to be
26          done with Aljarice and Bobby, therefore I think it will be in
            everyone's best interest to remove myself from the situations and
27          everyone can move on.

28

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408 998 4150

FIRMWIDE:80619277.1 049112.1002          6.          CASE NO.  C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

(True Dec. Exh. 5.)  Prior to this resignation, Ms. Fernandes had complained to Defendant True that she felt intimidated by Mr. Jones and Ms. Sanders, and specifically with respect to Mr. Jones, that he was aggressive toward her.  (True Dec. ¶ 11.)

### 7.   The October 1, 2003 Meeting With Plaintiff Jones Concerning His Unacceptable Conduct.

On October 1, 2003, Signature Flight received another complaint concerning Plaintiff Jones from a customer.  As a result of this complaint, Defendant True had a meeting with Mr. Jones on this date concerning his behavior and conduct.  (True Dec. ¶ 12, Exh. 6.)  In conjunction with the meeting, Mr. True wrote a memorandum to Mr. Jones stating:

> This meeting has been called to advise Bobby Jones, Lead CSR for swing shift, regarding written and verbal complaints from employees working with him on the swing shift.
>
> These employees have complained of behavior bordering on rudeness and almost being a tyrant. They were uncomfortable being around him because of the way Bobby ordered them around.
>
> Another issue is watching TV in the lobby during the evening hours while still on the clock.
>
> This morning, October 1, 2003, N803CE complained that they felt Bobby was not attentive to their needs, that he was mumbling at the desk while looking for the fuel card which at that time was nowhere to be found; actions were deemed as very unprofessional.

(True Dec. Exh. 6.)  In response to the complaints concerning his conduct from customers and co-workers, Mr. Jones was in essence in denial of his conduct.  He insisted that he was always right in these conflicts. Mr. Jones also expressed that he did not understand why he needed to soften his approach to customers and co-workers.  (True Dec. ¶ 12.)

### 8.   The February 2, 2004 Racial Insult To Norma Manalang.

On February 2, 2004, it was reported to Defendant True by Norma Manalang, an Administrative Assistant with human resources responsibilities at the San Francisco facility, that Plaintiff Jones had directed a racial remark to her.  (True Dec. ¶ 13, Exh. 7.)  In her complaint, Ms. Manalang wrote:

///

///

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002            7.            CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

On February 2, 2004, at about 1420H, I approached the front counter to have Bobby Jones sign the Payroll Check Listing. This was not signed last Friday when he picked up his check from Norman Ramirez at 1700H.

He remarked that it took four (4) hours to get his check because the payroll check file cannot be located. I told him then that there was a memo regarding that, that payroll checks will no longer be kept in the cash drawer and that it will be available for pickup only during the hours of 0700H through 1530H. I further pointed out that Alex and Wendell gave me authorization to leave their payroll checks inside the CSR cabinet. He then remarked, 'Yes, only Filipinos know that'. I disagreed and he followed me to my desk to take a look at the memo; told him I will look for it. He then tried to deny that he made the remark about Filipinos. I motioned him to stop talking and he walked back to the counter.

Cliff Taylor came over and asked me if I wanted to leave early because I might have been upset about the remark. I was indeed upset however stayed until quitting time at 1530H.

After a few minutes, Brad Haines came and talked to me regarding the incident and he concurred with me about the remark made by Bobby Jones. There were also other employees that heard him.

Norman called me a few minutes later to ask about the incident; he then asked Brad to talk to Bobby Jones.

The remark was uncalled for and corrective action should be done immediately.

(True Dec. Exh. 7.) That Mr. Jones had made the racial remark was confirmed to Mr. True by Brad Haines. (True Dec. ¶ 13, Exh. 8.) In speaking with Ms. Manalang about her complaint, she told Mr. True that Mr. Jones had been aggressive and rude toward her, and had tried to intimidate her. Mr. True spoke with Mr. Jones about this complaint, who denied it, and again warned Mr. Jones as he had in the past that he had to change the approach he used with people. (True Dec. ¶ 13.)

