1  ALAN B. CARLSON, Bar No. 055090, acarlson@littler.com
   ROBERT J. WILGER, Bar No. 168402, rwilger@littler.com
2  LITTLER MENDELSON
   A Professional Corporation
3  50 West San Fernando Street, 14th Floor
   San Jose, CA 95113.2303
4  Telephone:    408.998.4150

5  Attorneys for Defendants
   SIGNATURE FLIGHT SUPPORT CORPORATION;
6  BBA AVIATION SHARED SERVICES, INC.;
   BBA GROUP U.S. HOLDINGS, INC.; STEVE TRUE;
7  DENNIS SMITH

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12 | DONALD HAMILTON, an individual;          | Case No. C 05 00490 CW
   | BOBBY JONES, an individual; DAMON        |
   | BARRON SMITH, an individual; ALJARICE    | **NOTICE OF MOTION AND MOTION**
13 | SANDERS, an individual; and on behalf of | **FOR PARTIAL SUMMARY**
   | themselves and other similarly situated; | **ADJUDICATION ON THE DEMOTION**
14 |                                          | **CLAIM OF PLAINTIFF DONALD**
   |                Plaintiffs,               | **HAMILTON**
15 |                                          |
   |         v.                               | Date:       February 10, 2006
16 |                                          | Time:       10:00 a.m.
   | SIGNATURE FLIGHT SUPPORT                 | Courtroom:  2
17 | CORPORATION, a Delaware corporation;     |
   | BBA AVIATION SHARED SERVICES,            | Trial Date: None
18 | INC., a Florida corporation; BBA GROUP US|
   | HOLDINGS INC., a Massachusetts           |
19 | corporation; STEVE TRUE, an individual;  |
   | NORMAN RAMIREZ, an individual;           |
20 | DENNIS SMITH, an individual; VAL         |
   | VADEN, an individual; and DOES 1-100;    |
21 |                                          |
   |                Defendants.               |
22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80599133.1 049112.1002                                CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1

# TABLE OF CONTENTS

2

PAGE

3  I.   STATEMENT OF RELEVANT FACTS ................................................................. 2

4       A.   The San Francisco International Airport Operations Of Signature Flight ................. 2

5            1.   The Business Of Defendant Signature Flight ................................. 2

6            2.   The Assumption Of Operations From AMR Combs On March 4, 1999 ......... 2

7            3.   The Employment Structure Of Signature Flight At Its San Francisco
                  International Airport Operations ........................................................ 3

8
        B.   The January 3, 1997 Hire Of Plaintiff Hamilton By Defendant True As A Line
9            Service Technician ................................................................................. 3

10      C.   The June 6, 1999 Promotion Of Plaintiff Hamilton By Defendant True To The
             Position Of Lead Line Service Technician .................................................. 4
11
        D.   The January 13, 2003 Promotion Of Plaintiff Hamilton By Defendant True To
12           The Position Of Operations Supervisor. ..................................................... 5

13      E.   The January 15, 2003 Supervisors' Meeting ............................................... 5

14      F.   The May 31, 2003 Demotion Of Plaintiff Hamilton By Defendant True From
             The Position Of Operations Supervisor ...................................................... 7
15
             1.   The Employment Verification Form Of Plaintiff Barron-Smith ............... 7
16
             2.   The Failure To Use A Wing Walker While Towing An Aircraft ............... 8
17
             3.   The Failure To Complete The Aircraft Pre-Inspection Tow Checklist ........ 10
18
             4.   The May 30, 2003 Meeting With Plaintiff Hamilton ........................... 11
19
        G.   The April 28, 2003 Promotion Of Daniel Harris By Defendant True To The
20           Position Of Operations Supervisor at Santa Barbara ..................................... 12

21      H.   The November 6, 2004 Promotion Of Plaintiff Hamilton By Defendant True
             To The Position Of Operations Supervisor ................................................. 13
22
        I.   The Pattern And Practice Of Signature Flight and Defendant True Of Hiring
23           And Promoting African-Americans Is Inconsistent With Plaintiff Hamilton's
             Claim He Was Demoted On The Basis Of His Race ....................................... 13
24
             1.   The December 1, 1997 Promotion Of Cliff Taylor By Defendant True
25                To Operations Supervisor .......................................................... 13

26           2.   The Workforce Of The San Francisco Airport Operations Upon Its
                  Acquisition By Defendant Signature Flight On March 4, 1999 ............... 13
27
             3.   African-Americans Hired And Promoted By Defendant True From
28                March 4, 1999 To May 31, 2003 ................................................. 14

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

II.   ARGUMENT ................................................................................................... 16

A.   Legal Standard For Summary Judgment ................................................... 16

B.   Plaintiff Hamilton's First And Fifth Causes Of Action For Race And Disability Discrimination Based On His May 31, 2003 Demotion Are Subject To Summary Judgment ............................................................................... 16

    1.   Plaintiff Hamilton Cannot Establish A Prima Facie Case Of Race Or Disability Discrimination With Respect To His Demotion ........................... 18

        a.   Defendants Did Not Perceive Plaintiff Hamilton As Being Disabled ............................................................................... 18

        b.   In Addition, Plaintiff Was Not Qualified For The Position From Which He Was Demoted .......................................................... 19

    2.   Defendant Has Articulated A Legitimate Business Reason For Plaintiff Hamilton's Demotion ................................................................... 20

    3.   Plaintiff Hamilton Cannot Prove Pretext ....................................................... 20

        a.   Plaintiff Hamilton Has No Evidence That The Reasons Given To Him For His Demotion Are Both False And A Pretext For Unlawful Discrimination ............................................................... 20

        b.   Alternatively, Plaintiff Cannot Prove Pretext Because He Was Hired And Demoted By The Same Actor ........................................... 21

C.   Plaintiff Hamilton's Fourth Cause Of Action For Wrongful Retaliation In Violation Of Public Policy Based On His May 31, 2003 Demotion Is Subject To Summary Judgment ............................................................................... 24

III.   CONCLUSION ............................................................................................... 25

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

# TABLE OF AUTHORITIES

PAGE

## FEDERAL CASES

*Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664 (10th Cir. 1998) ............................................ 16

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505 (1986) ........................... 16, 17

*Aucutt v. Six Flags Over Mid-America, Inc.,* 85 F.3d 1311 (8th Cir. 1996) ......................... 19

*Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267 (9th Cir. 1996) ...................................... 22

*Brinkley v. Harbour Recreation Club,* 180 F.3d 598 (4th Cir. 1999) .................................. 17

*Buhrmaster v. Overnite Trasp. Co.,* 61 F.3d 461 (6th Cir. 1995) ...................................... 22

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................................... 16

*Coghlan v. American Seafoods Co., LLC,* 413 F.3d 1090 ................................................. 22

*Coleman v. The Quaker Oats Co.,* 232 F.3d 1271 (9th Cir. 2000) .................................. 17, 18

*Collings v. Longview Fibre Co.,* 63 F.3d 828 (9th Cir. 1995) ........................................... 20

*Comeaux v. Uniroyal Chemical Corp.,* 849 F.2d 191 (5th Cir. 1988) ................................ 20

*Douglas v. Marsh,*
   53 FEP Cases 503 (N.D.Cal. 1988, *aff'd*, 895 F.2d 1416 (9th Cir. 1990) ..................... 18

*EEOC v. Our Lady of the Resurrection Md. Ctr.,* 77 F.3d 145 (7th Cir. 1996) .................... 22

*Eisenberg v. Insurance Co. of N.A.,* 815 F.2d 1285 (9th Cir. 1987) .................................. 16

*Foreman v. Babcock & Wilcox Co.* 117 F.3d 800 (5th Cir. 1997) ...................................... 19

*Forsberg v. Pacific Northwest Bell Tel. Co.,* 840 F.2d 1409 (9th Cir. 1988) ..................... 18

*Frausto v. Legal Aid Society of San Diego, Inc.,* 563 F.2d 1324 (9th Cir. 1977) ............... 17

*Grube v. Lau Industries, Inc.,* 257 F.3d 723 ................................................................. 21

*Jordan v. Clark,* 847 F.2d 1368 (9th Cir. 1988) ....................................................... 24, 25

*Lalvani v. Cook Co.,* 269 F.3d 785 (7th Cir. 2001) ......................................................... 17

*Lowe v. JB Hunt Transp., Inc.* 963 F.2d 173 (8th Cir. 1992) ........................................... 22

*Lowe v. Monrovia,* 775 F.2d 998 (9th Cir. 1995) ........................................................... 17

*Miller v. Citizens Sec. Group, Inc.* 116 F.3d 343 (8th Cir. 1997) ................................. 22, 23

*Miller v. Los Angeles County Board of Educ.,* 799 F.2d 486 (9th Cir. 1986) ..................... 20

*Nawrot v. CPC Int'l,* 277 F.3d 896 (7th Cir. 2002) ......................................................... 21

*Nelson v. Pulaski County Sheriff's Dept.,* 859 F.Supp. 1228 .......................................... 24

*Nix v. WLCY Radio,* 738 F.2d 1181 (11th Cir. 1984) ...................................................... 20

*Piascyk v. City of New Haven*
   (D.Conn. 1999) 64 F.Supp.2d 19, 32, aff'd 216 F.3d 1072 (2nd Cir. 2000) ................... 19

*Proud v. Stone,* 945 F.2d 796 (4th Cir. 1991) ............................................................... 22

*Raad v. Fairbanks North Star Borough School Dist.,* 323 F.3d 1185 (9th Cir. 2003) .......... 20

*Ray v. Henderson,* 217 F.3d 1234 (9th Cir. 2000) .......................................................... 24

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ................................................. 21

*Rojas v. Florida*, 285 F.3d 1339 (11th Cir. 2002) ......................................................... 21

