1   ALAN B. CARLSON, Bar No. 055090, acarlson@littler.com
    ROBERT J. WILGER, Bar No. 168402, rwilger@littler.com
2   LITTLER MENDELSON
    A Professional Corporation
3   50 West San Fernando Street, 14th Floor
    San Jose, CA 95113.2303
4   Telephone:   408.998.4150

5   Attorneys for Defendants
    SIGNATURE FLIGHT SUPPORT CORPORATION;
6   BBA AVIATION SHARED SERVICES, INC.;
    BBA GROUP U.S. HOLDINGS, INC.; STEVE TRUE;
7   DENNIS SMITH; VAL VADEN

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  DONALD HAMILTON, an individual;          Case No.  C 05 00490 CW
    BOBBY JONES, an individual; DAMON
13  BARRON SMITH, an individual; ALJARICE    **NOTICE OF MOTION AND MOTION**
    SANDERS, an individual; and on behalf of **OF DEFENDANTS BBA AVIATION**
14  themselves and other similarly situated; **SHARED SERVICES, INC., AND BBA**
                                             **GROUP U.S. HOLDING, INC., FOR**
15           Plaintiffs,                     **SUMMARY JUDGMENT ON**
                                             **PLAINTIFFS' CLAIMS**
16       v.
                                             Date:        February 17, 2006
17  SIGNATURE FLIGHT SUPPORT                 Time:        10:00 a.m.
    CORPORATION, a Delaware corporation;     Courtroom:   2
18  BBA AVIATION SHARED SERVICES,
    INC., a Florida corporation; BBA GROUP US Trial Date: None
19  HOLDINGS INC., a Massachusetts
    corporation; STEVE TRUE, an individual;
20  NORMAN RAMIREZ, an individual;
    DENNIS SMITH, an individual; VAL
21  VADEN, an individual; and DOES 1-100;

22           Defendants.

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113.2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                              Case No.  C 05 00490

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF RELEVANT FACTS ................................................................3

      A.    The San Francisco International Airport Operations Of Signature Flight....................3

            1.    The Business Of Defendant Signature Flight .................................3

            2.    The Assumption Of Operations From AMR Combs On March 4, 1999 .........3

      B.    All Of Plaintiffs' Claims Arise Out Of Their Employment By Signature Flight.........3

            1.    The Employment Of Plaintiff Hamilton By Signature Flight .........................3

            2.    The Employment Of Plaintiff Jones By Signature Flight................................4

            3.    The Employment Of Plaintiff Sanders By Signature Flight............................5

            4.    The Employment Of Plaintiff Barron-Smith By Signature Flight ..................6

      C.    None of Plaintiffs' Allegations Of Wrongful Conduct Involve Any Employee Of BBA Aviation Or BBA Group. ..................................................................7

      D.    The Relationship Between Signature Flight, BBA Group, and BBA Aviation ..........9

            1.    Signature Flight ...........................................................................9

      E.    BBA Aviation ......................................................................................10

      F.    BBA Group ..........................................................................................10

III.  ARGUMENT........................................................................................................11

      A.    BBA Aviation And BBA Group May Prevail Upon Their Summary Judgment Motion By Showing That Plaintiffs Have No Evidence To Support Their Claims Against BBA Aviation And BBA Group ........................................................11

      B.    BBA Aviation And BBA Group Are Not Liable To The Plaintiffs In This Action Because They Neither Employed Plaintiffs Nor Took Any Action Against Them ........................................................................................12

      C.    BBA Aviation Is Not Liable To Plaintiffs In This Action Merely Because It Is Alleged To Be The Corporate Parent Of Signature Flight And BBA Group Cannot Be Found Liable Only Because It Is Alleged To Be The Parent Corporation Of BBA Aviation ........................................................13

            1.    Plaintiffs Cannot Set Forth Evidence That Either BBA Aviation Or BBA Group Exercised Day-To-Day Control Over Signature Flight's Employment Decisions........................................................15

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA. 95113.2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002          i.          Case No.  C 05 00490 CW

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

2.   Plaintiffs Cannot Set Forth Any Evidence To Satisfy The Remaining Three Factors To Establish That BBA Aviation And BBA Group Are An Integrated Enterprise With Signature Flight..............................................19

D.   Defendants BBA Aviation And BBA Group Are Not Alter Egos To Signature Flight, And Thus, Are Not Liable To Plaintiffs In This Action.................................20

1.   Plaintiffs Cannot Establish Alter Ego Status Between The Corporate Defendants Because The Is No Unity Of Interest.........................................21

2.   Plaintiffs Cannot Establish Alter Ego Status Between The Corporate Defendants Because No Inequitable Result Will Occur If BBA Aviation And BBA Group Are Not Found To Be The Alter Egos Of Signature Flight. .........................................................................................23

IV.   CONCLUSION ................................................................................................24

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408.998.4150

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

# TABLE OF AUTHORITIES

PAGE

## FEDERAL CASES

*Bell Atlantic Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*,
   849 F.Supp. 702 (N.D. Cal. 1994)..........................................................................21

*Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404 (9th Cir. 1991) .........................................11

*Cellini v. Harcourt Brace & Co.*, 51 F.Supp.2d 1028 n.3 (S.D. Cal. 1999)...........12, 17, 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................................11

*Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir. 1993)...............................12, 14, 15, 16

*Kang v. U. Lim America Inc.*, 296 F.3d 810 (9th Cir. 2002)...........................................14

*Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998).....................................16, 17

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990).........................................11

*Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211 (9th Cir. 1989)....................................14

*Sosa v. Hiraoka*, 920 F.2d 1451 (9th Cir. 1990) ...........................................................13

*Watson v. Gulf and Western Industries*, 650 F.2d 990 (9th Cir. 1981) .........................13

## STATE CASES

*Associated Vendors, Inc. v. Oakland Meat Co.*, (1962) 210 Cal.App.2d 825 ..................21

*Doney v. TRW, Inc.*, (1995) 33 Cal.App.4th 245............................................................21

*Institute of Veterinary Pathology, Inc. v. Cal. Health Labs.*,
   (1981) 116 Cal.App.3d 111 ...............................................................................21, 23

*Laird v. Capital Cities/ABC, Inc.*, (1998) 68 Cal.App.4th 727 ...............13, 14, 15, 17, 18, 19, 20

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, (1991) 235 Cal.App.3d 1220 ...............20

*Medix Ambulance Service, Inc. v. Superior Court*, (2002) 97 Cal.App.4th 109 ...............13

*Mesler v. Bragg Mgmt. Co.*, (1985) 39 Cal.3d 290 ......................................................20

*Mid-Century Ins. Co. v. Gardner*, (1992) 9 Cal.App.4th 1205 .................................20, 24

*Roman Catholic Archbishop v. Super. Ct.*, (1971) 15 Cal.App.3d 405.......................21, 23

*Say & Say, Inc. v. Ebershof*, (1993) 20 Cal.App.4th 1759 ............................................20

*Sonora Diamond Corp. v. Super. Ct.*, (2000) 83 Cal.App.4th 523 .................................21

*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269 .............................21, 23

*Tran v. Farmers Group, Inc.*, (2002) 104 Cal.App.4th 1202 .........................................21

*Walker v. Signal Cos., Inc.*, (1978) 84 Cal.App.3d 982 ................................................24

/ / /

/ / /

/ / /

/ / /

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408 998-4150

FIRMWIDE:71500054.1 049112.1002                    iii.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

## STATUTES

California Fair Employment and Housing Act................................................................1, 13, 17

California Government Code section 12928 .................................................................12

Title VII of the Civil Rights Act of 1964 ................................................................1, 13

42 U.S.C. section 1981 ................................................................................1

## OTHER

Federal Rules of Civil Procedure 56(c) ................................................................11

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                    iv.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1    ## NOTICE OF MOTION AND MOTION

2    TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3    YOU ARE HEREBY NOTIFIED that on Friday, February 17, 2006, at 10:00 a.m., or

4    as soon thereafter as the matter can be heard in Courtroom 2 of the United States District Court,

5    located at 1301 Clay Street, Oakland, California, Defendants BBA Aviation Shared Services, Inc.,

6    hereinafter "BBA Aviation," and BBA Group U.S. Holdings, Inc., hereinafter "BBA Group," will

7    move and hereby do move this Court for an order of summary judgment on the grounds stated

8    herein.