### 9.   The May 13, 2004 Employee Incident and Meeting With Plaintiff Jones Concerning His Unacceptable Conduct.

On May 13, 2004, Plaintiff Jones got into a verbal confrontation with Frank Katoa, who was also a Lead Customer Service Representative at the San Francisco facility. On this date, after counting the cash drawer, Mr. Katoa found that it was $5.00 short. Mr. Katoa advised Mr. Jones of the cash shortage. It was thereafter reported to Defendant True that "Bobby got very hostile and started to accuse Frank of stealing the money. Frank and Bobby both got into an

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002          8.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1    argument and Bobby Jones got real aggressive and called Frank Katoa "Faggot."  At that point, the

2    Operations Supervisor (Jay Singh) asked Bobby to leave the premises." (True Dec. ¶ 14, Exh. 9.)

3                    **10.    The June 9, 2004 Customer Incident And Complaint.**

4                On June 11, 2004, approximately one month before the final incident with Defendant

5    Vaden which led to Plaintiff Jones' termination, Pat Ackdow, a flight attendant with GE

6    Corporation, complained to Defendant True concerning the behavior of Mr. Jones towards her.

7    Ms. Ackdow told Mr. True than on June 9, 2004, she asked Mr. Jones to add another driver to her

8    rental car agreement.  Mr. Jones responded that he would not do so because he would need to see the

9    driver's license of the additional driver, adding there was nothing he could do for her.  Ms. Ackdow

10   stated she did not argue with Mr. Jones because in the past he had been very coarse and abrasive

11   toward her.  The following day, on June 10, 2004, she made the same request to Frank Katoa,

12   another Lead Customer Service Representative, who she stated handled her request without

13   difficulty.  Ms. Ackdow concluded her complaint by stating that Mr. Jones displayed a very

14   intimidating demeanor toward her, that she was uncomfortable in working with him, and that she

15   avoided Mr. Jones whenever possible.  Mr. True spoke with Mr. Jones concerning the complaint,

16   and he denied the incident ever occurred.  (True Dec. ¶ 15.)

17           **C.    The Decision Not To Promote Plaintiff Jones In Part Because Of Customer And
                    Employee Complaints.**
18

19               In January 2004, Plaintiff Jones applied for a posted Customer Service Supervisor

20   position.  (Jones Dep. 245:1-246:1, Exhs. 106, 107.)  Thereafter, Mr. Jones had an interview with

21   Norman Ramirez concerning the position.  (Jones Dep. 245:1-255:21.)  For a number of reasons,

22   Mr. Jones was not as qualified as Jay Singh who received the position.  (True Dec. 16.)  After his

23   interview of Mr. Jones, Mr. Ramirez recommended that Mr. Jones not be selected for the position,

24   and as a reason stated on an Applicant Evaluation Form "numerous customer complaints about poor

25   attitude.  Aggressive behavior towards customers, employees and management."  (True Dec. ¶ 16,

26   Exh. 10.)

27   / / /

28   / / /

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80619277.1 049112.1002          9.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

**D.     The May 5, 2004 Complaint Of Discrimination By Plaintiff Jones To Defendant Smith.**

On May 5, 2005, Defendant Smith responded to a telephone hotline complaint made by Plaintiff Jones.[10]   In the telephone conversation Mr. Smith had with Mr. Jones on this date, Mr. Jones expressed various complaints of discrimination.   As a result of this conversation, Mr. Smith went to the San Francisco FBO and between May 24 and 26, 2004, interviewed numerous employees, including all of the Plaintiffs in this action.  Mr. Smith concluded that there had been instances of poor management in the San Francisco facility, but not discrimination.  (Smith Dep. 59:22-66:22, 100:5-105:5, 108:13-155:15, 157:4-172:20, 177:22-193:21, 195:6-231:14.)

**E.     The July 15, 2004 Incident Between Plaintiff Jones And Defendant Vaden And Decision To Terminate Plaintiff Jones.**

**1.     The July 15, 2004 Complaint By Defendant Vaden To Defendant True.**

On July 15, 2004, Defendant True had a telephone conversation with Defendant Vaden in which Mr. Vaden described an incident with Plaintiff Jones occurring on that date during which Mr. Jones called Mr. Vaden an "asshole."  (True Dec. ¶ 17.)  Later that evening, Mr. Vaden sent an email detailing the incident with Mr. Jones that day in which he stated:

> Mr. True
>
> Thank you for taking my call.  Today as I pulled up to the SF FBO, one of your employees took offense at my speed and yelled for me to slow down.  Of course since I was pulling under the porte cochere I was slowing down.  When I stopped and got out of the car, Mr. Jones, walking away to the parking lot with two other employees, was staring at me while walking backwards.  I ignored him and begin to unload at which time he called me an asshole.  At that point I walked over to him and turned over his badge to get his name.  I then went to the front desk to get your name and number.  As I was going back to move my car, Mr. Jones was coming in and I showed him your card and asked for an apology for the slur, which I felt was inappropriate regardless of his opinion of my driving (incidentally I am in the lowest risk rating group with my insurance group).   Mr. Jones denied having said asshole, saying 'we were just talking.'  In truth I think Mr. Jones made an error of judgment, as I was dressed in jeans, boots and a fishing shirt and was driving my pickup truck.  He may well have thought he was insulting a delivery person . . . I seriously doubt he thought he was

---

[10]   The Company maintains a "hotline" by which employees may make complaints and other comments without having to go through their local facility management.  (Smith Rule 30(b)(6) Dep. 175:4-178:19.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

addressing a customer . . . he was quite surprised when I identified myself as such. Nevertheless, I don't think that yelling and cursing just outside your facility is acceptable behavior in any case.

I am quite certain that Mr. Jones has gotten his story lined up with the two other employees who accompanied him as I saw them conferring just before I departed. Furthermore, Mr. Jones refusal to accept responsibility for his behavior and to lie about it was disappointing to me and I told him so, quite vehemently. Despite my opinion however I never resorted to personal slurs or cursing. I surely wish he had left it alone when I ignored his yelling and I would imagine he feels the same.

(True Dec. ¶ 17, Exh. 11.) An investigation of the incident was thereafter conducted. (Smith Dep. 43:4-51:25, 52:20-59:15, 69:4-81:23; Smith Rule 30(b)(6) Dep. 256:10-269:19.)

## 2. The July 26, 2004 Decision To Terminate The Employment Of Plaintiff Jones.

During the early afternoon Eastern Time on July 26, 2004, the decision was made by Dennis Smith, in consultation with others in Signature Flight's management, to terminate the employment of Plaintiff Jones. Mr. Smith's decision was based solely upon his viewing of a video of two incidents involving Plaintiff Jones and Defendant Vaden, and the prior record of customer and employee complaints against Mr. Jones about which Mr. Smith had been informed. Mr. Smith reached the conclusion that rather then discontinuing his confrontation with Mr. Vaden after its initial occurrence on July 15, 2004, the first event captured on the video, and reporting to and seeking the assistance of a manager, some time later after the first event, Mr. Jones voluntarily rejoined and continued the confrontation and argument with Mr. Vaden, captured as the second event on the video. This latest incident, in conjunction with Mr. Jones' prior record of rude and aggressive behavior toward customers and co-workers, conduct for which he had been previously disciplined and counseled, led to Mr. Smith's decision. That Mr. Jones had previously complained about discrimination in May 2004 was not a factor in the decision. (Smith Dec. ¶ 2; Smith Dep. 54:8-11, 69:23-70:9, 71:15-74:21, 79:18-81:23, 85:17-95:9, 96:18-98:25, Exh. 125; Smith Rule 30(b)(6) Dep. 269:20-274:13; Jones Dep. Exh. 103.)

/ / /

/ / /

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002                    11.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1   **3.    The July 26, 2004 Termination Meeting Between Plaintiff Jones,**
2       **Defendant True and Norma Manalang.**

3       On July 26, 2004, at approximately 2:00 p.m., Defendant True and Norma Manalang

4   met with Plaintiff Jones, at which time his employment was terminated. (True Dec. ¶ 18.) During

5   the meeting, Mr. Jones was given a Disciplinary Action Form[11] stating the basis for his termination

6   in the following terms.

7           On Thursday, July 15, 2004, you were involved in a verbal altercation
            and engaged in an argument with a customer regarding his speed when
8           entering the front entrance of Signature Flight Support. In addition,
            the customer stated that you called him an 'asshole.'
9
            You have been counseled on 6/6/03,[12] 10/01/03[13] and most recently on
10          5/13/04[14] on your unsatisfactory demeanor towards customers and
            employees.
11

12  (True Dec. ¶ 18, Exh. 12.)