*Sanders v. Arenson Products, Inc.*, 91 F.3d 1351 (9th Cir. 1996) ..................................................... 18

*Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072 (9th Cir. 1986) ........................................... 17, 20

*Smith v. Barton*, 914 F.2d 1330 (9th Cir. 1990) ................................................................. 21

*Snead v. Metro Property & Casualty Ins.*, 237 F.3d 1080 (9th Cir. 2001) ........................... 17, 18, 20

*Spaulding v. United Transp. Union*, 279 F.3d 901 (10th Cir. 2002) ............................................. 16

*St. Mary's Honor Center v. Hicks*, 438 U.S. 502 (1993) ......................................................... 17

*Stones v. LA Community College Dist.*, 796 F.2d 270 (9th Cir. 1986) ........................................ 17

*Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981) ....................... 18

*Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2003) .......................................... 24, 25

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ......................................... 21

*Williams v. Raytheon Co.* 220 F.3d 16 (1st Cir. 2000) ........................................................... 21

*Winarto v. Toshiba America Electronics Comp., Inc.* 274 F.3d 1276 (9th Cir. 2001) ..................... 18

*Wright ex rel. Trust Co. of Kansas v. Abbott Labs., Inc.*,
    259 F.3d 1226 (10th Cir. 2001) ................................................................................ 16

*Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987) ........................................................... 24

## STATE CASES

*Caldwell v. Paramount Unif. Sch. Dist.*,
    (1995) 41 Cal.App.4th, 189, 48 Cal.Rptr.2d 448 .............................................................. 17

*Hersant v. California Dept. of Social Servs.*,
    (1997) 57 Cal.App.4th 997, 67 Cal.Rptr.2d 483 .............................................................. 17

*Jennings v. Marralle*, 8 Cal.4th 121 ...................................................................... 25

*Nelson v. United Technologies*, (1999) 74 Cal.App.4th 597 .................................................. 25

*Sullivan v. Delta Airlines*, (1997) 58 Cal.App.4th 938 ....................................................... 25

*West v. Bechtel Corp.*, (2002) 96 Cal.App.4th 966 ........................................................... 22

## STATUTES

Americans With Disabilities Act ......................................................................... 17

California Fair Employment and Housing Act ....................................................... 1, 17, 25

Title VII of the Civil Rights Act ......................................................................... 1, 17

42 U.S.C. § 1981 ....................................................................................... 1

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80599133.1 049112.1002          iv.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

## OTHER

Federal Rules of Civil Procedure 56(c) ............................................................... 16

San Francisco Administrative Code..................................................................... 25

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

**NOTICE OF MOTION AND MOTION**

TO EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED that on Friday, February 10, 2006, at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 2 of the United States District Court, located at 1301 Clay Street, Oakland, California, Defendants Signature Flight Support Corporation, hereinafter "Signature Flight," BBA Aviation Shared Services, Inc., BBA Group U.S. Holdings, Inc., Steve True, and Dennis Smith will move and hereby do move this Court for an order of partial summary judgment on the individual demotion claim of Plaintiff Donald Hamilton on the grounds stated herein.

**STATEMENT OF ISSUES TO BE DECIDED**

The instant motion presents the Court with the following issues for decision:

1.     Whether Defendants unlawfully demoted Plaintiff Hamilton on the basis of race.[1]

2.     Whether Defendants unlawfully demoted Plaintiff Hamilton on the basis of a disability or perceived disability, stammering in speech.

3.     Whether Defendants unlawfully demoted Plaintiff Hamilton in retaliation for complaints of discrimination.

///

///

---

[1]     Within the First Cause of Action of the First Amended Complaint, hereinafter "Comp.," Plaintiff Hamilton alleges that all Corporate Defendants as well as Defendants True and Smith demoted him on the basis of his race in violation of 42 U.S.C. § 1981 and the California Fair Employment and Housing Act, hereinafter "FEHA." (Comp. ¶¶ 37, 60-64.) In the Fourth Cause of Action, Mr. Hamilton alleges that all Corporate Defendants demoted in "in retaliation for complaining about SIGNATURE's employment practices." (Comp. ¶ 83.) In his Fifth Cause of Action, Mr. Hamilton claims that he was wrongfully demoted on the basis of a perceived disability in violation of the American's With Disabilities Act. (Comp. ¶ 89.) Finally, the Equal Employment Opportunity Commission alleges that Defendant Signature Flight demoted Mr. Hamilton in violation of Title VII of the Civil Rights Act of 1964, hereinafter "Title VII." (EEOC Complaint ¶ 7.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113.2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     STATEMENT OF RELEVANT FACTS

### A.     The San Francisco International Airport Operations Of Signature Flight.

#### 1.     The Business Of Defendant Signature Flight.

San Francisco International Airport, hereinafter "Airport," services commercial airlines as well as general aviation aircraft, namely private and corporate aircraft. The latter arrive to and leave from a private FBO facility located at the Airport. The Airport contracts with Signature Flight to operate this private terminal at which Signature Flight provides fueling, customer service, and ground handling support to private aircraft. Signature Flight has similar operations at 46 airports within the United States. (Declaration of Steven J. True in Support of Defendants' Motion for Partial Summary Judgment on the Demotion Claim of Plaintiff Donald Hamilton filed herewith, hereinafter "True Dec.," ¶ 2.)

#### 2.     The Assumption Of Operations From AMR Combs On March 4, 1999.

Effective March 4, 1999, Signature Flight commenced operating the private FBO terminal at the Airport, having acquired these operations in Signature Flight's acquisition of AMR Combs. As a consequence, on March 4, 1999, former employees of AMR Combs became employees of Signature Flight, including Defendant True[2] and Norman Ramirez,[3] and Plaintiff Hamilton.[4] (True Dec. ¶ 3.)

///

[2] Within Signature Flight's San Francisco operations, Defendant True has supervisory responsibility for all employees within the operation. Mr. True makes all final decisions to hire, promote, discipline, and demote employees. Regarding employee terminations, Mr. True obtains concurrence for such from corporate human resources personnel. Mr. True makes final decisions as to employee compensation. (True Dec. ¶ 5.) The foregoing is consistent with Plaintiff Hamilton's understanding of Mr. True's authority. (Deposition of Donald Hamilton hereinafter "Hamilton Dep.," 38:22-42:2.)

[3] Norman Ramirez was initially employed at AMR Combs on April 8, 1996. Mr. Ramirez became Operations Manager on March 24, 2003, and held that position upon his resignation from the Company on December 14, 2004. (True Dec. ¶ 6.) Mr. Ramirez was formerly a Defendant in this action.

[4] Plaintiff Hamilton is an African-American male who is currently employed by Signature Flight as an Operations Supervisor in San Francisco. (Hamilton Dep. 42:15-17.) The position of Operations Supervisor has in the past been titled General Aviation Supervisor and Line Service Technician Supervisor. (True Dec. ¶ 8.) "Operations Supervisor" will be used herein.

3. **The Employment Structure Of Signature Flight At Its San Francisco International Airport Operations.**

The business of Signature Flight at San Francisco Airport is seven days a week, 24 hours a day. The operation is divided into two segments, ramp operations and customer service. Ramp operations or services utilize employees in servicing and fueling aircraft. Customer service operations involved employees providing a variety of services to customers such as payment for services, baggage handling, cleaning aircraft, arranging rental cars, hotels, etc. (True Dec. ¶ 7.)

Line Service Technicians service and fuel aircraft. Above this position is that of Lead Line Service Technician. The position next in supervision is Operations Supervisor.[5] There is not, and has not always been, a Lead Line Service Technician or Operations Supervisor on every shift. (True Dec. ¶ 8.)

Supervising the Operations Supervisor position are the Operations Manager, Assistant General Manager,[6] and General Manager, positions which generally have responsibility of all FBO operations. (True Dec. ¶ 10.)

B. **The January 3, 1997 Hire Of Plaintiff Hamilton By Defendant True As A Line Service Technician.**

Plaintiff Hamilton was hired by AMR Combs as a part-time employee in December 1996, and on January 3, 1997 became full-time in the position of Line Service Technician. (True Dec. ¶ 12; Hamilton Dep. 38:2-19.) Mr. Hamilton was interviewed by only Defendant True. During this 1996 interview, Mr. Hamilton testified he was "very nervous" and his

---

[5]  At any given time since the acquisition of the San Francisco facility on March 4, 1999, there have been from three to five Operations Supervisors employed. At least one, and sometimes two, have always been African-American. (True Dec. ¶ 9.)

[6]  The Assistant General Manager position was created in December 2004 with the external hire of Mike Perry. The position was advertised as an employment opportunity in California and Nevada. Aside from Mr. Perry, another applicant was Devin Madgett, an African-American. Finding that both Mr. Perry and Mr. Madgett would be an asset to Signature Flight, Defendant True offered the San Francisco Assistant General Manager position to Mr. Perry, and with Mr. True's recommendation, Mr. Madgett was offered the Assistant General Manager's position in the Company's Las Vegas airport operations where he became Assistant General Manager on January 10, 2005. Effective March 21, 2005, Mr. True concurred in Mr. Madgett's transfer to the Company's Santa Barbara airport operations as Assistant General Manager. Subsequently, Mr. True promoted him to General Manager at that same location. (True Dec. ¶ 11.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002                    3.                    CASE NO. C 05 00490 CW

1    stammering "very apparent." Mr. True expressed concern about his stammering and asked about it.

2    In response, Mr. Hamilton assured him that his stammering "was not an issue" while working

3    because he concentrated on what he was doing, and as a consequence, relaxed and did not stammer.