9    ## STATEMENT OF ISSUES TO BE DECIDED

10   The instant motion presents the Court with the following issues for decision:

11   1.      Whether all of Plaintiffs' claims brought against BBA Aviation and BBA

12   Group, pursuant to the provisions of Title VII of the Civil Rights Act of 1964 and the California Fair

13   Employment and Housing Act, are barred because Plaintiffs failed to exhaust their required

14   administrative remedies as to BBA Aviation and BBA Group prior to filing their civil action.

15   2.      Whether all claims brought by Plaintiffs against BBA Aviation and BBA

16   Group are barred because (1) Plaintiffs cannot show that they were employed by BBA Aviation

17   and/or BBA Group, and as such, BBA Aviation and BBA Group have no direct liability for any of

18   Plaintiffs causes of action and/or (2) Plaintiffs cannot establish that BBA Aviation and/or BBA

19   Group have any derivative liability for the alleged acts of Defendant Flight Support Corporation,

20   "Signature Flight," with respect to Plaintiffs' causes of action.

21   ## MEMORANDUM OF POINTS AND AUTHORITIES

22   ## I.      INTRODUCTION

23   The four Plaintiffs in this case bring employment-related claims against BBA

24   Aviation and BBA Group, alleging various discrimination and harassment claims based upon Title

25   VII of the Civil Rights Act of 1964, hereinafter "Title VII," 42 U.S.C. section 1981, hereinafter

26   "Section 1981," and the California Fair Employment and Housing Act, hereinafter "FEHA."

27   Furthermore, three of the Plaintiffs have brought a retaliation cause of action derived from the same

28   statutes. Plaintiffs also have filed several common law tort claims against BBA Aviation and BBA

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002          1.                    Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1  Group. In addition to bringing their statutory race discrimination, sex discrimination, and retaliation
2  causes of action on behalf of themselves, Plaintiffs have brought these claims as class actions.

3  BBA Aviation and BBA Group are not proper parties to this action and should be
4  dismissed. Neither BBA Aviation nor BBA Group has employed any of the Plaintiffs. Instead, each
5  of the Plaintiffs has been or was employed at all relevant times by Signature Flight. The sole reason
6  why the Plaintiffs have named BBA Aviation and BBA Groups as defendants in this litigation is
7  because Plaintiffs believe that BBA Aviation is the parent corporation of Signature Flight and that
8  BBA Group is the parent corporation of BBA Aviation. However, a parent-subsidiary relationship,
9  standing alone, is insufficient as a matter of law to hold BBA Aviation and BBA Group liable for
10  any purported conduct by their alleged subsidiary, Signature Flight and/or its employees.

11  Furthermore, by virtue of the distinctly separate nature of each of the Defendant
12  corporate entities, neither BBA Aviation nor BBA Group has been involved in, or exercised any
13  control over, any decision made or any action taken with respect to any of the Plaintiffs'
14  employment with Signature Flight. Indeed, each of the individual human resources, management,
15  supervisory or other rank-and-file employees who is alleged to have engaged in any unlawful or
16  tortious conduct toward Plaintiffs was employed solely by Signature Flight and not by either BBA
17  Aviation or BBA Group. Likewise, Plaintiffs have not filed any charges of discrimination with
18  either the Equal Employment Opportunity Commission, hereinafter "EEOC," or the California
19  Department of Fair Employment and Housing, hereinafter "DFEH," against either BBA Aviation or
20  BBA Group.

21  Plaintiffs cannot show that BBA Aviation and BBA Group, who were not their
22  employer, had any connection with their employment or engaged in any conduct toward them. In
23  fact, Plaintiffs admit as much. As such, BBA Aviation and BBA Group have no direct liability on
24  any of the Plaintiffs' claims. Furthermore, as will be discussed below, BBA Aviation and BBA
25  Group have no derivative liability on any of the Plaintiffs' claims. For these reasons, BBA Aviation
26  and BBA Group are entitled to summary dismissal of the Plaintiffs' claims as brought against them.
27  / / /
28  / / /

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
16th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                2.                Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1  II.    **STATEMENT OF RELEVANT FACTS**

2      A.    **The San Francisco International Airport Operations Of Signature Flight.**

3          1.    **The Business Of Defendant Signature Flight.**

4          San Francisco International Airport, hereinafter "Airport," services commercial

5  airlines as well as general aviation aircraft, namely private and corporate aircraft. The latter arrive to

6  and leave from a private FBO facility located at the Airport. The Airport contracts with Signature

7  Flight to operate this private terminal at which Signature Flight provides fueling, customer service,

8  and ground handling support to private aircraft. Signature Flight has similar operations at 46 airports

9  within the United States. (Declaration of Steven J. True in Support of Motion Of Defendants BBA

10  Aviation Shared Services, Inc., and BBA Group U.S. Holdings, Inc., for Summary Judgment on

11  Plaintiffs' Claims filed herewith, hereinafter "True Dec.," ¶ 2.)

12          2.    **The Assumption Of Operations From AMR Combs On March 4, 1999.**

13          Effective March 4, 1999, Signature Flight commenced operating the private FBO

14  terminal at the Airport, having acquired these operations in Signature Flight's acquisition of AMR

15  Combs.    As a consequence, on March 4, 1999, former employees of AMR Combs became

16  employees of Signature Flight, including Defendant True.[1] (True Dec. ¶ 3.)

17      B.    **All Of Plaintiffs' Claims Arise Out Of Their Employment By Signature Flight.**

18          1.    **The Employment Of Plaintiff Hamilton By Signature Flight.**

19          Plaintiff Hamilton was hired by AMR Combs as a part-time employee in

20  December 1996, and on January 3, 1997 became full-time in the position of Line Service

21  Technician. Mr. Hamilton was interviewed and hired by Defendant True. Mr. Hamilton became an

22

---

23  [1]  Defendant True has worked for different employers at the private FBO at the Airport since
    1965. In 1989, while employed by Butler Aviation, he became the General Manager of the
24  facility. On December 9, 2002, he assumed the position of Area General Manager with
    responsibility for Signature Flight's San Francisco, Santa Barbara, and Orange County,
25  California airport operations. (True Dec. ¶¶ 1, 4.) Within Signature Flight's San Francisco
    operations, Mr. True has supervisory responsibility for all employees within the operation.
26  Mr. True makes all final decisions to hire, promote, discipline, and demote employees.
    Regarding employee terminations, Mr. True obtains concurrence for such from corporate human
27  resources personnel. Mr. True makes final decisions as to employee compensation. (True Dec.
    ¶ 5.) The foregoing is consistent with Plaintiff Hamilton's understanding of Mr. True's
28  authority. (Hamilton Dep. 38:22-42:2.)

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998 4150

1    employee of Signature Flight when it acquired the operations of AMR Combs on March 4, 1999.

2    (True Dec. ¶26; Deposition of Donald Hamilton, hereinafter "Hamilton Dep.," 38:2-19.)  On June 6,

3    1999, approximately three months after that acquisition, Mr. True promoted Mr. Hamilton to Lead

4    Line Service Technician.    (True Dec. ¶ 26; Hamilton Dep. 52:7-53:22, 60:21-61:8, 95:12-16).

5    Subsequently, Plaintiff Hamilton applied for an Operations Supervisor position for which Mr. True

6    instead hired Ravi Satyanarayana on January 18, 2002. (True Dec. ¶¶ 28, 29; Hamilton Dep. 50:18-

7    52:1, 138:3-140:16, 144:24-146:10.)  Thereafter, both Mr. Hamilton and Mr. Satyanarayana applied

8    for an HSE&T Supervisor for which Mr. True again selected Mr. Satyanarayana effective

9    October 19, 2002.    (True Dec. ¶ 31; Hamilton Dep. 54:17-55:8, 56:20-59:15, 148:14-152:5.)

10    Approximately three months later, on January 13, 2003, Mr. Hamilton applied for another

11    Operations Supervisor position and was promoted to the position by Mr. True.  (True Dec. ¶ 33;

12    Hamilton Dep. 60:2-62:2, 63:3-8, 113:10-19, 152:14-156:8.)  On May 31, 2003, Mr. True demoted

13    Mr. Hamilton to a Line Service Technician position.  (True Dec. ¶ 36.)  Finally, Mr. Hamilton

14    applied for an Operations Supervisor position in September 2004, and effective November 6, 2004,

15    Mr. True again promoted him to that position.  (True Dec. ¶ 37; Hamilton Dep. 56:12-14, 63:24-

16    64:5, 111:13-22.)  Mr. Hamilton is currently employed in this position. (Comp. ¶ 4.)