13  **II.    ARGUMENT**

14      **A.    Legal Standard For Summary Judgment.**

15      Summary judgment is appropriate if the moving party demonstrates that there is "no

16  genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.

17  R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable

18  inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United*

---

19  [11]  The Disciplinary Action Form was written by Lynn Shaw on Friday, July 23, 2005, after a
20      meeting that date with Plaintiff Jones, her interviews on that same date of two pilots identified
        as witnesses by Mr. Jones, and after a telephone conversation between Ms. Shaw and Defendant
21      Smith. During this latter conversation, the possibility of terminating Mr. Jones was discussed,
        but as of this time and the writing of the Disciplinary Action Form, the termination decision had
22      not yet been made. This decision was made the following Monday, July 26, 2003. (Smith Dec.
        ¶ 2; Shaw Dec. ¶ 2.)

23  [12]  This date referred to the verbal warning, as discussed above, that Defendant True gave Plaintiff
        Jones on June 6, 2003 based upon the complaint of the pilot, Bill Ozanus, that Mr. Jones had
24      been rude and aggressive toward him. (True Dec. ¶ 8, Exh. 2.)

25  [13]  This date referred to the meeting discussed above which occurred on October 1, 2003, between
        Defendant True and Plaintiff Jones after Mr. True had received yet another complaint from a
26      customer concerning Mr. Jones. During the meeting Mr. Jones was counseled and warned about
        his aggressive and rude behavior towards customers and co-workers. (True Dec. ¶ 12, Exh. 6.)

27  [14]  This date referred to that of the incident on May 13, 2004, wherein Plaintiff Jones got into a
        verbal confrontation with Frank Katoa, during which he called Mr. Katoa a "faggot," and was
28      instructed to leave the premises of the terminal as a result. (True Dec. ¶14, Exh. 9.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1    *Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002).   A fact is "material" if, under the applicable

2    substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of*

3    *Kansas v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart*

4    *Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).   An issue of fact is "genuine" if "there is sufficient

5    evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144

6    F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).

7            Where the nonmoving party bears the ultimate burden of proof, as Plaintiff Jones

8    does in this case, the moving party may meet its burden by pointing to the absence of evidence to

9    support the nonmoving party's case.   *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).   A mere

10   "scintilla" of evidence supporting the nonmoving party's position will not suffice.   There must be

11   enough of a showing that a jury could reasonably find for the nonmoving party. *Anderson, supra,*

12   477 U.S. 242, 106 S. Ct. 2505.   "If the evidence is merely colorable...or is not significantly

13   probative, summary judgment may be granted." *Eisenberg v. Insurance Co. of N.A.,* 815 F.2d 1285,

14   1288 (9th Cir. 1987).

15           Here, although Plaintiff Jones claims that he was discriminated and retaliated against,

16   he has no evidence to support such claims.   Accordingly, Defendants' motion should be granted.

17   *Anderson, supra,* 477 U.S. 242, 106 S. Ct. 2505.

18           **B.      Plaintiff Jones' First Cause Of Action For Race Discrimination Is Subject To**
19                   **Summary Judgment.**

20           In his Complaint, Plaintiff Jones claims that he was discriminated against because of

21   his race (African-American) when he was terminated on July 26, 2003.[15]   (Comp., ¶¶ 5, 42-49, 53-

22   54, 61.)   Mr. Jones brings his claims under Title VII, FEHA, and Section 1981 of the Civil Rights

23   Act. (Comp., ¶ 62.)   Regardless of its statutory basis, Mr. Jones' termination claim fails because, as

24   discussed more fully below, Mr. Jones has no evidence of discrimination. *Anderson, supra,* 477

25   U.S. at 252, 106 S. Ct. 2505.

26

27   [15]   Although Plaintiff Jones also complains of age discrimination (he is 57), he does not contend that
         he was terminated because of his age.   Accordingly, that claim is not addressed in the instant
28       motion, which seeks dismissal of Mr. Jones' termination related claims only. (Comp. ¶ 92.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002                    13.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1      In order to prove intentional employment discrimination based on race, the following

2   burden-shifting analysis is applied: (1) the plaintiff must first establish a *prima facie* case; (2) the

3   defendant may then come forward with evidence to articulate a nondiscriminatory business reason

4   for its actions; and (3) the plaintiff must then attack the defendant's nondiscriminatory explanation,