4    Mr. Hamilton recalls no further response or inquiry by Mr. True, and apparently the interview

5    moved on to other things. (Hamilton Dep. 90:13-92:15, 93:14-18.) Subsequently, Mr. Hamilton

6    was informed that he had been hired. (Hamilton Dep. 92:16-20.) Sometime within a month or two

7    thereafter, Mr. True told Mr. Hamilton "welcome aboard," and that he had been hired at a higher

8    wage rate than normal because of his prior work experience. (Hamilton Dep. 88:4-89:17, 92:21-

9    93:13.)

10   **C.    The June 6, 1999 Promotion Of Plaintiff Hamilton By Defendant True To The**
         **Position Of Lead Line Service Technician.**

11

12              On June 6, 1999, Defendant True promoted Plaintiff Hamilton from Line Service

13   Technician to Lead Line Service Technician on the graveyard shift, the shift upon which he was

14   working at the time.   This was a newly created position, which had not existed previously.

15   Mr. Hamilton testified that the position had not been posted, but that he was merely offered the

16   position and he accepted it.  The final decision to promote Mr. Hamilton was made by Mr. True.[7]

17   (True Dec. ¶ 12; Hamilton Dep. 52:7-53:22, 60:21-61:8, 95:12-16).   With the promotion of

18   Mr. Hamilton to the new Lead Line Service Technician position, Signature Flight then employed

19   five Lead Line Service Technicians, of whom one was Caucasian, one Hispanic, two Asian/Pacific

20   Islander, and one African-American, Mr. Hamilton. (Declaration of Timothy J. Ramsey in Support

21   of Defendants' Motion for Partial Summary Judgment on the Individual Demotion Claim of Plaintiff

22   Donald Hamilton filed herewith, hereinafter "Ramsey Dec.," ¶¶ 4, 9, Exh. 5.)

23   / / /

24   / / /

25

26   [7]   When Plaintiff Hamilton was promoted to Lead Line Service Technician on June 6, 1999, he
     was on of 20 other line service technicians of whom only Mr. Hamilton was African-American.
27   Four of these Line Service Technicians, each of whom was Caucasian, had been employed
     longer than Mr. Hamilton and were in essence passed over for the promotion received by him.
28   (True Dec. ¶ 12; Ramsey Dec. ¶¶ 3, 4, 9, Exh. 5; Hamilton Dep. 96:2-97:1.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

**D.     The January 13, 2003 Promotion Of Plaintiff Hamilton By Defendant True To The Position Of Operations Supervisor.**

Plaintiff Hamilton applied for an Operations Supervisor position and was promoted by Defendant True to that position effective January 13, 2003.[8]  (Hamilton Dep. 63:3-8, 113:10-17, 153:11-156:8.)  Brad Haines, who is not African-American, also applied for but did not receive the position.  (True Dec. ¶ 35)  Again, Defendant True interviewed Mr. Hamilton for the position.  According to Mr. Hamilton, all he can recall of the interview is that once again Mr. True expressed concern with his stammering, and Mr. Hamilton explained that such would not be an issue, to which Mr. True apparently did not respond.  Thereafter, Mr. True told Mr. Hamilton that he was being promoted to the Operations Supervisor position and congratulated him.  (True Dec. ¶ 35; Hamilton Dep. 60:2-62:2, 113:10-19, 152:14-156:8.)

**E.     The January 15, 2003 Supervisors' Meeting.**

Plaintiff Hamilton was promoted to Operations Supervisor by Defendant True

---

[8] Mr. Hamilton received this promotion from Defendant True notwithstanding the fact that approximately two to three weeks before receiving the promotion, he had met with Mr. True to complain about the conduct of Norman Ramirez.  While both Plaintiff Hamilton and Mr. Ramirez were employed by AMR Combs, Mr. Hamilton was told he had received the highest wage raise apparently given by AMR Combs to employees at the time.  Thereafter, according to Mr. Hamilton, Mr. Ramirez asked him what his raise had been, to which he responded that it was none of Mr. Ramirez' business.  Mr. Hamilton testified that he does not recall Mr. Ramirez' reply, just that it was not pleasant.  (Hamilton Dep. 205:14-207:23.)  From this point forward, Mr. Hamilton described that he had continuing problems with Mr. Ramirez "bad mouthing" him to other employees, representing Mr. Hamilton as untrustworthy, that he did nothing, was stupid, and somebody who should not be working for Signature Flight.  Periodically Mr. Hamilton confronted Mr. Ramirez concerning these comments, at which times, according to Mr. Hamilton, Mr. Ramirez apologized.  Nonetheless, Mr. Hamilton continued to hear the same types of comments from other employees.  Mr. Hamilton did not testify that any of the comments reported to him by other employees were in the context of either his race or that he stuttered.  Mr. Hamilton testified that he never heard any disparaging remarks directly from Mr. Ramirez.  (Hamilton Dep. 205:14-210:22, 215:10-217:6; 402:7-403:3, 407:25-428:10.)  Just prior to Mr. Hamilton's promotion to Operations Supervisor, he complained to Mr. True concerning Mr. Ramirez' conduct.  Although not making a formal complaint, Mr. Hamilton told Mr. True how he felt Mr. Ramirez was treating him.  Mr. True stated that he would talk to Mr. Ramirez.  Mr. Hamilton did not complain about racial discrimination to Mr. True.  However, he did express the feeling to Mr. True that the only employees about whom Mr. Ramirez complained were African-American.  (Hamilton Dec. 220:5-222:15, 228:19-230:5, 232:8-11.)  Notwithstanding that Mr. Hamilton had complained about Mr. Ramirez, and linked that complaint to the race of those employees with whom Mr. Ramirez had problems according to Mr. Hamilton, Mr. True thereafter within weeks promoted Mr. Hamilton to Operations Supervisor.

---

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

effective January 13, 2003, and he attended his first supervisors' meeting two days later on

January 15, 2003. At the beginning of the meeting, Mr. True referenced Mr. Hamilton by stating "I

would like to welcome Don to the supervisor's position, and congratulations is in order." (Hamilton

Dep. 235:6-236:7.) Thereafter the meeting was routine. (Hamilton Dep. 236:8-13.) At the end of

the meeting, according to Mr. Hamilton, Mr. True stated "Don, I'm going to warn you about

something. You have two things working against you here: the fact that you are Black, and you

have a stammering problem." This is all Mr. True said, and he did not explain what he meant by the

comment.[9] (Hamilton Dep. 237:6-238:4.) Thereafter, Mr. Hamilton never asked Mr. True what he

meant. (Hamilton Dep. 248:5-8.) Mr. True had never before this meeting made any comment to

Mr. Hamilton referencing his race, in a disparaging manner or otherwise, and never made such a

comment to Mr. Hamilton after the meeting. With the exception of the discussion of his stammering

in Mr. Hamilton's initial job interview and subsequent promotion related interviews, likewise

Mr. True never made any comment to Mr. Hamilton concerning his stuttering before or after the

---

[9] For purposes of this motion, Defendants will assume *arguendo* that Plaintiff Hamilton's assertion is true. However, Defendant True denies the allegation and contends that the day before the January 15, 2003 supervisors' meeting, he had a meeting with Mr. Hamilton and Norman Ramirez welcoming Mr. Hamilton to his new position as Operations Supervisor. During the meeting, they discussed Mr. Hamilton's proposed training schedule, various Company polices, and procedures for emergencies. Regarding Mr. Hamilton's training schedule, Mr. True told him that Cliff Taylor would be working with him as his training supervisor and would continue to work with him until Mr. Taylor felt he was capable of performing independently. After this portion of the meeting, Mr. Ramirez left the office and Mr. True asked Mr. Hamilton to remain. Mr. True then told Mr. Hamilton that he was pleased that he was moving forward in the Company and that he would support him in is new position. Mr. True then proceeded to counsel Mr. Hamilton about potential problems that may occur while working in his new position. Specifically, Mr. True told Mr. Hamilton that there would be times that he would not be able to meet the Company's service standards and consequently pilots might aggressively and verbally confront him. Mr. True told Mr. Hamilton that he had two things that Mr. True thought might be a problem for him if a service issue became volatile with a pilot. One was that he was Black and the other was his stuttering problem. Mr. True said to Mr. Hamilton that there were not many Black pilots in corporate aviation. Mr. True further stated that unfortunately there had been incidents when there was a service problem and the pilots involved had used derogatory racial comments toward employees. Mr. True advised Mr. Hamilton that if this ever happened that he should not engage in any defensive rhetoric with the pilot, but to call Mr. True immediately and he would handle the situation. Regarding his stuttering, Mr. True said that this could be a positive attribute. Mr. True said that customers normally do not remember an employee's name, but do remember some physical feature of an employee. Mr. True used himself as an example, that people did not remember his name, but when referring to him they have said "the tall dark guy with a mustache." After this Mr. True asked Mr. Hamilton if he had any questions or concerns, to which he replied that he had none. (True Dec. ¶¶ 13, 14.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002                6.                CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1    supervisors' meeting. Further, Mr. Hamilton testified that no one referenced his race or stammering

2    at Signature Flight on any other occasion, and it had never been reported to him that at any other

3    time his race or stammering had been commented upon by any other employee in a disparaging

4    manner or in any other way. (Hamilton Dep. 238:13-243:21, 246:9-248:4.)

**F.     The May 31, 2003 Demotion Of Plaintiff Hamilton By Defendant True From The Position Of Operations Supervisor.**

Effective May 31, 2003, Defendant True demoted Plaintiff Hamilton from Operations Supervisor to a Line Service Technician position because he lost confidence in Mr. Hamilton due to what Mr. True considered to be violations of Company policies. These incidents, detailed below, included the completion of an employment verification form which Mr. True believed Mr. Hamilton should not have completed, the towing of an aircraft by Mr. Hamilton without a wing walker, and his failure to complete a pre-tow checklist prior to towing an aircraft. Mr. True did not make this decision because of Mr. Hamilton's race and that he stammered in speech. Neither was a factor in Mr. True's decision. (True Dec. ¶ 15, 17, 18, 19, 20, 34.)