17             Based upon his employment with Signature Flight at the San Francisco FBO, Plaintiff

18    Hamilton has brought a series of claims of discrimination and retaliation.    In particular, Mr.

19    Hamilton claims  that he was denied promotions due to his race and perceived disability.  (Comp. ¶¶

20    34, 35, 61.)  Mr. Hamilton also alleges that he was subject to different terms and conditions of

21    employment due to his race and perceived disability.  (Comp. ¶¶ 36, 61.)  In addition, Mr. Hamilton

22    asserts that he was demoted due to his race and perceived disability.  (Comp. ¶¶ 37, 61.)  Finally,

23    Mr. Hamilton alleges that he suffered from retaliation due to the filing of his initial EEOC charges.

24    (Comp. ¶¶ 39, 41, 73.)

25             **2.    The Employment Of Plaintiff Jones By Signature Flight.**

26             On June 30, 1999, Plaintiff Jones was hired as a Driver by Defendant True.  (True

27    Dec. ¶ 16; Deposition of Bobby Jones, hereinafter "Jones Dep." 72:4-75:4.)  Less than two months

28    later, on August 23, 1999, Mr. True authorized his promotion to Customer Service Representative.

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                    4.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1    (True Dec. ¶ 16; Jones Dep. 78:23-86:13.)  On August 25, 2001, Mr. True again promoted Mr. Jones

2    from Customer Service Representative to Lead Customer Service Representative.  (True Dec. ¶ 20;

3    Jones Dep. 91:22-92:21, 94:20-95:7, 95:22-102:6, 104:19-105:14.)  During July 2002, Mr. Jones

4    applied for a Customer Service Manager position.  (True Dec. ¶ 22, Jones Dep. 235:19-242:17,

5    244:21-24, Exhs. 104, 105.)  Mr. True selected Norman Ramirez for the position.  (True Dec. ¶ 22.)

6    During January 2004, a Customer Service Supervisor position was posted for employee applications.

7    (Jones Dep. 245:1-246:1, Exh. 106.)  In addition to Mr. Jones, Jay Singh, applied for the position

8    and was selected for it by Mr. True.  (True Dec. ¶ 23.)  On July 26, 2004, the decision was made by

9    the Vice President of Human Resources for Signature Flight, Dennis Smith, after consultation with

10   other management employees of Signature Flight, to terminate the employment of M. Jones based

11   upon an argument in which he engaged with a customer on July 15, 2004 in the context of Mr.

12   Jones' prior record of rude and aggressive behavior to customers and co-workers, conduct for which

13   he had been previously counseled.  (Deposition of Dennis B. Smith, FRCP Rule 30(b)(6) Designee,

14   hereinafter "Smith Rule 30(b)(6) Dep.," 269:20-270:2, 270:8-12, 270:22-271:8, 273:23-274:13.)

15           Plaintiff Jones claims that, during his employment with Signature Flight at the San

16   Francisco FBO, he was subjected to various acts of discrimination based upon his race and age.  In

17   particular, Mr. Jones alleges that he was denied promotions.  (Comp. ¶¶ 42, 44, 61.)  Mr. Jones also

18   asserts that he was subjected to different conditions of employment than other employees.  (Comp.

19   ¶¶ 43, 61.)  For example. Mr. Jones claims that he was denied overtime and paid less than younger

20   and non-African-American employees.   (Comp. ¶¶ 45, 92.)   Mr. Jones also alleges that his

21   termination was due to his race and age, and was in retaliation for his prior complaints of

22   discrimination to Signature.  (Comp. ¶¶ 49, 72, 92.)

23           **3.    The Employment Of Plaintiff Sanders By Signature Flight.**

24           Plaintiff Sanders was hired by Signature Flight as a Customer Service Representative

25   on June 19, 2002.  Plaintiff Sanders was interviewed and hired by Defendant True (True Dec. ¶ 10;

26   Deposition of Aljarice Sanders, hereinafter "Sanders Dep.," 45:16-46:2; 62:7-21; 66:15-19; 71:5-

27   13.)  Ms. Sanders claims that in early 2004, although no positions were open at that time, she told

28   both Mr. True and her direct supervisor at the time, Norman Ramirez, that she would like to be

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408.998.4150

FIRMWIDE:71500054.1 049112.1002               5.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1   considered for the next posted Lead Customer Service Representative position. (Sanders Dep.
2   108:12-110:3; 113:19-114:11, 116:4-117:7.) Around June 2004, Mr. True decided that a new Lead
3   Customer Service Representative position would be created on the graveyard shift. (True Dec., ¶ 11;
4   Sanders Dep. 183:10-23; Exh. 45.) Ms. Sanders admits that she did not apply for this position.
5   (True Dec. ¶ 12; Sanders Dep. 150:17-151:10; 183:21-23.) Approximately one month later on July
6   26, 2004, the swing shift Lead Customer Service Representative was terminated, again creating a
7   potential Lead Customer Service Representative opening. (True Dec.¶ 14; Sanders Dep. 151:11-16;
8   152:18-153:2.) This time, however, Mr. True decided not to fill the position at all, but to abolish it
9   because he felt that the Customer Service Supervisor, who split his time between the day and the
10  swing shifts, could adequately cover the lead role on the swing shift, thereby reducing labor costs.
11  (True Dec. ¶¶ 13-14; Sanders Dep. 152:18-153:7; 188:20-25; 189:4-14; 192:7-193:2.) Accordingly,
12  there was actually no promotional opportunity available, and Ms. Sanders admits she did not apply
13  for any Lead Customer Service Representative positions during her employment at Signature Flight.
14  (Sanders Dep. 190:2-5.) Finally, during the first part of August 2004, Mr. True was notified that Ms.
15  Sanders had been denied a Customs Security Area Seal which was necessary for her employment.
16  (True Dec., ¶ 23; Sanders Dep. 82:22-83:2.) As a consequence, Ms. Sanders was terminated by
17  Mr. True on September 21, 2004. (True Dec. ¶ 24; Sanders Dep. 73:25-74:21.)

18          . Based upon her employment with Signature Flight, Plaintiff Sanders has brought
19  several claims based upon her employment at the San Francisco FBO. Initially, Ms. Sanders claims
20  that she suffered from sexual and racial harassment during her employment. (Comp. ¶¶ 51, 66.) Ms.
21  Sanders also alleges that she was denied promotions due to her race and sex. (Comp. ¶¶ 53, 61, 66.)
22  In addition, Ms. Sanders asserts that she was denied overtime and paid less than other employees
23  because of her race and sex. (Comp. ¶¶ 54, 61, 66.) Finally, Ms. Sanders alleges that she was
24  terminated because of her race and because she had filed a charge of discrimination with the EEOC.
25  (Comp. ¶¶ 55, 61, 74.)

26          **4.      The Employment Of Plaintiff Barron-Smith By Signature Flight.**

27          Plaintiff Barron-Smith was hired with the approval of Defendant True as a Line
28  Service Technician on December 8, 1999. (True Dec. ¶ 15; Deposition of Damon Barron-Smith,

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                6.                Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1  hereinafter "Barron-Smith Dep.," 48:13-17.)  As discussed above, Plaintiff Hamilton was demoted

2  on May 31, 200 from an Operations Supervisor position.  (True Dec. ¶ 16.)  Mr. Barron-Smith

3  admits he never applied for the resulting open position following Mr. Hamilton's demotion, nor did

4  he inform Mr. True of his interest in Mr. Hamilton's former position. (True Dec. ¶ 17; Barron-Smith

5  Dep. 127:17-128:7;.)  Instead, Mr. Barron-Smith claims that the job opening for the Operations

6  Supervisor position was never posted.  Regardless, there were two applicants for this position,

7  Macario Liporada and Brad Haines.  (True Dec. ¶ 18.)  Mr. True promoted Mr. Haines to the

8  position in June 2003. (True Dec. ¶ 19.)  In April 2004, another opening for an Operations

9  Supervisor occurred.  (True Dec. ¶21, Barron-Smith Dep. 126:17-21.)  In response to the posting,

10  three individuals submitted applications, including Mr. Barron-Smith. (True Dec. ¶ 22.)  Mr. True

11  determined that none of the applicants were qualified for the position, and thus decided that the

12  position would not be filled at that time. (True Dec. ¶¶ 23, 24.)  At the time the decision was made,

13  Mr. True explained to Mr. Barron-Smith that he was not ready for the Operations Supervisor

14  position because he had no prior experience managing or supervising other employees.  Mr. True

15  further explained that he wanted Mr. Barron-Smith to gain experience as a Lead Line Service

16  Technician before being considered for an Operations Supervisor position. (True Dec. ¶ 25; Barron-

17  Smith Dep. 139:22-140:21.)  In September 2004, two Lead Line Service Technician positions were

18  posted for application. (True Dec. ¶¶26, 27.)  Mr. True promoted Mr. Barron-Smith to one of the

19  positions effective October 30, 2004.  (True Dec. ¶ 27; Barron-Smith Dep. 145:24-146:4.)