5   other than by speculation, on the grounds that it is pretextual. *Coleman v. The Quaker Oats Co.,*

6   232 F.3d 1271, 1281 (9th Cir. 2000).[16]   Although the burden of going forward with the evidence

7   shifts throughout this three-stage process, the plaintiff retains, at all times, the ultimate burden of

8   persuading the court that he or she was the victim of intentional discrimination. *Id.* at 1281; *St.*

9   *Mary's Honor Center v. Hicks,* 438 U.S. 502, 511 (1993).   Here, Plaintiff Jones' claims fail because

10  he can neither prove a *prima facie* case nor rebut the legitimate reasons offered by Defendants for

11  their actions, and thereby cannot prove intentional discrimination as a matter of law.

> **1.   Plaintiff Jones' Cannot Establish A *Prima Facie* Case Of Race Discrimination Based On His Termination.**

14     An allegation of unlawful employment discrimination such as the one raised by

15  Plaintiff Jones requires him to first raise a presumption that discrimination occurred by establishing a

16  *prima facie* case. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-807, 93 S.Ct. 1817, 1824-

17  1827 (1973).  A *prima facie* case of race discrimination consists of the following elements:  (1) the

18  plaintiff was in a protected group; (2) the plaintiff was qualified for the position at issue; (3) the

19  plaintiff was discharged; and (4) similarly situated individuals outside of the plaintiff's protected

20  category were treated differently or some other circumstances that give rise to an inference of

21  discrimination. *Bodett v. CoxCom, Inc.,* 366 F.3d 736, 744 (9th Cir. 2004); *Reeves v. Sanderson*

22  *Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000); *Frausto v. Legal Aid Society of San Diego, Inc.,*

---

[16]   Due to the similarities between FEHA and Title VII, it is appropriate to rely on federal decisions addressing Title VII claims to analyze claims brought under FEHA. *Hersant v. California Dept. of Social Servs.*, 57 Cal.App.4th 997, 1001 (1997) (citing *Caldwell v. Paramount Unif. Sch. Dist.*, 41 Cal.App.4th, 189, 195 (1995)). Likewise, because a Section 1981 claim is "predicated on the same elements as a [race] discrimination claim under Title VII," both claims may be analyzed together. *Lalvani v. Cook Co.*, 269 F.3d 785, 789 (7th Cir. 2001), *Lowe v. Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1995) ("the same standards are used to prove both claims"); *Stones v. LA Community College Dist.*, 796 F.2d 270, 274 (9th Cir. 1986) (McDonnell Douglas burden shifting analysis applies to a Section 1981 claim).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

563 F.2d 1324, 1328 (9th Cir. 1977).

Here, although Plaintiff Jones almost certainly meets the first and third prong of the *prima facie* test, he cannot show either that he was qualified for the position at issue or that there are other circumstances that give rise to an inference of discrimination. Specifically, as noted above, Mr. Jones was the recipient of numerous customer and co-worker complaints. (True Dec. ¶¶ 7-15.) Even one of Mr. Jones' co-plaintiffs, Aljarice Sanders, complained that Mr. Jones had an "attitude," was a "power-tripping jerk," was "grouchy, grumpy and power-tripping," and that his behavior was generally unacceptable. (Sanders Dep. Exh. 44 (AS000114-118).) These complaints rendered him unqualified for the customer service position he held. *Webb v. R&B Holding Co., Inc.*, 992 F.Supp. 1382, 1386 (S.D.Fla. 1998) (complaints from customers and coworkers rendered the plaintiff unqualified for the job and thereby prohibited him from establishing a prima facie case of discrimination). As he was unqualified, he cannot establish a *prima facie* case of race discrimination and his claims are therefore subject to judgment.

In addition, it is undisputed that Plaintiff Jones was terminated for arguing with a customer and for his history of customer and employee complaints. (Smith Dec. ¶ 2; Smith Dep. 54:8-11; 69:23-70:9; 79:18-81:23; 85:17-95:9; 96:18-98:25; Exh. 125; Smith Rule 30(b)(6) Dep. 269:20-274:13; Jones Dep. Exh. 103.) There is no evidence that similarly situated white employees engaged in the same type of conducted yet were treated better, and there are likewise no other circumstances giving rise to an inference of discrimination. Without some evidence to suggest that the termination decision was motivated by unlawful discrimination, Mr. Jones cannot establish the fourth prong of his *prima facie* case, thereby providing an additional, independent basis for the grant of summary judgment. *Bodett, supra,* 366 F.3d at 744.