**1.     The Employment Verification Form Of Plaintiff Barron-Smith.**

On Friday, May 23, 2003, Affordable Housing Associates sent by facsimile to Norma Manalang, an Administrative Assistant with responsibility for human resources at the San Francisco facility, an Employment Verification request form concerning the employment of Plaintiff Barron-Smith. (True Dec. ¶ 17, Exh. 1.) Plaintiff Hamilton came in possession of the form[10] on Sunday, May 25, 2003. While admitting that he knew human resources was the responsibility of Ms. Manalang, on that same date, Mr. Hamilton nonetheless himself partially completed the employment verification and gave it directly to Mr. Barron-Smith, who thereafter apparently returned it to Affordable Housing Associates by facsimile. (True Dec. ¶ 17, Exh. 2; Hamilton Dep. 348:19-359:24, Exh. 20.) Subsequently, it came to the attention of Mr. True that Mr. Hamilton had

---

[10]    Plaintiff Hamilton testified that he found the employment verification form on a desk in the office shared by the Operations Supervisors, then contacted Plaintiff Barron-Smith who was working at the time, and thereafter completed the verification form. (Hamilton Dep. 348:19-359:24.) In conflict, Mr. Barron-Smith testified that he found the employment verification form in an envelope in the customer service area, took it to Mr. Hamilton, and Mr. Hamilton then completed the form. (Deposition of Damon Barron-Smith, hereinafter "Barron-Smith Dep.," 269:11-280:13, Exhs. 83, 84.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002          7.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1    completed the form rather than Ms. Manalang. (True Dec. ¶ 17.)

2            **2.    The Failure To Use A Wing Walker While Towing An Aircraft.**

3            On May 29, 2003, it was reported to Defendant True by Ravi Satyanarayan, the

4    HSE&T Supervisor, that the night before he had observed Plaintiff Hamilton towing an airplane

5    without a wing walker. The employee who was accompanying Mr. Hamilton, and who should have

6    been acting as the wing walker, walking by the side of the wing of the airplane to guard against

7    collisions with other aircraft or objects, was instead riding on the tug driven by Mr. Hamilton. (True

8    Dec. ¶ 18, Exh. 3.) In his report, Mr. Satyanarayan wrote:

9                At the above-mentioned time, as I was doing my rounds on checking
             the operation as HSE Supervisor, there were aircraft being towed. I
10            was at the Customer Service desk and the ramp was visible and I
             noticed an aircraft being towed from the front line to the second line
11            close to the hanger by the light pole. The Tug Operator and the
             Wingwalker were both on the Tug while the aircraft was being pushed
12            back. The Tug Operator was Don Hamilton and the Wingwalker was
             Damon-Barron Smith. There were other aircraft around the aircraft
13            being towed. It was also towed and parked close in front of the light
             pole without a tail wingwalker.
14

15   (True Dec., Exh. 3.) Mr. Hamilton does not deny that an employee was riding on the tug he was

16   driving, but denies that the employee was required to act as a wingwalker during the towing

17   operation. (Hamilton Dep. 368:25-378:13.)

18           To avoid damage to aircraft being towed, Signature Flight maintains both corporate

19   and base specific policies with respect to wing walkers. The general corporate policy had been

20   recently adopted as Corporate SSP No. 214 in April 2003 to provide:

21               A minimum of two wing-walkers shall be required for hangaring
             operations.
22
                 At least one wing-walker shall be required when towing aircraft on
23            areas of the ramp that have less than 30 feet of lateral clearance from
             any surface of the aircraft being towed.
24
                 Wing-walkers shall maintain a position that provides them with a clear
25            'line of site' of the tow operator and the aircraft surfaces they are
             monitoring.
26
                 Wing-walkers shall not ride on tow units or any other equipment
27            during towing operations except when the aircraft is being towed a
             long distance in a taxi lane, taxiway or open ramp where lateral
28            clearance exceeds 30 feet.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002                    8.                    CASE NO. C 05 00490 CW

1   (True Dec. ¶ 18, Exh. 4.)  This policy, Corporate SSP No. 214, had been the subject to daily shift

2   briefings on May 17 and 18, 2003, and Plaintiff Hamilton's name appears upon the Daily Shift

3   Briefing forms for these dates.  (True Dec. ¶ 18, Exh. 5.)

4           In addition to the corporate SSP No. 214, since July 20, 2000, Signature Flight at the

5   San Francisco FBO had maintained a "Base Specific General Aviation Aircraft Towing & Storage

6   Policy," No. 601, providing:

7           OBJECTIVE:  To coordinate the safe movement of an aircraft by a
8           tow team.

9           Prior to towing any General Aviation aircraft, the following minimum
            criteria must be met:

10
            1. A Supervisor or Lead must be present at all towing movements.  No
11          exceptions!

12          * * *

13          12.  Towing aircraft on the ramp requires a minimum of one wing
            walker when towing small aircraft and a minimum of two wing
14          walkers when medium to large size aircraft is being towed.  When any
            size aircraft is being stored into a hanger a minimum of two wing
15          walkers must be present.  NO EXCEPTIONS!

16   (True Dec. ¶ 18, Exh. 6.)

17           It was reported to Defendant True that Plaintiff Hamilton, during the incident

18   observed by Ravi Satyanarayan, had allowed the employee who should have been acting as a wing

19   walker to ride on the tug when the towed airplane was within ten feet of other aircraft and a light

20   pole.  Mr. True concluded that Mr. Hamilton had violated the Corporate SSP No. 214 and the Base

21   Specific Policy No. 601 requiring the use of wing walkers.  Mr. True further concluded that it was

22   Mr. Hamilton's responsibility as an Operations Supervisor to comply with these policies, as well as

23   to require the compliance of other employees with them, and that he had not done so during the night

24   of May 28, 2003.[11]  (True Dec. ¶ 18.)

25           Plaintiff Hamilton testified that there are Corporate SSP safety policies as well as

26   "base specific safety policies," both of which employees are supposed to follow.  (Hamilton Dep.

27   [11]  At the time that Defendant True made the decision to demote Plaintiff Hamilton, and so notified
         him on May 30, 2003, Mr. True had no knowledge of any other supervisor or employee having
28       violated these policies.  (True Dec. ¶ 18.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002                    9.                    CASE NO.  C 05 00490 CW

340:2-9). Further, he testified that while an Operations Supervisor between January and May 2003, he had the responsibility to review the SSP policies and communicate those policies to employees. (Hamilton Dep. 335:4-338:2.) He specifically testified that in 2003 as an Operations Supervisor, he reviewed with employees both the Corporate SSP policies as well as the base specific policies with respect to the requirement of using wing walkers. (Hamilton Dep. 340:10-342:18.) However, Mr. Hamilton contends that he was not aware of the two policies discussed above, and at his deposition, did not recall that Corporate SSP No. 214 had been the subject of shift briefings on May 17 and 18, 2003, even though he signed his name on the Daily Shift Briefing forms for these dates.[12] (Hamilton Dep. 387:4-390:23, 391:14-392:2, Exhs. 21, 25, 26.)

### 3. The Failure To Complete The Aircraft Pre-Inspection Tow Checklist.

On May 6, 2003, Signature Flight implemented a new policy at the San Francisco FBO, Base Specific Policy No. 602, requiring that before an airplane was towed it had to be inspected for preexisting damage and to confirm the existence or non-existence of such, that an "Aircraft Pre-Inspection Tow Checklist" also had to be completed by all members of the employee towing team to confirm the inspection. The policy stated:

> SIGNATURE SAFETY PROCEDURES
>
> TOWING CHECKLIST
>
> OBJECTIVE: To ensure pre tow inspection of aircraft.
>
> Local procedures to be followed in conjunction with SSP No. 602.
>
> We have established an Aircraft Tow Checklist to aid in ensuring a pre tow inspection is preformed prior to every tow. This card must be filled out completely prior to moving any aircraft. All employees involved in tow movement must sign this card.

(True Dec. ¶ 19, Exh. 7.) On May 8, 2003, the policy was distributed to all Line Service Technicians who were required to sign an acknowledgement form with respect to it. (True Dec. ¶ 19, Exh. 8.) Additionally, this new policy was the subject of a daily shift briefings on May 13, 2003,

---

[12] Notwithstanding Mr. Hamilton's claimed ignorance, he testified that when employees, including himself, signed the Daily Shift Briefing forms, they and he did so indicating that they had read and understood the policies specified in the briefings. Mr. Hamilton testified that he signed the Daily Shift Briefing forms on the date they were issued. (Hamilton Dep. 346:12-348:17.)

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1  and Plaintiff Hamilton's name appears upon the Daily Shift Briefing form for this date.[13]   (True

2  Dec. ¶ 19, Exh. 5.)

3      Defendant True learned that on May 28, 2003, with respect to the airplane towed by

4  Plaintiff Hamilton without a wing walker, he had also failed to complete or have completed a pre-

5  tow checklist before moving the airplane as required by the new policy described above.[14]   (True

6  Dec. ¶ 19.)   While admitting that the checklist was missing, Mr. Hamilton testified that he

7  "believed" that he had completed the checklist, but "speculated" that Norman Ramirez had removed

8  it from the files.  (Hamilton Dep. 384:22-385:20.)  In any event, Mr. Hamilton admits that when

9  Mr. True checked the files, the pre-tow checklist was not there. (Hamilton Dep. 385:8-20.)

10      **4.    The May 30, 2003 Meeting With Plaintiff Hamilton.**

11      On May 30, 2003, Plaintiff Hamilton met with Defendant True, Norman Ramirez,

12  and Norma Manalang.   (True Dec. ¶ 20.)   Apparently, that same day, or the day before,

13  Mr. Hamilton received a telephone call from Ms. Manalang telling him that Mr. True wanted to meet

14  with him, but did not say why. (Hamilton Dep. 392:3-393:2.)  Mr. Hamilton then had a telephone

15  conversation with Mr. True during which Mr. Hamilton "heard tension in his voice" and concluded

16  that he was "angry."  Mr. True stated that they needed to meet as soon as possible because there

17  were some "issues" that needed to be resolved. (Hamilton Dep. 393:3-394:8.)