20          Plaintiff Barron-Smith also alleges that he was denied promotional opportunities due

21  to his race during his employment with Signature Flight at its San Francisco FBO.  (Comp. ¶¶ 57,

22  61.)  In addition, Mr. Barron-Smith claims that he was subjected to harassment, had different terms

23  and conditions of employment, and was denied overtime due to his race.  (Comp. ¶¶ 58, 61.)

24  **C.      None of Plaintiffs' Allegations Of Wrongful Conduct Involve Any Employee Of
            BBA Aviation Or BBA Group.**

25

26          As indicated above, during the relevant time period covered by their claims, Plaintiffs

27  were employed by Signature Flight in various positions.  At no point were any of the Plaintiffs

28  employed by either BBA Aviation or BBA Group. (True Dec. ¶¶ 10, 15, 16, 26; Declaration of

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                    7.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1  Dennis B. Smith in Support of Motion Of Defendants BBA Aviation Shared Services, Inc., and BBA

2  Group U.S. Holdings, Inc., for Summary Judgment on Plaintiffs' Claims filed herewith, hereinafter

3  "Smith Dec.,"¶ 8; Declaration of Joseph I. Goldstein in Support of Motion Of Defendants BBA

4  Aviation Shared Services, Inc., and BBA Group U.S. Holdings, Inc., for Summary Judgment on

5  Plaintiffs' Claims filed herewith, hereinafter "Goldstein Dec.," ¶ 7; Declaration of Gregory J. Murrer

6  in Support of Motion Of Defendants BBA Aviation Shared Services, Inc., and BBA Group U.S.

7  Holdings, Inc., for Summary Judgment on Plaintiffs' Claims filed herewith, hereinafter "Murrer

8  Dec.," ¶ 7.)

9        During their employment with Signature Flight, each of the Plaintiffs allege that he or

10  she was subjected to some form of discrimination, harassment, and/or retaliation by another

11  Signature Flight employee based upon their race, gender, age or perceived disability status. (Comp.

12  ¶¶ 34-58.) This conduct is alleged to have been perpetrated by both named individual Defendants

13  True and Smith, as well as by other employees of Signature Flight's at the San Francisco FBO where

14  each of the named Plaintiffs worked. (Comp. ¶¶ 12, 13, 14, 49, 51, 66.)

15        No allegations of specific wrongdoing have been made by Plaintiffs against either

16  BBA Aviation or BBA Group or against one of their employees. Neither BBA Aviation nor BBA

17  Group ever exercised any control over the employment decisions that impacted Plaintiffs, either

18  those that were favorable or unfavorable to them. (Smith Dec. ¶ 8.) Plaintiffs have not alleged that

19  they even had any contact with any employee of either BBA Aviation or BBA Group, much less that

20  an employee from these companies took any action against them. None of the Signature Flight

21  employees who allegedly subjected Plaintiffs to discriminatory, harassing or retaliatory conduct has

22  ever been employed by either BBA Aviation or BBA Group. (Smith Dec. ¶ 9.) In fact, since the

23  filing of their lawsuit, Plaintiffs admit that no employee of either BBA Aviation or BBA Group took

24  any direct action toward them. (Wilger Dec. ¶¶ 2, 3, Exhs. A, B.) Likewise, Plaintiffs admit that

25  they have no evidence that either BBA Aviation or BBA Group was involved in any of the alleged

26  adverse actions directed toward Plaintiffs. *Id.* As such, when Plaintiffs filed their charges of

27  discrimination with the EEOC and DFEH, Plaintiffs brought their charges only against Signature

28  Flight. (Smith Dec. ¶¶ 11-14, Exhs. A-D.) Neither BBA Aviation nor BBA Group was named in

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                8.                Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1    Plaintiffs' administrative charges. *Id.*

2    **D.    The Relationship Between Signature Flight, BBA Group, and BBA Aviation.**

3         **1.    Signature Flight.**

4         Signature Flight Support is a general aviation support company. (Smith Dec. ¶ 2.) It

5    provides services to corporate and private aviation at FBO's located at more than 60 airports in the

6    United States, Europe, South America, Africa, and Asia. At these various locations, it employs more

7    than 1,000 employees. *Id.* Signature Flight's services include fueling, hangar and office rentals,

8    ground handling, passenger services, maintenance, and deicing. *Id.* It is headquartered in Orlando,

9    Florida. (Smith Rule 30(b)(6) Dep. 186:16-24.) Signature Flight was incorporated in 1990 in

10   Delaware and remains a corporation in good standing. (Smith Dec. ¶ 3.) As of December 9, 2005,

11   its sole shareholder is BBA Aviation. (Smith Dec. ¶ 3.) Prior to that date, Signature Flights sole

12   shareholder was Page Avjet Holding Corporation. (Smith Rule 30(b)(6) Dep. 185:11-186:6.) In

13   addition, Signature Flight itself is a parent corporation to seven subsidiaries. (Smith Dec. ¶ 3.)

14   Signature Flight's President and Chief Executive Officer is now Bruce Van Allen, and it has eight

15   other corporate officers. *Id.* Signature Flight also has its own board of directors, which meets

16   independently of other corporate entities. *Id.*

17        Signature Flight Support maintains its own human resources department, with

18   Defendant Smith as Vice President of Human Resources. (Smith Dec. ¶¶ 1 & 6.) As such,

19   Signature Flight has established independent policies and practices applicable to Plaintiffs'

20   employment. (Smith Rule 30(b)(6) Dep. 191:7-8.) It issues its own employee information guide,

21   *i.e.,* handbook, has created job descriptions for the jobs at its locations, has its own employee

22   complaint procedure, by which employees can report alleged discrimination and harassment, and

23   investigates such complaints through its human resources department. (Smith Dec. ¶ 6.) Although it

24   uses a payroll service to process the checks, Signature Flight issues the pay checks and W-2 forms

25   for its employees. (Smith Rule 30(b)(6) Dep. 188:24-189:1.)

26        Furthermore, even though Signature Flight maintains its own corporate and regional

27   human resources departments and functions, actual day-to-day human resources decisions involving

28   such matters as hiring, promotions, discipline, and compensation are made at the local level by the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                    9.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1   management of each particular FBO.  (Smith Dec. ¶ 7.)  Neither BBA Aviation nor BBA Group

2   have any role in or effect on the human resources decisions made by Signature Flight either at the

3   corporate or FBO level.  *Id.*  (Smith Rule 30(b)(6) Dep. 187:24-188:6, 190:3-18.)

### E.   BBA Aviation.

5   BBA Aviation is a shared services company that provides, legal, financial, computer,

6   and other business support to Signature Flight and Aircraft Service International, Inc.  (Goldstein

7   Dec. ¶ 2; Smith Rule 30(b)(6) Dep. 175:2-176:2, 186:25-187:11, 188:8-23, 189:2-190:2, 190:7-22.)

8   Contrary to Plaintiffs' allegation at the time Plaintiffs filed their Complaint, Defendant BBA

9   Aviation was not the "parent" corporation to Signature Flight.  (Comp. ¶ 9.)  Instead, until December

10   9, 2005, BBA Aviation was a sister corporation to Signature Flight that also was solely owned by

11   Page Avjet Holding Corporation.  (Goldstein Dec. ¶ 3; Smith Rule 30(b)(6) Dep. 186:7-10.)  BBA

12   Aviation is a Florida corporation that was incorporated in November 2001 and remains in good

13   standing.  (Goldstein Dec. ¶ 3.)  Like Signature Flight, it is headquartered in Orlando, Florida.

14   (Goldstein Dec. ¶ 3; Smith Rule 30(b)(6) Dep. 186:16-24.)  BBA Aviation's President is Bruce S.

15   Van Allen and there are two other corporate officers.  (Goldstein Dec. ¶ 3; Smith Rule 30(b)(6) Dep.

16   176:3-20, 190:3-6.)  It too has its own board of directors that meets separately from the boards of

17   other corporate entities.  (Goldstein Dec. ¶ 3.)