### 2. Alternatively, Plaintiff Jones Cannot Rebut The Legitimate Business Reason Offered By Defendants For Terminating Him.

Even if Plaintiff Jones can somehow establish a *prima facie* case of race discrimination, his claim nonetheless fails because Defendants have articulated several legitimate non-discriminatory reasons for his termination. If a plaintiff establishes a *prima facie* case, the employer need only articulate "some legitimate, nondiscriminatory reason" for its actions; it does not

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80619277.1 049112.1002                     15.                     CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1    have to prove the absence of discriminatory motive. *Coleman, supra*, 232 F.3d at 1282; *Texas Dept.*

2    *of Comm. Affairs v. Burdine,* 450 U.S. 248, 254-255, 101 S. Ct. 1089 (1981); *Douglas v. Marsh,* 53

3    FEP Cases 503, 505 (N.D.Cal. 1988, *aff'd*, 895 F.2d 1416 (9th Cir. 1990). Once a legitimate

4    business reason is articulated by the defendant, the burden of production then shifts back to the

5    plaintiff to demonstrate that the employer's proffered reason is untrue or pretextual. *Id.* To defeat

6    summary judgment, the plaintiff has the burden of presenting "specific, substantial evidence of

7    pretext." *Id.* A plaintiff's mere suspicions and/or conclusions of an employer's improper motives

8    based on speculation are insufficient to meet his burden. *Id.*

9            As discussed in detail above, Plaintiff Jones was terminated for his history of

10   customer complaints, as well as for the incident with Defendant Vaden that occurred on July 14,

11   2004. Any one of these complaints, let alone the combination of all of them, provided Defendants

12   with a legitimate business reason for terminating Mr. Jones' employment. *Ring v. Sears, Roebuck &*

13   *Co.,* 250 F.Supp.2d 1130, 1137 (fighting and customer complaints provide sufficient business reason

14   for termination); *Bahri v. Home Depot U.S.A., Inc.,* 242 F.Supp.2d 922, 943 (D.Or. 2002) (same);

15   *Cox v. Resilient Flooring Div. Of Congoleum Corp,* 638 F.Supp. 726, 732 (C.D.Cal. 1986) (holding

16   that customer complaints provide "cause" for termination, an even higher standard than the

17   legitimate business reason required here).

18           Although Plaintiff Jones may try to prove that the reasons given by Defendants for his

19   termination were really a pretext for discrimination, he cannot dispute that on July 15, 2004, Mr.

20   Vaden made a complaint about him to Defendant True. (True Dec. ¶ 17; Exh. 11.) After receiving

21   the complaint, Defendants undertook an investigation and determined that, at the very least, Mr.

22   Jones had exercised poor judgment by rejoining and continuing in the confrontation with Mr. Vaden.

23   (Smith Dec. ¶ 2; Smith Dep. 54:8-11; 69:23-70:9; 79:18-81:23; 85:17-95:9; 96:18-98:25; Exh. 125;

24   Smith Rule 30(b)(6) Dep. 269:20-274:13; Jones Dep. Exh. 103.) This alone entitles Defendants to

25   "judgment as a matter of law." *Reeves, supra,* 530 U.S. at 148, *citing, Aka v. Washington Hospital*

26   *Center,* 156 F.3d 1284, 1291 (D.C. Cir. 1998).

27           Although Plaintiff Jones will undoubtedly argue that Defendants conclusions were

28   wrong, there is no evidence that they were improperly based on Mr. Jones' race. Indeed, the "law

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002          16.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1   bars this Court from second guessing every employment decision, even those based on arguable

2   erroneous assumptions or credibility determinations." *Ring, supra,* 250 F.Supp.2d at 1137-1138;

3   *Evers v. Alliant Techsystems, Inc.,* 241 F.3d 948, 957 (8th Cir. 2001) (holding it is not unlawful for

4   an employer to make employment decisions based on possibly erroneous evaluations).  As long as

5   there is evidence that the "employer believed [the] employee guilty of the conduct justifying

6   discharge," as is the case here, there can be no finding of discrimination.  *Ring, supra,* 250

7   F.Supp.2d at 1138; *citing, Harvey v. Anheuser-Busch, Inc.,* 38 F.3d 968, 972, n.2 (8th Cir. 1994);

8   *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991).  As a consequence, Mr. Jones

9   cannot show that the customer complaints, including the one from Defendant Vaden that lead up to

10  his termination, are somehow a pretext for discrimination and his claims are thus defective.