18      During the May 30, 2003 meeting, Defendant True told Mr. Hamilton that he had not

19  followed Company policies when he towed the airplane on night of May 28, 2003 without a wing

20  walker and without previously completing a pre-tow checklist.  He also told Mr. Hamilton that he

21  had filled out the employment verification for Plaintiff Barron-Smith without authorization.  (True

22  Dec. ¶ 20.) During the meeting, Mr. True gave Mr. Hamilton a Disciplinary Action Form indicating

23  his demotion and indicating the reasons as:

24

25  [13]  Notwithstanding that Plaintiff Hamilton recognized the policy during his deposition, and that he
     wrote his name on a May 13, 2003 Daily Shift Briefing form concerning the policy, he testified
26   he had no recollection of reviewing the policy in May 2003.  (Hamilton Dep. 335:4-338:2,
     346:12-348:17, 385:22-387:2; Exhs. 23, 24.)

27  [14]  As of May 30, 2003, Defendant True had no knowledge of any other employee failing to
     complete a pre-tow checklist subsequent to implementation of the new policy. (True Dec. ¶¶
28   19.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002          11.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1    On May 28, 2003, at 2100 H, Aircraft Tail XXXXX Astra 1125 was
     towed from the front line to the second line. There were two (2) Line
2    Service personnel; one (1) Supervisor and one (1) Line Service Tech.
     It was towed with the Wing Walker on the tug, with the tug operator.
3    The distance around the aircraft being towed and the aircraft around
     was less than ten feet. Weather conditions at that time was clear but
4    dark. It was towed top a dead stop without the Wing Walker at the
     wing tip or a clear sight of path. At its destination of the parking spot,
5    right behind the aircraft, were a belt loader and the light pole. On the
     right side of the towed aircraft was another parked aircraft. The
6    required Towing Checklist was not filled out.

7    On May 25, 2003, a Verification of Employment for one of the
     employees was issued and faxed without authorization.

8

9    (True Dec. ¶ 20, Exh. 9; Hamilton Dep., Exh. 27.) These were the sole reasons given by Mr. True

10   for the demotion, and were in fact the reasons why Mr. True took the action he did in demoting

11   Mr. Hamilton. Mr. Hamilton's race or stammering[15] had nothing to do with Mr. True's decision.

12   (True Dec. ¶¶ 15, 17, 18, 19, 20, 34.) According to Mr. Hamilton, during the meeting Mr. True was

13   "very angry," stating that he was "very disappointed" with Mr. Hamilton, that he had thought that he

14   could trust Mr. Hamilton, but that "he couldn't trust me any more." (Hamilton Dep. 394:8-17,

15   396:14-401:14.)

16   **G.      The April 28, 2003 Promotion Of Daniel Harris By Defendant True To The
             Position Of Operations Supervisor at Santa Barbara.**

17

18   Effective December 9, 2002, Defendant True assumed responsibility for the

19   Company's Santa Barbara airport operations. On April 28, 2003, Daniel Harris, who is African-

20   American, was promoted from Lead Line Service Technician to Operations Supervisor at Santa

21   Barbara. Prior thereto, Mr. True interviewed Mr. Harris for this position and thereafter approved his

22   promotion to it. Accordingly, just 32 days before Mr. True demoted Mr. Hamilton from the

23   Operations Supervisor position in San Francisco, he had promoted an African-American, Mr. Harris,

24   to that same employment position in Santa Barbara. Thereafter, on December 8, 2003, Mr. True

25   promoted Mr. Harris to Operations Manager, the second highest management position in at Santa

26   _____

27   [15]  To the knowledge of Defendant True, the fact that Plaintiff Hamilton stammered on occasion
         never hindered him or interfered with his work at Signature Flight. Neither Mr. Hamilton nor
         anyone else ever reported to Mr. True that he had any work problems because of his
28       stammering. Mr. True never observed any such problem. (True Dec. ¶ 34.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80599133.1 049112.1002                    12.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1   Barbara, and that equivalent to Norman Ramirez' position in San Francisco. (True Dec. ¶¶ 5, 16.)

2
     **H.    The November 6, 2004 Promotion Of Plaintiff Hamilton By Defendant True To
3           The Position Of Operations Supervisor.**

4           In response to a job posting, Plaintiff Hamilton applied for an open Operations

5   Supervisor position in September 2004. Effective November 6, 2004, Defendant True promoted

6   Mr. Hamilton to that position. (True Dec. ¶ 21; Hamilton Dep. 56:12-14, 63:24-64:5, 111:13-22.)

7
     **I.    The Pattern And Practice Of Signature Flight and Defendant True Of Hiring
            And Promoting African-Americans Is Inconsistent With Plaintiff Hamilton's
8           Claim He Was Demoted On The Basis Of His Race.**

9           Contrary to the allegations of the Complaint, from Plaintiff Hamilton's hire on

10  January 3, 1997, to his promotion to Operations Supervisor on January 13, 2003, and demotion from

11  that position on May 31, 2003, Signature Flight and Defendant True established a pattern and

12  practice of hiring and promoting African-Americans, not one of discrimination on the basis of race

13  in making such employment decisions.

14
     **1.    The December 1, 1997 Promotion Of Cliff Taylor By Defendant True To
            Operations Supervisor.**
15

16          Before Plaintiff Hamilton became a full-time employee on January 3, 1997, Cliff

17  Taylor, an African-American, had been hired and later promoted by Defendant True to Lead Line

18  Service Technician, the position he occupied when Mr. Hamilton was hired. Subsequently, Mr. True

19  promoted Mr. Taylor to Operations Supervisor on December 1, 1997. Mr. Taylor currently remains

20  employed by Signature Flight in this position. (True Dec. ¶ 22; Hamilton Dep. 94:3-20.)

21
     **2.    The Workforce Of The San Francisco Airport Operations Upon Its
            Acquisition By Defendant Signature Flight On March 4, 1999.**
22

23          When Signature Flight acquired the San Francisco FBO operations from AMR

24  Combs on March 4, 1999, it employed the existing employees of AMR Combs, three of whom were

25  African-American.[16]  (True Dec. ¶ 23; Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1.) Subsequently, Mr. True

26  ───────────────
     [16]  In addition to Plaintiff Hamilton and Mr. Taylor, the other African-American who had worked
27        for AMR Combs and became employed by Signature Flight, was Rochelle Scott. (True Dec. ¶
          23.) Mr. Hamilton contends Ms. Scott is "African-American, and Filipino." (Hamilton
          Dep. 94:24-95:4.)  The presence of African-Americans in the workforce, 5.35 percent,
28        compared favorably to the presence of African-Americans in the population of San Mateo

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

FIRMWIDE:80599133.1 0491 12.1002          13.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1  increased the number of African-Americans in the workforce and in lead and supervisory positions.

2        **3.     African-Americans Hired And Promoted By Defendant True From
3              March 4, 1999 To May 31, 2003.**

4              During the nearly four year period from March 4, 1999, when Signature Flight

5  acquired the San Francisco operations, and May 31, 2003 when Plaintiff Hamilton was demoted

6  from Operations Supervisor, there were 68 newly hired or rehired employees, nine of whom, or

7  12.85 percent, were African-Americans. (Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1; Hamilton Dep. 94:3-96:1,

8  97:2-99:21.) During 1999, three African-Americans were hired with the approval of Defendant

9  True. On June 30, 1999, Plaintiff Jones was hired as a Driver.[17] Thereafter, on September 3, 1999,

10  Gerald Green was hired as a Customer Service Representative. Finally, on December 8, 1999,

11  Plaintiff Barron-Smith was hired as a Line Service Technician. According to Plaintiff Hamilton, he

12  understood that Defendant True made the decision to hire each individual, and in fact, he did so.

13  (True Dec. ¶ 24; Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1; Hamilton Dep. 97:2-23, 98:14-99:21.)

14              Less than two months after his initial hire, on August 23, 1999, Defendant True

15  authorized the promotion Plaintiff Jones from Driver to Customer Service Representative. (True

16  Dec. ¶ 25; Ramsey Dec. ¶¶ 3, 4, 6, Exh. 2; Jones Dep. 78:23-86:13.) As of December 31, 1999, and

17  within the first nine months of operation by Signature Flight, the number of African–Americans had

18  increased from three to six, and comprised 12.5 percent of the workforce. (Ramsey Dec. ¶¶ 3, 4, 5,

19  Exh. 1.)

20              During 2000, there were 23 newly hired or transferred employees, two of whom, or

21  8.70 percent, were African-Americans. (Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1.) On August 21, 2000 and

22  November 13, 2000, Defendant True approved the hiring of Samantha Scott as a Customer Service

23  Representative and Kareem Mayo as a Line Service Technician. Both Ms. Scott and Mr. Mayo are

24      County, 3.5 percent, in which the airport is located, and did not compare disfavorably to the
       composition of African-Americans in the population of the immediately adjacent county of San
25      Francisco, 7.8 percent. (U.S. Census Bureau, California Quick Facts, San Mateo County (last
       modified Feb. 1, 2005) <http://quickfacts.census.gov/gfd/states/06/06081.html; U.S. Census
26      Bureau, California Quick Facts, San Francisco County (last modified Feb. 1, 2005)
       <http://quickfacts.census.gov/gfd/states/06/06075.html>.)