18   Defendant BBA Aviation maintains its own human resources department with Ron

19   Lance as its Vice President of Human Resources.  (Goldstein Dec. ¶ 5.)  BBA Aviation maintains its

20   own employment policies and has its own employee handbook.  *Id.*  BBA Aviation issues the pay

21   checks and W-2 Forms to its employees.  *Id.*

### F.   BBA Group.

23   BBA Group is a holding company.  (Murrer Dec. ¶ 2.)  It performs various business

24   services related to taxes, financial reporting, business planning, mergers and acquisitions, etc., for its

25   related companies.  *Id.*  BBA Group was incorporated in Delaware in August 1985 and remains in

26   good standing.  (Murrer Dec. ¶ 3.)  Its sole shareholder is BBA U.S. Investments SRAL.  *Id.*  The

27   President and Secretary of BBA Group is Gregory J. Murrer, and there are five other corporate

28   officers.  *Id.*  It also has its own board of directors that meets separately from other boards.  *Id.*  BBA

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                    10.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1    Group is headquartered in Wakefield, Massachusetts. *Id.*

2            BBA Group maintains its own employment policies. (Murrer Dec. ¶ 5.) It does not

3    have an employee handbook. *Id.* Due to its size, there is no vice president of human resources for

4    BBA Group. *Id.* Instead, Mr. Murrer, the President of the Company, is responsible for overseeing

5    its human resources functions. *Id.* BBA Group issues its employees' pay checks and W-2 Forms.

6    *Id.*

7    **III.    ARGUMENT**

8            **A.    BBA Aviation And BBA Group May Prevail Upon Their Summary Judgment
             Motion By Showing That Plaintiffs Have No Evidence To Support Their Claims**
9            **Against BBA Aviation And BBA Group.**

10           Summary judgment is warranted if the moving party establishes that there is no

11   genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.

12   R. Civ. P. 56(c). Where the moving party does not bear the burden of proof on an issue at trial, it

13   may satisfy its burden by demonstrating that there is no evidence to support the non-moving party's

14   case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The moving party neither has to produce

15   evidence showing the absence of a material fact on the issues nor is required to support its motion

16   with evidence negating the opposing party's claims. *Id.; Lujan v. National Wildlife Federation,* 497

17   U.S. 871, 885 (1990). Once the moving party shows that no evidence supports the non-moving

18   party's case, the non-moving party must produce "specific evidence, through affidavits or admissible

19   discovery material, to show that the dispute exists." *Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404,

20   1409 (9th Cir. 1991). Importantly, "a complete failure of proof concerning an essential element of

21   the nonmoving party's case necessarily renders all other facts immaterial. The moving part is

22   'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a

23   sufficient showing on an essential element of her case with respect to which she has the burden of

24   proof." *Celotex Corp.,* supra, 477 U.S. at 323. As will be demonstrated below, summary judgment

25   is warranted in this matter because Plaintiffs have no evidence that either BBA Aviation or BBA

26   Group was their employer so as to make them liable for any of Plaintiffs' claims.

27   / / /

28   / / /

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                    11.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

**B.     BBA Aviation And BBA Group Are Not Liable To The Plaintiffs In This Action Because They Neither Employed Plaintiffs Nor Took Any Action Against Them.**

An employee-employer relationship is a prerequisite to employment-related claims. *See generally Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir. 1993) (to establish a prima facie case of discrimination under Title VII, plaintiffs must establish that the defendant is their employer). Because no employment relationship has ever existed between any of the Plaintiffs and BBA Aviation or BBA Group, Plaintiffs cannot maintain their claims for relief against them based upon an employer-employee theory of liability. *See Cellini v. Harcourt Brace & Co.*, 51 F.Supp.2d 1028, 1033 n.3 (S.D. Cal. 1999). Here, it is undisputed that each of the Plaintiffs was employed at the relevant time solely by Signature Flight, working at all times only at its San Francisco FBO. (Comp. ¶¶ 4, 5, 6, 7; Smith Dec. ¶ 8.) Furthermore, Plaintiffs were paid and issued their W-2 forms by Signature Flight.[2] (Smith Dec. ¶ 6; Smith Rule 30(b)(6) Dep. 188:24-189:1.) Indeed, no connection whatsoever between BBA Aviation and BBA Group and the Plaintiffs' employment has been identified or alleged, other than an allegation of BBA Aviation's mere status as a corporate parent of Signature Flight, and BBA Group's status as the parent corporation of BBA Aviation. (Comp. ¶¶ 9, 10.)

Furthermore, Plaintiffs have never alleged that any employee of either BBA Aviation or BBA Group has engaged in any unlawful or tortious conduct directed toward them. For example, each of the individual human resources officials, management employees, supervisors or other rank-and-file employees who is alleged to have engaged in any illegal or tortious conduct toward Plaintiffs has, in turn, also been employed or alleged to have been employed solely by Signature Flight. (Smith Dec. ¶ 9.) In fact, since the filing of their lawsuit, Plaintiffs have admitted that no employee of either BBA Aviation or BBA Group has engaged in any unlawful or tortious conduct directed towards Plaintiffs. (Wilger Dec. ¶¶ 2, 3, Exhs. A , B.) Likewise, Plaintiffs have conceded that they have no evidence that either BBA Aviation or Defendant BBA Group has taken actions

---

[2]     Pursuant to California Government Code section 12928, for purposes of their FEHA claims, it is presumed that Signature is Plaintiffs' employer because Signature is identified as their employer on their W-2 Forms.

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                    12.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1   against Plaintiffs. *Id.* Plaintiffs own admissions conclusively establish that BBA Aviation and BBA

2   Group should be dismissed from this lawsuit.

3   Finally, because they were not Plaintiffs' employer, neither BBA Aviation nor BBA

4   Group was named in any of the Plaintiffs' administrative charges that were filed with the EEOC.

5   (Smith Dec. ¶¶ 11-14, Exhs. A-D.)  Consequently, Plaintiffs failed to exhaust their administrative

6   remedies against BBA Aviation and BBA Group with regard to their Title VII and FEHA claims,

7   and these claims should be dismissed as against these two Defendants. *See Sosa v. Hiraoka*, 920

8   F.2d 1451, 1458 (9th Cir. 1990) ("general rule [is] that Title VII claimants may sue only those named

9   in the EEOC charge because only they had an opportunity to respond to charges during the

10   administrative proceeding"); *Medix Ambulance Service, Inc. v. Superior Court*, 97 Cal.App.4th 109,

11   116-118 (2002) (FEHA claim against "alter ego" dismissed for failure to exhaust administrative

12   remedy when the "alter ego" was not named in the administrative charge).

13   **C.   BBA Aviation Is Not Liable To Plaintiffs In This Action Merely Because It Is
        Alleged To Be The Corporate Parent Of Signature Flight And BBA Group
14      Cannot Be Found Liable Only Because It Is Alleged To Be The Parent
        Corporation Of BBA Aviation.**
15

16   The mere fact that BBA Aviation is alleged to be the corporate parent of Signature

17   Flight, and BBA Group is alleged to be the parent corporation of BBA Aviation, is in no way

18   sufficient in and of itself to impose any liability on either BBA Aviation or BBA Group for any acts

19   or omissions by their alleged corporate subsidiary, Signature Flight, or any of Signature Flight's

20   employees. *See Watson v. Gulf and Western Industries*, 650 F.2d 990, 993 (9th Cir. 1981) (absent

21   "special circumstances, a parent corporation is not liable for the Title VII violations of its wholly

22   owned subsidiary").  Instead, to impose liability upon BBA Aviation and/or BBA Group, Plaintiffs

23   must establish that they are a "single employer" of Plaintiffs with Signature Flight.  The undisputed

24   facts of this matter conclusively prove that Plaintiffs cannot satisfy their burden to prove such.

25   In the leading case of *Laird v. Capital Cities/ABC, Inc.*, 68 Cal.App.4th 727 (1998),

26   the plaintiff had been terminated from her position with a subsidiary company, and sued the parent

27   corporation, Capital Cities/ABC, Inc. ("Cap Cities"), for discrimination and wrongful termination.

28   Affirming a grant of summary judgment in favor of Cap Cities, the court of appeal held that Cap

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                    13.                    Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1   Cities was not the plaintiff's employer and, therefore, not liable on the plaintiff's claims.  The *Laird*

2   court began by reiterating the well-established policy and law that the corporate form is entitled to

3   great deference.  A plaintiff hoping to bypass that legally recognized and binding corporate form

4   faces a high burden:

> An employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law.  *Corporate entities are presumed to have separate existences,* and the corporate form will be disregarded only when the ends of justice require this result.  [Citations.]  *In particular, there is a strong presumption that a parent company is not the employer of its subsidiary's employees.*  [Citation.]

10   *Id.* at 737 (emphasis added) (omitted citations include *Frank, supra,* 3 F.3d at 1362 ("doctrine of

11   limited liability creates a strong presumption that a parent company is not the employer of its

12   subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances")).