11          This is especially true here where Plaintiff Jones alleges no race based comments

12  linked to the termination decision, and cannot prove that similarly situated persons of different races

13  received more favorable treatment.  *Nawrot v. CPC Int'l,* 277 F.3d 896, 906 (7th Cir. 2002)

14  ("[P]retext requires more than a showing that the decision was 'mistaken, ill considered or foolish,

15  [and] so long as [the employer] honestly believed those reasons, pretext has not been shown.'");

16  *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 224 (5th Cir. 2001) (stereotypical comments not

17  connected to a specific employment decision are not sufficient to prove pretext).  The mere fact that

18  Defendants' decision may have been arbitrary or unwise, does not establish that it is discriminatory,

19  and as noted, it is not for the trier of fact to "second guess" the defendant's business decision.  *Rojas*

20  *v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2002); *see also, Villiarimov. Aloha Island Air, Inc.,* 281

21  F.3d 1054, 1063 (9th Cir. 2002) (no finding of discrimination even if proffered legitimate business

22  reason is "foolish, trivial or baseless").  Likewise, Mr. Jones' mere speculation that unlawful

23  discrimination motivated the employment actions that affected his employment is insufficient to

24  meet his burden and defeat the instant motion.  *Forsberg v. Pacific Northwest Bell Tel. Co.,* 840 F.2d

25  1409, 1419 (9th Cir. 1988) ("purely conclusory allegations of alleged discrimination, with no

26  concrete, relevant particulars, will not bar summary judgment").  *McMillan v. Svetanoff,* 878 F.2d

27  186, 189 (7th Cir. 1989) ("subjective beliefs of the plaintiff are insufficient to create a genuine issue

28  of material fact" sufficient to defeat summary judgment).  Accordingly, without evidence of pretext,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998.4150

FIRMWIDE:80619277.1 049112.1002                    17.                    CASE NO.  C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones

1   summary judgment on Plaintiff Jones' termination claims should be granted.

2   **C.    Plaintiff Jones' Third Cause Of Action For Retaliation Is Subject To Summary**
        **Adjudication.**
3

4           In his Third Cause of Action, Plaintiff Jones recasts the same allegations, this time

5   claiming that Defendants had a retaliatory motivation and that they were out to get him because he

6   made a complaint of discrimination in July 2004.[17]  (Comp. ¶ 72.)  In order to establish a *prima facie*

7   case of retaliation, Mr. Jones must show:  (1) that he engaged in a protected activity; (2) that he was

8   thereafter subjected to an adverse employment action; and (3) a causal link between the two.  *Brooks*

9   *v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000); *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th

10  Cir. 1988); *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir. 1987).  Even if Mr. Jones can prove a

11  causal link based on timing or other evidence of retaliatory motive, his claim can be overcome by

12  proof that Defendants acted based on a legitimate business reason unrelated to the alleged protected

13  activity.  *Jordan, supra,* 847 F.2d at 1377.  Where, as here, Mr. Jones has no evidence that the

14  proffered reason is pretextual, summary judgment is appropriate.  *Vasquez v. County of Los Angeles,*

15  349 F.3d 634, 646 (9th Cir. 2003); *Ray v. Henderson,* 217 F.3d 1234, 1244 (9th Cir. 2000).

16          As discussed in detail above, Plaintiff Jones' termination was appropriately based on

17  the number customer and employee complaints Defendants had received.  (Smith Dec. ¶ 2; Smith

18  Dep. 54:8-11; 69:23-70:9; 79:18-81:23; 85:17-95:9; 96:18-98:25; Exh. 125; Smith Rule 30(b)(6)

19  Dep. 269:20-274:13; Jones Dep. Exh. 103.)  As Mr. Jones has no evidence to prove that the reasons

20  provided by Defendants for the actions taken against his were not legitimately motivated by business

21  reasons, his claims are appropriate for summary judgment.  *Vasquez, supra,* 349 F.3d at 646.