27  17  Plaintiff Jones testified he was interviewed for the Driver position by Defendant True before he
28      was offered the position. (Deposition of Bobby Jones, hereinafter "Jones Dep." 72:4-75:4.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80599133.1 049112.1002          14.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1    African-American. (True Dec. ¶ 26.)

2            On January 1, 2000, Defendant True promoted Rochelle Scott, an African-American,

3    from Customer Service Representative to Lead Customer Service Representative.    After this

4    promotion, Ms. Scott was one of three Lead Customer Service Representatives. The other two were

5    not African-American, and had been employed and been a Lead Customer Service Representative

6    longer than Ms. Scott.  Notwithstanding, on February 7, 2000, just slightly over two months later,

7    Ms. Scott was again promoted by Mr. True to the position of Customer Service Supervisor.[18]  Ms.

8    Scott replaced in this position someone who was not African-American. (True Dec. ¶¶ 27, 28;

9    Hamilton Dep. 100:5-101:2, 102:13-23.) As of December 31, 2000, of the employees in Signature

10   Flight's San Francisco workforce, eight, or 16.33 percent, were African-American. (Ramsey Dec. ¶¶

11   3, 4, 5, Exh. 1.)

12           During 2001, Defendant True approved the employment of Audrey Sims and David

13   Cathey, both African-Americans.  Ms. Sims was hired as a Customer Service Representative, and

14   Mr. Cathey as a Line Service Technician.   (True Dec. ¶ 29; Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1;

15   Hamilton Dep. 105:11-23.)  In addition, on August 25, 2001, Defendant True promoted Plaintiff

16   Jones from Customer Service Representative to Lead Customer Service Representative. (True Dec.

17   ¶ 30.)  As of December 31, 2001, of Signature Flight's employees at its San Francisco operations,

18   eight, or 18.18 percent, were African-American. (Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1.)

19           In 2002, and up to May 31, 2003, of the 20 new employees hired or rehired with the

20   approval of Defendant True, two were African-Americans.  On June 19, 2002 Nicholas Jenkins and

21   Plaintiff Sanders were both hired as Customer Service Representatives. (True Dec. ¶ 31; Ramsey

22   Dec. ¶¶ 3, 4, 5, Exh. 1; Hamilton Dep. 107:19-108:7.)  As of December 31, 2002, of the employees

23   employed within the San Francisco operations of Signature Flight, seven, or 14.28 percent, were

24   African-American. (Ramsey Dec. ¶¶ 3, 4, 5, Exh. 1.)

25

26   _____

[18]  Within the San Francisco operations, Signature Flight only employs one person in this position,
27    and the position is responsible for all customer service operations and all employees in the
      Customer Service Representative and Lead Customer Service Representative positions. (True
28    Dec. ¶ 28.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1    **II.    ARGUMENT**

2        **A.    Legal Standard For Summary Judgment.**

3                Summary judgment is appropriate if the moving party demonstrates that there is "no

4    genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.

5    R. Civ. P. 56(c).    In applying this standard, the court vievs the evidence and all reasonable

6    inferences therefrom in the light most favorable to the nonmoving party.    *Spaulding v. United*

7    *Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002).    A fact is "material" if, under the applicable

8    substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of*

9    *Kansas v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart*

10   *Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).    An issue of fact is "genuine" if "there is sufficient

11   evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144

12   F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).

13               Where the nonmoving party bears the ultimate burden of proof, as Plaintiff Hamilton

14   does in this case, the moving party may meet its burden by pointing to the absence of evidence to

15   support the nonmoving party's case.    *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).    A mere

16   "scintilla" of evidence supporting the nonmoving party's position will not suffice.    There must be

17   enough of a showing that a jury could reasonably find for the nonmoving party. *Anderson, supra,*

18   477 U.S. 242, 106 S. Ct. 2505.    "If the evidence is merely colorable...or is not significantly

19   probative, summary judgment may be granted." *Eisenberg v. Insurance Co. of N.A.,* 815 F.2d 1285,

20   1288 (9th Cir. 1987).

21               Here, although Plaintiff Hamilton claims that he was discriminated and retaliated

22   against, he has no evidence to support such claims.    Accordingly, Defendants' motion should be

23   granted. *Anderson, supra,* 477 U.S. 242, 106 S. Ct. 2505.

24       **B.    Plaintiff Hamilton's First And Fifth Causes Of Action For Race And Disability**
             **Discrimination Based On His May 31, 2003 Demotion Are Subject To Summary**
25           **Judgment.**

26               In his Complaint, Plaintiff Hamilton claims that he was discriminated against because

27   of his race (African-American) and because he suffered from a real or perceived disability

28   (stammering).    (Comp., ¶¶ 61, 86, 89.)    Specifically, he claims that on May 31, 2003 he was

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:80599133.1 049112.1002                  16.                  CASE NO. C 05 00490 CW

1  demoted based upon alleged violations of Company policy.[19]   (Comp., ¶¶ 37, 89.)  Mr. Hamilton

2  brings his claims under Title VII, FEHA, and Section 1981 of the Civil Rights Act.  Regardless of its

3  statutory basis, Mr. Hamilton's demotion claim fails because, as discussed more fully below, Mr.

4  Hamilton has no evidence of discrimination. *Anderson, supra*, 477 U.S. at 252, 106 S. Ct. 2505.

5          In order to prove intentional employment discrimination based on race or disability,

6  the following burden-shifting analysis is applied: (1) the plaintiff must first establish a *prima facie*

7  case; (2) the defendant may then come forward with evidence to articulate a nondiscriminatory

8  business reason for its actions; and (3) the plaintiff must then attack the defendant's

9  nondiscriminatory explanation, other than by speculation, on the grounds that it is pretextual.

10  *Coleman v. The Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).[20]   Although the burden of

11  going forward with the evidence shifts throughout this three-stage process, the plaintiff retains, at all

12  times, the ultimate burden of persuading the court that he was the victim of intentional

13  discrimination. *Id.* at 1281; *St. Mary's Honor Center v. Hicks,* 438 U.S. 502, 511 (1993).

14          To establish a *prima facie* case of race discrimination in a demotion claim, Plaintiff

15  must show that:  (1) he was in a protected group; (2) he was doing his job well enough to rule out the

16  possibility that he was demoted for inadequate job performance; and (3) the employer sought a

17  replacement with similar qualifications.  *Sengupta v. Morrison-Knudsen Co.,* 804 F.2d 1072, 1075

18  (9th Cir. 1986); *Frausto v. Legal Aid Society of San Diego, Inc.*, 563 F.2d 1324, 1328 (9th Cir. 1977);

19  *Brinkley v. Harbour Recreation Club,*  180 F.3d 598, 607 (4th Cir. 1999).  Likewise, to establish a

20  *prima* facie case of discrimination under the ADA (or state law disability equivalent), Mr. Hamilton

21  [19]   Although Plaintiff Hamilton claims that he was demoted in June 2003, the demotion actually
     became effective May 31, 2003.  (True Dec. ¶ 15.)

22
     [20]   Due to the similarities between FEHA and Title VII, it is appropriate to rely on federal decisions

23  addressing Title VII claims to analyze claims brought under FEHA. *Hersant v. California Dept.
     of Social Servs.*, 57  Cal.App.4th 997, 1001, 67 Cal.Rptr.2d 483, 485 (1997) (citing *Caldwell v.*

24  *Paramount Unif.* Sch. *Dist.*, 41 Cal.App.4th, 189, 195, 48 Cal.Rptr.2d 448, 452-453 (1995)).
     Likewise, because a Section 1981 claim is "predicated on the same elements as a [race]

25  discrimination claim under Title VII," both claims may be analyzed together. *Lalvani v. Cook
     Co.*, 269 F.3d 785, 789 (7th Cir. 2001); *Lowe v. Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1995)

26  ("the same standards are used to prove both claims"); *Stones v. LA Community College Dist.*,
     796 F.2d 270, 274 (9th Cir. 1986) (McDonnell Douglas burden shifting analysis applies to a

27  Section 1981 claim).  Likewise, claims under the Americans With Disabilities Act are properly
     analyzed using the *McDonnell Douglas* framework. *Snead v. Metro Property & Casualty Ins.*,

28  237 F.3d 1080, 1092-1093 (9th Cir. 2001).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002                    17.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1   must show that he (1) is disabled or perceived as disabled, (2) is qualified for the position at issue,

2   and (3) was demoted because of his real or perceived disability.  *Snead, supra,* 237 F.3d at 1089;

3   *Sanders v. Arenson Products, Inc.,* 91 F.3d 1351, 1353 (9th Cir. 1996).

4            If a plaintiff can meet this initial hurdle, the employer need only articulate "some

5   legitimate, nondiscriminatory reason" for its actions; it does not have to prove the absence of

6   discriminatory motive.  *Coleman, supra,* 232 F.3d at 1282; *Texas Dept. of Comm. Affairs v. Burdine,*

7   450 U.S. 248, 254-255, 101 S. Ct. 1089 (1981); *Douglas v. Marsh,* 53 FEP Cases 503, 505 (N.D.Cal.

8   1988, *aff'd,* 895 F.2d 1416 (9th Cir. 1990).   Once a legitimate business reason is articulated by the

9   defendant, the burden of production then shifts back to the plaintiff to demonstrate that the

10  employer's proffered reason is untrue or pretextual.  *Id.*  To defeat summary judgment, the plaintiff

11  has the burden of presenting "specific, substantial evidence" to prove pretext.  *Id.*  A plaintiff's mere

12  suspicions and/or conclusions of an employer's improper motives based on speculation are

13  insufficient to meet his burden.  *Id.; Forsberg v. Pacific Northwest Bell Tel. Co.,* 840 F.2d 1409,

14  1419 (9th Cir. 1988) ("purely conclusory allegations of alleged discrimination, with no concrete,

15  relevant particulars, will not bar summary judgment").