13   Plaintiffs cannot rebut this strong presumption that BBA Aviation and BBA Group are not their

14   employers and are not liable for any damages simply by claiming that there is common ownership or

15   control.  *Id.* at 738.

16          In determining whether the parent was the putative employer of the plaintiff, the

17   *Laird* court adopted the "single employer" test historically used in the federal courts.  The test has

18   four factors: (1) interrelation of operations; (2) common management; (3) centralized control of

19   labor relations; and (4) common ownership or financial control.  *Laird,* 68 Cal.App.4th at 737; *see*

20   *also Morgan v. Safeway Stores, Inc.,* 884 F.2d 1211, 1213 (9th Cir. 1989).  The *Laird* court

21   emphasized that, by far, the most important factor is the third, namely centralized control of labor

22   relations.  *See also Kang v. U. Lim America Inc.,* 296 F.3d 810, 815 (9th Cir. 2002) ("centralized

23   control of labor relations is the 'most critical'").  It is the *sine qua non.*  Under this factor, a plaintiff

24   must prove that the parent exercises day-to-day control of routine employment matters within the

25   subsidiary:

> "The critical question is, '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'  [Citation.]  A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong.  [Citation.]  *To satisfy the control prong, a parent must*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113-2303
408.998.4150

FIRMWIDE:71500054.1 049112.1002                14.                    Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

control the day-to-day employment decisions of the subsidiary.
[Citations.]"

*Laird, supra,* 68 Cal.App.4th at 738 (emphasis added) (quoting *Frank, supra,* 3 F.3d at 1363). Thus, it is a difficult legal task to hold a parent corporation liable for any unlawful or tortious act allegedly occurring at a corporate subsidiary. It is ordinarily proper to do so only when the evidence establishes that the parent corporation controls the day-to-day employment decisions of its subsidiary corporation.

### 1. Plaintiffs Cannot Set Forth Evidence That Either BBA Aviation Or BBA Group Exercised Day-To-Day Control Over Signature Flight's Employment Decisions.

The *Laird* court held that the plaintiff failed to meet the critical prong of proving that the parent corporation controlled the day-to-day employment decisions of the subsidiary, or otherwise satisfied the interrelationship ("integrated enterprise") test, although she had established that (1) she was instructed to use Cap Cities' name in dealing with the public because it had "more clout," (2) her employee handbook made mention of Cap Cities, (3) Cap Cities claimed credit in the public's eye for the activities of the subsidiary, (4) she was eligible for certain Cap Cities benefits, and (5) employees of the subsidiary were deemed to come within Cap Cities' equal employment opportunity policies. *Laird,* 68 Cal.App.4th at 738-739. The court held that all this was legally insufficient, reasoning that the plaintiff had not established that the parent exercised any greater control over the subsidiary than is normal in any parent-subsidiary relationship. *Id.* at 739. The court dismissed the plaintiff's claims because she "produced no evidence that Cap Cities exercised day-to-day control over [its subsidiary's] employment decisions in general or that it exercised any control over [the subsidiary's] decisions with respect to her." *Id.* at 738-39. The Plaintiffs in this matter cannot even point to evidence similar to that found insufficient in *Laird* to support their claim that BBA Aviation and BBA Group were their employers. There is no evidence that either BBA Aviation or BBA Group exercised any control over any employment decisions made with regard to Plaintiffs.

The basis for the court's decision in *Laird* is not new. Indeed, the *Laird* court heavily relied on federal authorities, including, as noted, the leading federal case of *Frank, supra,* 3 F.3d

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002                15.                Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1357. The *Frank* plaintiff was discharged from Northwestern Bell, a wholly owned subsidiary of U.S. West. Reiterating that there is no joint employment relationship unless the parent company exercises day-to-day control over the employment decisions of the subsidiary, the court found that the parent corporation did not participate in "routine personnel decisions such as hiring, transferring, promoting, discharging, and disciplining" the subsidiary corporation's employees. *Id.* at 1360.

The *Frank* court recognized that some level of control is inherent in a parent-subsidiary relationship. Accordingly, it held that the mere fact that the management chain of command ultimately led to the parent corporation's president was insufficient to create a triable issue as "this exercise of control is not to a degree that exceeds the control normally exercised by a parent corporation." *Id.* at 1362. Similarly, it was of no consequence that the parent's broad, general guidelines and equal employment policies were applicable to the subsidiary's employees, as this was "in no way evidence [of] an attempt by [the parent] to exercise day-to-day control over employment decisions" of its subsidiary. *Id.* at 1383. The fact that the parent corporation maintained pension plans and other benefits for the subsidiary's employees also did not show excessive interrelatedness "[b]ecause it is not beyond the normal parent-subsidiary relationship for the parent to serve as ERISA Plan Administrator for the subsidiary." *Id.*

Another instructive case is *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062 (10th Cir. 1998), in which a parent corporation was granted judgment as a matter of law as to claims made by a subsidiary's employee who had quit her job with the subsidiary as a result of sexual harassment. In trying to hold Pizza Hut, the parent, liable as a joint employer, the plaintiff noted that she received a Pizza Hut employee handbook that included the Pizza Hut corporate sexual harassment policy and grievance procedure for reporting claims of sexual harassment to Pizza Hut representatives. *Id.* at 1066. She further proved that Pizza Hut distributed its sexual harassment policy to its subsidiaries' managers, that Pizza Hut required managers of those subsidiaries to attend sexual harassment training sessions, and that the chain of command at her subsidiary culminated in Pizza Hut. *Id.* Moreover, the plaintiff's EEOC charge was directed to and handled by Pizza Hut's Manager of Equal Employment Opportunity and Affirmative Action. *Id.* at 1067. The federal appeals court held, as a matter of law, that this evidence was insufficient to establish that the parent exercised day-

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002        16.        Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1    to-day control over its subsidiary's labor relations as there was no evidence that Pizza Hut made the

2    final decisions regarding employment matters. *Id.* at 1071. Although it promulgated handbooks and

3    policies, there was no evidence "indicating what role, if any, Pizza Hut played in implementing or

4    effecting those policies." *Id.* Again, in this matter, Plaintiffs cannot point to any facts that come

5    close to the evidence that was held insufficient in *Lockard.* Other than the terms of Plaintiffs benefit

6    plans, all general employment policies applicable to Plaintiffs were issued by Signature Flight alone

7    and only reference Signature Flight. (Smith Dec. ¶ 6; Smith Rule 30(b)(6) Dep. 190:20-191:8.)

8    Furthermore, all of the Plaintiffs' complaints of discrimination were investigated and handled by

9    human resources employees of Signature Flight. (Smith Dec. ¶ 6) Again, Plaintiffs have no

10   evidence that either BBA Aviation or BBA Group were involved in any way with their employment.

11          Additionally directly on point is *Cellini, supra,* 51 F.Supp.2d 1028. The plaintiff in

12   that case, a former employee of Harcourt Brace, brought suit against both Harcourt Brace and

13   Harcourt General, the parent corporation of Harcourt Brace, based on allegations surrounding his

14   resignation from Harcourt Brace. The plaintiff brought California state law claims against both the

15   subsidiary and its parent, including, among others: (1) discrimination and harassment in violation of

16   the FEHA; (2) failure to maintain a workplace free from harassment in violation of the FEHA; (3)

17   retaliation in violation of the FEHA; and (4) intentional infliction of emotional distress. The *Cellini*

18   court granted the parent, Harcourt General, summary judgment on the grounds it could not be held

19   liable for the acts or omissions of its subsidiary, Harcourt Brace. In granting summary judgment, the

20   court first rejected the plaintiff's contention that triable issues of fact existed as to whether Harcourt

21   General could be held liable for the acts of Harcourt Brace under an agency theory of liability. *Id.* at

22   1033. Relying on *Laird,* the court held that, under California law, in order to establish a parent

23   corporation's liability for the acts or omissions of its subsidiary under an agency theory, a plaintiff

24   must show that the "'parent corporation so controls the subsidiary as to cause the subsidiary to

25   become merely the agent or instrumentality of the parent.'" *Cellini,* 51 F.Supp.2d at 1033 (quoting

26   *Laird,* 68 Cal.App.4th at 741).