22  **D.    Plaintiff Jones' Fourth Cause Of Action For Wrongful Termination In Violation**
        **Of Public Policy Is Subject To Summary Judgment.**
23

24          In his Complaint, Plaintiff Jones alleges that he was wrongfully discharged in

25  violation of the various state and federal statutes.  (Comp. ¶ 79, 81.)  In support of his cause of

26

27  [17]   As discussed above, Plaintiff Jones actually made the discrimination complaint in May 2004.
        (Smith Dep. 59:22-66:22, 100:5-105:5, 108:13-155:15, 157:4-172:20, 177:22-193:21, 195:6-
28      231:14.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

FIRMWIDE:80619277.1 049112.1002              18.                    CASE NO. C 05 00490 CW

1  action, Mr. Jones repeats the same allegations that support his claims for discrimination and

2  retaliation based upon those same statutes.[18]  (Comp. ¶¶ 62, 67, 75, and 79.)  As such, Mr. Jones'

3  wrongful discharge claim is indisputably based upon the same conduct as his discrimination and

4  retaliation claims.  Consequently, Mr. Jones cannot, as a matter of law, prevail on his wrongful

5  discharge claim unless he can also establish his discrimination and/or retaliation claims.  *Jennings v.*

6  *Marralle,* 8 Cal. 4th 121, 135-136 (1994) (where plaintiff's termination did not violate FEHA, his

7  employer could not be held liable for violating the public policy which is embedded in that statute);

8  *Nelson v. United Technologies*, 74 Cal.App.4th 597, 613, fn.4 (1999) (statutory claim subject to

9  summary judgment when summary judgment granted on public policy claim based upon same

10  statutory claim); *see also Stevenson v. Superior Court,* 16 Cal.4th 880, 904 (1997) (stating when a

11  plaintiff relies upon a statutory prohibition in violation of public policy, the common law claim is

12  subject to the statutory limitations affecting the nature and scope of the statutory prohibition);

13  *Williams v. Herman Goelitz Candy Co.,* 70 FEP Cases 719, 723 (E.D. Cal. 1995).

14      As established above, Plaintiff Jones cannot, as a matter of law, establish his

15  discrimination or retaliation claims in violation of the federal and state equal employment

16  opportunity laws.  Therefore, his wrongful discharge claim must similarly fail and summary

17  judgment is appropriate.  *Jennings, supra*, 8 Cal.4th at 135-136; *Nelson, supra,* 74 Cal.App.4th at

18  613, fn. 4.

19  / / /

20  / / /

21  / / /

22  / / /

23

24  [18]  Although Plaintiff Jones also bases his wrongful termination claim on section 12B of the San
   Francisco Administrative Code, this section simply restates the requirements of FEHA that no

25  employer in the City of San Francisco may discriminate against its employees on the basis of
   race.  (Comp, ¶ 79.)  Although it is unclear whether this statute is sufficiently "substantial and

26  fundamental" to support such a claim, that question does not have to be reached in connection
   with the instant motion. *Sullivan v. Delta Airlines*, 58 Cal.App.4th 938 (1997).  That is, because

27  Mr. Jones' claims fail under FEHA, they would likewise fail under the San Francisco
   Administrative Code, and are thereby insufficient to support Mr. Jones' wrongful termination

28  claim as a matter of law. *Jennings*, 8 Cal.4th at 135-136; *Nelson*, 74 Cal.App.4th at 613, fn. 4.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

1  **III.   CONCLUSION**

2        For the foregoing reasons, Defendants respectfully request that their motion for

3  summary judgment on the termination claim of Plaintiff Jones be granted in its entirety.

4

5  Dated: January 5, 2006

6

7  _____
   ALAN B. CARLSON
8  LITTLER MENDELSON
   A Professional Corporation
   Attorneys for Defendants
9  SIGNATURE FLIGHT SUPPORT
   CORPORATION; BBA AVIATION
10 SHARED SERVICES, INC.; BBA GROUP
   U.S. HOLDINGS, INC.; STEVE TRUE;
11 DENNIS SMITH, VAL VADEN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

FIRMWIDE:80619277.1 049112.1002                    20.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Termination Claim Of Pl Bobby Jones