16           Here, Plaintiff Hamilton's demotion claim fails because he can neither prove a *prima*

17  *facie* case nor rebut the legitimate reasons offered by Defendants for their actions, and thereby

18  cannot prove intentional discrimination as a matter of law.

19       **1.    Plaintiff Hamilton Cannot Establish A *Prima Facie* Case Of Race Or**
              **Disability Discrimination With Respect To His Demotion.**
20

21           **a.    Defendants Did Not Perceive Plaintiff Hamilton As Being**
                   **Disabled.**

22           First, Plaintiff Hamilton has no evidence to establish that Defendants "perceived" him

23  as being disabled.  Rather, the only evidence adduced in the case establishes quite the contrary – that

24  Defendants neither believed that Mr. Hamilton was subjected to any ongoing condition or ailment,

25  nor regarded him as being disabled.    (True Dec. ¶ 34.)  Accordingly, as Mr. Hamilton cannot

26  establish that Defendant perceived him as being disabled, his claim necessarily fails.  *Winarto v.*

27  *Toshiba America Electronics Comp., Inc.* (9th Cir. 2001) 274 F.3d 1276, 1291 (affirming judgment

28  as a mater of law in favor of the employer where plaintiff had no work restrictions and presented no

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002                              18.                              CASE NO.  C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1   evidence that her managers perceived her as disabled.); *Foreman v. Babcock & Wilcox Co.* (5th Cir.

2   1997) 117 F.3d 800, 806-808 (affirming judgment in favor of defendant where employer

3   representatives testified that they did not perceive the plaintiff as being disabled).

4           Plaintiff Hamilton may argue that because Defendant True commented on his

5   "stammering," he was aware of a condition and therefore must have perceived him as disabled.

6   However, the undisputed evidence establishes that Mr. Hamilton never had any work restrictions

7   because of his stammering, never took any time off work to be treated for the supposed condition,

8   and never revealed to Mr. True that his stammering caused him to be limited in any major life

9   activities. Thus, even though Mr. True might have been aware that Mr. Hamilton stammered, this is

10  not enough to establish that Mr. True or anyone else at Signature flight "perceived" Mr. Hamilton as

11  being disabled. *Piascyk v. City of New Haven* (D.Conn. 1999) 64 F.Supp.2d 19, 32 (mere fact that

12  employer was aware of impairment is insufficient to show that it perceived him as limited in a major

13  life activity), aff'd 216 F.3d 1072 (2nd Cir. 2000); *Aucutt v. Six Flags Over Mid-America, Inc.,* 85

14  F.3d 1311, 1319 (8th Cir. 1996) (mere fact that employer has knowledge of a condition is not enough

15  to show that the employee was perceived as being disabled). For this reason, Mr. Hamilton cannot

16  establish a *prima facie* case and his disability discrimination claims necessarily fail.

17                          **b.    In Addition, Plaintiff Was Not Qualified For The Position From**
                                    **Which He Was Demoted.**
18

19          In addition, as noted above, Plaintiff Hamilton was demoted in May 2003 by

20  Defendant True after Mr. True lost confidence in his abilities as a supervisor. (True Dec. ¶ 15.)

21  Specifically, Mr. True came to the conclusion that Mr. Hamilton had violated several Company

22  policies, including completing an employment verification for a co-employee without authorization,

23  violating safety rules by towing an airplane without a wing walker, and failing to complete a pre-

24  inspection aircraft tow checklist. (True Dec. ¶¶ 15, 17, 18, 19, 20, 34.) Although Mr. Hamilton will

25  undoubtedly dispute whether each of these incidents occurred or whether they were a sufficient basis

26  for discipline, he cannot dispute that this was the reason given to him for his termination. (True Dec.

27  ¶ 20; Hamilton Dep. 394:8-17; 396:14-401:14; Exh. 10.) In addition, Mr. Hamilton has no evidence

28  to dispute Mr. True's assertion that he demoted Mr. Hamilton because he had lost confidence in him.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002                    19.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1    (*Id.*)  This lack of evidence precludes Mr. Hamilton from proving that he "was doing his job well

2    enough to rule out the possibility that he was demoted for inadequate job performance," or that he

3    was "qualified" for the position from which he was demoted, and thereby renders his *prima facie*

4    case of race or disability discrimination defective.  *Sengupta, supra,* 804 F.2d at 1075; *Snead, supra,*

5    237 F.3d at 1089.  Without a *prima facie* case, Mr. Hamilton's claims are subject to summary

6    judgment.

     **2.**     **Defendant Has Articulated A Legitimate Business Reason For Plaintiff**
               **Hamilton's Demotion.**

9         Assuming, *arguendo,* that Plaintiff Hamilton could establish a *prima facie* case of

10   discrimination, his claim nonetheless fails as Defendants have articulated a legitimate business

11   reason for his demotion.  (True Dec. ¶ 15.)  As noted above, Defendant True demoted Mr. Hamilton

12   because he had lost confidence in him based on the violation of Company policies, work rules, and

13   safety standards.  (*Id.*)  The law is clear that any one of these things provided a legitimate reason for

14   the decision made by Mr. True.  *Miller v. Los Angeles County Board of Educ.,* 799 F.2d 486 (9th Cir.

15   1986) (poor work performance is a legitimate reason for demotion in a race discrimination case); *Nix*

16   *v. WLCY Radio,* 738 F.2d 1181 (11th Cir. 1984) (violation of work rules is a legitimate reason for

17   adverse action); *Comeaux v. Uniroyal Chemical Corp.,* 849 F.2d 191 (5th Cir. 1988) (safety

18   violations provide legitimate reason for decision).  Without evidence to overcome this legitimate

19   reason for the demotion, Mr. Hamilton's claim is subject to summary judgment.

     **3.**     **Plaintiff Hamilton Cannot Prove Pretext**

         **a.**     **Plaintiff Hamilton Has No Evidence That The Reasons Given To**
               **Him For His Demotion Are Both False And A Pretext For**
               **Unlawful Discrimination.**

23        As Defendants have articulated a legitimate reason for Plaintiff Hamilton's demotion,

24   the burden is upon him to show that the reason given is either untrue or a pretext for unlawful race or

25   disability discrimination.  *Raad v. Fairbanks North Star Borough School Dist.,* 323 F.3d 1185, 1194

26   (9th Cir. 2003); *Collings v. Longview Fibre Co.,* 63 F.3d 828, 833 (9th Cir. 1995) ("Unless [plaintiff]

27   can show that [defendant's] explanation for [plaintiff's] discharge was a pretext for disability

28   discrimination, [she has] ... presented no triable issue under the ADA."); *Smith v. Barton,* 914 F.2d

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002          20.          CASE NO. C 05 00490 CW

1    1330, 1340 (9th Cir. 1990) (holding that once the employer offers a legitimate, nondiscriminatory

2    reason for the discharge, and that reason disclaims any reliance on the disability, the burden shifts to

3    the employee to demonstrate that the articulated reason is a pretext for disability discrimination). To

4    do this, he must show that "the employer's proffered explanation is unworthy of credence." *Reeves*

5    *v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143 (2000). Mr. Hamilton must do more than

6    show that the decision made by Defendant True was wrong, as in order to prove pretext he must

7    show that Mr. True falsified the reasons for his demotion because of a discriminatory animus.

8    *Grube v. Lau Industries, Inc.,* 257 F.3d 723, 730 ("A pretext for discrimination means something . . .

9    worse than business error; pretext means deceit used to cover one's tracks.")

10        Here, Plaintiff Hamilton has no evidence to prove that Defendant True had not really

11    lost confidence in him as a supervisor or that Mr. True did not honestly believe that Mr. Hamilton

12    had engaged in inappropriate and unsafe conduct. Thus, it does not matter whether the incidents in

13    question actually occurred, as the undisputed evidence establishes that Mr. True *believed* Mr.

14    Hamilton was no longer qualified to remain in a supervisory position. Without evidence to

15    contradict Mr. True's beliefs, Mr. Hamilton cannot prove pretext. *Nawrot v. CPC Int'l,* 277 F.3d

16    896, 906 (7th Cir. 2002) ("[P]retext requires more than a showing that the decision was 'mistaken, ill

17    considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has

18    not been shown.'") The mere fact that Mr. True's decision may have been arbitrary or unwise, does

19    not establish that it is discriminatory, and it is not for the trier of fact to "second guess" the

20    defendant's business decision. *Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2002); *see also,*

21    *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002) (no finding of

22    discrimination even if proffered legitimate business reason is "foolish, trivial or baseless"); *Williams*

23    *v. Raytheon Co.* (1st Cir. 2000) 220 F.3d 16, 20 (employee must make a "substantial showing" that

24    the employer's explanation was false). Without proof of pretext, Mr. Hamilton's claims fail.

25        **b.    Alternatively, Plaintiff Cannot Prove Pretext Because He Was**
             **Hired And Demoted By The Same Actor.**

26

27        Alternatively, because he was hired and promoted by Defendant True, and admits that

28    Mr. True demoted him, Plaintiff Hamilton cannot overcome the "same actor" inference. (True Dec.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002                    21.                    CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

¶¶ 1, 4, 10, 11, 12, 14.)  Where, as here, the same person makes both favorable and unfavorable employment decisions, a strong inference arises that the unfavorable decisions could not have been motivated by intentional race discrimination.  *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270-271 (9th Cir. 1996); *see also, Buhrmaster v. Overnite Trasp. Co.,* 61 F.3d 461, 463 (6th Cir. 1995) (the "same actor" inference applies in all types of discrimination cases and may be applied even if there is a long time period between the hiring and the adverse action); *EEOC v. Our Lady of the Resurrection Md. Ctr.,* 77 F.3d 145, 152 (7th Cir. 1996) (the same actor inference "has strong presumptive value" in a race discrimination case); *West v. Bechtel Corp.,* 96 Cal.App.4th 966, 980, 981 (2002).