27          In support of his agency theory, the plaintiff in *Cellini* pointed to the fact that

28   Harcourt General provided employee benefits programs for Harcourt Brace employees; that

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002          17.          Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

Harcourt General issued a code of conduct that applied to Harcourt Brace employees; and that Harcourt General provided sexual harassment seminars for Harcourt Brace employees. *Cellini,* 51 F.Supp.2d at 1034. The court, however, found that these facts were insufficient to establish an agency relationship between Harcourt General and Harcourt Brace because they did not demonstrate that Harcourt General exercised any control over Harcourt Brace's day-to-day employment decisions. Instead, the evidence in the case demonstrated that Harcourt Brace's day-to-day employment decisions, such as hiring, performance evaluations, and work assignments, were conducted by Harcourt Brace employees without the involvement of Harcourt General. The Court therefore concluded that the plaintiff had not produced a triable issue of fact as to whether Harcourt General could be held liable for the acts or omissions of Harcourt Brace under an agency theory. *Id.* at 1033-34.

The *Cellini* court also rejected any suggestion that the parent might be held liable for the acts or omissions of its subsidiary on the theory that the two entities constituted a single employer. Again, relying on *Laird,* the court applied the "integrated enterprise" test to determine whether a parent and subsidiary corporation could be held liable as a single employer in a discrimination suit. *Id.* at 1034-35. Recognizing that under this test, "common ownership or control alone is never enough to establish parent liability," the *Cellini* court examined "which entity made the final decisions regarding employment matters" and concluded that the plaintiff had produced no evidence that Harcourt General exercised control over Harcourt Brace's employment decisions. *Id.* at 1035. While Harcourt Brace was a subsidiary of Harcourt General, that fact alone was not sufficient to establish Harcourt General's liability under the "integrated enterprise" test. *Id.* at 1035. Accordingly, the court granted summary judgment, dismissing the plaintiffs' claims against the parent corporation.

These cases are but a sampling of the numerous decisions reiterating the same point: ***a parent corporation is not liable for alleged wrongdoing against a subsidiary's employees unless the parent exercises day-to-day control over the subsidiary's routine employment decisions.*** Here, neither BBA Aviation nor BBA Group exercise any control over Signature Flight's day-to-day employment decisions and human resources functions. (Smith Dec. ¶ 7; Smith Rule 30(b)(6) Dep.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408.998.4150

FIRMWIDE:71500054.1 049112.1002                    18.                    Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1  187:24-188:6, 190:7-18, 191:7-8.)  Instead, Signature Flight's day-to-day human resources functions

2  and decisions are controlled by the management and human resources employees in each local FBO,

3  none of whom are officers or employees of BBA Aviation or BBA Group.  *Id.*  Similarly, to the

4  extent that these day-to-day decisions must be reviewed when complaints are made, such a review or

5  investigation are made not only by the local FBO, but also by Signature Flight employees from the

6  corporate headquarters in Orlando, Florida or from one of the regional offices.  *Id.*  Again, none of

7  these corporate or regional human resources employees are officers or employees of BBA Aviation

8  or BBA Group.  *Id.*  Indeed, as noted above, none of the individual human resources officials,

9  management employees, supervisors or other rank-and-file employees who are alleged in the

10  Complaint in this action to have engaged in any illegal or tortious conduct toward Plaintiffs have

11  ever been employed by BBA Aviation or BBA Group.  (Smith Dec. ¶ 9.)  Consequently, both

12  Defendant BBA Aviation and BBA group should be dismissed from this action as the undisputed

13  evidence establishes that they did not exercise any control over Signature Flight's day-to-day

14  employment decisions.[3]

      **2.**      **Plaintiffs Cannot Set Forth Any Evidence To Satisfy The Remaining Three Factors To Establish That BBA Aviation And BBA Group Are An Integrated Enterprise With Signature Flight.**

17        An attempt to impose liability on BBA Aviation and BBA Group also fails the other,

18  less crucial *Laird* factors.  *Laird, supra,* 68 Cal.App.4th at 737.  Regarding the first factor of

19  "interrelation of operations," virtually all of BBA Aviation's operations, administrative, and

20  executive functions are performed in its corporate headquarters in Orlando, Florida, whereas

21  virtually all of the similar functions for BBA Group are performed in its corporate headquarters in

22  Wakefield, Massachusetts.  (Murrer Dec. ¶ 3; Goldstein Dec. ¶ 3.)  However, although Signature

23  Flight's corporate functions are performed in its corporate headquarters in Orlando, most of the

24  operations and related administrative functions take place at the individual FBO facilities, which are

---

[3]  Plaintiffs' attorneys seem to have conceded that neither BBA Aviation nor BBA Group have any control over Signature's day-to-day employment decisions.  In a letter dated October 26, 2005, Plaintiffs' attorneys contend that Signature has a "pattern and practice" of discriminating against African Americans and females that "apparently arises from Signature's policy of allowing non-African American and male managers to make individual employee decisions without the aid of sufficiently objection [sic] criteria." (Wilger Dec. ¶ 4, Exh. C.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA  95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002          19.          Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1   located around the world.  (Smith Dec. ¶ 2.)  In addition, as explained further below, there is

2   minimal common management (the second factor in *Laird*) between BBA Aviation, BBA Group,

3   and Signature Flight.  (Smith Dec. ¶¶ 2, 3, 7; Murrer Dec. ¶ 3; Goldstein Dec. ¶ 3.)  Finally, neither

4   BBA Aviation nor BBA Group controls Signature Flight.  (Smith Dec. ¶ 3; Smith Rule 30(b)(6)

5   Dep. 193:19-24; Murrer Dec. ¶ 6; Goldstein Dec. ¶ 6.)  As all of the four factors identified in *Laird*

6   are missing from the relationship between BBA Aviation, BBA Group, and Signature Flight,

7   including the most important third factor, centralized control of labor relations, BBA Aviation and

8   BBA Group cannot be held liable to the Plaintiffs.[4]

9       **D.    Defendants BBA Aviation And BBA Group Are Not Alter Egos To Signature
              Flight, And Thus, Are Not Liable To Plaintiffs In This Action.**

10

11      As Plaintiffs are not employees of BBA Aviation or BBA Group under the "single

12  employer" test, the only way that BBA Aviation and/or BBA Group could be held liable for the

13  purported acts of Signature Flight or its employees is if the Court were to find that BBA Aviation

14  and/or BBA Group are the "alter egos" of Signature Flight.  Plaintiffs neither allege in their

15  complaint, nor do they have any evidence to support, any "alter ego" theory of liability against BBA

16  Aviation and BBA Group.

17      The California courts have repeatedly held that "'the corporate form will be

18  disregarded only in narrowly defined circumstances and only when the ends of justice so require.'"

19  *Say & Say, Inc. v. Ebershof,* 20 Cal.App.4th 1759, 1768 (1993) (quoting *Mesler v. Bragg Mgmt. Co.,*

20  39 Cal.3d 290, 301 (1985)).  "Because society recognizes the benefit of allowing persons and

21  organizations to limit their business risks through incorporation, sound public policy dictates that

22  imposition of alter ego liability be approached with caution."  *Las Palmas Assocs. v. Las Palmas*

23  *Ctr. Assocs.,* 235 Cal.App.3d 1220, 1249 (1991).  It is the Plaintiffs' burden to overcome the

24  presumption of the separate existence of the corporate entities.  *Mid-Century Ins. Co. v. Gardner,* 9

25  Cal.App.4th 1205, 1212 (1992).

26

27  [4]  Because Plaintiffs cannot impose liability upon BBA Aviation and BBA Group pursuant to the "integrated enterprise" doctrine, they also cannot establish that BBA Aviation and BBA Group can be liable to Plaintiffs as "agents" of Signature Flight. *Laird, supra,* 68 Cal. App. 4th at 741 (no agency when the parent did not control the employment decisions of its subsidiary).

28

Before a parent corporation will be deemed the "alter ego" of its subsidiary, a plaintiff is required to establish both of the following:

> (1) such a unity of interest in ownership exists so as to dissolve the separate corporate personalities of the parent(s) and the subsidiary, relegating the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former, and (2) an inequitable result will occur if the conduct is treated as that of the subsidiary alone.

*Institute of Veterinary Pathology, Inc. v. Cal. Health Labs.*, 116 Cal.App.3d 111, 119 (1981); *Doney v. TRW, Inc.*, 33 Cal.App.4th 245, 249 (1995); *Tran v. Farmers Group, Inc.*, 104 Cal.App.4th 1202, 1218-1219 (2002). Here, Plaintiffs cannot satisfy either of these criteria.

### 1. Plaintiffs Cannot Establish Alter Ego Status Between The Corporate Defendants Because The Is No Unity Of Interest.