The law is clear that where the same actor is responsible for both the hiring and the later demotion of a discrimination plaintiff, there can be no discriminatory motive.  As many courts have noted:

> One is quickly drawn to the realization that claims that employer animus exists [later in employment] but not in hiring seems irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to [discriminate against] them once they are on the job.

*Id.; citing, Proud v. Stone,* 945 F.2d 796, 797 (4th Cir. 1991) (age discrimination); *Coghlan v. American Seafoods Co., LLC,* 413 F.3d 1090, 1096 (applying the same actor presumption in a demotion case); *Lowe v. JB Hunt Transp., Inc.* 963 F.2d 173, 175 (8th Cir. 1992) (finding argument that company developed aversion to older people less than two years after hiring older worker is "simply incredible"); *Miller v. Citizens Sec. Group, Inc.* (8th Cir. 1997) 116 F.3d 343, 348 (finding it "unbelievable" that individual who hired person in a protected category suddenly developed an aversion to that category less than three years later).  Indeed, a plaintiff can only overcome this presumption if he "can muster [an] **extraordinarily strong showing of discrimination**." *Coghlan, supra,* 413 F.3d at 1096.  Where, as here, the plaintiff has no such evidence, summary judgment is appropriate.  *Id.* (affirming summary judgment where same decision maker hired plaintiff in 1998, promoted him in 2000 and then demoted him in 2001).

In the instant case, not only did Defendant True hire Plaintiff Hamilton, but he also

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113.2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002          22.          CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1   promoted Mr. Hamilton on at least two different occasions prior to the promotion decision in

2   question.  (True Dec. ¶¶ 12, 13.)  It is thus unbelievable that Mr. True would have developed a

3   discriminatory animus toward African-American or disabled employees between the time of the

4   promotion in January 2003 and the demotion decision in question, which occurred only four months

5   later.  *Miller, supra,* 116 F.3d at 348.  This conclusion is bolstered by Mr. True's record of hiring

6   and promoting African-American employees.  Specifically, and as noted above, the following record

7   demonstrates that neither Mr. True nor Signature Flight have a practice of discriminating against

8   African-American employees or applicants:

9       •   Defendant True hired, including all of the Plaintiffs herein, and promoted numerous

10          African-Americans.

11      •   Defendant True initially hired Plaintiff Hamilton.   Mr. True then promoted Mr.

12          Hamilton to Lead Line Service technician in 1999 and later to Operations Supervisor in

13          January 2003.  (True Dec. ¶ 12, 13.)

14      •   Before Defendant True hired Plaintiff Hamilton, he had hired Cliff Taylor, an African-

15          American, who he subsequently promoted to Lead Line Service Technician and then to

16          Operations Supervisor in 1997, the position in which he remains employed by Signature

17          Flight.  (True Dec. ¶ 22; Hamilton Dep. 94:3-20.)

18      •   There has always been at least one, and at times two, of the up to five Operations

19          Supervisors who are African-American.  (True Dec. ¶ 35.)

20      •   On April 28, 2003, Daniel Harris, who is African-American, was promoted by

21          Defendant True from Lead Line Service Technician to Operations Supervisor at Santa

22          Barbara.   Accordingly, just 32 days before Mr. True demoted Mr. Hamilton from

23          Operations Supervisor in San Francisco, he had promoted an African-American to that

24          same employment position in Santa Barbara.  (True Dec. ¶ 16.)

25      •   From March 1999 to December 2004, 27.27 percent of the promotions[21] to Operations

26          Supervisor or Customer Service Supervisor or Manager positions went to African-

27          American employees.  (Ramsey Dec. ¶¶ 3, 4, 6, Exh. 2.);

28  [21]   As used herein, "promotions" includes lateral transfers.

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

FIRMWIDE:80599133.1 049112.1002                23.                CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1   This record makes it difficult, if not impossible for Mr. Hamilton to prove pretext. *Nelson v. Pulaski*

2   *County Sheriff's Dept.* , 859 F.Supp. 1228 (no inference of discrimination where decision maker's

3   hiring and promotion of African-Americans was actually higher than the percentage of African-

4   Americans in the surrounding population). As he cannot rebut the legitimate reasons articulated by

5   Defendants and prove they are a pretext for unlawful discrimination, Mr. Hamilton's demotion based

6   claim is subject to summary judgment.

7       **C.**    **Plaintiff Hamilton's Fourth Cause Of Action For Wrongful Retaliation In Violation Of Public Policy Based On His May 31, 2003 Demotion Is Subject To**

8                   **Summary Judgment.**

9           In his Fourth Cause of Action, Plaintiff Hamilton recasts the same allegations, this

10   time claiming that he was wrongfully demoted for "complaining about SIGNATURE'S employment

11   practices. (Comp. ¶ 83.) In order to establish a *prima facie* case of retaliation, Mr. Hamilton must

12   show: (1) that he engaged in a protected activity; (2) that he was thereafter subjected to an adverse

13   employment action; and (3) a causal link between the two. *Jordan v. Clark,* 847 F.2d 1368, 1376

14   (9th Cir. 1988); *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir. 1987). Even if Mr. Hamilton can

15   prove a causal link based on timing or other evidence of retaliatory motive, his claim can be

16   overcome by proof that Defendants acted based on a legitimate business reason unrelated to the

17   alleged protected activity. *Jordan, supra,* 847 F.2d at 1377. Where, as here, Mr. Hamilton cannot

18   establish a *prima facie* case of retaliation and has no evidence that the proffered reason for his

19   demotion is pretextual, summary judgment is appropriate. *Vasquez v. County of Los Angeles,* 349

20   F.3d 634, 646 (9th Cir. 2003); *Ray v. Henderson,* 217 F.3d 1234, 1244 (9th Cir. 2000).

21           Specifically, although Plaintiff Hamilton complains that his demotion was unlawfully

22   based on "complaints," he does not even allege that he complained to Defendants about

23   discriminatory or other unlawful conduct until well *after* his demotion. In fact, Mr. Hamilton admits

24   in his complaint that **"[a]fter HAMILTON was demoted**, he filed a charge of racial discrimination

25   with the EEOC."[22]   (Comp. ¶ 39 (emphasis added).) Thus, Mr. Hamilton cannot prove that he

26

27   [22]   As indicated in footnote 8, *supra,* the only pre-demotion complaint Plaintiff Hamilton made

28   occurred about two to three weeks prior to this January 13, 2003 promotion, and he was nonetheless promoted thereafter to Operations Supervisor.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002         24.         CASE NO. C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton

1   complained and that he was "thereafter" subject to an adverse employment action, and thus he

2   cannot establish a *prima facie* case of retaliation. *Jordan, supra,* 847 F.2d at 1376.

3          Moreover, and as discussed in detail above, Plaintiff Hamilton's demotion was

4   appropriately based on the fact his manager, Defendant True, had lost confidence in him as a

5   supervisor.  As Mr. Hamilton has no evidence to prove that the reasons provided by Defendants for

6   the actions taken against him were not legitimately motivated by business reasons, his claims are

7   appropriate for summary judgment.[23]  *Vasquez, supra,* 349 F.3d at 646.

8   **III.    CONCLUSION**

9          For the reasons stated herein Defendants respectfully request that their partial motion

10  for partial summary judgment as to Plaintiff Hamilton's demotion claim be granted.

11  Dated: January 5, 2006

12

13                          _____
                            ALAN B. CARLSON
14                          LITTLER MENDELSON
                            A Professional Corporation
15                          Attorneys for Defendants
                            SIGNATURE FLIGHT SUPPORT
16                          CORPORATION; BBA AVIATION
                            SHARED SERVICES, INC.; BBA GROUP
17                          U.S. HOLDINGS, INC.; STEVE TRUE;
                            DENNIS SMITH

18

19

20

21

_____

22  [23]  Although Plaintiff Hamilton also characterizes his Fourth Cause of Action as a "public policy"
        claim, this cannot save him from summary judgment as a public policy claim rises and falls with
23      the underlying claim for discrimination. *Jennings v. Marralle,* 8 Cal.4th 121, 135-136; *Nelson v.
        United Technologies,* 74 Cal.App.4th 597, 613, fn. 4 (1999).  The fact that Mr. Hamilton also
24      bases this claim on section 12B of the San Francisco Administrative Code does not change this
        result, as this section simply restates the requirements of FEHA that no employer in the City of
25      San Francisco may discriminate against its employees on the basis of race or gender. (Comp., ¶
        79.)  Although it is unclear whether this statute is sufficiently "substantial and fundamental" to
26      support such a claim, that question does not have to be reached in connection with the instant
        motion. *Sullivan v. Delta Airlines,* 58 Cal.App.4th 938 (1997).  That is, because Mr. Hamilton's
27      claims fail under FEHA, they would likewise fail under the San Francisco Administrative Code,
        and are thereby insufficient to support his wrongful demotion claim as a matter of law.
28      *Jennings,* 8 Cal.4th at 135-136; *Nelson,* 74 Cal.App.4th at 613, fn. 4.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113.2303
408.998.4150

FIRMWIDE:80599133.1 049112.1002                    25.                    CASE NO.  C 05 00490 CW

Notice Of Motion & Motion For Partial Sum Jud On Demotion Claim Of Pl Donald Hamilton