As indicated above, "[b]efore a corporation's acts and obligations can be legally recognized as those of [another corporation], and vice versa, it must be made to appear that the [first corporation] is not only influenced and governed by [the second], but that there is such a unity and interest and ownership that the individuality, or separateness, of such [corporations] has ceased . . ." *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 837 (1962); *see also Bell Atlantic Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*, 849 F.Supp. 702, 707 (N.D. Cal. 1994) (alter ego liability will only be imposed where "unity of interest and ownership [are] such that the separate personalities of the two corporations no longer exist"). In determining whether there is such a unity of interest that the separate corporate personalities no longer exist:

> "[a]mong the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." (*Roman Catholic Archbishop v. Superior Court* [(1971)] 15 Cal.App.3d [405,] 406, 411; *Associated Vendors, Inc. v. Oakland Meat Co.*, supra, 210 Cal.App.2d at 838-839.) Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. (*See Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1285, [other citations omitted].

*Sonora Diamond Corp. v. Super. Ct.*, 83 Cal.App.4th 523, 538-539 (2000). "Alter ego is an extreme remedy, sparingly used." *Id.*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002          21.          Case No.  C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1    Here, there is no reason why BBA Aviation or BBA Group should be held liable as
2    an "alter ego" of Signature Flight or each other. The corporate defendants are separately
3    incorporated and operated. BBA Aviation is a corporation incorporated in Florida and has its
4    corporate headquarters is located in Orlando, Florida. (Goldstein Dec. ¶ 3.) BBA Group is
5    incorporated in Delaware, with its corporate headquarters located in Wakefield, Massachusetts.
6    (Murrer Dec. ¶ 3.) These compare to Signature Flight, which is incorporated in Delaware and has its
7    corporate headquarters located in Orlando. (Smith Dec. ¶ 3.)

8    BBA Aviation, BBA Group, and Signature Flight are engaged in different lines of
9    business as compared to each other. BBA Aviation's business operations are limited to providing
10   services to other corporate companies out of its headquarters in Orlando. (Goldstein Dec. ¶ 2.) BBA
11   Group is a holding company who provides some financial reporting, accounting, and legal services
12   to other related entities out of its corporate offices in Massachusetts. (Murrer Dec. ¶¶ 2 & 3.)
13   Signature Flight is, in turn, a company that provides aviation services through more than 60 FBO
14   facilities located around the world. (Smith Dec. ¶ 2.)

15   The financial and structural framework of BBA Aviation, BBA Group, and Signature
16   Flight also demonstrates why BBA Aviation and BBA Group are not "alter egos" of their
17   subsidiaries. Each entity's assets are accurately accounted for and reflected on their respective
18   books and records, with no commingling of assets; each entity keeps separate corporate minutes and
19   records that are not commingled; each entity pays their own sales, use, and property taxes with the
20   appropriate taxing authority, using their respective taxpayer identification numbers; each entity was
21   incorporated at different times; and each entity's transaction with another is always done at arm's
22   length with full regard for maintaining the formalities of such transactions. (Smith Dec. ¶¶ 3-6;
23   Goldstein Dec. ¶¶ 3 & 4; Murrer Dec. ¶¶ 3 & 4.)

24   In addition, Signature Flight has registered to do business separately from BBA
25   Aviation in Florida, the only state in which they both conduct business. (Smith Dec. ¶ 2; Goldstein
26   Dec. ¶ 3.) Signature Flight also has not attempted to segregate any of its liabilities to either BBA
27   Aviation or BBA Group. (Smith Dec. ¶ 5.) Furthermore, Signature Flight has not ceased paying its
28   debts and does pay its debts when they come due. *Id.* Moreover, only two of Signature Flight's

1   corporate officers are corporate officers with BBA Aviation, and neither has any control over the

2   day-to-day employment decisions and human resources functions of Signature Flight or BBA

3   Aviation.  (Smith Dec. ¶ 3.)  No Signature Flight officer is an officer with BBA Group.  *Id.*

4   Likewise, no corporate officer of BBA Aviation is an officer with BBA Group.  (Goldstein Dec. ¶

5   3.)  As a result, Plaintiffs cannot establish that there is such a unity of interest between the corporate

6   Defendants so as to satisfy the first element of "alter ego" status.

7           **2.      Plaintiffs Cannot Establish Alter Ego Status Between The Corporate**
            **Defendants Because No Inequitable Result Will Occur If BBA Aviation**
8           **And BBA Group Are Not Found To Be The Alter Egos Of Signature**
            **Flight.**
9

10          Plaintiffs also cannot satisfy the second necessary element for a finding of "alter ego"

11   status, *i.e.,* that "an inequitable result will occur if [the alleged unlawful conduct] is treated as [the

12   conduct] of the subsidiary alone." *Institute of Veterinary Pathology, supra,* 116 Cal.App.3d at 119.

13   This element is "critical." *Tomaselli v. Transamerica Ins. Co.,* 25 Cal.App.4th 1269, 1285 (1994);

14   *see also Roman Catholic Archbishop v. Super. Ct.,* 15 Cal.App.3d 405, 411 (1971) (the "alter ego"

15   principle can be applied only if "the facts are such that an adherence to the fiction of the separate

16   existence of the corporation would . . . sanction a fraud or promote injustice").  Plaintiffs have

17   absolutely no evidence that any "inequitable" result will occur if BBA Aviation and BBA Group are

18   dismissed from this action.

19          Significantly, the fact that the parent corporation may have more assets than its

20   subsidiary corporation does not render the parent's dismissal from a lawsuit an "inequitable result."

21   In fact, a plaintiff may not be able to pierce the corporate veil and have parent corporations declared

22   "alter egos" of their subsidiaries even when the subsidiary cannot satisfy a judgment that may be

23   rendered against it:

24                  Certainly, it is not sufficient to merely show that a creditor will remain
                    unsatisfied if the corporate veil is not pierced, and thus set up such an
25                  unhappy circumstance as proof of an "inequitable result."  In almost
                    every instance where a plaintiff has attempted to invoke the doctrine
26                  he is an unsatisfied creditor.  The purpose of the doctrine is not to
                    protect every unsatisfied creditor, but rather to afford him protection,
27                  where some conduct amounting to bad faith makes it inequitable . . .
                    for the equitable owner of a corporation to hide behind its corporate
28                  veil. [Citation omitted]

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113-2303
408 998 4150

FIRMWIDE:71500054.1 049112.1002               23.               Case No. C 05 00490 CW

Notice Of Motion & Motion Of Defs BBA Aviation And BBA Group For Sum Jud On Pls Claims

1   *Mid-Century Ins. Co. v. Gardner,* 9 Cal.App.4th 1205, 1213 (1992). More importantly, a plaintiff

2   cannot pierce the corporate veil simply in an attempt to obtain a larger punitive damages award. *See*

3   *Walker v. Signal Cos., Inc.,* 84 Cal.App.3d 982, 1001 (1978) ("inequitable result" not created when

4   corporate parent is dismissed from a lawsuit, even though plaintiff was thereby unable to "obtain an

5   increased award of punitive damages [based on] the substantial net worth of the parent"). Alter ego

6   status is not based solely on the fact that a plaintiff may obtain a larger recovery with the parent

7   corporation in the lawsuit.

8         Here, there will be no "inequitable result" if BBA Aviation and BBA Group are

9   dismissed from this lawsuit. Signature Flight is adequately capitalized and has its own separate

10   financial resources sufficient to respond to and satisfy any judgment which may be rendered against

11   it in this action. (Smith Dec. ¶ 5.) Furthermore, Signature Flight is an on-going viable business—it

12   has not ceased paying its debts and it can and does pay its debts as they become due. *Id.* Therefore,

13   Plaintiffs cannot establish that BBA Aviation and BBA Group are the "alter egos" of Signature

14   Flight and should remain in this lawsuit.

15   **IV.   CONCLUSION**

16         For all the reasons discussed above, each of the Plaintiffs' various claims as brought

17   against Defendants BBA Aviation Shared Services, Inc., and BBA Group U.S. Holdings, Inc., fail to

18   state a triable issue as to any material fact. Accordingly, BBA Aviation and BBA Group respectfully

19   request that their motion for summary judgment be granted.

20   Dated: January 5, 2006         Respectfully submitted,

21

22

23                         ALAN B. CARLSON

                            LITTLER MENDELSON

24                         A Professional Corporation

                           Attorneys for Defendants

25                         SIGNATURE FLIGHT SUPPORT

                           CORPORATION, BBA AVIATION

26                         SHARED SERVICES, INC., BBA GROUP

                           U.S. HOLDINGS INC., STEVE TRUE,

27                         DENNIS SMITH AND VAL VADEN

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
14th Floor
San Jose, CA 95113 2303
408 998 4150